TRINA A. HIGGINS, United States Attorney (#7349)
MARK E. WOOLF, Assistant United States Attorney (WA # 39399)
PETER J. ANTHONY, Special Assistant United States Attorney (NY #4940912)
MEREDITH M. HAVEKOST, Special Assistant United States Attorney (IL #633289)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone:  (801)524-5682

_____

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. PAUL KENNETH CROMAR, Defendant. | **UNITED STATES' POSITION REGARDING DETENTION** Case No. 2:23-cr-00159-DS |

The United States of America is seeking detention based on current information. The United States' positions in this preliminary pleading could change after reviewing the Pretrial Services Report or learning of additional evidence. The United States reserves the right to raise additional arguments and file additional pleadings in support of detention.

1. **Statutory Detention Factors**

The United States moves for detention pursuant to 18 U.S.C. § 3142(f)(2) because this case involves a serious risk the Defendant will flee, a serious risk that the Defendant

will obstruct justice or attempt to do so, and a serious risk that the Defendant will threaten, injure, or intimidate prospective witnesses or jurors or attempt to do so.

A defendant may seek a continuance of the detention hearing of up to five days, and the United States may seek a continuance of up to three days. 18 U.S.C. § 3142(f). During any such continuance, the defendant shall be detained. *Id*. The rules concerning the admissibility of evidence do not apply at the detention hearing. *Id*. The United States has the burden of persuasion by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community or by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required. *Id*.; *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

The United States may present arguments, proffer evidence, or provide testimony at the scheduled detention hearing supporting the detention of the defendant including, but not limited to:

a. The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm or destructive device;
b. The weight of evidence against the defendant;
c. The history and characteristics of the defendant including the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning court proceedings;
d. Whether, at time of the current offense or arrest, the defendant was on probation, parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    e.  The nature and seriousness of danger to any person or to the community that would be posed by the defendant's release.

*See* 18 U.S.C. §§ 3142(4)(1)-(4). The United States may also present information regarding the defendant's ties outside the United States, use of aliases or false documents, prior attempts to evade law enforcement, and prior failures to appear for court proceedings.

**2. The Defendant should be detained pending trial as both a risk of flight and a danger to the community.**

Defendant's conduct, together with the detention factors under § 3142, show that there is a serious risk the Defendant will flee pending trial. The Defendant has twice been subject to forced removal from his prior residence based on his unwillingness to comply with valid court orders. He was convicted of Burglary and Wrongful Appropriation because of his conduct that necessitated the second removal. *See State of Utah v. Cromar*, Case No. 201402560, Fourth Judicial District ("State Case"). He then failed to appear for an interview with Utah Adult Probation and Parole ("APP") prior to his sentencing in the State Case. He also failed to personally appear at his sentencing hearing as ordered.

These failures resulted in the issuance of an arrest warrant, which the Defendant called "an act of war."[1] Rather than simply report to APP and resolve the issue of the arrest warrant by interviewing with APP and appearing for his sentencing hearing, the

---

[1] https://www.ksl.com/article/50460894/utah-couple-convicted-in-armed-standoff-calls-arrest-warrant-an-act-of-war (last accessed on 8/28/2023)

Defendant fled the jurisdiction. The Defendant admitted as much during a live podcast where he stated he is "hiding someplace far away from that wicked evil county called Utah County." *See* infra. at fn. 9. The arrest warrant remains active. There are no conditions or combination of conditions that this Court could impose that will ensure the Defendant's appearance in the face of his unabated, willful defiance of court orders requiring that he do just that.

So too, the Defendant poses a risk to the community. For a period now extending back almost a decade, the Defendant has weaponized process to intimidate and bully into submission those who disagree with him. That weaponization took a new turn here when, in response to the court-ordered sale of his former residence, an order that has been upheld at every stage of the legal process, he broke into the home, occupied it for a period of months, fortified it against incursion, openly requested support from others in his desired confrontation with the government, and terrorized his former neighborhood.

