TRINA A. HIGGINS, United States Attorney (#7349)
MEREDITH M. HAVEKOST, Trial Attorney (IL #6332789)
PATRICK BURNS, Trial Attorney (NV #11779)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:23-cr-00159-HCN-DBP |
| Plaintiff, | |
| vs. | GOVERNMENT'S TRIAL MEMORANDUM |
| PAUL KENNETH CROMAR, | District Judge Howard C. Nielson, Jr. |
| Defendant. | Chief Magistrate Judge Dustin B. Pead |

---

The United States, by and through undersigned counsel, hereby respectfully submits this Government's Trial Memorandum addressing the evidence and procedure during trial in this case.

# TABLE OF CONTENTS

I. RELEVANT PROCEDURAL FACTS ........................................................... 1

II. FACTUAL BACKGROUND AND STATEMENT OF THE CASE ......................... 2

    *The Audit and Assessment of Defendant's Delinquent Taxes for Tax Years 1999-2005* ........... 2

    *Initial IRS Efforts to Collect Defendant's Delinquent 1999-2005 Taxes* ................................ 4

    *The United States' Successful Lawsuit to Reduce Defendant's Delinquent Tax
    Liability to Judgment and Foreclose on the Cedar Hills Home* .............................................. 5

    *The Defendant's Post-Judgment Efforts to Evade and Obstruct the IRS's Sale of the
    Cedar Hills Home* ................................................................................................................. 7

    *Defendant's Break-In and Reoccupation of the Cedar Hills Home* ......................................11

III. PERTINENT LAW ...........................................................................................15

    A. Count 1 - Attempt to Evade and Defeat the Assessment or Payment of Tax
        (26 U.S.C. § 7201) – Elements ..............................................................................15

        1. Tax due and owing ...........................................................................................15
        2. Affirmative act constituting an attempt to evade ...............................................17
        3. Willfulness .......................................................................................................18

    B. Count 2 - Corruptly Obstructing the Due Administration of the Internal
        Revenue Code (26 U.S.C. § 7212(a)) – Elements ................................................19

    C. Count 3 - Forcible and Attempted Rescue of Seized Property
        (26 U.S.C. § 7212(b)) – Elements ........................................................................21

IV. EVIDENTIARY AND LEGAL ISSUES ..............................................................21

    A. The Defendant's Sovereign Citizen/Tax Defier Ideology and Arguments .........22

        1. The Defendant's rejection of federal taxation authority is premised on
           sovereign citizen/tax defier ideology and practice ................................22

        2. While the Defendant may present evidence that, at the time he engaged
           in the charged conduct, he had a good faith belief that the tax laws did
           not apply to him, he is not entitled to argue: (1) that such beliefs are true
           or correct; or (2) that federal tax law is unconsitutional or somehow
           invalid ...................................................................................................26

        3. Defendant is not entitled to introduce evidence of sovereign citizen/tax
           defier materials he did not actually rely upon and the Court should
           nevertheless preclude, under Rule 403, Defendant's introduction of any
           written or recorded sovereign citizen/tax defier materials....................28

    B. Defendant's Arguments or Evidence on Jury Nullification, Facts Not in
        Evidence, and the Availability of Civil Remedies ...........................................34

        1. Jury Nullification ...........................................................................................34

2. Referencing Facts Not In Evidence..........................................................36

3. Availability of Civil Remedies ...............................................................37

C. Argument or Evidence Alleging Outrageous Government Conduct ..................38

D. Argument or Evidence Related to Plea Negotiation ............................................39

E. The Defendant's Out-of-Court Statements When Offered by the Defendant .....43

F. Exhibits Referencing Ammon Bundy, Ryan Bundy, and Shawna Cox ...............45

G. Exhibits of Public Record that are Non-Hearsay or Fall Within an Exception ..46

1. Court Orders: Exhibits 34, 41, and 100 through 109.............................46

2. Defendant's Lawsuit Pleadings: Exhibits 24 and 31 .............................53

3. Documents Recorded with the Utah County Recorder's Office:
Exhibits 23, 26, 27, 32, and 37...............................................................56

H. Admissibility of IRS Records.........................................................................58

I. Defendants Reciprocal Discovery and Notice of Defenses ...................................61

V. EXHIBIT LIST ..................................................................................................62

VI. WITNESSES ....................................................................................................62

VII. NOTICE OF FRE 404(b) EVIDENCE ..................................................................62

VIII. JURY INSTRUCTIONS/VERDICT FORM ............................................................62

IX. PROPOSED ADDITIONAL VOIR DIRE QUESTIONS .......................................62

X. CERTIFICATE OF READINESS FOR TRIAL.....................................................63

I.   **RELEVANT PROCEDURAL FACTS**

On April 19, 2023, the grand jury in the District of Utah returned a sealed indictment charging Defendant Paul Kenneth Cromar with the following criminal tax offenses: Count 1 – Attempt to Evade and Defeat the Assessment or Payment of Tax (26 U.S.C. § 7201); Count 2 – Corruptly Obstructing the Due Administration of the Internal Revenue Code (26 U.S.C. § 7212(a)); and Count 3 – Forcible or Attempted Rescue of Seized Property (26 U.S.C. § 7212(b)). ECF No. 1. Defendant was arraigned on the Indictment on August 31, 2023. On September 13, 2023, Defendant received a *Faretta* canvas and was permitted to represent himself. ECF No. 15. After a detention hearing at which the Court took evidence, Defendant was ordered detained pending trial both as a flight risk and danger to the community. ECF No. 17. The Court set Defendant's jury trial for November 17, 2023. ECF No. 16.

On October 10, 2023, Defendant filed a motion to continue trial, which the Court granted and continued the trial to December 12, 2023. ECF No. 29; 39. At a status conference on November 15, 2023, based on the parties' joint request, the Court vacated the December 12 trial date and reset trial to February 6, 2024. ECF Nos. 59; 65. At a January 25, 2024 status conference, the Defendant said that he needed additional time to prepare for trial and stated that a February trial date was unrealistic. The Court vacated the February 6 trial and reset trial for its current setting of March 6, 2024. The government now submits this trial memorandum outlining the evidence it intends to present at trial and also addressing substantive and procedural issues that may arise during the trial.

/ / /

1

II.    **FACTUAL BACKGROUND AND STATEMENT OF THE CASE**

Defendant Paul Kenneth Cromar[1]  was the owner and operator of Blue Moon

Productions LLC, a freelance film and media production company. From at least 1998

through to the present, the Defendant failed to file federal income tax returns reporting the

income he made from Blue Moon Productions and his other business entities. The IRS

began examining the Defendant's taxes around 2004 for tax years 1999-2004 and later

extended the audit to include tax year 2005.

*The Audit and Assessment of Defendant's Delinquent Taxes for Tax Years 1999-2005*

In May 2006, IRS Revenue Agent John Jenson (RA Jenson) was assigned to the

audit. RA Jenson met with the Defendant twice, the second time after the Court

admonished the Defendant during summons enforcement litigation. The IRS had

summonsed the Defendant for bank statements, business records, and other items that

would have allowed RA Jenson to complete accurate substitutes for returns for the

Defendant.[2]  The Defendant eventually provided RA Jenson with partial bank statements.

But he still failed to provide business records, and, when questioned about specific

businesses or items of income, he responded with only broad answers. RA Jenson explained

that he needed specific information, such as the Defendant's number of dependents, to

ensure the substitutes for returns were as accurate as possible. Absent the Defendant

providing the requested information, it was impossible for RA Jenson to account for

---

[1] Defendant goes by his middle name and is commonly known as Ken Cromar.

[2] A substitute for return (SFR) is a tax return the IRS prepares on behalf of a non-filing taxpayer when the taxpayer is unable or unwilling to file a tax return.

2

business expenses and other deductions the Defendant may have been entitled to. The Defendant refused to participate in the audit any further and claimed that he was not subject to federal income tax.

In August 2007, John Joseph (Joseph), a Technical Services Group Manager for the IRS, responded to correspondence from the Defendant and addressed his frivolous arguments. Joseph's letter warned the Defendant that "[t]here are people who encourage others to deliberately violate our nation's tax laws . . . [that] take legal statements out of context and claim that they are not subject to the tax laws." The letter added that taxpayers following that advice "may subject themselves to criminal penalties, including fines and possible imprisonment," and emphasized that "[f]ederal courts have consistently ruled against the arguments" the Defendant had made. The letter concluded by alerting the Defendant that if he disagreed with the IRS's proposed adjustments to his taxes, he had 90 days following the mailing of the Notices of Deficiency[3]  to petition the United States Tax Court.

RA Jenson completed his audit in 2007, throughout which the Defendant received notices that he could provide information to aid RA Jenson in preparing more accurate assessments and to contest the calculations. In July 2007, the IRS mailed the Notices of Deficiency to the Defendant, again reminding him that he had until October 15, 2007 to file a petition with the U.S. Tax Court if he disagreed with the assessments. After the Defendant failed to timely petition or substantively respond with additional information, the

---

[3]  Notices of Deficiency explain the proposed adjustments to the taxpayer and how to accept or contest them.

assessments for 1999-2005 "posted" to his account in November 2007, meaning they became due and owing.

*Initial IRS Efforts to Collect Defendant's Delinquent 1999-2005 Taxes*

As of November 2007, the Defendant owed a total of $703,266.96 in taxes, penalties, and interest for tax years 1999-2005. Because the Defendant had made no payments, the IRS began trying to collect the unpaid taxes in February 2008. Revenue Officer Nancy Phillips (RO Phillips) sent the Defendant a letter in August 2009 informing him that a Notice of Federal Tax Lien may be filed against his property at any time. She also provided IRS publications explaining the Defendant's rights, the collections process, and his right to appeal the collection activities. Shortly after, RO Phillips met the Defendant at his then-residence in Cedar Hills, Utah. RO Phillips served the Defendant with a summons to appear at the IRS office later that month with documents that would help her determine the best method to collect the unpaid taxes. The Defendant confirmed he had received RO Phillips' previous correspondence and did not have any questions.

RO Phillips arranged for the recording of a Notice of Federal Tax Lien for tax years 1999-2005 in Utah County. The lien attached to any property the Defendant owned within the county. On September 8, 2009, the notice was recorded for the $707,785.16 the Defendant owed the IRS.

Pursuant to RO Phillips's summons, the Defendant appeared at the IRS office on September 28, 2009. He was accompanied by three other men carrying video and audio recording equipment. The Defendant provided RO Phillips with an affidavit claiming that

the tax laws did not apply to him and planted a colonial American flag[4] attached to a toothpick in a rubber eraser. The Defendant showed RO Phillips that he had brought boxes full of papers but would not let her see them.

Among other topics, RO Phillips discussed with the Defendant the consequences of him not participating in the audit process and explained that he could file corrected tax returns reflecting his business expenses and any applicable deductions that would likely lower the taxes he owed. RO Phillips relayed to the Defendant the repercussions of not allowing her to review the boxes of documents—that he would be deemed noncompliant with the summons and subject to its enforcement—but the Defendant still refused.

> *The United States' Successful Lawsuit to Reduce Defendant's Delinquent Tax*
> *Liability to Judgment and Foreclose on the Cedar Hills Residence*

The IRS continued to unsuccessfully attempt to collect the Defendant's unpaid taxes. By June 2017, the Defendant had neither made any payments towards his 1999-2005 taxes nor filed any income tax return for subsequent years. Advisory Revenue Officer Wanda Manley (RO Manley) was assigned to review the Defendant's collection proceedings in preparation for a Department of Justice (DOJ) lawsuit seeking to foreclose and reduce to judgment the federal tax lien filed on the Defendant's property in Utah County. RO Manley arranged for the re-filing of the Notice of Federal Tax Lien for 1999-2005 in June 2017 in Utah County.

On November 22, 2017, in the federal District of Utah, the DOJ filed a civil complaint against the Defendant and his wife, among other creditors. The complaint sought

---

[4] The colonial American flag has thirteen stars representing the thirteen original colonies.

to reduce the 1999-2005 tax liabilities to judgment and foreclose on the federal tax lien, which attached to the Defendant's then-residence in Utah County ("the Cedar Hills residence"). In response, and without ever answering the complaint, the Defendant filed a series of pleadings typical of sovereign citizens or tax protesters, including: a "Motion to Determine the Subject-Matter Jurisdiction of the Court"; an "Objection to Plaintiff's Failure to Fully and Properly Identify the Granted Subject-Matter Jurisdiction of the District Court on the Record of the Action"; a "Motion for Hearing"; and a "Reply and Motion for a More Definite Statement," among other filings. In June 2018, the District Court ordered the Defendant to file an answer to the complaint within fourteen days, and it warned that Defendant's failure to file an answer may result in the entry of default. The Defendant never filed an answer but filed another motion to dismiss and a document styled, "Explanation of Why it is Impossible for Any Person to Properly Answer the Complaint."

