TRINA A. HIGGINS, United States Attorney (#7349)
MEREDITH M. HAVEKOST, Trial Attorney (IL #6332789)
PATRICK BURNS, Trial Attorney (NV #11779)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

---

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAUL KENNETH CROMAR,<br><br>Defendant. | Case No. 2:23-cr-00159-HCN-DBP<br><br>GOVERNMENT'S SUPPLEMENTAL BENCH MEMORANDUM REGARDING ISSUES ANTICIPATED TO ARISE DURING TRIAL<br><br>District Judge Howard C. Nielson, Jr.<br><br>Chief Magistrate Judge Dustin B. Pead |

The United States, by and through undersigned counsel, hereby respectfully submits this supplemental bench memorandum addressing several issues likely to arise during trial.

**BENCH MEMORANDUM**

The government submits this bench memorandum in an effort to identify several issues likely to arise at the beginning or during the course of the trial. This memorandum is submitted in the hopes of reducing interruptions and delay during the trial.

I.   **The Court should deny Defendant's request to have Raland Brunson sit at counsel table and consult with him throughout the trial.**

In a criminal case, a pro se defendant has no right to have a non-lawyer assistant sit at counsel table during the trial. *See United States v. Martin*, 790 F.2d 1215, 1218 (5th Cir.

1986);[1] *United States v. Kelley*, 539 F.2d 1199, 1203 (9th Cir. 1976);[2] *United States v. Radin*, No. S1 16 CR. 528 (HBP), 2017 WL 2226595, at *3 (S.D.N.Y. May 22, 2017) ("Although the Second Circuit has never addressed the issue, both the Fifth and Ninth Circuits have held that a defendant has no right to be represented, or joined in the well of a courtroom, by a non-lawyer." (citing *Martin* and *Kelly*, *supra*)).

The Court has taken under advisement the Defendant's request that his unappointed pro bono "paralegal" Raland Brunson sit with him at defense counsel table throughout the trial. He intends to consult with Brunson about his defense throughout the trial. Because defendant has no right to such assistance and his proposal would inject concerning irregularity, complexity, and delay into the trial, the government strongly opposes such an unorthodox and unprecedented arrangement.

The Court has taken all the necessary steps to afford Defendant the tools he will need to conduct his trial defense. Indeed, the Court has already appointed the Defendant a paralegal that the Defendant appears to refuse to use for his defense. The Court has also appointed standby counsel and an investigator to assist Defendant with his trial defense.

---

[1] ("Nor do we find any merit in the contention that the district court erred or abused its discretion in not allowing Martin's non-lawyer assistant to sit at the counsel table. Martin had no constitutional right to standby counsel, *McKaskle v. Wiggins*, 465 U.S. at 183, 104 S.Ct. at 953–54, or appointed counsel of his choosing, *United States v. Magee*, 741 F.2d 93 (5th Cir. 1984). He had no right to be represented in this litigation by a non-lawyer of his choice. *United States v. Bertolini*, 576 F.2d 1133 (5th Cir. 1978).").

[2] ("Indeed, there is no indication in Faretta that the Sixth Amendment right to counsel refers to assistance by any person other than a lawyer. *Cf. United States v. Stockheimer*, 385 F.Supp. 979, 983 (W.D.Wis.1974). We therefore hold that Kelley's Sixth Amendment rights were not violated by the district court's refusal to permit Hurd, a non-lawyer, to act as counsel. *United States v. Cooper*, 493 F.2d 473, 474 (5th Cir.), *cert. denied*, 419 U.S. 859, 95 S.Ct. 108, 42 L.Ed.2d 93 (1974) (pre-*Faretta* ); *see United States v. Scott*, 521 F.2d 1188, 1191-92 (9th Cir. 1975); *cf. id.* at 1199 (Browning, J., dissenting)." (footnote omitted)).

There is no constitutional right – or practical need – for the Court to allow a non-appointed, untrained, unlicensed person such as Brunson to participate in the trial as an essentially unlicensed, non-speaking co-counsel.