The Defendant's unlawful occupation of his former residence is well documented.[2] And, since fleeing Utah to avoid arrest and sentencing in his State Case, there has been a marked uptick in the Defendant's violent rhetoric, much of which can be found on his website.[3] The Defendant cannot run from his violent rhetoric and dangerous

---

[2] https://www.ksl.com/article/50021469/couple-who-owed-1-million-in-taxes-arrested-after-armed-standoff-with-police (last accessed 8/28/2023)

[3] http://www.cedarhillscitizens.org/pop-quiz-real-patriots-vs-rich-man-north-of-richmond/ (last accessed 8/28/2023)
http://www.cedarhillscitizens.org/100-guaranteed-to-insure-the-end-of-corrupt-judges/ (last accessed 8/28/2023)
http://www.cedarhillscitizens.org/fake-judge-christine-s-johnson-publicly-rebuked-for-treason-in-the-court/ (last accessed 8/28/2023)

proclivities. There are no conditions or combination of conditions that this Court could impose to ensure the safety of the community from the Defendant's repeated willingness to put all around him at risk.

3. **3142(g) Factors.**

Consideration of the factors under § 3142(g) conclusively shows that there is a serious risk the Defendant will flee if released and poses a substantial safety risk. All four factors weigh in favor of detention.

   a. **Nature and Circumstances of the Offense**

The nature and circumstances of the offenses weigh heavily in favor of detention, particularly those circumstances surrounding the Defendant's "forcible rescue" of real property lawfully seized under the Internal Revenue Code. The IRS, as part of its collection enforcement, filed suit against the Defendant in November 2017 to reduce his tax liability to judgment and foreclose on his residence. *See United States v. Cromar*, 2:17-cv-01223-RJS ("*Cromar I*"). The Court entered default judgment and ordered the residence sold.[4] *Cromar I* at Dkt. No. 104. The judgment was affirmed by the Tenth Circuit. *See Cromar I* at Dkt. No. 128.

In its Order of Sale, the Court in *Cromar I* gave the United States Marshal's Service ("USMS") access to the property and the authority to take any steps necessary to preserve it, including evicting any remaining residents and securing the residence by

---

[4] https://www.youtube.com/watch?v=4fKn2hcUQM4 (last accessed on 8/28/2023) (Defendant uploaded a video to YouTube acknowledging these events and offering a reward for information about government officials and employees)

changing the locks. On or about June 25, 2019, the USMS forcibly removed the Defendant and his family from the residence and changed the locks. That same day, the Defendant filed a Notice of Lis Pendens against the residence. The home was ultimately sold at auction on or about September 13, 2019.

The Defendant and others attended the auction and posted footage on YouTube, publishing identifying information about law enforcement personnel and the prevailing bidder.[5] The Notice of Lis Pendens, part of a separate lawsuit filed by the Defendant that was dismissed as frivolous, had its desired effect by clouding title and preventing the sale of the property to the winning bidder due to an inability to procure sufficient funding. The Defendant took photographs of potential investors that showed up to view the property and posted those photographs, along with photographs of the investors' license plates, online. The property was eventually sold to another. That sale was confirmed by the Court on or about April 15, 2020. *See Cromar I*, Dkt. No. 119.

Before the Deed could be conveyed to the new purchaser, witnesses observed the Defendant and his wife returning to the residence. Near the time that the Defendant illegally re-entered the home, local police were called to the residence after receiving reports that the Defendant had used a saw to enter the home. The Defendant recorded the interaction and posted it to YouTube.[6] Police reports indicate that, shortly after this interaction with local law enforcement, the Defendant appeared on multiple podcasts

---

[5] https://www.youtube.com/watch?v=mmp_VOpbZas (last accessed on 8/28/2023)

[6] https://www.youtube.com/watch?v=fn8MMZWdo6E (last accessed on 8/28/2023)

pleading for assistance in a stand-off with the federal government and making threatening statements toward law enforcement. Over time, witnesses observed others enter the residence, several of whom had firearms. Witnesses also reported seeing military style drills being conducted in the backyard.