In July 2018, the federal district court judge presiding over the action, Chief Judge Robert J. Shelby, entered default against the Defendant. The Defendant's response was to file another motion asserting that the Court lacked subject matter jurisdiction. The Defendant proceeded to file many other documents contesting the entry of default, including appeals to the Tenth Circuit, all of which were unsuccessful. Throughout the litigation, the district court repeatedly advised Defendant that his jurisdictional and other challenges were frivolous or legally meritless.

In February 2019, upon DOJ's motion, the Court entered a default judgment against the Defendant in the amount of $1,053,028.65 plus statutory interest (the amount due as of the day DOJ's lawsuit was filed). It further ordered that the federal tax lien on the

Defendant's then-residence be foreclosed upon and the property sold. The Court subsequently granted DOJ's motion for an Order of Sale and, in March 2019, entered an Order of Foreclosure and Judicial Sale. The Defendant was ordered to vacate the property permanently within 15 days after the date of the order, which would have been April 5, 2019.

On March 29, 2019, the Defendant filed a $120 million lawsuit in state court, naming as defendants RO Phillips, RO Manley, the civil DOJ Attorney, and Chief Judge Robert J. Shelby, among others. The lawsuit, in which the Defendant alleged that the named parties violated his constitutional rights and federal law based on the foreclosure of his residence, was removed to federal court. The district court would later dismiss the lawsuit with the Tenth Circuit affirming the dismissal.

*The Defendant's Post-Judgment Efforts to Evade and Obstruct the IRS's Sale of the Cedar Residence*

Gary Chapman (Chapman), an IRS Property Appraisal and Liquidation Specialist, was assigned to the foreclosure and sale of the Cedar Hills residence. In May 2019, Chapman visited the property and saw that the Defendant was still there. Chapman spoke with the Defendant and provided him with a copy of the Order of Foreclosure and Judicial Sale as well as a letter informing the Defendant that he needed to permanently vacate the property no later than June 16, 2019. The Defendant accused Chapman of being part of an illegal sale, threatened to add Chapman to the $120 million lawsuit against other federal employees, and argued that he did not receive due process and Chapman did not understand the United States Code.

At Chapman's request, the United States Marshals Service (USMS) continued monitoring the Cedar Hills residence and found that the Defendant was still in the house as of June 16, 2019. Chapman coordinated with the USMS and local law enforcement to evict the Defendant and, on June 25, 2019, law enforcement removed the Defendant and his wife from the property. A locksmith changed the locks to the home. While Chapman was inspecting and taking photos of the property to later use for advertising, the Defendant paced back and forth on the sidewalk yelling. Chapman and Deputy U.S. Marshal Dan Juergens spoke with the Defendant who claimed what they were doing was illegal and compared Chapman to a Nazi.

The same day, the Defendant filed a Notice of Lis Pendens in his $120 million lawsuit against IRS and other federal officials. The notice claimed that the title to the Cedar Hills residence was a subject of the lawsuit. A day later, on June 26, 2019, the Defendant recorded the Notice of Lis Pendens with the Utah County Recorder's office. One of the Defendant's neighbors photographed the notice of lis pendens where Defendant had attached it to the Cedar Hills residence's front door along with a large homemade sign stating "Lis Pendens."

In September 2019, Chapman held an auction on the courthouse steps of the U.S. District Court for the District of Utah. The Defendant, along with many of his supporters, protested the auction. In an effort to dissuade potential bidders, Defendant and his supporters handed out copies of the Defendant's notice of lis pendens. The Defendant filmed the bidders and Chapman with his cell phone, holding the phone just inches from Chapman's face. Nathan Eddington (Eddington) won the auction and put down a deposit of

ten percent of the winning bid. In the weeks following the auction the Defendant launched a campaign of harassment against Eddington, including by showing up at Eddington's father's residence, where Eddington was then staying. The Defendant "warned" Eddington about the lis pendens on the title and also warned Eddington that he would "protect" his home. Defendant gave Eddington papers on which Defendant had written a warning and threat of "personal legal liability and [] legal action."

Eddington sought out financing for the remainder of the purchase price but was unsuccessful in obtaining title insurance and a mortgage lender. This was due to the cloud on title created by Defendant's frivolous $120 million notice of lis pendens. At risk of losing his earnest money deposit of more than $30,000, Eddington sought to find a substitute buyer to take his position as the winning bidder. Brett Belliston (Belliston), a partner in Copper Birch Properties LLC (Copper Birch), ultimately was able to substitute in and have Copper Birch buy the property outright, obviating the need to secure financing.

Between the time Eddington was denied financing and Belliston agreed to purchase the home, Matt Pearce (Pearce) had been asked by a friend to show the property to prospective buyers. During one of those showings, the Defendant appeared and verbally harassed Pearce and the potential buyers. The Defendant followed them to their cars, taking photos of them and their license plates, which he later posted to Facebook. He captioned the photos, in part, "'Matt' unlawfully let people steal into our home! They're trying to get a STEAL of a deal. These are the 'get-away' cars. The black one is 'Matt's'." On the other occasion, one of Defendant's supporters filmed and harassed Pearce and the prospective buyers in an effort to dissuade them from purchasing the home.

On January 2, 2020, the Defendant called RO Manley and requested the payoff amount for his tax liabilities. Later that same day, RO Manley faxed the Defendant the payoff amount with interest calculated through January 15, 2020 and, alternatively, February 14, 2020. The payoff amount calculated through January 15 was $1,174,201.91. A few days later, RO Manley received a letter from the Defendant in the mail dated January 6, 2020 and titled, "Notice of FINAL PAYMENT." Attached to the letter was a "promissory note" in the amount of $1,174,201.91, pictured below:



The Defendant wrote in his letter that the promissory note constituted "final payment and settlement" of his federal tax liabilities, and that he "reserve[d] the right to determine whether harm has been caused, the appropriate amount of compensation due, and the specie and the timeframe in which the compensation must be paid." RO Manley did

not respond but the Defendant continued sending her correspondence, including a $21,000 invoice for "Violation Consumer Protection FCRA – Misrepresentations by the collector about themselves or the debt are actionable regardless of intent." In February 2020, based upon her failure to pay his invoice, the Defendant sued RO Manley as an individual in Utah state court.

### Defendant's Break-In and Occupation of the Cedar Hills Residence

By the end of January 2020, Copper Birch had paid the remainder of the purchase price via cashier's check to Chapman. RO Manley prepared the deed to the property transferring ownership from the IRS to Copper Birch. The deed was signed on April 23, 2020 and dated April 24, 2020. The deed was sent to Belliston on April 27, 2020, and recorded on April 29, 2020.

Prior to Belliston's receipt of the deed and its recordation, on April 23, 2020, local police received a report that someone was breaking into the Cedar Hills residence. When American Fork Police Department officers arrived, they found the Defendant and several others barbecuing in the backyard, including Ryan Bundy, who was armed. The Defendant "invited" the officers to leave, stating that they needed to get off his property. The officers advised the Defendant he was not supposed to be in the home and that he would be liable for any damage to the property.

When Belliston received the deed in the mail he was already aware that the Defendant had broken into the Cedar Hills residence. He contacted local law enforcement for assistance and retained counsel. In the meantime, from April 23, 2020, through September 24, 2020, the Defendant continued to live in the home and post content across

various social media platforms about protecting his property, defeating the IRS, and summoning others to join him. During this time Doug Nufer (Nufer), a neighbor to the Cedar Hills residence, saw several individuals performing what appeared to be military-style drills in the backyard and bringing into the house what appeared to be firearms and ammunition. He took the photos pictured below, among others:

 

In May 2020, Nathan Dorius (Dorius), counsel for Copper Birch, emailed the Defendant a copy of the recorded deed with a letter demanding the Defendant vacate the property. The Defendant responded via email acknowledging receipt of the deed and letter but refusing to vacate. In July 2020, Dorius arranged for the Defendant to be personally served with a Notice to Quit, once again demanding he leave the residence. The Defendant mailed a letter to Dorius acknowledging receipt of the notice but still refused to vacate. On July 13, 2020, Copper Birch sued the Defendant and his wife for unlawful detainer,

requesting an order of restitution directing the couple to vacate the property and restore possession to Copper Birch, among other forms of relief.

In August 2020, the Utah state court held an occupancy hearing and afterwards issued an Order of Restitution requiring the Defendant to remove his personal property, vacate the premises, and restore possession to Copper Birch by August 21, 2020. The Defendant again refused, so the state court held another hearing on September 2, 2020, during which the Defendant had a chance to present argument on why he should not be removed from the Cedar Hills residence. The Court issued a Final Order to Vacate Premises[5] the same day, ordering the Defendant to vacate the premises no later than 5:00 PM on September 5, 2020, and authorizing law enforcement to enter the Cedar Hills residence and forcibly remove the Defendant if he did not comply.

The Defendant never complied with the court's order, and on September 24, 2020, the Utah County Sheriff's Office, alongside local law enforcement partners, arrived at the Defendant's former residence to remove him, his wife, and any other occupants. Law enforcement repeatedly made demands for whoever was in the home to exit with their hands up, but no one came out of the house. Around the same time, the Defendant's car was located in the parking lot of a shopping center, and he was stopped and questioned.[6]

---

[5] Shortly after the Court issued a Final Order to Vacate Premises it issued an Amended Final Order to Vacate Premises the same day. The amended order included the address of the residence, rather than simply refer to it as "the premises."

[6] The Defendant and his wife were both ultimately arrested on September 24, 2020. The government does not intend to elicit this information from witnesses during its case-in-chief.

Officers successfully persuaded the Defendant to call his wife and instruct her to peacefully leave the residence. The Defendant's wife eventually complied, and law enforcement cleared the house.

When law enforcement entered the home to inspect it, they found sandbags and wooden boards tactically placed throughout the house and a cache of weapons and ammunition, including at least one AK-47-style assault rifle. This shooting position had been constructed at the front of the house:



The locks to the Cedar Hills residence were changed, and the Defendant and his wife were ordered not to return to the property.[7]

---

[7] Utah County charged the Defendant and his wife with one count of burglary and one count of wrongful appropriation, both felonies. The Defendant was booked and released on bail pending the conclusion of his state criminal case with an order to stay-away from the Cedar Hills residence. The Defendant returned to the residence on September 26, two days later, and conducted an interview with local news about his arrest. The Defendant and his wife were both convicted at trial in state court and fled to Wyoming pending sentencing. After the Defendant was indicted in this case, federal law enforcement located

## III.   PERTINENT LAW

The Indictment charges the Defendant with three counts: attempting to evade and defeat the assessment or payment of tax, in violation of 26 U.S.C. § 7201 (Count 1); corruptly obstructing the due administration of the Internal Revenue Code, in violation of 26 U.S.C. § 7212(a) (Count 2); and the forcible and attempted rescue of seized property, in violation of 26 U.S.C. § 7212(b) (Count 3).

### A.   Count 1 – Attempt to Evade and Defeat the Assessment or Payment of Tax (26 U.S.C. § 7201) – Elements

Count 1 of the Indictment charges the Defendant with willfully attempting to evade and defeat the payment of income tax due and owing in violation of Title 26, United States Code, Section 7201. The Tenth Circuit has held that Section 7201 "has three elements: willfulness; the existence of a tax deficiency; and an affirmative act constituting an evasion or attempted evasion of the tax." *United States v. Gorrell*, 922 F.3d 1117, 1123 (10th Cir. 2019) (internal quotation marks and citations omitted).

#### 1.  Tax Due and Owing

A substantial tax deficiency is an essential element of a tax evasion case. *United States v. Mounkes*, 204 F.3d 1024, 1028 (10th Cir. 2000). Once the Internal Revenue Service assesses the tax due and owing, introduction of the IRS's records assessing the tax is prima facie evidence of the asserted tax deficiency, which, if unchallenged, may suffice to prove

---

the Defendant, took him into custody, and transported him back to Utah. The Defendant was sentenced in the state case on December 8, 2023 to 364 days in jail as a condition of his sentence of three years' probation. The Defendant's wife is still a fugitive. Absent the Defendant doing something to make it relevant at trial, the government does not intend to introduce this information in its case-in-chief but provides it as background to the Court.

the tax due and owing. *United States v. Silkman*, 220 F.3d 935, 937 (8th Cir. 2000) ("We therefore conclude that an unchallenged certificate of assessment is prima facie evidence of a deficiency when a taxpayer who filed no return is charged with tax evasion. That leaves the uncooperative taxpayer free to prove that no tax was in fact owing[.]"); *see also United States v. Green*, 47 F.4th 279, 292 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 747, 214 L. Ed. 2d 450 (2023), and *cert. denied sub nom. Selgas v. United States*, 143 S. Ct. 1058, 215 L. Ed. 2d 281 (2023) ("[A] formal assessment . . . may prove the existence of a tax deficiency or a tax due and owing[.]") (emphasis omitted).