The Court should not be misled into believing that Defendant and Brunson do not intend for Brunson to practice law alongside the Defendant throughout the trial. Brunson believes himself to be some kind of legal practitioner. *See* ECF No. 241 at 10-11. By Defendant's own admission, Brunson has been advising him as to the law and tactical litigation decisions. Defendant often transmits commentary about his case through several QAnon-themed blog sites. In a May 8, 2024 message to his supporters, Defendant credited Brunson with conceiving of and filing Defendant's unsuccessful motion to dismiss filed on the docket as ECF No. 222:

Wed. 8 May 2024 "Ken and Barbie vs. Goliath IRS" Update:

Dear Patriot friends and family,

Great news! I have been so frustrated for now 250 days of not being able to get the government prosecutors to send me their court filings as is required by law. It's a term called "service of process" where they MUST alert all parties each time they file a document. How else am I supposed to know and respond to what the government filed while I'm locked up in jail, without ANY access to the internet? And they know it. Intentional? You bet! And the court transcripts prove it.

Raland told me last week that he could file a Motion to Dismiss for Insufficient Service of Process, which would shut down the entire case completely. He said, as added evidence that they did not want to provide service of process, none of their documents had a "certificate of service" attached. I told Raland to go for it!

So, Raland filed it May 2nd Judge Nielson then ordered the prosecution to reply to it by May 10 telling them to show how Patrick Burns email is in agreement with Rule 49.

Cheers! Ken

https://roserambles.org/page/12/ (accessed May 16, 2024). In a message posted to the same blog after the May 15, 2024 pretrial conference, Defendant discussed his request for Brunson's role in his trial defense and stated that he intended to have Brunson provide "private counseling" throughout the trial:

· Ken's Trial is next week, scheduled for ten days. The courtroom should be packed with friends who support Ken. This makes an impact on the jury. Please be there whenever you are able! U. S. District Courthouse, Room 7.300 351 S West Temple SLC **84101 801-524-6100**Tuesday 21st – Friday 24th 10 a.m. – 4 p.m. three day holiday weekend, 25th – 27th, back in court on the 28th. Jury selection from 70 potential jurors on day one, but judge hopes to have opening remarks that day, also. The prosecution has three days then holiday weekend – back on Tuesday 28th.

· Dear Patriot Friends and Family, During today's (15th) pre-trial conference I asked if Raland Brunson could be there to sit with me at trial. Not to speak but to help with paperwork and private counseling. The judge has taken that under advisement. I feel like things went as good as they could considering the fact that the judge denied everything we had laid out. However, there was enough push back with reasonable and logical arguments that the judge and prosecution seemed surprised and knew that I'm ready to put up a fight. And that they're not going to be able to "roll me". This will be the fight of my life and it won't be easy, but with trust in God, I believe miracles are possible. My darling daughter Maddie shared a scripture with me Sunday that sums up my feelings regarding the situation: Jacob 3:1 "Look unto God with firmness of mind, and pray unto him with exceeding faith, and he will console you in your afflictions, and he will plead your cause, and send down justice upon those who seek your destruction". (Book of Mormon).Thank you so much for your love and prayers. I will fast and pray on Sunday, if anyone would like to join me in doing so, thank you. Believe in miracles! Ken

https://roserambles.org/ (accessed May 17, 2024). Further, because Brunson has filed and signed the service certificates of virtually all Defendant's motions, objections, and various other docket filings, the Court should expect that he has been involved in providing substantive legal advice to the Defendant throughout the case.

Defendant's request clearly contemplates the Court allowing Brunson to act as a non-speaking, unlicensed legal advisor throughout the trial. Any claim that Defendant would only have Brunson carry out clerical or logistical tasks is plainly contradicted by Defendant's statements and the substantive role Brunson has carried out thus far to formulate and advise tactical and strategic actions, such as conceptualizing and composing

legal arguments. Indeed, if Brunson's role was only to carry out clerical or logistical roles, Defendant would not require his constant presence at counsel table to consult throughout the trial. Moreover, it is no accident that Defendant's request to have Brunson remain at his table throughout trial came immediately after an extended colloquy between Defendant and the Court regarding the definition of "counsel" and the Defendant's continuing demands to be represented at trial by an unlicensed "non-Bar counsel." Defendant's request is a transparent attempt to obtain the "non-Bar counsel" that the Court has previously and repeatedly denied.