The Defendant's illegal occupation of the residence lasted for approximately 5 months before he and his wife were arrested by local law enforcement.[7] As part of the arrest operation, local law enforcement, unsure what might await them, was forced to deploy a significant force, including a SWAT team, to the residence. The Defendant posted the encounter on YouTube and on his website.[8] A subsequent search of the home showed that substantial steps had been taken to fortify the home.

 

---

[7] The Defendant was arrested while he was away from the residence. His wife was arrested at the residence.

[8] https://www.youtube.com/watch?v=L9-XhokiqW4 (last accessed on 8/29/2023)
http://www.cedarhillscitizens.org/fake-judge-christine-s-johnson-publicly-rebuked-for-treason-in-the-court/ (last accessed on 8/29/2023)






The Defendant and his wife were charged with Burglary and Wrongful Appropriation by the state shortly after their arrest. *See State of Utah v. Cromar,* Case No. 201402560, Fourth Judicial District. Prior to trial, the Defendant made numerous frivolous filings targeting multiple participants. Ultimately, the Defendant and his wife were found guilty.

After the verdict was returned, the Defendant was ordered to appear at APP to interview before sentencing. He did not and an arrest warrant was issued. *See* Exhibit A. That warrant was recalled based on Defendant's agreement to meet with APP, but he failed to appear a second time, resulting in another arrest warrant. *See* Exhibit B. Sentencing was scheduled to go forward on August 19, 2020, but the Defendant failed to

personally appear as he had been ordered to do. Accordingly, the Defendant has not been sentenced on the State Case and the warrant remains active.

The ability to resolve the warrant in the State Case has always been within the Defendant's power. He simply needed to report to APP and comply with the orders issued by the sentencing judge in the State Case. Instead, he opted to flee Utah rather than turn himself in or risk the ignominy of being arrested for a third time. The Defendant admitted his flight during a live podcast on April 27, 2023, wherein he stated that he has "not been sentenced," is therefore not a convicted felon, and is "hiding someplace far away from that wicked evil county called Utah County."[9] The Defendant has also appeared on multiple webcasts since fleeing Utah. In those appearances he makes numerous admissions, claims "divine assignment" for his conduct, and continues the charade of his scheme to avoid taxes and defy court orders.[10]

The nature and circumstances here weigh heavily in favor of detention. The Defendant continuously and without hesitation defies any court order he does not like. It is a point of pride for him as he goes to extreme lengths to avoid consequence and pursue an agenda of courting violence against those who dare to disagree with him. There are no conditions or combination of conditions that this Court could impose that would assure

---

[9] http://www.cedarhillscitizens.org/liberty-roundtable-live-with-host-sam-bushman-raland-brunson-ken-cromar/ (last accessed on 8/29/2023) (at approximately the 2:40 – 4:05 mark of the linked podcast)

[10] http://www.cedarhillscitizens.org/rumble-truth-be-told-barbie-ken-cromar-with-host-todd-callender/ (last accessed on 8/29/2023) (June 30, 2023, episode of Truth Be Told) http://www.cedarhillscitizens.org/barbie-ken-on-their-land-patent/ (last accessed on 8/29/2023) (July 21, 2023, episode of Truth Be Told)

the Defendant's appearance.

### b. Weight of the Evidence

The weight of the evidence in this case is overwhelming. Nearly every allegation in the indictment has been documented by the legal process, local law enforcement, or the Defendant himself. The Defendant's tax-defier theories, which have been rejected at every turn, do not evince good faith. He cannot continue to disguise his knowing disregard of well-established legal principles and established facts in his pseudo-patriot cosplay.

The Defendant has embarked on a sustained, corrupt endeavor to obstruct internal revenue laws, targeting administrative IRS action through the presentation of false documents, including a false promissory note and false invoices against revenue officers. These actions served no purpose other than to attempt to unlawfully stop enforced collection of a significant tax obligation. Unsuccessful in that effort, the Defendant then pursued a course of self-help by breaking into and occupying his former residence and seriously endangering himself, his family, his friends, his neighbors, and many others who were simply doing their job enforcing valid court orders. The weight of the evidence supports detention.