As long as the amount of tax deficiency proved is substantial, it makes no difference whether that amount is more or less than the amount charged in the indictment. *See United States v. Johnson*, 319 U.S. 503, 517-18 (1943); *United States v. Mounkes*, 204 F.3d 1024, 1028 (10th Cir. 2000). Whether a tax deficiency is substantial is a jury question, but relatively small sums have been found substantial. *See, e.g.*, *United States v. Mounkes*, 204 F.3d 1024, 1028 (10th Cir. 2000) (finding a substantial liability when the defendant deducted from his personal return $10,000 of corporate expenses); *United States v. Davenport*, 824 F.2d 1511, 1516-17 (7th Cir. 1987) ($3,358.68 in taxes evaded sufficient to support taxpayer's conviction); *United States v. Cunningham*, 723 F.2d 217, 230-31 (2d Cir. 1983) (the evaded tax of $2,617 as compared to the total tax due of $33,539 held to be substantial), *implied overruling on other grounds recognized by United States v. Mandanici*, 205 F.3d 519, 526-27 (2d Cir. 2000).

/ / /

/ / /

## 2. Affirmative Act Constituting an Attempt to Evade

The means by which there can be an attempt to evade are nearly unlimited. Section 7201 provides that the attempt can be "in any manner." The only requirement is that the taxpayer take some affirmative action with a tax evasion motive. Conversely, failing to act or do something, such as failing to file a return, standing alone, does not constitute an attempt to evade. *See Spies*, 317 U.S. 492, 499 (1943).

The general rule is that "any conduct, the likely effect of which would be to mislead or to conceal" for tax evasion purposes constitutes an attempt. *Id*. Even an activity that would otherwise be legal can constitute an affirmative act supporting a Section 7201 conviction, so long as it is carried out with the intent to evade tax. *See, e.g.*, *United States v. Voigt*, 89 F.3d 1050, 1090 (3d Cir. 1996) (refusal to pay for a piece of jewelry in cash; use of bizarre confidentiality agreements; and maintenance of overseas bank accounts provided the jury with sufficient evidence from which it could infer that the defendant "designed" them to evade the payment of taxes, even though such actions otherwise might constitute wholly innocent conduct). The government need not prove each affirmative act alleged in the indictment. *See United States v. Hoskins*, 654 F.3d 1086, 1091 (10th Cir. 2011) ("[T]he government only need[s] to show *one* affirmative act of evasion for each count of tax evasion.") (internal quotation marks and citation omitted) (emphasis in original); *United States v. Herrera*, 559 F.3d 296, 300 (5th Cir. 2009) (to prevail in a tax evasion prosecution, "the government need only demonstrate that the jury could have convicted based on at least one of the three alleged affirmative acts").

*/ / /*

17

### 3. Willfulness

In order to prove willfulness, the government must prove a voluntary, intentional violation of a known legal duty. *Cheek v. United States*, 498 U.S. 192, 200 (1991). The government thus must show that: (1) the law imposed a duty on the defendant; (2) the defendant knew of that duty; and (3) the defendant voluntarily and intentionally violated that duty. *Id*. at 201. Once the evidence establishes that a tax evasion motive played any role in a taxpayer's conduct, willfulness can be inferred from that conduct, even if the conduct also served another purpose. *See Spies v. United States*, 317 U.S. 492, 499 (1943).

Willfulness can be inferred from any conduct, the likely effect of which would be to mislead or to conceal, such as repetitious omissions of certain sources of income; false statements to agents or false exculpatory statements; prior and subsequent similar acts reasonably close to the prosecution years; and the defendant's attitude toward the reporting and payment of taxes generally, including evidence of the defendant's tax protestor activities. *Id*.; *United States v. Thompson*, 518 F.3d 832, 852-53 (10th Cir. 2008) (repeatedly failing to report personal income); *United States v. Tager*, 479 F.2d 120, 122 (10th Cir. 1973) ("[K]nowing and willful falsification may be inferred from repetitious omissions of items of income."); *see also United States v. McKee*, 506 F.3d 225, 237 (3d Cir. 2007) ("[W]illfulness may be proven through the evidence of [a] defendant['s] tax protestor activities." (citing *United States v. Hogan,* 861 F.2d 312, 316 (1st Cir.1988) (jury was properly allowed to consider animosity toward the IRS as an indication of defendant's willfulness)) (citations omitted); *United States v. Middleton*, 246 F.3d 825, 836-37 (6th Cir. 2001) (holding that evidence of defendant's gross receipts for two years prior to charged tax years was

admissible and relevant to defendant's knowledge of the legal duty to pay taxes because "the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties imposed by the tax laws" (quoting *Cheek*, 498 U.S. at 203-204)).

When determining whether a defendant has acted willfully, the jury must apply a subjective standard. Thus, a defendant asserting a good faith defense need not have been objectively reasonable in his misunderstanding of his legal duties or belief that he had complied with the law. *Cheek*, 498 U.S. at 202-03. The jury may, however, "consider the reasonableness of the defendant's asserted beliefs in determining whether the belief was honestly or genuinely held." *United States v. Grunewald*, 987 F.2d 531, 536 (8th Cir. 1993).

Although ignorance and misunderstanding of the law may be asserted in an attempt to negate willfulness, disagreement with the constitutional validity of the law may not. Once it has been established that the defendant was aware of a legal duty and intentionally violated that duty, it is no defense that the defendant believed that the law imposing the duty was unconstitutional. *Cheek*, 498 U.S. at 204-06.

**B.  Count 2 – Corruptly Obstructing the Due Administration of the Internal Revenue Code (26 U.S.C. § 7212(a)) – Elements**

Count 2 of the Indictment charges the Defendant with corruptly obstructing the due administration of the Internal Revenue Code, a violation of Title 26, United States Code, Section 7212(a). The government must prove these elements: (1) that the defendant "endeavored," that is, acted, with the purpose to obstruct or impede the due administration of the internal revenue laws; (2) that the defendant's acts had the reasonable tendency to obstruct or impede the due administration of the internal revenue laws, whether or not the

19

effort to obstruct or impede was actually successful; and (3) that the defendant's actions were committed corruptly, that is, with the purpose to obtain an unlawful benefit for himself or someone else. *United States v. Winchell*, 129 F.3d 1093, 1098-99 (10th Cir. 1997) (discussing the pre-*Marinello* articulation of elements and defining "corrupt"). In addition to those three elements, the government must also prove a nexus between the defendant's obstructive conduct and the particular tax-related proceeding or administrative action. *Marinello v. United States*, 138 S. Ct. 1101, 1104, 1110 (2018). To prove a nexus, there must be a relationship in time, causation, or logic between an alleged obstructive act and the tax-related action or proceeding. *Id.* at 1109.

The "due administration of the internal revenue laws" means a particular tax-related proceeding or targeted administrative action, such as an investigation or audit. *Marinello*, 138 S. Ct. at 1104, 1109-10. It does not apply to "routine administrative procedures that are near universally applied to all taxpayers, such as the ordinary processing of income tax returns." *Id.* at 1109-10. As with an audit or investigation, IRS collection activity is clearly a targeted administrative action and tax-related proceeding for purposes of Section 7212(a). *See United States v. Reed*, No. CR 1:20-00066, 2022 WL 1004775, at *4 (S.D.W. Va. Apr. 4, 2022) (citing Eighth, Eleventh, and Second Circuit authority applying *Marinello* to IRS collection proceedings). The administrative proceeding the defendant intended to obstruct or impede must be "pending at the time the defendant engaged in the obstructive conduct or, at the least, was then reasonably foreseeable by the defendant." *Marinello*, 138 S. Ct. at 1110 (internal citations omitted).

*/ / /*

**C.** **Count 3 – Forcible and Attempted Rescue of Seized Property (26 U.S.C. § 7212(b)) – Elements**

Count 3 of the Indictment charges the Defendant with forcibly rescuing or causing to be rescued seized property in violation of Title 26, United States Code, Section 7212(b). The government must prove: "(1) seizure of the property by one authorized to do so under the Internal Revenue Code; (2) knowledge by the defendant that the property was so seized; and (3) a forcible retaking of the property by the defendant." *United States v. Hardaway*, 731 F.2d 1138, 1140 (5th Cir. 1984); *United States v. Oliver*, 421 F.2d 1034, 1036 (10th Cir. 1970) (The "essential elements . . . [of § 7212(b)] are seizure and rescue.").

The seizure must be legal in that "it must be performed by a proper official with general authority under the tax code to make the seizure." *United States v. Roccio*, 981 F.2d 587, 590 (1st Cir. 1992) (quoting *Hardaway*, 731 F.2d at 1140). No other aspect about the legality of the seizure is relevant. *Id.*; *Oliver*, 421 F.2d at 1036-37. "Forcibly rescued" means the appropriation of an item in a manner that defies and frustrates the warrant of seizure, that is, it disrupts the government's possession when the government has lawfully asserted dominion and maintained custody. *United States v. Sanders*, 862 F.2d 79, 83 (4th Cir. 1988) (citations omitted). It is not limited to proof of force exerted against people but encompasses any force that enables a defendant to rescue the seized property. *Hardaway*, 731 F.2d at 1140 (citations omitted).

**IV.** **EVIDENTIARY AND LEGAL ISSUES**

There are a number of evidentiary and legal issues that are likely to arise during the Defendant's trial. So that the Court can be acquainted with these issues prior to the start of trial, they are addressed in detail below.

21

A. **The Defendant's Sovereign Citizen/Tax Defier Ideology and Arguments**

The Defendant has a well-established commitment to promoting so called "sovereign citizen" or tax defier[8] beliefs as a justification for his criminal violations of federal tax law. Despite repeated attempts by the IRS, federal courts, and state courts to disabuse the Defendant of these misguided theories, he continues to rely upon and promote them as an excuse for his criminal behavior. At the May 21, 2024 trial, there is every reason to believe that the Defendant will attempt to deluge his jury with irrelevant and inadmissible evidence about his legally frivolous beliefs. While the Defendant must be granted some latitude to present evidence bearing on his beliefs since it is legitimately relevant to his intent and willfulness in violating the tax laws, much of what he appears to intend to present is irrelevant or inadmissible. The government therefore provides the relevant law to aid the Court in determining the appropriate limits that should be imposed on the Defendant's trial evidence and arguments related to his sovereign citizen/tax defier beliefs.

1. **Defendant's rejection of federal taxation authority is premised on sovereign citizen/tax defier ideology and practice.**

The Court need only examine its docket for evidence that the Defendant subscribes to sovereign citizen and tax defier beliefs. *See, e.g.*, ECF 73 (the Defendant referring to himself as "a natural living man on the land, competent and of age (never a corporate 'person', nor minor), sui juris, a sovereign son and heir of God, defendant in error"). Throughout his efforts to frivolously evade the payment of his taxes the Defendant has filed legal documents and asserted legal theories exhibiting adherence to sovereign citizen/tax

---

[8] Tax defiers are often called "tax protestors" and the two terms may be used synonymously.

defier doctrine. He often signs and styles documents in the fashion of the legally frivolous

"redemption theory":[9]

---

[9] In *Marshall v. Florida*, 2010 WL 1248846 (S.D. Fla. Feb 1, 2010), United States Magistrate Judge Patrick White helpfully summarized redemption theory's tenets:

> "Redemption" is an anti-government scheme that utilizes commercial law to harass and terrorize its targets. It is increasingly popular among prison populations. The theory advocates that an individual can 'redeem' himself through the filing of commercial documents. According to the theory, the convict has a split personality: a real person and a fictional person called a 'strawman.' The strawman came into being when the United States went off the gold standard in 1933 and pledged its citizens as collateral for its national debt. Proponents of the theory believe that the government only has power over the strawman and not the real person. The real person, however, can 'redeem' the fictional person by filing a UCC financing statement. This allows the real person to acquire an interest in the fictional person that trumps the government's power.

The Tenth Circuit has characterized the "redemption" theory as "an anti-government scheme that utilizes commercial law to harass and terrorize its targets." *United States v. Landers*, 564 F.3d 1217, 1219 n.1 (10th Cir. 2009).