The government is very concerned that Brunson's substantive involvement in Defendant's trial defense will lead to later appellate or post-conviction claims that the Court allowed Brunson to interfere with Defendant's self-representation by Brunson usurping or hampering Defendant's role as his own counsel. These types of claims are not uncommon. *See, e.g.*, *Carrier v. Shinn*, No. CV1804051PHXNVWDMF, 2020 WL 555511, at *7 (D. Ariz. Jan. 2, 2020) ("Petitioner's argument under Ground Eight is that advisory counsel and defense investigators 'failed to properly conduct witness interviews and failed to act upon pro se [Petitioner's] instructions,' thus interfering with Petitioner's eventual ability to represent himself at trial."), *report and recommendation adopted*, No. CV-1804051-PHXNVWDMF, 2020 WL 554385 (D. Ariz. Feb. 4, 2020). Because Brunson is already involved in tactical defense decisions and appears quite comfortable speaking out in court, there is great risk that Defendant will later claim Brunson interfered with his right to self-representation and the Court essentially acquiesced in that interference by allowing Brunson to live out his dream to play lawyer. These types of interference by standby counsel are

potentially grounds for reversal and the risk of error is only enhanced by Brunson's abject lack of any qualification to participate in a federal criminal trial. *Cf., e.g.*, *United States v. Wallace*, 527 F. App'x 784, 786–87 (10th Cir. 2013) ("…the right to self-representation is eroded if standby counsel is allowed, over the defendant's objection, 'to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance.'"). Particularly because the Court has already appointed and provided the resources Defendant would need for any paralegal support, there is little reason to embrace this highly irregular proposal— and many reasons not to.

Finally, Brunson has exhibited a concerning lack of legal acumen in the filings upon which he and Defendant have collaborated. His legal authority for the aforementioned motion to dismiss was Federal Rule of *Civil* Procedure 12(b)(5), and his most recent gambit to file an interlocutory appeal with the Tenth Circuit locates its legal support in Federal Rule of Criminal Procedure 58(g), which speaks only to interlocutory appeals of U.S. magistrate judge proceedings involving petty offenses and misdemeanors. ECF 238. While the Defendant is entitled to misinterpret and misapply the law on his own behalf, he has no right to be misadvised about the law by a non-lawyer. Brunson's active participation throughout trial will no doubt magnify the number of misguided and frivolous legal arguments the Court will have to resolve throughout trial, thus engendering delay. The arrangement threatens an efficient proceeding within the days set aside for conducting the trial.

The government also has critical policy concerns about the precedent that would be set by allowing an individual such as Brunson to play lawyer during a federal criminal trial. The government is unaware of such a practice being embraced by the courts. Such a step would no doubt serve as precedent for future pro se tax defiers and sovereign citizens to request "assistants [*sic*] of counsel" from any manner of individuals, regardless of legal training or acumen. Such a practice would seriously dilute the institution of professional legal representation and materially erode the line between legal counsel and the menagerie of hucksters and misguided ideologues found on Defendant's most recent witness list. ECF 241.[3]

## II.   Defendant should be directed to conduct, during the government's case-in-chief, any examination he intends of witness Brett Belliston.

Federal Rule of Evidence 611(a) vests a trial court with discretion to exercise reasonable control over the mode and order of examining witnesses in order to ensure procedures effective for determining the truth and to avoid wasting time. The Rule expressly recognizes the trial court's prerogative to "avoid needless consumption of time" and "protect witnesses from harassment or undue embarrassment." "This rule gives the trial