### c. History and Characteristics of the Defendant

The history and characteristics of the Defendant also weigh in favor of detention. The Defendant does have some ties to Utah, but those ties were long ago severed when he fled the state to avoid arrest. Further, as has been shown, the Defendant has an abysmal record when it comes to appearing at court proceedings and complying with

court orders. He has been the subject of two SWAT removals from his prior residence, fortified the residence against efforts to remove him, actively courted others for an ill-conceived showdown with the government and law enforcement, refused to comply with multiple lawful court orders, refused to appear at his sentencing, and fled Utah to avoid arrest. There is no redeeming history, characteristic, or providential narrative that the Defendant can spin that overcomes the substantial evidence of his true character as one who is more than willing to endanger others to advance his criminal schemes only to cut and run when those schemes fail.

### d. Nature and Seriousness of the Danger to any Person or the Community

The nature and seriousness of the danger posed by the Defendant is significant and weighs in favor of detention. The Defendant has a history of attempting to intimidate, bully, and endanger any who might oppose him. Like other tax defiers, his method of choice has often been frivolous legal filings, lawsuits, and other ill-conceived procedural machinations. He has engaged in all of these paper-based tactics intended to clog the courts and intimidate government officials, employees, and potential witnesses. This conduct causes real harm to its intended targets, who must address the casual frivolity designed to upend their lives.

Here, however, the Defendant's conduct has taken an even darker turn. The United States has identified multiple specific instances where the Defendant has engaged in doxxing, the public dissemination of private or identifying information, with malicious intent. The Defendant has published the identities and work locations of government employees, the identities of those who bid on his former residence, the identities and

license plates of potential investors interested in purchasing his former residence, his neighbors identities, the identity of ecclesiastical leaders with whom he has had a falling out or disagreement, and the identities of potential witnesses in cases lodged against him. These are not innocent acts and serve no purpose other than to bully, intimidate, and harm those who the Defendant targets.

Further, the Defendant's contempt for the judiciary is readily apparent. His website is replete with pejorative postings about specific judges and public officials who have ruled against him. Such musings by themselves may seem harmless, but the Defendant has openly opined about skinning judges or publicly hanging them to end "corruption," which he loosely defines as anyone who disagrees with him.[11] He has even gone so far as to propose a "Government Repair Kit" for anybody who qualifies under his definition of a "True Patriot."[12]

---

[11] http://www.cedarhillscitizens.org/100-guaranteed-to-insure-the-end-of-corrupt-judges/ (last accessed on 8/29/2023)

[12] http://www.cedarhillscitizens.org/pop-quiz-real-patriots-vs-rich-man-north-of-richmond/ (last accessed on 8/29/2023)



Lastly, the Defendant continues to pose a real danger to any community in which he resides. There is no reason to believe the Defendant will suddenly comply with court orders or stop courting confrontation with the government and law enforcement. The Defendant has twice been forcibly removed from his prior residence due to his intransigent defiance of the courts. Both times required a significant law enforcement response. The second time was made necessary because the Defendant and others broke into his former residence, illegally occupied it for months, and fortified it in anticipation of an armed showdown with the government. There are no conditions or combination of conditions that could reasonably assure the Defendant will not simply terrorize his

neighbors again if released.

4. **Conclusion**

What differentiates the Defendant are his actions. No condition or combination of conditions will stop the Defendant's willful defiance of the courts and any court order designed to assure his appearance. No condition or combination of conditions will convince him to suddenly cease his intimidation and bullying, his weaponization of process, the terrorizing of whole communities, his violent rhetoric and dangerous proclivities, or his desire to incite armed confrontation. The United States has met its burden. The Defendant should be detained.

Respectfully submitted this 30th day of August, 2023.

TRINA A. HIGGINS
UNITED STATES ATTORNEY


*/s/ Mark E. Woolf*_____
MARK E. WOOLF
Assistant United States Attorney