:Paul Kenneth: Cromar.
- the secured party of the name "PAUL KENNETH CROMAR", and,
:Barbara-Ann: Cromar.
- the secured party of the name "BARBARA ANN CROMAR, c/o UNITED STATES DISTRICT
c/o  9870 N. Meadow Drive                COURT, DISTRICT OF UTAH
Cedar Hills, Utah: uSA [84062]

MAY 1 8 2020

D. MARK JONES, CLERK

UNITED STATES DISTRICT COURT FOR BY_____
THE DISTRICT OF UTAH CENTRAL DIVISION        DEPUTY CLERK

UNITED STATES OF AMERICA,          :       case no.:  2:17-cv-01223-RJS-EJF
        Plaintiff,

## NOTICE OF INFORMATION

As an administrative matter we, :Paul-Kenneth: Cromar. and :Barbara-Ann: Cromar., a living
man and woman on the land, *sui juris,* secured parties in defense of the copyrighted names
charged in this case, in defense of our status as Utah state nations, who as living, breathing
people *(not to be confused with hijacked corporate fiction dead entities named in all CAPS
above),* who having been denied JUSTICE in the court, but nevertheless having acted with

Defendant also typically announces his appearances in court to be consistent with

redemption theory, such as during the unlawful detainer proceedings in which he was

ordered out of his former residence:

> DEFENDANT: My name is Paul Kenneth Cromar, and it's important that I
> establish exactly who I am. I'm the secured party, and the name Paul
> Kenneth Cromar, in all capital letters. And this is Barbara Ann Cromar. She's
> the secured party for Barbara Ann Cromar in all capital letters. But our names
> are Paul, capital P, lower case A-U-L. K, in capital, lower case E-N-N-E-T-H.
> Cromar, capital C, lower case R-O-M-A-R. And you can call me Ken. And
> Barbara -- I'll just do it because I'm beside the phone. Barbara's name is B-A --
> capital B, lower case A-R-B-A-R-A. Upper case A, N-N, lower case, double
> N, excuse me. And capital C, lower case R-O-M-A-R. We're the secured
> parties for those names as documented in this case.

24

*Copper Birch Properties, LLC v. Paul Kenneth Cromar*, Case No. 200400972, Fourth Judicial

District Court – Provo, Utah County, Transcript of Videoconference Hearing, September 2,

2020. This insistence on a distinction between a dual identity denoted by all capital spellings

is a staple of tax defier redemption theory. *See, e.g.*, *United States v. Delatorre*, 2008 WL

312647 (N.D. Ill. Jan. 30, 2008).

      Relatedly, the Defendant has observed other hallmark sovereign citizen and tax defier

methods of signing and submitting legal documents, such as this red-ink thumbprint signature

on one of the Defendant's filings in 2:20-cv-00625-DBB, *Paul Kenneth Cromar v. Kraig J.*

*Powell*:[10]



---

25

The Defendant has also repeatedly submitted frivolous redemption theory documents purporting to invoke the Uniform Commercial Code. *See United States v. Paul Kenneth Cromar, et al.*, Case No. 2:17-cv-01223-RJS (D. Utah), ECF No. 120, p. 43-45. Many of the Defendant's obstructive and evasive acts are drawn from the sovereign citizen/tax defier playbook, such as when he tendered a worthless $1,174,201.91 promissory note to the IRS during its seizure and sale of his former residence. During the trial at which he was convicted of various state law felonies, the Defendant and his wife presented a defense premised largely upon these beliefs and generally suffused their defense case-in-chief with frivolous antigovernment sovereign citizen and tax defier theories.

Defendant's sovereign citizen and tax defier ideology is a feature of his crimes in this case. Thus, there will be some evidence of it in the course of the government's case-in-chief. The Court should also expect Defendant to attempt to inject his beliefs and doctrine into the trial proceedings and use them to structure his evidence presentation and the fashion in which he interacts with the jury and the Court. The following sections of this trial memorandum are intended to provide the Court a discussion of the legal principles relevant to this issue and the dividing line between admissible and inadmissible argument or evidence about the Defendant's sovereign citizen/tax defier beliefs.

2. **While the Defendant may present evidence that, at the time he engaged in the charged conduct, he had a good faith belief that the tax laws did not apply to him, he is not entitled to argue: (1) that such beliefs are true or correct; or (2) that federal tax law is unconstitutional or somehow invalid.**

When a defendant is charged with specific intent crimes, the jury is "free to consider any admissible evidence from any source showing that" the defendant had a good faith belief and was thus not acting willfully. *United States v. Cheek*, 498 U.S. 192, 202 (1991).

Courts have recognized that "where the element of willfulness is critical to the defense, the defendant is entitled to wide latitude in the introduction of evidence tending to show lack of intent." *United States v. Garber*, 607 F.2d 92, 99 (5th Cir. 1979). *See also United States v. Lankford*, 955 F.2d 1545, 1550 (11th Cir. 1992); *United States v. Lussier*, 929 F.2d 25, 31 (1st Cir. 1991); *United States v. Sternstein*, 596 F.2d 528, 530 (2d Cir. 1979); *United States v. Brown*, 411 F.2d 1134, 1137 (10th Cir. 1969).

Although the Defendant's good faith misunderstanding of his duty under the law may be a defense, a disagreement with the law is not since one must know what the law is in order to disagree with it. *United States v. Cheek*, 498 U.S. at 201-202. A defendant's "views about the validity of the tax statutes are irrelevant to the issue of willfulness and need not be heard by the jury, and, if they are, an instruction to disregard those views would be proper." *Id.* at 206.[11]  Likewise, a defendant's contention that a law is unconstitutional is not within the purview of the good faith defense, as such a contention does not "arise from innocent mistakes caused by the complexity of the Internal Revenue Code. Rather, they reveal full knowledge of the provisions at issue...." *Id.* at 205.

The Defendant is entitled to present evidence or argument that, at the time of the charged conduct, he acted based on a good faith belief that the federal income tax laws did not apply to him. He is not, however, entitled to present argument or evidence calculated to

---

[11] A reading of *Cheek* supports the following instruction: "A person's opinion or belief that the tax laws are invalid or violate his constitutional rights is not a defense to the crime charged in this case. Mere disagreement with the law does not constitute a good faith misunderstanding of the requirements of the law, because it is the duty of all persons to obey the law whether or not they agree with it. Any evidence that you have heard to the contrary in this regard is irrelevant and should be ignored." *Cheek*, 498 U.S. 192, 202-206.

persuade the jury that such beliefs are true or correct. And he is not entitled to introduce sovereign citizen or tax defier beliefs and materials upon which he did not actually, subjectively rely in good faith at the time of the charged conduct.

**3.** **Defendant is not entitled to introduce evidence of sovereign citizen/tax defier materials he did not actually rely upon and the Court should nevertheless preclude, under Rule 403, Defendant's introduction of any written or recorded sovereign citizen/tax defier materials.**

While defendants in tax cases are entitled to introduce evidence bearing on a subjective good faith belief that they were not required to file tax returns or pay taxes, *Cheek*, 498 U.S. at 201-206, the federal courts have recognized that allowing the introduction of legal or pseudo-legal materials presents a significant danger of confusing and misleading the jury and resulting in a waste of time, thereby meriting their exclusion under Federal Rule of Evidence 403. Accordingly, trial courts may appropriately limit defendants who deny that they had an obligation to file tax returns or pay taxes to oral testimony about the nature and basis of their purported beliefs.

Generally, copies of statutes, legal treatises, case law, and documents that include citations to the law or that attempt to interpret the law should be excluded from evidence in this case. Introduction of such evidence through documents or witnesses would invade and undermine the Court's authority to instruct the jury regarding the law. *United States v. Garber*, 589 F.2d 843, 849 (5th Cir. 1979) ("The law is neither introduced as evidence nor presented through witnesses at trial"). It is well-established that "[i]n our judicial system the court instructs the jury on the applicable law, and directs the jury to determine the facts from the evidence and to apply the law as given by the court to those facts. *Id.* at 849. The Court should determine the applicable law and so instruct the jury. "It is within the sole

province of the court 'to determine the applicable law and to instruct the jury as to that law.'" *United States v. Hill*, 167 F.3d 1055, 1069 (6th Cir. 1999) (quoting *In re Air Crash Disaster*, 86 F.3d 498, 523 (6th Cir. 1996)); *see also United States v. Mann*, 884 F.2d 532, 538 (10th Cir. 1989) ("It is the district court's peculiar province to instruct the jury on the law . . . ."); *United States v. Willie*, 941 F.2d 1384, 1396 (10th Cir. 1991) (holding that the law is given to the jury by the court and not introduced as evidence because it would be "most confusing to a jury to have legal material introduced as evidence and then argued as to what the law is or ought to be . . . .").

"[T]he district court must be permitted to prevent the defendant's alleged view of the law from confusing the jury as to the actual state of the law. . ." *United States v. Simkanin*, 420 F.3d 397, 404 (5th Cir. 2005). Admission into evidence of written copies of unrelated court opinions, statutes, and regulations amounts to legal instruction and only serves to confuse the jury as to the law and invites disagreement with the Court's final instructions. *See United States v. Flitcraft*, 803 F.2d at 186 (holding that case law and other documents offered by the defendant as evidence of reliance were properly excluded as they suggested to the jury that the law was unsettled and that the jury should resolve the legal uncertainty); *see also United States v. Barnett*, 945 F.2d at 1301; *Simkanin*, 420 F.3d at 412; *United States v. Middleton*, 246 F.3d 825, 838-39 (6th Cir. 2001) ("[w]here a district court believes that the probative value of proffered exhibits used to support a good-faith defense would be outweighed by possible confusion of the issues, it may properly refuse to receive such exhibits into evidence.").

Accordingly, the federal Circuit Courts of Appeal have repeatedly upheld decisions by district courts refusing to admit legal and related materials offered by defendants as exhibits in criminal tax trials. *See, e.g.*, *United States v. Stafford*, 983 F.2d 25, 27 (5th Cir. 1993) (trial court properly refused to admit court cases); *United States v. Payne*, 978 F.2d 1177, 1182 (10th Cir. 1992) (refusing to admit federal court decision, copies of the Internal Revenue Code (IRC), or defendant's legal research notes); *United States v. Barnett*, 945 F.2d 1296, 1301 n.2 (5th Cir. 1991) (trial court acted properly in excluding multiple volumes of the IRC, the United States Constitution, an IRS Privacy Notice Act, the Black's Law Dictionary definition of "income," the Texas State Constitution, and an IRS handbook for special agents); *United States v. Willie*, 941 F.2d 1384, 1391-97 & n.11 (10th Cir. 1992) (trial court properly refused to admit the U.S. Constitution, legal decisions, or other historical materials); *United States v. Fingado*, 934 F.2d 1163, 1164 (10th Cir. 1991) (refusing to allow defendant to testify about a civil court case on which he ostensibly relied in forming his views about the tax laws); *United States v. Flitcraft*, 803 F.2d 184, 185-186 (5th Cir. 1986); *United States v. Kraeger*, 711 F.2d 6, 7-8 (2d Cir. 1983) (excluding federal court decisions proffered by a tax protester); *Cooley*, 501 F.2d 1249, 1253-54 (9th Cir. 1974) (refusing to admit U.S. Supreme Court decisions, IRS training manual, and materials from the Congressional Record).

Similarly, the courts have typically refused to permit tax defier publications and seminar materials to be introduced into evidence at trial. *See Stafford*, 983 F.2d at 27-28 (excluding magazine and newspaper articles proffered by defendant); *Payne*, 978 F.2d at 1181-82 (refusing to admit book by prominent tax defiance promoter Irwin Schiff); *Barnett*,

30

945 F.2d at 1301 & n.2 (refusing to admit tax protester books); *United States v. Hairston*, 819 F.2d 971, 973 (10th Cir. 1987) (excluding tax protester publications and seminar materials); *United States v. Latham*, 754 F.2d 747, 751 (7th Cir. 1985) (excluding portions of tax protester books that included general criticisms of the tax system and raised questions about its constitutionality).

Legal materials may, on rare occasions, be offered for a proper purpose and be deemed admissible. Materials offered for a proper purpose help explain the Defendant's *descriptive* belief, that is, his belief as to what the law is, or what he thought the law was at the time of his offense. *Willie*, 941 F.2d at 1392. The Defendant's claims about how the law should be interpreted—for example, the Defendant's "views about the validity [or constitutionality] of the tax statutes"—amount to *normative* beliefs and are neither relevant nor admissible. *Id.* As the Tenth Circuit has recognized, differentiating between a descriptive or normative belief is a "delicate task" which depends heavily on "the precise purpose for which the evidence is offered," but "the careless admission of evidence supporting both relevant and irrelevant types of belief could easily obfuscate the relevant issue and tempt the jury to speculate that the mere existence of documentary support for the defendant's position" validates his claims. *Id.* at 1392-93. Accordingly, before a trial court admits any such evidence, the defendant must "mak[e] a proffer of great specificity" regarding his purpose in offering the evidence. *Id.* at 1393. Without such a proffer, and "where evidence is admissible for one purpose but inadmissible for another, absent a sufficient foundation showing the precise permissible purpose … the judge can do no wrong in excluding the evidence." *Id.* at 1394.