---

[3] The government also notes that Brunson's conduct in substantively advising Defendant on the law and legal case decisions constitutes the unlicensed practice of law and likely violates Utah state law. *See* Utah Code Ann. § 78A-9-103 (West) (("(1) Unless otherwise provided by law or court rule, an individual may not practice law or assume to act or hold himself or herself out to the public as an individual qualified to practice law within this state if that individual: (a) is not admitted and licensed to practice law within this state; (b) has been disbarred or suspended from the practice of law; or (c) is prohibited from practicing law by court order entered pursuant to the courts' inherent powers or published court rule. (2) The prohibition against the practice of law described in Subsection (1) shall be enforced by any civil action or proceeding instituted by the Board of Commissioners of the Utah State Bar. (3) Nothing in this section prohibits an individual from personally and fully representing that individual's own interests in a cause to which that individual is a party in the individual's own right and not as an assignee.").

judge substantial discretion." *United States v. Maddox*, 944 F.2d 1223, 1230 (6th Cir. 1991). As one circuit court has observed in applying Rule 611(a), "[p]ermitting the recall of a witness is within the sound discretion of the district court." *United States v. Dent*, 984 F.2d 1453, 1463 (7th Cir. 1993) (citing *Maddox* and other authorities), *abrogated on other grounds by United States v. Gilbert*, 391 F.3d 882, 884 (7th Cir. 2004). Circuit courts have also affirmed trial courts refusing to allow a defendant to recall government witnesses when full cross-examination has already been afforded. *See, e.g.*, *United States v. Rivera*, 971 F.2d 876, 886 (2d Cir. 1992).

The government will call Brett Belliston in its case-in-chief at trial. It currently plans to call him no later than May 24, 2024. Mr. Belliston has a prescheduled international trip for which he departs on May 25, 2024. Upon departing, he will be out of the country for the expected duration of the trial. Upon finishing his testimony on May 24, 2024, the government will release Mr. Belliston from its subpoena.

Defendant's original witness list, ECF No. 221, was filed on May 2, 2024, and, except for one defense character witness, only lists the government's noticed witnesses as potential defense witnesses. Defendant's list includes Belliston as a defense witness.

In the event that Defendant actually serves Belliston with a subpoena, the government requests that the Court exercise its authority under FRE 611(a) to require Defendant to conduct his complete examination of Mr. Belliston during cross-examination. The government will obviously waive any objection to Defendant's cross examination veering outside the scope of its direct examination. In this way, Defendant will be permitted to conduct whatever full examination of Mr. Belliston he intends and Mr. Belliston will not

be subject to being dragged back to court to testify a second time and miss his preplanned international trip.

Any objection by the Defendant to such a procedure would be meritless since he has twice had the opportunity to question Mr. Belliston during a criminal trial. He also heard from Mr. Belliston as a victim impact speaker at the sentencing in Defendant's state case. The government has provided audio and any available written record of that prior testimony and statements to Defendant. And Defendant has received an interview memorandum, which describes Mr. Belliston's anticipated testimony. The Defendant should be amply prepared to question Mr. Belliston about any intended matter when the time for cross-examination arrives during the government's case-in-chief.

This proposed procedure would "avoid needless consumption of time." FRE 611(a)(2). It would likewise "protect [a] witness from harassment or undue embarrassment." FRE 611(a)(3). Putting aside Defendant's armed occupation of Mr. Belliston's property and frivolous legal campaign against Mr. Belliston's property interest, Defendant has a history of harassing and seeking to humiliate Mr. Belliston. When Defendant learned that Mr. Belliston would be purchasing Defendant's former home from the IRS, he perpetrated a campaign of targeted harassment and threats. Defendant's conduct included causing his supporters to harass and smear Mr. Belliston in his neighborhood and church communities. When Defendant was evicted a second time from the home on September 24, 2024 and the property was turned over to Mr. Belliston, Mr. Belliston located a paper with information about his family members' names and contact information. This would come as no surprise

since Defendant had previously orchestrated this offensive protest outside Mr. Belliston's home:



Because Defendant will be assured a full right to cross-examine and a complete opportunity to ask any questions relevant to his case-in-chief, the Court should exercise its discretion to require Defendant to conduct all his questioning of Mr. Belliston during the government's case-in-chief.

### III. Memoranda of IRS employee and government witness interviews are generally hearsay and are not independently admissible under FRE 801(d)(2).