31

Here, subject to applicable hearsay and other evidentiary rules, including Rule 403 balancing, the Defendant's submissions to the IRS and filings during the United States' civil action to reduce the Defendant's tax assessments to judgment are admissible evidence since they describe his beliefs at the time of the charged conduct. Similarly, his statements and filings in the state unlawful detainer action and his creation, filing, and recordation of various written instruments designed to obstruct and vex the foreclosure and sale of his former residence are admissible subject to the rules on hearsay and other evidentiary rules. Subject to Rule 403 balancing, the Defendant should be free to argue that he had a good faith belief that his legal and property filings were proper and not a willful violation of the federal tax laws. He should be prevented, however, from attempting to use any materials admitted to persuade his jury as to the validity, i.e., normative correctness, of his beliefs. Additionally, the Court should preclude the Defendant from arguing the validity or unconstitutionality of federal tax laws. Further, the Court should preclude the Defendant from calling witnesses for the purpose of having those witnesses discuss or opine upon their sovereign citizen or tax defier beliefs, or for demonstrating that other individuals hold the same beliefs.

While the Defendant is entitled to a reasonable opportunity to testify about the materials on which he relied at the time of the charged conduct, the Court's decision to exclude the content of those materials is well-founded. *See United States v. Hairston*, 819 F.2d at 973 (upholding district court's decision to exclude tax protester materials based on conclusion that allowing the defendant to quote titles, read passages, and summarize materials properly minimized the risk of jury confusion while allowing the defendant to

present a defense, and further noting that "direct testimony from Mr. Hairston regarding the effect these seminars and publications had on his understanding of the tax law filing requirements was more probative of his proffered defense than the materials themselves."); *Middleton*, 246 F.3d 825, 838-40 (6th Cir. 2001); *Stafford*, 983 F.2d at 28; *Payne*, 978 F.2d at 1181; *Barnett*, 945 F.2d at 1301 (noting that once the trial court allows testimony about the basis for the defendant's views, "the documents themselves become cumulative and the potential for jury confusion is minimized"); *Fingado*, 934 F.2d at 1165; *Latham*, 754 F.2d at 751. Courts may appropriately impose reasonable limitations on the defendant's testimony if it becomes cumulative and could confuse the jury. *Sasscer*, 1994 WL 233221, at *2.

Even when the Defendant can lay a proper foundation that he actually reviewed and relied on a particular piece of material, the Court should nevertheless apply Rule 403 to exclude the material unless it has particular probative value. The Court should consider whether such materials might confuse the jury as to the law or might assist the Defendant in attempting to undermine the Court's authority and the authority of the federal and state courts that have ruled against him. *United States v. Saldana*, 427 F.3d 298, 306-07 (5th Cir. 2005), *Simkanin*, 420 F.3d at 404; *United States v. Barnett*, 945 F.2d 1296, 1301 (5th Cir. 1991). The factors that would be relevant to such a determination include the following:

> (1) the centrality of the materials to the defendant's claimed misunderstanding of the tax laws;
>
> (2) the materials' length and potential to confuse the jury;
>
> (3) the degree to which such materials are merely cumulative to a defendant's testimony or to other evidence;
>
> (4) the extent to which a defendant may be attempting to use them to instruct the jury on the law or to propagate tax protester beliefs; and

(5) the potential utility of limiting instructions.

*See United States v. Middleton*, 246 F.3d 825, 838-40 (6th Cir. 2001); *United States v. Nash*, 175

F.3d 429, 436 (6th Cir. 1999); *Powell*, 955 F.2d at 1214; *Barnett*, 945 F.2d at 1301 n.3; *Willie*,

941 F.2d at 1395. Absent such a finding, this information is also inappropriate for cross

examination. *Simkanin*, 420 F.3d at 414.

The government anticipates that Defendant will attempt to violate these legal

principles throughout the trial. It therefore asks that the Court sustain any government

objections to evidence outside the permissible relevance of Defendant's sovereign

citizen/tax defier beliefs and also provide appropriate limiting and curative instructions that

may become necessary.

**B.**  **Defendant's Arguments or Evidence on Jury Nullification, Facts Not in Evidence, and the Availability of Civil Remedies**

**1.**  **Jury Nullification**

The Court should preclude the Defendant from arguing or implying to the jury that

they should nullify the law. "Jury nullification is defined as a 'jury's knowing and deliberate

rejection of the evidence or refusal to apply the law either because the jury wants to send a

message about some social issue that is larger than the case itself or because the result

dictated by law is contrary to the jury's sense of justice, morality, or fairness.'" *United States*

*v. Young*, 403 F. Supp. 3d 1131, 1148 (D.N.M. 2019) (quoting "Jury Nullification," Black's

Law Dictionary at 936 (9th ed. 2009)). It is well established that courts may not instruct

juries that they have the power to disregard the law or find the defendant not guilty despite

the government's proof of guilt beyond a reasonable doubt. *United States v. Courtney*, 816

F.3d 681, 686 (10th Cir. 2016) ("[A] criminal defendant is not entitled to have the jury instructed that it can, despite finding the defendant guilty beyond a reasonable doubt, disregard the law."); *United States v. Walling*, 52 F.3d 339 (10th Cir. 1995) (citations omitted).

When a defendant introduces, or attempts to introduce, irrelevant information, arguments, or questions designed to encourage jury nullification, "[t]rial courts have a 'duty to forestall or prevent [nullification].'" *United States v. Bradford*, 2023 WL 6794243, at *7 (D. Nev. Oct. 12, 2023) (quoting *United States v. Kleinman*, 859 F.3d 825, 835 (9th Cir. 2017)) (other citations omitted); *United States v. Warwick*, 2017 WL 5027295, at *3 (D.N.M. Oct. 30, 2017) (citing *United States v. Thomas*, 116 F.3d 606, 614, 617 (2d Cir. 1997)); *see also United States v. Young*, 470 U.S. 1, 7–10 (1985) (holding that the district court has a duty to prevent improper arguments to the jury, including those designed to "divert the jury from its duty to decide the case on the evidence"); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) ("A trial judge . . . may block defense attorneys' attempts to serenade a jury with the siren song of nullification."); *Zal v. Steppe*, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, concurring) ("[N]either a defendant nor his attorney has a right to present to a jury evidence that is *irrelevant* to a *legal* defense to, or an element of, the crime charged. Verdicts must be based on the law and the evidence, *not* on jury nullification as urged by either litigant.").

During Defendant's state court criminal trial, he at various times implied that the jury could nullify the law. He referred to the jury as the "fourth branch" of government and expressed surprise when told he could not reargue his proposed jury instructions to the jury. Nullification is a staple of the anti-government, sovereign citizen, and tax protester ideals to

which Defendant adheres. *See* Frederic B. Rodgers, *The Jury in Revolt? A "Heads Up" on the Fully Informed Jury Association Coming Soon to a Courthouse in Your Area*, 35 JUDGES J. 10, 11 (1996) (noting that jury nullification movement has attracted, among others, a "mix of tax protesters… militia members, and enemies of big government."). The Court should, therefore, preclude the Defendant from arguing or presenting evidence that encourages the jury to nullify their verdict.

This should also include an absolute probation on the Defendant mentioning the potential sentence he faces if convicted. In Defendant's state criminal trial, he mentioned the potential penalty for his offense during his closing argument, using it as a plea for leniency.[12]  "[W]hen the jury has no sentencing function," as is the case here, "it 'should reach its verdict without regard to what sentence might be imposed.'" *Courtney*, 816 F.3d at 686 (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). Therefore, any "[i]nformation regarding the consequences of a verdict" that the Defendant may seek to introduce at trial must be excluded because such evidence "is . . . irrelevant to the jury's task." *Shannon v. United States*, 512 U.S. 573, 579 (1994). "Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id*.

## 2.  Referencing Facts Not in Evidence

As noted in the government's Motion in Limine to Exclude Irrelevant and Inadmissible Defense Witness Testimony, ECF No. 129, the Defendant represented himself in the state criminal trial stemming from his unlawful reoccupation of the Cedar Hills

---

[12]  Defendant argued, "What we're facing is fifteen years in prison."

36

residence. During those proceedings, without ever taking the stand to testify, the Defendant repeatedly told the jury: that there was a "huge elephant in the room," they were "only being allowed to see one part of the elephant," and there was "so much that we cannot say."

While a party "may comment on and draw reasonable inferences from evidence presented at trial," they may not speculate and argue about facts not in evidence. *Thornburg v. Mullin*, 422 F.3d 1113, 1131 (10th Cir. 2005) (citation omitted). The Court should thus not allow the Defendant to vaguely allude to evidence at trial that he was not permitted to present to the jury. A jury could wrongly infer that such excluded evidence would have tended to exculpate the Defendant and that because the Court wrongly excluded it, the jury is entitled to acquit. Defendant's intent to mislead and confuse the jury with evidence not in the record is well-documented in one of the government's motions in limine now pending before this Court. ECF No. 130. The government requests that the Court sustain its objections to the Defendant's arguments or questions that reference facts not in evidence. And it requests that the Court instruct the jury after every such sustained objection that Defendant's statements are not evidence.

### 3.  Availability of Civil Remedies

The Court should similarly preclude the Defendant from presenting argument or evidence about the availability of civil tax remedies to the government in lieu of criminal prosecution. Such evidence is irrelevant in a criminal trial and creates a substantial risk of misleading the jury, prejudicing the government, and inviting jury nullification. Courts have routinely barred such information and argument. *See Bradford*, 2023 WL 6794243, at *7 (citing *United States v. Merrick*, 464 F.2d 1087, 1093 (10th Cir. 1972) (finding "no relevance"

in a jury instruction that a civil case might be brought against a defendant who was convicted of evasion under 26 U.S.C. § 7201)); *United States v. DeMuro*, 677 F.3d 550, 565 (3d Cir. 2012) (district court properly excluded evidence of civil tax remedy because "it opened the door to jury nullification, by inviting the jury to reason that the IRS should have continued to pursue the matter civilly rather than criminally"); *United States v. Buras*, 633 F.2d 1356, 1360 (9th Cir. 1980) (explaining that the availability of civil remedies in a tax case "is irrelevant to the issue of criminal liability" and finding that a jury instruction regarding civil remedies "would serve only to confuse the jury"). Thus, Defendant should be precluded from presenting any argument or evidence that his conduct should have or could have been treated as a civil matter.

### C.  Argument or Evidence Alleging Outrageous Government Conduct

An allegation of "outrageous government conduct is a question of law for the court and that evidence of the defense is not properly submitted to the jury." *United States v. Gleason*, 980 F.2d 1183, 1185 (8th Cir. 1992); *United States v. Sotelo–Murillo*, 887 F.2d 176, 182 (9th Cir. 1989) ("Whether the government's conduct is sufficiently outrageous to violate due process is a question of law....It is not an issue for the jury and [the defendant] was not entitled to a jury instruction on this issue."). Nevertheless, there is an "increasing tendency in criminal cases to try some person other than the defendant and some issues other than his guilt." *United States v. Griffin*, 867 F. Supp. 1347, 1347 (N.D. Ill. 1994) (citation omitted). The "thrust of the defense" in these types of cases "is this: the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." *Id*. at 1347.

38

Throughout Defendant's state court criminal trial, rather than arguing the evidence, Defendant often devoted his efforts to claiming that he was being denied due process by the proceeding itself. The Court should preclude the Defendant from arguing that the government's investigation or prosecution is unfair, his arrest warrant was invalid, or the prosecutors committed discovery violations or are otherwise depriving him of a fair trial.

The Court should preclude the Defendant from arguing at trial some of the claims he has raised during the pendency of this case that could arguably fall within the parameters of an outrageous government conduct defense. These claims include that the prosecution: (1) is depriving him of a fair trial (including that the arrest warrant was invalid);[13]  (2) has committed discovery violations, and (3) has purposefully delayed the trial to prejudice him. The Court should also preclude the Defendant from referencing the three frivolous, harassing bar complaints he has filed against a member of the prosecution team and arguing that his filing of such complaints suggests the prosecutors have engaged in misconduct.