"Police reports are generally excludable as hearsay." *United States v. Jimenez*, 275 F. App'x 433, 438 (5th Cir. 2008) (citing *United States v. Lopez-Moreno*, 420 F.3d 420, 437 (5th Cir. 2005)); *see also Sulayman v. Obama*, 729 F. Supp. 2d 26, 34–35 (D. D.C. 2010) (noting FD-302s and other federal investigative reports "all [] contain hearsay in one form or another"). Such reports often involve "multiple layers of hearsay" and would require an

11

independent basis of admissibility for each hearsay layer. *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir.), *cert. denied*, 137 S. Ct. 493, 196 L. Ed. 2d 403 (2016) (citing Fed. R. Evid. 805)); *United States v. Dotson*, 821 F.2d 1034, 1035 (5th Cir. 1987). Rule 802's exclusion of hearsay evidence is not surmounted merely by showing that a police report is a public record. *See, e.g.*, *Graham v. Jersey City Police Dep't*, No. CIV.A. 11-7326 WJM, 2014 WL 7177362, at *3 (D. N.J. 2014) ("While a police report may be a public record, the contents of the police report, i.e., the statements made to police from a witness, are inadmissible hearsay where, as in this case, Defendants are offering the police report to establish the truth of the matters set forth in the report." (citations omitted)).

The defense is, of course, free to ask a witness whether he or she made a statement that is reflected in a police report. However, if the defense is not satisfied with the witness's answer, the defense may not publish or introduce the contents of the report as a prior inconsistent statement. *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (holding that "such documents [FBI 302s] have been deemed inadmissible for impeaching witnesses on cross-examination"), *abrogated on other grounds by United States v. Booker*, 543 U.S. 222 (2005); *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]" it was "properly rejected as a prior inconsistent statement"); *United States v. Hill*, 526 F.2d 1019, 1026 (10th Cir. 1975) (upholding the trial court's decision to "not allow counsel to use the 302 statement to impeach a witness because the witness did not prepare or sign the document and probably never adopted it"). Moreover, the defense may not use the police report in a way that suggests to the jury that the report is a statement of the witness if the witness did

12

not write the report. *See United States v. Marks*, 816 F.2d 1207, 1210-11 (7th Cir. 1987) (holding that where defense counsel read from a 302 during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, the judge was entitled to require the witness be shown the 302 and given the opportunity to adopt or reject it as a statement, although such a practice was no longer required by the Federal Rules of Evidence).

Recognizing the hearsay nature of government investigative reports and implicitly denying their admissibility under FRE 801(d)(2),[4] the Federal Rules of Evidence create an exception for a limited number of some type of government reports. Specifically, FRE 803(8)(A)(iii) excepts from the hearsay rule, "A record or statement of a public office if: (A) it sets out:…(iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation." Defendants, however, often mistake FRE 803(8)(A)(iii), as excepting from the hearsay rule witness statements memorialized in government reports. In fact, the exception does not apply to witness statements contained in a law enforcement report. *See Groves v. City of Reno*, No. 3:13-CV-00537-MMD, 2015 WL 5350099, at *3 (D. Nev. Sept. 14, 2015) ("Fed.R.Evid. 803(8)(a)(iii) carves out an exception to the hearsay rule for factual findings from a legally authorized investigation of a public office. This exception, however, does not extend to third-party testimony included in a

---

[4] If government agency reports were included in FRE 801(d)(2)(A)'s exclusions from hearsay (admission by a party opponent in an individual or representative capacity), there would be no reason for the Rules to separately create an express exception for such reports. *See United States v. Kampiles*, 609 F.2d 1233, 1246 n.16 (7th Cir. 1979) ("…the Morgan court made an oblique reference to Rule 803(8), which excepts from the hearsay rule factual findings from law enforcement investigations to be introduced against the Government in criminal cases. It should be noted that this exception to the hearsay rule would be unnecessary if Rule 801(d)(2)(D) were found to encompass admissions by government employees.").

report of those findings. *See United States v. Morales*, 720 F.3d 1194, 1202 (9th Cir. 2013); *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1278 (11th Cir. 2009) ("Placing otherwise inadmissible hearsay statements by third-parties into a government report does not make the statements admissible.") (quotation omitted)."); *Jenkins v. Corizon Health Inc.*, 584 F. Supp. 3d 1364, 1370 (S.D. Ga. 2022).