### D. <u>Argument or Evidence Related to Plea Negotiations</u>

Despite its obvious futility, the government briefly discussed with Defendant the potential for the parties to engage in a plea agreement. Defendant's strict adherence to sovereign citizen/tax defier beliefs about the Court's lack of jurisdiction prevented any serious discussions. *See* ECF No. 75. A purported "news" blog to which Defendant provides information and commentary about his case, has posted discussion about a plea negotiation

---

[13]  The Court has already rejected the Defendant's claims that his arrest warrant was invalid because it was signed by a court clerk rather than a judge. *See* Fed. R. Crim. P. 9(a) and (b)(1).

in which the Defendant would plead guilty to the Indictment's Count 1 in exchange for Counts 2 and 3 being dismissed.

Given Defendant's documented penchant for attempting to confuse and mislead his jury with inadmissible, irrelevant evidence, the government anticipates Defendant attempting to improperly introduce to the jury evidence of this fruitless plea discussion. The Court should preclude the Defendant from introducing any evidence or argument about plea negotiations with the government, including any theory about what the government's willingness to dismiss certain counts in exchange for a guilty plea means with respect to the government's opinion about this case.

Federal Rule of Evidence 408(a) states that evidence related to settlement negotiations is not admissible "to prove or disprove the validity. . . of a disputed claim." Subsection (b) of the rule further provides that such evidence is admissible for "another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Rule 408 applies to both civil and criminal cases. *United States v. Bailey*, 327 F.3d 1131, 1146 (10th Cir. 2003).[14] The purpose of Rule 408's bar on the admissibility of settlement negotiations is to promote "the public policy favoring the compromise and settlement of disputes." Fed. R. Evid. 408 Advisory Committee's Note; *see also United States v. Alexander*, 679 F.3d 721, 732 (8th Cir. 2012) ("Government proposals concerning pleas should be excludable in order to encourage meaningful dialogue between the parties." (internal quotation marks and citation omitted)).

---

[14] Federal Rule of Evidence 410 is inapplicable because it excludes evidence related to plea negotiations when offered *against* a criminal defendant, not by a criminal defendant.

An instructive application of Rule 408 in a criminal tax case comes from *United States v. Christensen*, No. CR-14-08164-PCT-DGC, 2016 WL 1753600, at *3 (D. Ariz. 2016). Like the Defendant, the *Christensen* defendant was charged with various felony tax crimes for evading his personal income tax obligations. *Id.* at *1. The parties met and engaged in plea negotiations during which a draft plea agreement was circulated; the agreement would have had the defendant plead guilty to several misdemeanors and pay substantial tax restitution. *Id.* The defendant rejected the plea offer. *Id.*

As the parties prepared to go to trial, the defendant filed a motion in limine seeking to introduce at trial evidence of the plea negotiations, the misdemeanor plea offer, and the defendant's statements to his defense attorney regarding the plea negotiations. *Id.* Relying on Rule 408, and after canvassing the interpretive jurisprudence of other courts, the district court denied the motion, finding that the plea negotiations and offer were inadmissible under the rule. *Id.* at *2-*3. The district court emphasized that the "rule seeks to promote candid settlement talks[,]" and it quoted language from a leading evidence law treatise regarding the important policy interests promoted by the rule. *Id.* at *3. The court also emphasized that "prosecutors would be reluctant to offer compromise pleas if defendants who reject them could place the offered pleas before the jury either as evidence of the defendants' innocence or evidence of weakness in the government's position." *Id.* (citing *United States v. Verdoorn*, 528 F.2d 103, 107 (8th Cir. 1976)).

The court further found that the defendant's proffered use of the plea negotiation evidence—to negate the willfulness *mens rea* element—did not fit the rule's narrow exception in subsection (b). *Id.* ("Defendant's purpose would be to disprove the government's claims

41

in this case, precisely what Rule 408(a) prohibits."). Quoting the evidence treatise again, the

district court emphasized the very limited scope of the 408(b) exception and found it

inapplicable. *Id.*[15]

While Rule 408 is dispositive on the inadmissibility of evidence and argument about

plea negotiations, even if the rule did not apply, such evidence or argument should still be

excluded under Rules 401 and 403. The fact that the government discussed a plea

negotiation with the Defendant does not make any fact of consequence in determining his

guilt of Counts 1-3 more or less probable. *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a)

it has any tendency to make a fact more or less probable than it would be without the

evidence; and (b) the fact is of consequence in determining the action."). It goes without

saying that plea negotiations are calculated to find a zone of potential compromise between

the parties about a guilty plea agreement, *not* to try the merits of the case in an informal

setting. Evidence of such activity therefore lacks probative value as to the jury's decision—

after hearing all of the actual witnesses and evidence—whether a crime has been committed.

And, even if such evidence had any probative value, its relevance would be

substantially outweighed by the risk of unfair prejudice to the government, undue delay,

waste of time, and confusion and misleading of the jury. *See* Fed. R. Evid. 403 ("The court

---

[15] ("'[C]are should be taken that an indiscriminate application of this 'exception' to Rule 408 does not result in undermining the rule's public policy objective. The almost unavoidable impact of the disclosure of such evidence is that the jury will consider the offer or agreement as evidence of a concession....The trial judge should weigh the need for such evidence against the potentiality of discouraging future settlement negotiations, and has broad discretion as to whether to admit evidence of settlement negotiations offered for another purpose." (quoting 2-408 WEINSTEIN'S FEDERAL EVIDENCE § 408.08[1] (2015) (footnotes and quotation marks omitted)).

may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."); *see also United States v. Gannaway*, 477 F. App'x 618, 622 (11th Cir. 2012) ("The admission of evidence under Rule 408 is subject to the balancing test in Rule 403, and the district court may exclude relevant evidence if its 'probative value is substantially outweighed by a danger of . . . unfair prejudice.'").

Introducing the jury to such material and asking it to make determinations about the meaning of the plea negotiations would substantially lengthen the trial as the parties put on evidence and witnesses as to what actually occurred during the negotiations and the particular context of statements and offers. The government would then have to educate the jury about factors related to the exercise of prosecutorial discretion, e.g., caseloads and efficient management of prosecutorial resources, application of the sentencing guidelines and the range of possible sentencing outcomes created by the particular plea offer. Finally, it is unfairly prejudicial to permit the Defendant to use the government's pretrial willingness to compromise as a cudgel later at trial. A defendant should not be permitted to attend plea negotiations solely for the purpose of extracting statements or evidence useful at trial while having no real good faith intent to negotiate toward a pretrial resolution.

**E.  The Defendant's Out-of-Court Statements When Offered by the Defendant**

Both during and after the events alleged in the Indictment, the Defendant documented his opinions and beliefs about the tax laws on his YouTube channel, Facebook page, and personal blog, among other forms of media. Such statements by the Defendant—

43

when offered by the Defendant—constitute self-serving hearsay and should be excluded from evidence at trial.

These statements were made by a declarant—the Defendant—outside of court, and the Defendant no doubt would offer them to prove the truth of the matters asserted, i.e., his beliefs about the legality of federal taxation and lawfulness of the judicial foreclosure order. Such self-serving, exculpatory statements made by the Defendant and offered by the Defendant are inadmissible. *See United States v. Larsen*, 175 F. App'x 236, 241-42 (10th Cir. 2006) (upholding the district court's ruling that the defendant could not elicit his own exculpatory statements during cross-examination of a government witness because no exception to the rule against hearsay permits "self-serving, exculpatory statements made by a party and offered by that same party").

If the Defendant wants to introduce his own statements, he must testify at trial and subject himself to cross-examination. Allowing the Defendant to admit his "otherwise inadmissible hearsay testimony without subjecting [him] to cross-examination" would "effectuate an end-run around the adversarial process[.]" *Id.*[16]

/ / /

---

[16] The Defendant should be cautious about introducing his own hearsay at trial since introduction of those statements would entitle the government to then impeach him with evidence of his two prior felony convictions, regardless of whether he testifies. *See* Fed. R. Evid. 806; *United States v. Newman*, 849 F.2d 156, 161-163 (5th Cir. 1988) (nontestifying defendant properly impeached with prior felony convictions under FRE 806 after introducing his own hearsay statements); *United States v. Bovain*, 708 F.2d 606, 613-614 (11th Cir. 1983); *United States v. Robinson*, 783 F.2d 64, 67 (7th Cir. 1986); *United States v. Noble*, 754 F.2d 1324, 1331 (7th Cir. 1985) (affirming district court decision to allow Rule 806 impeachment of non-testifying defendant with prior convictions after defendant introduced his own self-serving, exculpatory recorded statements).

**F.** **Exhibits Referencing Ammon Bundy, Ryan Bundy, and Shawna Cox**

The government will seek to admit at least four exhibits in its case-in-chief that reference Ammon Bundy, Ryan Bundy, or Shawna Cox. Exhibit 54 is American Fork Police Department Officer Ivan Bird's body-worn camera video from April 23, 2020. The video depicts Officer Bird and another officer arriving at the Cedar Hills residence to find the Defendant, Shawna Cox, and Ryan Bundy in the house and backyard. The video also depicts the Defendant introducing Ryan Bundy to the officers and a conversation between them and the officers. Exhibits 86-88 are screenshots from the Defendant's Facebook profile that reference Ammon Bundy, Ryan Bundy, and Shawna Cox joining him at the auction of his former residence in September 2019 and Ammon Bundy's plan to stop by the Cedar Hills residence "for a visit" in August 2020. The post includes several photos, including the Defendant posing with Ryan Bundy and Shawna Cox at the Cedar Hills residence and with protestors at the September 2019 auction.

These individuals' participation in tax protestor/sovereign citizen and anti-government militia causes, including the Bunkerville, Nevada standoff and Malheur National Wildlife Refuge occupation, is well documented in the government's Motion in Limine to Exclude Irrelevant and Inadmissible Defense Witness Testimony. ECF No. 129. The government alerts the Court that it intends to admit the above-referenced exhibits only to show that the Defendant had summoned people to help him "defend" the Cedar Hills residence after he reoccupied it in April 2020. The government will not elicit testimony about the Bundys' or Shawna Cox's reputations as prominent anti-government militia members or their previous run-ins with federal law enforcement.

**G.** **Exhibits of Public Record that are Non-Hearsay or Fall Within an Exception**

The government intends to offer documents constituting public records as exhibits at trial, including federal and state court orders, the Defendant's pleadings in federal civil cases, and records from the Utah County Recorder's Office. These exhibits are admissible for the reasons addressed below.

**1.** **Court Orders: Exhibits 34, 41, and 100 through 109**

Certain court orders—Exhibits 34, 41, and 100 through 109—are admissible because they are relevant non-hearsay. Even if the court orders were hearsay, they would still be admissible because they fall within an exception to the rule against hearsay, Federal Rule of Evidence 803(15).

**a.** **The court orders are highly relevant.**

The court orders are highly relevant because they contain legally operative facts that form the basis of the Indictment and show the Defendant's state of mind. "Evidence is relevant if 'it has any tendency to make a fact more or less probable than it would be without the evidence' and 'the fact is of consequence in determining the action.'" *United States v. Otuonye*, 995 F.3d 1191, 1207 (10th Cir. 2021) (quoting Fed. R. Evid. 401). "[A] fact is of consequence when its existence would provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict, but it only needs to have 'any tendency' to do so." *United States v. Wells*, 38 F.4th 1246, 1260 (10th Cir. 2022) (internal quotation marks and citation omitted). Relevant evidence is generally admissible. *See* Fed. R. Evid. 402; *United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007) ("The bar for admission under Rule 401 is very low.") (internal quotation marks and

46

citation omitted).

The court orders set out the Defendant's rights with respect to the Cedar Hills residence. *See* ECF No. 1 ¶ 11. Termination of the Defendant's rights to the property provide motive and context as to why he attempted to obstruct and stop the IRS's seizure and sale of the Cedar Hills residence, as alleged in Counts 1 and 2 of the Indictment. The court orders are also probative of the Defendant's legal rights to the Cedar Hills residence, specifically that he had no right to occupy the home when he re-entered the property in April 2020, which forms the basis of Count 3. The court orders establish that the IRS was authorized to foreclose and sell the Cedar Hills residence, which is material to Count 3, and provides critical background to understand why the IRS took actions to seize and sell the property.