FRE 803(8)(A)(iii) does not encompass the memoranda of interviews (MOIs) and law enforcement reports in this case. The MOIs contain summaries (sometimes partial) of information provided by witnesses to and victims of Defendant's crimes. They do not contain evaluations or factual findings by the interviewing special agents or police officers. Unlike a car accident report in which a police officer might make an evaluative determination of the cause of the accident, i.e., a personal observation, the MOIs and reports in this case do not make such conclusions and thus are outside the scope of FRE 803(8)(A)(iii)'s exception to the hearsay rule.

Finally, the MOIs and police reports do not constitute admissions by a party-opponent. The witness statements memorialized in the MOIs and reports, including statements by civilian IRS employees, are not statements by the United States as a party in this case. The government is unaware of any jurisprudence extending FRE 801(d)(2) to impute witness and victim statements or MOIs to the United States as a party admission rendering them admissible in evidence.

The non-IRS civilian witnesses are obviously not party opponents. And the civilian IRS employees involved in the underlying events of Defendant's crimes are similarly not party opponents for purposes of this prosecution. Indeed, as explained by the Seventh

14

Circuit in *United States v. Kampiles*, 609 F.2d 1233 (7th Cir. 1979), the FRE reflect a preexisting understanding that statements by government employees are not admissions by a party opponent:

> On appeal, defendant contends that the district court's refusal to permit Lisanti to testify violated the Fifth and Sixth Amendments. To overcome the hearsay objection, defendant asserts that the statement by McCardy, a government employee, is well within the ambit of Rule 801(d)(2)(D) of the Federal Rules of Evidence and describes as "novel" the Government's argument that in a criminal prosecution government employees are not considered servants of a party-opponent for the purposes of the admissions rule. In truth it is defendant's position that is novel. Prior to adoption of the Federal Rules of Evidence, admissions by government employees in criminal cases were viewed as outside the admissions exception to the hearsay rule. *United States v. Powers*, 467 F.2d 1089, 1095 (7th Cir. 1972). Because the agents of the Government are supposedly disinterested in the outcome of a trial and are traditionally unable to bind the sovereign (*United States v. Santos*, 372 F.2d 177, 180 (2d Cir. 1967)), their statements seem less the product of the adversary process and hence less appropriately described as admissions of a party. Nothing in the Federal Rules of Evidence suggests an intention to alter the traditional rule and defendant has cited no truly contrary case indicating such a trend. Therefore, since Lisanti's testimony did not fall within any of the other exceptions to the hearsay rule, the district court correctly refused to reopen the case to hear it. *United States v. Keefer*, 464 F.2d 1385, 1387 (7th Cir. 1972), *certiorari denied*, 409 U.S. 983, 93 S.Ct. 322, 34 L.Ed.2d 247.

*Id.* at 1246; *accord United States v. Martinez-Saavedra*, 372 F. App'x 463, 464 (5th Cir. 2010) (per curiam) ("We have previously declined to apply Rule 801(d)(2)(D) to a statement made by a government agent because the statements of individual agents do not bind the sovereign except in rare circumstances." (citing *United States v. Garza*, 448 F.3d 294, 298–99 & nn. 14–16 (5th Cir. 2006)).

The civilian IRS employees are witnesses to Defendant's crimes and in most instances victims of the offense since they were personally targeted by Defendant's evasive and obstructive acts. They are not part of nor agents of the United States Department of

Justice (DOJ). *Cf, e.g.*, *United States v. Kattar*, 840 F.2d 118, 130 (1st Cir. 1988) (deeming DOJ personnel's statements about Church of Scientology in other litigation as admissions by party opponent in criminal prosecution of defendant charged with defrauding that church). As witnesses to or victims of a crime these individuals do not become agents of or individuals capable of binding the United States or making statements on its behalf. *See United States v. Bakshinian*, 65 F. Supp. 2d 1104, 1105–06 (C.D. Cal. 1999) (examining distinction between government prosecutors having authority to bind United States and thus make admissions in contrast to government employees (citing *Kampiles*, *supra*)).