The court orders are also probative of the Defendant's state of mind. The court orders (and the Defendant's responses to the orders) demonstrate that he knew a federal court authorized the IRS to foreclose and sell the Cedar Hills residence and that a state court ordered him, repeatedly, to vacate the premises because he no longer owned the property. His notice of the lawful nature of the IRS's actions is probative of his willfulness to evade and defeat the payment of his delinquent income taxes (Count 1), his corrupt intent to procure an unlawful benefit for himself and his knowledge of a targeted administrative IRS action (Count 2), and his knowledge that IRS had lawfully seized the Cedar Hills residence(Count 3). *See United States v. Yurek*, 925 F.3d 423, 433 (10th Cir. 2019) (Willfulness is an element of tax evasion and "means the voluntary, intentional violation of a known legal duty") (internal quotation marks and citations omitted); *United States v.*

*Sorensen*, 801 F.3d 1217, 1225 (10th Cir. 2015) (to establish a violation of 26 U.S.C. §

7212(a), the government must prove that the defendant "in any . . . way, corruptly . . .

endeavor[ed] to obstruct or impede, the due administration of [Title 26]," and a defendant

acts "corruptly" if he "act[ed] with intent to gain an unlawful advantage or benefit either for

[himself] or for another."); *United States v. Hardaway*, 731 F.2d 1138, 1140 (5th Cir. 1984) (to

establish a violation of 26 U.S.C. § 7212(b), the government must prove that the defendant

knew the property had been seized.).

### b. <u>The court orders are non-hearsay.</u>

The court orders are admissible because they are not hearsay. As the Court is aware,

hearsay is any statement made outside of trial that is offered to prove the truth of the matter

asserted. Fed. R. Evid. 801(c). One of the categories of statements excluded from this

definition is legally operative words, such as those found in court orders, that define the

rights and duties of the parties. Fed. R. Evid. 801 advisory committee's note, subdivision (c)

("If the significance of an offered statement lies solely in the fact that it was made, no issue

is raised as to the truth of anything asserted, and the statement is not hearsay. . . . The effect

is to exclude from hearsay the entire category of 'verbal acts' and 'verbal parts of an act,' in

which the statement itself affects the legal rights of the parties or is a circumstance bearing

on conduct affecting their rights."); *see Prudential Ins. Co. of Am. v. Sagers*, 421 F. Supp. 3d

1199, 1204 (D. Utah 2019) (Parrish, J.) (holding that "statements made by the state court in

its orders, both oral and written, are . . . not hearsay" because the court orders "are not

offered for the truth of those statements, but rather to demonstrate the legal effect of the

statements on the parties") (citing *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004)

("A prior judgment is not hearsay . . . to the extent that it is offered as legally operative verbal conduct that determined the rights and duties of the parties.") and *United States v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013) ("[T]he question whether a court's command imposes legal obligations on a party is outside the hearsay rule's concerns.")); *United States v. Bundy*, No. 2:16-CR-46-GMN-PAL, 2017 WL 4771158, at *2 (D. Nev. Oct. 19, 2017) (in obstruction of justice prosecution based on conspiracy to violate federal court orders, defense motion in limine to exclude orders as hearsay and double hearsay denied since orders and statements within them were non-hearsay, legally operative facts)

The court orders constitute legally operative facts that determined the Defendant's rights and duties with respect to the Cedar Hills residence and, therefore, are not hearsay. A federal district court for the District of Utah issued an Order of Foreclosure and Judicial Sale (Exhibit 34), ordering the sale and preservation of the Cedar Hills residence. This order required the Defendant to, among other things, "not do anything that tends to reduce the value or marketability" of the property, "not record any instruments, publish any notice, or take any other action that may . . . adversely affect the value of the [property] or that may tend to deter or discourage potential bidders from participating in the public sale," and "leave and vacate permanently the property no later than 15 days after the date" of the order.

The same federal district court issued an Order Confirming Sale and Distributing Proceeds (Exhibit 41), on April 15, 2020, which stated that the sale of the Cedar Hills residence on September 10, 2019 was properly conducted and confirmed; the IRS was authorized to execute and deliver to the purchaser of the property a Certificate of Sale and

Deed conveying the property; and delivery of the Certificate of Sale and Deed would extinguish all interests in, liens against, or claims to the property, including a $120 million Notice of Lis Pendens the Defendant filed against the property in Utah County. In Exhibit 100, the federal district court dismissed the Defendant's $120 million lawsuit that was the subject of the lis pendens the Defendant filed in Utah County, which was affirmed by the Tenth Circuit in Exhibit 101.

Exhibits 102 and 103 similarly set forth the Defendant's rights and duties with respect to the Cedar Hills residence. The Fourth Judicial District Court for the State of Utah issued an Order of Restitution (Exhibit 103), requiring the Defendant to remove his personal property and restore possession of the home to Copper Birch Properties, LLC, the lawful purchaser, within three business days. When the Defendant failed to comply with that order, the same court issued an Amended Final Order to Vacate Premises (Exhibit 102), in which it found that the Defendant and his wife were in unlawful detainer of the Cedar Hills residence and ordered them to vacate the property no later than 5:00 PM on September 5, 2020.

Finally, the court orders are admissible for another highly relevant, nonhearsay purpose: to demonstrate the effect on the hearer. "An out-of-court statement is not hearsay under the Federal Rules of Evidence if it is offered to show its effect on the hearer of the statement." *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir. 1998) (citing *United States v. Nieto*, 60 F.3d 1464, 1467–68 (10th Cir. 1995). The court orders show that, prior to and when engaging in the acts of evasion and obstruction, Defendant was repeatedly notified by the federal court that his beliefs about federal tax law were meritless and frivolous. Because

50

the court orders repeatedly notified Defendant that his beliefs about federal taxation authority and jurisdiction were frivolous and rejected by courts, his continuing persistence in engaging in conduct premised on those beliefs was a willful, knowing violation of the federal tax laws. *Cf., e.g.*, *United States v. Bauer*, 551 F.3d 786, 790 (8th Cir. 2008) (in bankruptcy fraud and money laundering prosecution, bankruptcy judge's statements admonishing defendants that concealment of assets violated federal criminal statutes was admissible as probative of defendant's state of mind when concealing assets); *United States v. Dupree*, 706 F.3d 131, 136–38 (2d Cir. 2013) (in bank fraud prosecution, reversing district court exclusion of state court restraining order as hearsay where prosecution offered the order to demonstrate defendant's knowledge and intent in withdrawing funds without authorization). The orders show that the Defendant knew what the law really required, and his conduct could not have been based on a good faith mistake as to what federal tax law required. The evidence shows that he simply disagreed with and did not want to follow the law. Moreover, the evidence shows that, when Defendant started filing lawsuits against IRS employees, he knew his claims were legally meritless and frivolous. This is the essence of willfulness and the court orders in this case are powerful nonhearsay evidence of Defendant's knowing, intelligent violation of his legal duties under federal tax law.

Because the court orders are not offered for the truth of the matter asserted, but rather to demonstrate the legal effect of the statements on the Defendant's rights to the Cedar Hills residence and the effect on the Defendant as the hearer, they are not hearsay and should be admitted into evidence at the Defendant's trial.

/ / /

51

### c.  The court orders also qualify as Rule 803(15) statements in documents that affect an interest in property.

Even if the court orders could somehow be construed as hearsay, they would still be admissible because they fall within an exception to the rule against hearsay. Rule 803(15), addressing, "Statements in Documents That Affect an Interest in Property," provides that:

> A statement contained in a document that purports to establish or affect an interest in property [are not excluded by the rule against hearsay] if the matter stated was relevant to the document's purpose—unless later dealings with the property are inconsistent with the truth of the statement or the purport of the document.

Fed. R. Evid. 803(15). "Under the plain meaning of Rule 803(15), hearsay statements are admissible if they are contained within a document that affects an interest in property, if the statements are relevant to the purport of the document, and if dealings with the property since the document was made have not been inconsistent with the truth of the statements." *Boulware*, 384 F.3d at 807 (citing *Silverstein v. Chase,* 260 F.3d 142, 149 (2d Cir.2001)). "[A] document does not have to be a dispositive document to be admissible under Rule 803(15) if the document otherwise affects an interest in property, is authenticated, is trustworthy, and of course, the dealings with the property since the document was made have been consistent with the truth of the statement or the purport of the document." *United States v. Weinstock*, 863 F. Supp. 1529, 1534 (D. Utah 1994).

The court orders affect an interest in property, that is, the interests of the Defendant, the IRS, and Copper Birch in the Cedar Hills residence. The statements in the orders are relevant to the legal significance of the orders. And dealings with the property since the court orders were issued, specifically, the Defendant being removed from the home and the deed to the property being transferred to Copper Birch, have been consistent with the

statements in the court orders. The court orders thus satisfy Rule 803(15)'s exception to the rule against hearsay and are admissible.

### 2.  The Defendant's Lawsuit Pleadings: Exhibits 24 and 31

The government intends to introduce as acts of evasion and obstruction certain lawsuits that Defendant filed. Defendant's lawsuit pleadings are admissible because they are relevant non-hearsay.

### a.  The Defendant's lawsuit pleadings are highly relevant.

The Defendant's lawsuit pleadings are highly relevant because they are probative of and part of his attempts to stop the IRS's seizure and sale of the Cedar Hills residence as charged in Count 1 of the Indictment. ECF No. 1 ¶¶ 16; 27. They are also relevant to and part of his corrupt attempts to obstruct the due administration of the Internal Revenue Code in violation of 26 U.S.C. § 7212(a), as charged in Count 2 of the Indictment. *See* Fed. R. Evid. 401. Count 2 alleges that the Defendant committed various acts to complete the offense, among them, "making baseless claims and filing frivolous lawsuits against IRS employees." R. Doc. No. 1 ¶ 29. The lawsuit pleadings are therefore the actus reus of Defendant's crimes as alleged and otherwise demonstrate his intent to evade payment of his taxes and obstruct the IRS.

Exhibit 24 is a civil lawsuit complaint the Defendant filed in March 2019. The lawsuit named as defendants the IRS revenue officers involved with the collection of Defendant's delinquent taxes. The complaint also named as defendants the DOJ attorney handling the foreclosure action and the federal district court judge who presided over that action. The complaint alleges a slew of causes of action relating to the foreclosure action

and it seeks $120 million in damages. The Defendant filed this frivolous lawsuit to obstruct the IRS collection and enforcement actions against him, as charged in Counts 1 and 2. ECF No. 1 ¶¶ 16; 27; 29. Exhibit 31 is an Affidavit and Summons for a small claims lawsuit the Defendant filed in the Fourth Judicial District Court for the State of Utah on February 28, 2020. The lawsuit names IRS Revenue Officer Wanda Manley as the defendant in her individual capacity. The Defendant filed this lawsuit based on a fraudulent invoice he had previously sent Revenue Officer Manley, which demanded payment for her involvement in the IRS collection and enforcement action against him. The Affidavit and Summons falsely claimed that RO Manley had entered into a contract with Defendant. It also falsely claimed that he was not suing a government entity. He sent a copy of the Affidavit and Summons to the IRS. These pleadings are thus relevant because they are probative of the Defendant's attempt to evade the payment of his delinquent taxes and his obstructive conduct toward the IRS, which is material to proving Counts 1 and 2 of the Indictment.

**b.   The Defendant's lawsuit pleadings are non-hearsay.**

The Defendant's lawsuit pleadings are not hearsay because they are not being offered for the truth of the matter asserted—the government certainly does not submit that the statements in Exhibits 24 and 31 are accurate or truthful. Rather, the Defendant's pleadings are offered for their legal effect, that the Defendant initiated lawsuits in the District of Utah against IRS personnel (Exhibit 24) and in Utah State court against Revenue Officer Manley (Exhibit 31). *See* Fed. R. Evid. 801 advisory committee's note, subdivision (c). Defendant's acts of filing lawsuits against IRS employees constitute verbal acts that are in themselves affirmative acts of evasion or attempts to obstruct the IRS.

Even if the Defendant's pleadings were being offered for the truth of the matter asserted, they are still non-hearsay. Federal Rule of Evidence 801 specifically excludes from the definition of hearsay an opposing party's statement if it is "offered against the opposing party . . . and was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A). A "statement" includes a "written assertion . . . if the person intended it as an assertion." Fed. R. Evid. 801(a).

Application of the rule to the Defendant's pleadings is straightforward: the government intends to offer the pleadings against the Defendant, a party opponent, and the Defendant made the statements, or written assertions, in his individual capacity. *See, e.g.*, *Tucker v. Hous. Auth. of Birmingham Dist.*, 229 F. App'x 820, 826 (11th Cir. 2007) ("[T]he pleading of a party made in another action, as well as pleading in the same action which have been superseded by amendment, withdrawn or dismissed, are admissible as admissions of the pleading party to the facts alleged therein."); *Arnold v. Groose*, 109 F.3d 1292, 1296 (8th Cir. 1997) (A pro se party's handwritten statements submitted earlier to the court were admissions by a party opponent and non-hearsay under Federal Rule of Evidence 801(d)(2)(A)); *United States v. Gan*, No. CR 11-2282 RB, 2014 WL 12639937, at *2 (D.N.M. Jan. 29, 2014) ("In this case, the application of Rule 801(d)(2)(A) to [the defendant's] *pro se* motions is straightforward. There is no dispute that these are statements of [the defendant] . . . that will be offered by the United States against him. *See* Fed. R. Evid. 801(d)(2)(A). Thus, under Rule 801(d)(2)(A), these statements are admissible as non-hearsay."). The Defendant's pleadings are thus non-hearsay, even if the government were to offer them for the truth of the matter asserted.