## IV.   The government will request that the Court take judicial notice of the authenticity of Trial Exhibit 143.

It is well-established that a federal district court can take judicial notice of the authenticity of its own records, including filings and orders contained in the Public Access to Court Electronic Records (PACER) system. *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through PACER.").

The government's trial exhibit 143 is an uncertified copy of the Tenth Circuit's order and judgment affirming the District Court's decision granting the United States default judgment on its motion to reduce Defendant's delinquent taxes to judgment. The document is the Tenth Circuit's order as it was spread across this District Court's docket via the Tenth Circuit's mandate. *United States v. Cromar, et al.*, Case No. 2:17-cv-01223-RJS, ECF No. 128. The government only seeks judicial notice of the order's authenticity and is otherwise prepared to establish its admissibility.

16

**V.    The government will request to admit certain self-authenticating public and business records through an IRS witness despite those records being self-authenticating and independently admissible without a witness.**

The government has obtained certified passport records, bank records, IRS records, and court records. While these records are self-authenticating and admissible pursuant to well-established hearsay exceptions and exclusions, the government intends to generally admit such evidence through a live witness for ease and continuity in presenting its case. The government intends to call as a sort of catch-all witness IRS CI Special Agent Hunter Richards to admit the passport records and any other self-authenticating documents not otherwise admitted through other witnesses.

**VI.    In the event Defendant decides to testify in his own defense, he should be required to do so by question-and-answer rather than in narrative form.**

Under FRE 611, trial courts have clear discretion to require a pro se defendant to testify in question-and-answer format rather than by narrative. *See United States v. Beckton*, 740 F.3d 303, 306 (4th Cir. 2014) (affirming trial court's denial of pro se defendant's request to testify in narrative form and noting Rule 611 advisory committee notes contemplated trial management discretion that includes "such concerns as whether testimony shall be in the form of a free narrative or responses to specific questions.").

Defendant has openly stated that he intends to inform the jury about inadmissible and prejudicial matter, such as his views on the Court's jurisdiction. ECF No. 202 at 31-32. The Defendant also has a history of flagrantly violating court orders during his criminal trials. ECF No. 130 at 6-11. While the government doubts Defendant testifies at trial since he cannot take an oath in federal court, it expects him during any such testimony to flagrantly violate the Court's orders in this case and intentionally attempt to prejudice the

jury. If Defendant elects to testify he should be required – like any other witness – to testify in a question-and-answer format that will afford the government the opportunity to object prior to any inadmissible material being introduced to the jury. This should be done either by defendant asking himself non-leading, non-compound, and otherwise proper direct exam questions or by furnishing standby counsel or a court-appointed investigator a series of scripted questions to ask him.

> **VII.    The Court should impose duration and disclosure limits on the delivery of Defendant's opening statement.**

"The scope and extent of the defendant's opening statement rests largely in the discretion of the trial court." *United States v. Freeman*, 514 F.2d 1184, 1192 (10th Cir. 1975); *see also United States v. Salovitz*, 701 F.2d 17, 21 (2d Cir. 1983) ("[T]he making and timing of opening statements can be left constitutionally to the informed discretion of the trial judge."). As the Tenth Circuit has noted, "The function of the defendant's opening statement is to enable him to inform the court and jury what he expects to prove, and the trial court may properly exclude irrelevant facts." *Freeman*, 514 F.2d at 1192. A trial court's regulation of the parties' opening statements is reviewed for an abuse of discretion. *United States v. Burns*, 298 F.3d 523, 543 (6th Cir. 2002).

At the May 15, 2024 pretrial conference, when the Court asked the parties about the duration of their opening statements, the government advised that its opening statement would be approximately fifteen minutes. Defendant stated that he intended to deliver an opening statement of about 45 minutes. Given Defendant's history and statements discussed above, the government expects that Defendant's presentation will contain inadmissible, prejudicial information and material and likely violate orders in limine.