### 3. <u>Documents Recorded with the Utah County Recorder's Office: Exhibits 23, 26, 27, 32, and 37.</u>

The government intends to introduce as part of its case-in-chief certified records from the Utah County Recorder's Office. These records consist of the original liens the IRS recorded against the Defendant and his property, the deed conveying the property from the IRS to Copper Birch, and the frivolous notice of lis pendens that Defendant filed against the Cedar Hills residence based on his $120 million lawsuit. These records are admissible because they are relevant and fall within an exception to the rule against hearsay or are non-hearsay.

#### a. <u>Records from the Utah County Recorder's office are relevant.</u>

Exhibits 23, 26, and 27 are relevant because they show that the IRS placed tax liens on the Cedar Hills residence based on Defendant's delinquent 1999-2005 taxes. Those liens are material to proving all the counts charged in the Indictment. Exhibit 37 is a notice of lis pendens for $120 million that the Defendant filed on the property, which is probative of his evasive and obstructive conduct charged in Counts 1 and 2. The Deed to Real Property, Exhibit 32, is probative of the transfer of title to the new buyer and the Defendant's rights, or lack thereof, to the Cedar Hills residence in April 2020 when he re-entered the property, as charged in all counts of the Indictment.

#### b. <u>Exhibits 23, 26, 27, and 32 are documents that affect an interest in property.</u>

Federal Rule of Evidence 803(14) excepts from the rule against hearsay the "record of a document that purports to establish or affect an interest in property" if:

> (A) the record is admitted to prove the content of the original recorded document, along with its signing and its delivery by each person who purports

to have signed it; (B) the record is kept in a public office; and (C) a statute authorizes recording documents of that kind in that office.

"Under any theory of the admissibility of public records, the [recording of title documents] would be receivable as evidence of the contents of the recorded document, else the recording process would be reduced to a nullity." Fed. R. Evid. 803 advisory committee's note, subdivision (14).

The government will offer Exhibits 23, 26, 27, and 32 to prove the contents of the recorded documents and their signing by each person who purports to have signed them. The records are kept in the Utah County Recorder's Office, a public office, and Utah state law authorizes the recording of deeds, liens, and notices of lis pendens at such an office. *See, e.g.*, Utah Code §§ 17-21-6 and 78B-6-1303. The records are thus admissible pursuant to the hearsay exception in Federal Rule of Evidence 803(14) and should be admitted into evidence at the Defendant's trial.

### c.  Exhibit 37 is Non-Hearsay

Exhibit 37, the notice of lis pendens for $120 million that the Defendant recorded on the property, is non-hearsay because it is not being offered to prove the truth of the matter asserted and, alternatively, is a statement by a party opponent.

Exhibit 37 is being offered for its effect on potential buyers and financiers, not for the truth of the statements asserted therein. The filing of the $120 million notice of lis pendens clouded the Cedar Hills residence's title and was another attempt by the Defendant to obstruct any sale of the property. *See Kramer v. Wasatch Cnty. Sheriff's Off.*, 743 F.3d 726, 752 (10th Cir. 2014) (holding that an assertion offered for its effect, and not its truth, was non-hearsay). Further, even if the notice of lis pendens was being offered for the truth of the matter

asserted—which it is not—it would be admissible as a statement by a party opponent. Fed. R. Evid. 801(d)(2).

## H. Admissibility of IRS Records

In its case-in-chief, the government will present as evidence certified copies of IRS records. These records include transcripts of computerized tax information,[17] notices and letters sent to the Defendant, notes and entries made by IRS employees during the audit and collection of Defendant's delinquent taxes, IRS forms documenting computation and assessment of Defendant's tax liabilities, and letters, emails, and other communications the Defendant sent to the IRS. While these documents are self-authenticating, the government anticipates introducing them through the IRS witnesses involved in the audit and collection proceedings related to Defendant's delinquent taxes and also through an IRS custodian witness. There is extensive caselaw recognizing the admissibility of the type of IRS records the government intends to present in this case. Typically, these records come in both as public records and business records. The records also contain statements and admissions by the Defendant.

Generally, these IRS records are self-authenticating and admissible pursuant to Federal Rules of Evidence 803(6) and (8), 902(4) and (14), and 1005. Fed. R. Evid. 803(8) allows admission of public records "setting forth . . . matters observed pursuant to duty

---

[17] An IRS transcript captures essential information about a taxpayer's tax liability and reporting activity as to a particular tax year. Even where a taxpayer fails to file a tax return, the transcript for that year may contain important information, such as the assessment of taxes pursuant to an IRS audit and payments made towards the taxpayer's liability for the particular tax year, including payments made voluntarily or through collection action, such as the levying of bank accounts. The transcript will also reflect whether a taxpayer filed a tax return or failed to file a tax return for the particular tax year.

imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel. . . ." Fed. R. Evid. 803(8). A certified copy of a public record is self-authenticating if it is "[a] copy of an official record – or a copy of a document that was recorded or filed in a public office as authorized by law – if the copy is certified as correct by . . . the custodian or another person authorized to make the certification . . . ." Fed. R. Evid. 902(4). A certified copy of the public record is admissible to prove its content. Fed. R. Evid. 1005.

IRS records also qualify as business records under Fed. R. Evid. 803(6) since they are made or transmitted by a person with knowledge at or near the time of the event recorded, and are kept in the course of a regularly conducted business activity. Moreover, third party records incorporated into IRS records in the ordinary course of IRS business are admissible under the exception pursuant to the "adoptive business records doctrine." *United States v. Powers*, 578 F. App'x 763, 778–80 (10th Cir. 2014). These records are self-authenticating by means of a records custodian certification. Fed. R. Evid. 901(11).

More specifically, it is well-established that information compiled by the IRS in transcripts is admissible under both the exceptions for business and public records. *See United States v. Goodman*, 527 F. App'x 697, 699 (10th Cir. 2013) ("The ... IRP Transcripts and the information they contain, routinely compiled by the IRS from legally mandated reports submitted by third parties in the normal course of business, were admissible under the business-record and public-record hearsay exceptions in Fed. R. Evid. 803(6) and (8)"). Computerized IRS records have long been accepted as admissible business records under FRE 803(6), with courts recognizing their inherent trustworthiness when proper foundation

is laid. *United States v. Hayes*, 861 F.2d 1225, 1228 (10th Cir. 1988) (IRS computer records admissible under Rule 803(6)) (citing *United States v. Croft*, 750 F.2d 1354, 1364 (7th Cir.1984)). Similarly, computerized records of correspondence sent to a taxpayer are admissible under FRE 803(6)'s business records exception. *See, e.g.*, *Haag v. United States*, 485 F.3d 1, 3 (1st Cir. 2007). IRS documents made in the ordinary course of IRS business that summarize contacts with a taxpayer are admissible under FRE 803(6). *See, e.g.*, *United States v. Parker*, 358 F. App'x 524, 527 (5th Cir. 2009) (hearsay documents of IRS employee were admissible under business records exception to prove defendant's complicity in tax fraud; documents, which quoted from a memorandum by the defendants that was previously delivered to IRS employee, were made on an IRS form by employee as required by IRS as part of its regular practice, and employee recognized documents and knew they were from her office.). IRS case history notes made by collection personnel are admissible under FRE 803(8)'s public records exception. *See, e.g.*, *United States v. Millegan*, No. 3:19-CR-00528-IM, 2022 WL 1913289, at *4 (D. Or. June 2, 2022).

Courts have also recognized that various other types of documents that the IRS generates during the assessment and collection of taxes can be admissible under Fed. Rule Evid. 803(8). *See, e.g.*, *United States v. Fletcher*, 322 F.3d 508, 517–18 (8th Cir. 2003) (IRS records pertaining to assessments and liens admissible under Fed. Rule Evid. 803(8)); *Hughes v. United States*, 953 F.2d 531, 539–40 (9th Cir. 1992) (IRS certificates of assessments and payments admissible under Fed. R. Evid. 803(8)); *United States v. Lockett*, 601 F. App'x 325, 327 (5th Cir. 2015) (same as to account transcript printouts); *United States v. Pfannenstiel*, No. CIV. 98-117 JBB/DJS, 2001 WL 37124851, at *2 (D.N.M. Oct. 24, 2001)

(same as to IRS Forms 4340), *aff'd*, 45 F. App'x 867 (10th Cir. 2002).[18] An IRS agent's

report, such as documentation of an interaction with a taxpayer, may also be admissible as a

recorded recollection. *See, e.g.*, *United States v. Sawyer*, 607 F.2d 1190, 1193 (7th Cir. 1979);

*McGarry v. United States*, 388 F.2d 862, 869 (1st Cir. 1967). Finally, compilations of records

demonstrating the absence of filed returns or other records are admissible under Fed. Rule

Evid. 803(10). *United States v. Bowers*, 920 F.2d 220, 223–24 (4th Cir. 1990).

## I.   Defendant's Reciprocal Discovery and Notice of Defenses

The Government set forth its requests for reciprocal discovery and notice of defenses

on September 22, 2023, November 2, 2023, January 12, 2024, and February 12, 2024.[19]

These requests effectively invoked the Defendant's reciprocal discovery obligations under

Rule 16. The Defendant's obligations extend to material he plans to introduce when cross-

examining government witnesses. *See, e.g.*, *United States v. Larkin*, 2015 WL 4415506 (D.

Nev. 2015); *United States v. Holden*, 2015 WL 1514569 (D. Or. 2015).

/ / /

/ / /

---

[18] In its pre-*Crawford* jurisprudence, the Tenth Circuit appeared to require that some IRS documents admissible under Fed. Rule Evid. 803(8) be supported by testimony from the declarant. *See United States v. Hayes*, 861 F.2d 1225, 1229-1231 (10th Cir. 1988) (distinguishing *United States v. Bohrer*, 807 F.2d 159, 162-163 (10th Cir. 1986), and recognizing widespread criticism of the nonbinding authority Bohrer relied upon, *United States v. Oates*, 560 F.2d 45 (2nd Cir. 1977)). According to post-*Crawford* jurisprudence, statements admissible under Fed. Rule Evid. 803(8)'s public records exception, however, are non-testimonial under *Crawford*. *United States v. Feliz*, 467 F.3d 227, 237 (2d Cir. 2006) ("…we find that public records are, indeed, nontestimonial under *Crawford*."); *United States v. Lopez-Moreno*, 420 F.3d 420, 437 (5th Cir. 2005); *United States v. Salinas-Valenciano*, 220 F. App'x 879, 883 (10th Cir. 2007).

[19] ECF Nos. 21, 44, 95, and 128.

## V.   EXHIBIT LIST

The government served the Defendant with a copy of its trial exhibit list on February

12, 2024.[20]  It provided the Defendant its amended trial exhibit list on February 16, 2024.[21]

## VI.   WITNESSES

The government filed its list of potential case-in-chief witnesses on February 7,

2024.[22]  The government filed its amended witness list on February 12, 2024. ECF No. 126.

On October 30, 2023, the government filed a precautionary expert witness notice as to IRS

Revenue Agent John Jenson.[23]

## VII.   NOTICE OF FRE 404(b) EVIDENCE

The government filed its notice of potential FRE 404(b) evidence on February 7,

2024.[24]

## VIII.   JURY INSTRUCTIONS / VERDICT FORM

The government filed its proposed jury instructions and verdict form on February 12,

2024.[25]

## IX.   PROPOSED ADDITIONAL VOIR DIRE QUESTIONS

Prior to trial, the government intends to file a list of proposed additional voir dire

questions.

/ / /

---

[20] ECF No. 128.
[21] ECF No. 138.
[22] ECF No. 122.
[23] ECF No. 42.
[24] ECF No. 123.
[25] ECF No. 127.

**X.**     <u>**CERTIFICATE OF READINESS FOR TRIAL**</u>

The undersigned hereby certifies that they are the trial counsel for the United States and that subpoenas have been issued for all non-governmental employees who are in the United States and will testify at trial. The matter is ready for trial.

DATED this 20th day of March, 2024.

TRINA A. HIGGINS
United States Attorney

*/s/ Meredith M. Havekost*
*/s/ Patrick Burns*
_____
MEREDITH M. HAVEKOST
PATRICK BURNS
Trial Attorneys
U.S. Department of Justice Tax Division