18

To avoid the potential for this abuse, the government requests that the Cout impose the following conditions on Defendant's opening statement. First, the Defendant should be limited to a twenty-minute presentation. This will ensure fairness to the government and reduce Defendant's opportunities to delve into inadmissible or prejudicial matter. It will also reduce the chance for Defendant to veer into argument and legal instruction rather than a proper opening statement, i.e., a roadmap of the evidence he expects to come out during the trial. Second, if Defendant plans to use any visual materials, documents, or tangible things, he should be required to allow the government to view those materials outside the presence of the jury just prior to the opening so that it has an opportunity to object. The government will likewise allow Defendant to view its visual presentation materials prior to its opening statement so that he may object. If Defendant plans only to provide a verbal presentation with no visual or documentary materials, he should be required to disclose the outline or specific points of that presentation to the Court on an ex parte basis prior to delivering the opening to the jury.

### VIII. Defendant should be admonished not to question government witnesses about their personnel records or to engage in fishing expeditions for *Giglio* material in front of the jury.

The government's obligation to request review of law enforcement agency personnel files is self-executing. *United States v. Correia*, No. 217CR00001JADCWH, 2018 WL 3416517, at *1 (D. Nev. July 9, 2018); *United States v. Ramos-Moran*, No. 19CR2984-LL, 2019 WL 4393670, at *5 (S.D. Cal. Sept. 13, 2019) ("It is well established that the Government has a self-executing obligation to turn over *Brady / Henthorn* qualifying

information."). The government has complied with its obligations and will continue to do so.

In reviewing audio of the Defendant's state court criminal trial, the government observed at least one instance in which Defendant sought to question a law enforcement officer about his work history, thus implying that the officer might have switched employment between different law enforcement agencies because of some type of misconduct or employment problem. This baseless fishing expedition was improper and should not be repeated at trial in this case. The government brings this to the Court's attention in the event Defendant attempts to mislead the jury by asking such questions.

## IX. The government reserves its right to object to the Defendant's trial exhibits as untimely due to the Defendant's flagrant disregard of court deadlines and the government's right to discovery under Rule 16(b).

A court does not abuse its discretion in excluding at trial evidence a defendant was required to produce under Rule 16(b). *See, e.g.*, *United States v. Rodriguez Cortes*, 949 F.2d 532, 545–46 (1st Cir. 1991); *United States v. Campbell*, 81 F. App'x 532, 535 (6th Cir. 2003);[5] *United States v. Duran*, 41 F.3d 540, 546 (9th Cir. 1994) (affirming exclusion of evidence withheld in violation of Rule 16(b)). Since the inception of this case, the government has repeatedly invoked its right to reciprocal discovery under Rule 16(b). *See* ECF No. 21 at 3-4; 44 at 2-3; 95 at 2-3; 128-2 at 2-3. As of May 17, 2024, Defendant has intentionally violated Rule 16(b) by failing to turn over any reciprocal defense discovery. He has also failed to turn

---

[5] ("A defendant's noncompliance with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt or innocence' may prompt a court to curtail the right to present relevant evidence. Excluding relevant evidence for failure to comply with such rules does not violate an accused's right to present a defense so long as those rules are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" (citations and internal quotation marks omitted)).

over any trial exhibits for his case-in-chief despite repeated deadlines accommodating his many overblown and misleading claims about his ability to prepare.

Defendant has already conducted a trial involving many facts common to this case. He has had ample time and resources to produce discovery and trial exhibits consisting of potentially admissible material. His intentional and flagrant violation of Rule 16(b) is both an effort to delay and complicate the trial proceedings in this case and to disadvantage the government at trial. Moreover, it is an effort to deprive the government of the opportunity to seek the exclusion of plainly irrelevant and inadmissible material. The government reserves its right to seek the exclusion of any material provided to it at this point.

DATED this 17th day of May, 2024.

TRINA A. HIGGINS
United States Attorney

*/s/ Meredith M. Havekost*
*/s/ Patrick Burns*

MEREDITH M. HAVEKOST
PATRICK BURNS
Trial Attorneys
U.S. Department of Justice Tax Division