Paul-Kenneth: Cromar, ID #567164
Davis County Jail
800 West State Street
P.O. Box 618
Farmington, Utah 84025-0618
Phone: 801-451-4100

FILED US District Court-UT
JUN 03 '24 AM08:42

[Pro Se] *sui juris*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>     **Plaintiff,**<br><br>v.<br><br>**Ken Cromar,**<br>     **Defendant**. | CASE NO.: 2:23-cr-159<br><br>**Defendant's Objection and 2nd Motion to Compel Disclosure of the Original SFR Tax Return Documents** |

## Defendant's Objection and 2nd Motion to Compel Disclosure of the Original SFR Tax Return Documents

1.     Comes Now, Defendant-in-error Ken Cromar, *pro se,* in the above captioned action who hereby files this *Objection* and *2nd Motion to compel disclosure of the original SFR tax-returns,* and who respectfully again *moves* this court to compel the plaintiff United States to make a full and complete disclosure of the **only** evidence that is declared under the statutes to be "*prima facie good and sufficient for all legal purposes*" to **legally** show that a *lawful* assessment of tax has been factually made on a tax-return FORM under Sections 6201 and 6020(b), and has been made properly, in the manner proscribed by, and as required under, law.

2.     The plaintiff United States is **blatantly defrauding** this court and the defendant.  The Plaintiff in answering the defendant's first *Motion to compel disclosure,* claimed in the reply that they have already provided the 6020(b) substitute for return SFR tax-return documents.  This is a **LIE** and a **FRAUDULENT** claim that the plaintiff is making in an attempt to *defraud* both the

1

defendant and the court itself.   Plaintiff has **not** turned over any tax-return forms for any tax-year and is improperly and unlawfully attempting to substitute documents that do **not** constitute actual tax-returns, in place of the statutory requirement under IRC 6020(b) to prepare and *subscribe* a true tax return.

3.     All of those actual tax-return documents are potentially *exculpatory* evidence in this case, which **must be turned over** to the defendant**,** that the plaintiff has thus far **failed** and refused to turn over and disclose to the defendant as required by *due process* at law, and the *Brady Rule*. They must either be turned over as the **only** *prima facie* evidence that exists, **or it must be admitted that the actual tax-return forms do not exist.**

4.     The landmark case of *Brady v. Maryland* set a crucial precedent for the doctrine on *exculpatory evidence,* also known as the *Brady Rule.*   The *Brady Rule* requires prosecutors to disclose to the defendant (defense) all information and material of an *exculpatory* nature, or of a **potentially** *exculpatory* nature, which is in the government's possession.   *Brady* material, or the evidence the prosecutor is required to disclose under this rule, includes any information favorable to the accused which may reduce a defendant's potential sentence, go against the credibility of an unfavorable witness, or otherwise allow a jury to **infer against** the defendant's guilt.

5.     An exculpatory statement or evidence is defined at law as "*a statement or other evidence which tends to justify excuse or clear the defendant from alleged fault or guilt. State v. Cobb, 2 Ariz.App. 71, 406, P.2d 421, 423. Declarations against declarant's interest which indicate that defendant is not responsible for crimes charged. U.S. v. Riley, C.A.Iowa 657 F.2d 1377, 1385. Evidence which extrinsically tends to establish defendant's innocence of crimes charged as differentiated from that which although favorable is merely collateral or impeaching. Com v. Jeter, 273 Pa.Super. 83, 416, A.2d 1100, 1102. For purposes of rule constraining state from disposing of potentially exculpatory evidence is evidence which clears or tends to clear accused person from alleged guilt. Gibson v. State, 110 Idaho 631, 718, P.2d 283, 285.*"

6.     As stated, the *Brady Rule* is now read as stipulating that the prosecution must disclose any potentially *exculpatory* **evidence** to the defense before trial in discovery, regardless of whether the defendant requests it.   This duty is breached **regardless** of whether that information is

withheld intentionally or **un**intentionally.  This rule aims to prevent miscarriages of justice by ensuring that all relevant evidence that may be potentially *exculpatory* is included in the plaintiff's required disclosures and can be presented at trial by the defense if necessary, and ultimately considered by the jury within its deliberations.

7.     A violation of the *Brady Rule* occurs if the prosecution fails to disclose evidence that could materially affect the outcome of the case.  If such a violation is proven after trial, it could lead to the reversal of a conviction on appeal.   Moreover, in the event that the prosecution deliberately or knowingly conceals *Brady* material, they could potentially face severe and serious sanction(s).

8.     Defendant now sees that **all** of the IRS Account Transcripts for year 1999 through 2005 **clearly** indicate that the IRS has allegedly prepared a substitute for return (SFR) tax-return document for the defendant under authority of IRC Section 6020(b) for those tax-years.   Again the IRS Account Transcripts serving as the plaintiff's submitted evidence, indicate this is true for **all** of the tax-years at issue in this criminal prosecution of the defendant by showing that the first *Transaction* posted to the official IRS *Account Transcript* for every tax-year in this litigation is entered as a "*150   Substitute tax return prepared by IRS*".  "150" is a transaction code indicating the nature of the transaction entered.

### The Absence of a "*Subscribed*" SFR Tax-Return is Exculpatory

9.     However, there were **NO actual** "*subscribed*" SFR tax-return documents that were included in the plaintiff's *discovery* release of documents to the defendant.   The **actual** substitute for return (SFR) tax-return documents are *Brady Rule* material and those documents **must themselves** be produced, disclosed, and provided to the defendant as part of the case *discovery* process as *potentially exculpatory* records and information, **or it must be admitted** by the plaintiff's attorneys **that they do not** in fact **exist at all.**   And if those required, "*subscribed*", SFR tax-return documents do **NOT exist**; - that of course would mean that there is **no** "*prima facie*" evidence, that is "*good and sufficient for all legal purposes*", that is *admissible* evidence of any **actual** formal assessment (by return) of assessed tax, that the defendant could have acted against in an effort or attempt to "*Evade and Defeat*" any tax, or to interfere with the collection thereof, thereby voiding Count 1 of the *Indictment* and *Complaint* under Section 7201.

10.   In place of the **actual,** *statutorily* **required,** "*subscribed*", SFR tax-return documents themselves, which are **required by law** to be "***subscribed***" under IRC Section 6020(b) in order to be "*prima facie good and sufficient for all legal purposes*" as evidence of a lawful assessment made under Section 6201, which **only** assesses "*Taxes shown on return*". The plaintiff United States has only disclosed and is **unlawfully** and **fraudulently** attempting to **substitute** in place of the actual "*subscribed*" tax-return documents themselves, what they are calling "*IRC Section 6020(b) Certification*" certificates, which are **NOT** tax-returns themselves and also do **not** satisfy the requirements of IRC Section 6020(b), and which only "contain" a *certification* of their own existence (really ?) and one other document, a Form 4549-A, an "*Income Tax Discrepancy Adjustments*" form that is also **NOT itself** a tax-return document, **nor** does it ***purport*** to be one as it is known to be an Internal IRS worksheet, not a formal tax-return as determined by IRS Revenue Ruling 2005-59 [Exhibit B].

11.   Furthermore, those ***fraudulently*** substituted *Certification* certificates have **also** not been **completely** disclosed to the defendant because the signature and date of the *Certification* document has been truncated, cut off, and removed from the disclosed version of the document, in an improper effort to unlawfully and prejudicially **conceal** potential *Brady* material from the defendant in the form of the names of those IRS persons (potential defense witnesses) who allegedly *certified* the ***fraudulent*** SFR *certification* documents, **even while it is admitted** by the plaintiff that there is **no actual tax-return** that is created, prepared or "*subscribed*" as **required** by law.   The plaintiff has also failed to disclose the dates upon which those *Section 6020(b) Certifications* were allegedly made.

### Form 4549-A Internal Worksheets are NOT Actual Tax Returns

12.   Furthermore, the 4549-A worksheets, that the plaintiff is unlawfully and fraudulently attempting to substitute for the actual *statutorily* **required** SFR tax-return forms, are entered onto the IRS *Account Transcripts* for the defendant's tax-years as a **distinctly different** and **separate** *transactions* than the  the SFR "creation" transaction **on every** *Account Transcript,* which (SFR transaction) is always the first transaction entry on every *Account Transcript* submitted by the plaintiff United States as their potential evidence at trial.   Additionally, the two documents, the SFR tax-return and the 4549-A worksheet, each have different *Transaction* dates as they were

entered at different times onto the *Account Transcript*, and therefore, plainly and clearly, **cannot be the same document.**

13.  IRC § 6201 is the code section providing the grant of statutory authority for the IRS to perform assessments for tax, including federal personal income tax.  The statute is quite clear about the scope, *nature*, and extent of that authority to lawfully make legal assessments.  It states:

> **§ 6201. Assessment authority**
>
> **(a) Authority of Secretary.**
> The Secretary is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title, or accruing under any former internal revenue law, **which have not been duly paid by stamp** at the time and in the manner provided by law.  Such authority **shall extend to** and include the following:
>
>> **(1) Taxes shown on return.**
>> The Secretary shall assess all taxes determined by the taxpayer or by the Secretary as to which returns or lists are made under this title.
>>
>> **(2) Unpaid taxes payable by stamp. ...**"

14.  This relevant part of this code section (shown above) plainly states that the legal authority to assess tax is an authority to **assess** "*Unpaid taxes payable by stamp*" and "*Taxes shown on return*".   Now, since virtually everyone in America knows that income taxes are **not paid by stamp,** it should be clear why a tax-return is necessary.  Because, according to this statute, **without** a tax return, that has been signed or "*subscribed*" under penalty of perjury as required under Section 6020(b)(2), as is required of **all** prepared tax-returns, the plaintiff, through its IRS, **cannot** legally assess any tax.  No "*subscribed*" (signed) tax return legally **means** that there is **no formal** assessment of any tax to evade or defeat.

15.  So, what happens if a tax return that is allegedly required from someone, is not voluntarily filed by that person, as with the defendant in this case?  Well of course, the statutes provide for that possibility as well under IRC Section 6020(b).  That IRC Section plainly and clearly states:

**§ 6020 - RETURNS PREPARED FOR OR EXECUTED BY SECRETARY**

...

**(b) EXECUTION OF RETURN BY SECRETARY**

**(1)AUTHORITY OF SECRETARY TO EXECUTE RETURN**
If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

**(2)STATUS OF RETURNS**
Any return so **made** and **subscribed** by the Secretary <u>shall be *prima facie* good and sufficient **for all legal purposes**</u>.

16.    This code section plainly provides that if a required tax-return is not prepared and filed by any person so required (allegedly), then the Secretary (or her authorized delegate) may prepare the tax-return, and upon being "*subscribed*", that signed tax-return becomes the **only** evidence that "*shall be prima facie good and sufficient for all legal purposes*" *as* the evidence of a lawful assessment of tax that has been properly made by the defendants under authority of these laws.

**ADMIT NON-EXISTENCE or PRODUCE the *"prima facie"* EVIDENCE**

17.    Therefore the **actual,** subject, substitute for return (SFR) tax-return documents now at issue in this incomplete *discovery* of *Brady* material, **must** be produced and disclosed as a function of *due process*, or, on the contrary, it must be admitted by the plaintiffs that those **actual**, "*subscribed*", tax-return documents **cannot** be produced at all, because they do **not** in fact **exist.** Those original SFR tax-return documents are yet to be disclosed to the defendant, and they are **required by law** to be so *disclosed* as *prepared* and "*subscribed*" tax-returns under IRC Section 6020(b) in order for there to be **any evidence at all,** that is "*prima facie good and sufficient for all legal purposes*", of a lawful and legal assessment of tax that has **actually** been made on a required tax-return.

6

18.    This *controlling* code section (§ 6020(b)) very plainly states that in order for the SFR documents, and the information contained on them, to meet the *statutory* based *evidentiary* standard set by this statute in subsection (b)(2), - *i.e.*: to be considered as "*prima facie good and sufficient* [evidence] *for all legal purposes*" in a court of law, and thus be admissible as ***the*** legal evidence of a **formal** and *lawful* assessment of tax under Section 6201, - it is **required by law** that the substitute tax-return (SFR) document be **both** "*made and **subscribed***".

19.    These *subscribed* SFR tax-return documents are documents that are absolutely potentially *exculpatory* to the defendant in both nature and detail, **especially so if they do not in fact exist,** and they therefore **must,** under the *Brady Rule,* be disclosed and provided to the defendant as part of the pre-trial *discovery* process, **or it must be admitted that they do not exist.**

20.    None of these Transcript-referenced SFR tax-return documents have yet been turned over to the defendant as of this date and time, and this trial **cannot** take lawfully place under the *Brady Rule* **until** those *potentially **exculpatory*** SFR assessment documents are produced, disclosed, and provided to the defendant as required under the *discovery* process.

21.    Upon examination of the evidence that has been disclosed, it is clear that the plaintiff United States has collectively committed **FRAUD** and **COMPUTER FRAUD** by **falsely** and ***fraudulently*** posting **fraudulent** "*Transaction*" entries, coded as "150" transactions within the IRS *Account Transcript* system of computerized records [Exhibits A1-A7], with respect to the defendant for tax-years 1999-2005, ***fraudulently*** **recording** that a substitute for return (SFR) tax-return document had been *made* and *subscribed* by an IRS employee, as is required by law under authority of IRC Sections 6201, 6020(b), and 6020(b)(2), in order for there to be made a lawful assessment of tax under those code sections using the substitute for return (SFR) authorities of Section 6020(b) to make the tax-return necessary for an assessment of tax under Section 6201.

22.    Defendant has now discovered that **NO** such SFR documents were ever **created, executed,** or ***subscribed,*** as required by law, for **any** of the tax-years at issue, by any IRS employee or other person.  The posting of these **false** and **fraudulent** *Transaction* entries into the IRS "*Account Transcript*" records system, positively ***fraudulently*** indicating that certain actions and acts that are **required by law** to be performed were done by IRS employees as required, when in fact **they were NOT done,** because **NO** IRS person **EVER** prepared any tax-return Form

at all, **nor** was any ever **prepared, executed, *made,*** or **subscribed** by any IRS employee as required by law under those code Sections. This **fraud** has **been admitted in writing** by the plaintiff United States in a congressional investigation into the SFR program [Exhibit C].

23.     The entry of a *Transaction* into the IRS *Account Transcript* records system*, allegedly* allegedly documenting the performance of an act that was **never** actually undertaken or performed, constitutes intentional **FRAUD** by **COMPUTER FRAUD** that has knowingly and ***intentionally*** been committed by the plaintiff United States, who intentionally **defrauded** their own IRS *Account Transcript* computer records system by **repeatedly** posting ***fraudulent*** code "150" SFR *Transactions* into the IRS *Account Transcript* records system, for multiple tax-years (1999-2005), allegedly recording the *making* of the required tax-return, in order to "enable" the IRS' automated enforcement system to have by ***fabrication*** a tax-return on file, and of "record", in order to allegedly justify the initiation of an alleged "*examination*" of that alleged tax-return document, by the IRS Examination Division, using an internal IRS worksheet, Form 4549-A containing the *Income Tax Discrepancy Adjustments* to be made to the original tax-return, which was **never** actually prepared or "***subscribed***", or formally created as required by law.

24.     Under IRC Section 6201, without a tax-return or substitute for return (SFR) document there is no "account", or accounting, to *examine*. There can be **NO** *examination* by the *Examination Division* of anything else except the tax-return that itself constitutes "the account" to be examined. Nothing else can legally occur*,* **because** the **only thing** that can **legally be** *examined* is the **actual** tax-return form that is serving *as* the account*.*

> **"The taxpayer return is considered the account**."
> Internal Revenue Manual Chapter 3, § 3(17)(46)1.2(10)(a).

25.     Subsequently, the results of the *fraudulently* engineered unlawful *examination* are recorded on an "*Income Tax Discrepancy Adjustments*" Form 4549-A, which is **not** a tax-return form and does **not** itself ***purport*** **to be** a tax-return Form or document, and is not a document that contains a ***jurat*** that is sworn to **under penalty of perjury**. Furthermore, the worksheets are **prohibited,** by **both** IRS rule and court precedent under IRS Revenue Ruling 2005-59 [Exhibit B], from being used as a tax-return document itself, as plainly and clearly **held in** *Beard v. Commissioner,* 82 T.C. 766, 777 (1984), aff'd, 793 F.2d 139 (6th Cir. 1986). In fact it plainly

8

states in the upper right hand corner of every page of the subject Form 4549-As that the *Adjustments* reported are for a "*Return Form No.: 1040*".

26.     So **where** is the actual, physical, ***subscribed*** tax-return document being *adjusted*?  It is required by law to exist under Sections 6201 and 6020(b) in order for the plaintiff to have made a lawful assessment of tax to enforce, or for the defendant to have unlawfully attempted to *evade or defeat*?  Again, without an actual tax-return document constituting a formal assessment of tax, the first Count of the *Indictment* and *Complaint* **fail.**

27.     In *Beard v. Commissioner* the court held: "In general, a document filed with the Service is treated as a return if the document: **(1)** contains **sufficient data to calculate** the tax *liability*; **(2)** **purports** **to be a return**; **(3)** represents an honest and reasonable attempt to satisfy the requirements of the tax law and **(4)** is ***executed*** **under penalties of perjury**. *Beard v. Commissioner,* 82 T.C. 766, 777 (1984), aff'd, 793 F.2d 139 (6th Cir. 1986) (citing *Badaracco v. Commissioner*, 464 U.S. 386, 984; *Zellerbach Paper Co v. Helvering*, 293 U.S. 172 (1934); and *Florsheim Bros. Drygoods Co. v. United States*, 280 U.S. 453 (1930)).

28.     So, it is clear, the Form 4549-As that are listed in the *IRC Section 6020(b) Certification* for every tax-year involved, are being wrongfully and unlawfully substituted and provided in place of the **required** tax-return documents themselves,  and they **cannot** be substituted as actual tax-return documents because they do **not** meet two of the required criteria necessary to be considered and relied upon as such return document because they do **not** purport **to be a tax-return** and they are **not** "*executed*" and "*subscribed*" with a jurat "*under penalties of perjury*", as held in *Beard, supra.*

### The Admitted IRS FRAUD is Routine and Intentional

29.     The **FRAUD** and **COMPUTER FRAUD** are actually **proven** as **intentional** acts by the General Accounting Office's report letter to Senator Daniel Moyniham, dated February 17th, 2000 [Exhibit C], wherein the  plaintiff United States **openly admits** that **no** actual  tax-return form or document is **executed** within the SFR program procedures, and that **NO** tax-return Forms are **ever** actually **prepared or executed** within the IRS' SFR program process and procedures.  This

is a clear admission of **criminal fraud** being routinely perpetrated by the plaintiff within the IRS SFR program, as the *execution* and *subscription* of a physical return is **required by law** under IRC Section 6020(b) and (b)(2), and the actual tax-return document is an absolutely essential element in *making* a legal and enforceable assessment for tax under the controlling IRC Sections 6201 and 6020(b).

30.     The **fraud** by **computer fraud** is perpetrated in the following manner, where the authority of Section 6020(b), to prepare, *make* and *subscribe* a *substitute for return* tax-return document is **blatantly** and intentionally **violated** through the plaintiff's **failure** and **refusal** to actually do what is **required by the law**, *i.e.*: they have **failed** to create, prepare, make, and "*subscribe*" any *substitute for return* documents, or any *actual* document at all, as required by law under Section 6020(b)(2) in order to be able to "*subscribe*" that *actual* document, as required by Section 6020(b)(2).  No signed tax return means that there is no formal assessment of tax, which means that there is no lawful tax to *evade* or *defeat*.

31.     However, in reality, **no** SFR document is ever actually created by any of plaintiff's IRS employees.  **This has been admitted in writing** in the Exhibited GAO letter to Senator Daniel P. Moynihan [Exhibit C].  The plaintiff's IRS employees are simply routinely **defrauding** the IRS computer system, and *We the American People*, as a standard method of operation (MOO) by entering a **false** "*Transaction*" on an "*Account Transcript*", with a "DATE", and an "AMOUNT" of $0.00 (as the amount of tax due), that **falsely** indicates that an SFR document was created, **when it was not**.  And, the **false** and **fraudulent** *Transaction,* of entering a ***frivolous* zero-return** in order to **trigger** an alleged *examination* of a **non-existent** tax-return that has **never** been *made, subscribed,* or *filed*, is patently **fraudulent**, and does not actually record the creation of any SFR tax-return documents that are **actually** created as required by law.

32.     And, because **none** are ***actually*** created, as that would be *factual* **evidence of a** *frivolous* return being filed by an IRS employee, there is no lawful or legal assessment of tax that has ever been made for any of the tax-years involved in this dispute.   The IRS computer "system" is simply *defrauded* when it is "told" by the "150" *transaction* that an SFR tax-return document was created, *made,* and "*subscribed*", when **none** of those *statutorily* **required** acts actually occurred,

in a **blatantly** *fraudulent* act of *computer fraud* committed in **blatant** and patent **violation** of the statutes.

33.     This  blatant and systematic violation of law by the plaintiff has wrongfully become the routine method of operation utilized by the plaintiff United States to *fraudulently* claim that tax has been assessed via an IRS substitute for return (SFR) document "filing" made under authority of IRC Section 6020(b)(2), but for which alleged "filing", it is admitted by plaintiff there is **no actual** tax-return document that is prepared, created, or that exists, or that is "*subscribed*", **as is required by law** thereunder.  This constitutes *fraud* by *computer fraud* that has been perpetrated by the plaintiff against the defendant and other Americans, with huge civil monetary damages and consequences accruing to defendant-in-error Ken Cromar as a direct result of the *fraud* and *computer fraud* intentionally committed by the plaintiff as their standard method of operation to illegally corral and extort non-filers of  a form 1040, which cannot be shown in law or regulation to be **the** Form that is required at law to be filed by American citizens.

34.     As a result, the <u>*statutorily* **required**</u> "*subscribed*" SFR  documents, that are required to exist and be signed ("*subscribed*") under IRC Sections 6020(b) and 6020(b)(2), and upon which all further *lawful* enforcement and collection of tax is legally *predicated* under the statutes, **cannot** be  produced  by  the  plaintiff, **BECAUSE** the physically existent, *subscribed* SFR documents **DO NOT EXIST**.   But they are **required BY LAW** to **factually exist** in order to be valid evidence of a legal assessment under Section 6201 that is "*prima facie good and sufficient for all legal purposes*" under IRC Sections 6020(b) and 6020(b)(2),

35.     The **<u>inability</u>** of the plaintiff to produce **any** of the *statutorily* required documents that are the **actual** "*subscribed*" SFR tax-return documents, for any tax-year, as **required** by law in order to have *prima facie* evidence of legal assessment for tax under Sections 6201 and 6020, together with the official IRS *Account Transcripts* for the affected tax-years alleging such SFR documents do exist, is **sufficient** *factual* evidence in and of itself to prove to a jury of impartial citizens that criminal **FRAUD** and **COMPUTER FRAUD** have **both** been **repeatedly** and  routinely, knowingly and **intentionally**, committed by the plaintiff as their standard *method of operation* (MOO) now, in blatant **violation** of the applicable statutes as shown and the federal laws criminalizing *fraud* and *computer fraud.*

36.     But again, now, in place of the actual "*subscribed*" SFR tax-return documents themselves, the plaintiff has only disclosed, produced, and submitted what the plaintiff is calling "*IRC Section 6020(b) Certification*" certificates, which again, are **not** tax returns themselves, and which only "contain" a *certification* of other documents that are also **not** tax returns; do **not** *purport* to be tax-returns; and are not signed with a jurat as **required** of **all** prepared tax-returns inorder to be considered as a *tax-return*; by the swearing of, under **penalty of perjury,** the truthfulness of the alleged *certification*.   The 6020(b) "Certification" documents provided, thus do **not** satisfy the evidentiary standard of 6020(b)(2) where a "*subscribed*" tax return document is **required** in order to constitute an assessment for tax under Sections 6201 and 6020(b) that is "*prima facie*" evidence that is "*good and sufficient for all legal purposes*" as evidence of a lawful assessment made under authority of those code sections on an actual tax-return document, as **held** and **defined** under *Beard v. Commissioner,* 82 T.C. 766, 777 (1984), aff'd, 793 F.2d 139 (6th Cir. 1986), *supra.*

37.     Again, in *Beard* the court held: "In general, a document filed with the Service is treated as a return if the document: (1) contains **sufficient data to calculate the tax liability**; (2) purports **to be a return**; (3) represents an honest and reasonable attempt to satisfy the requirements of the tax law and (4) is **executed under penalties of perjury**. *Beard v. Commissioner,* 82 T.C. 766, 777 (1984), aff'd, 793 F.2d 139 (6th Cir. 1986) (citing *Badaracco v. Commissioner*, 464 U.S. 386, 984; *Zellerbach Paper Co v. Helvering*, 293 U.S. 172 (1934); and *Florsheim Bros. Drygoods Co. v. United States*, 280 U.S. 453 (1930)).

38.     The 4549-A *Income Tax Discrepancy and Adjustments* document does **not** purport to be a tax return form, and the 4549-A documents have been determined by IRS Revenue Ruling 2005-59 to **NOT be** a tax-return Form or document [Exhibit B].

39.     Furthermore, Form 4549-A plainly states in the upper right hand corner of every page within it, that it relates to *Discrepancies and Adjustments* made to a "*Form No.: 1040*". So where is the original tax-return document Form 1040 that was *adjusted* by the *examination*? The official IRS *Account Transcript* clearly indicates that they were allegedly made and *subscribed* as refelected by the code "150" SFR *Transaction* shown thereupon.

40.     However, the "Date" of the Form 4549-A *Adjustments* does not match the "DATE" of the "150" (SFR created by IRS) *Transaction* entry, on the official IRS *Account Transcript Transaction* record for the SFR transaction, **for any tax-year** involved in this dispute.   The recorded *Transaction* "DATE" does **not** match the Form "Date", clearly indicating that the Form 4549-A is **not** the SFR document referred to by the "150" - SFR *Transaction* entry. Thus Form 4549-A **cannot** be construed to be serving as, **nor** can it lawfully be used as,   the SFR tax-return document itself; - **nor** is it a proper or *legal* substitute for it.

41.     And the "Date" of the "*IRC Section 6020(b) Certification*" **also** does **not** match the "DATE" of the "150" (SFR created by IRS) *Transaction* entry, on the official IRS *Account Transcript Transaction* record for the SFR transaction, in any tax-year.   The recorded *Transaction* "DATE" does **not** match the *Certification* "Date", clearly indicating that the "*IRC Section 6020(b) Certification*" certificate is **not** the original SFR document referred to by the "*150   Substitute tax return prepared by IRS*" transaction entry.   Thus the "*IRC Section 6020(b) Certification*" also **cannot** be construed to be serving as, **nor** can it be *lawfully* **used** as, **or <u>in place of,</u>** the SFR tax-return document itself, as is wrongfully being attempted by the plaintiff United States in this criminla prosecution of the defendant.

### Law Requires an Actual  SFR Tax-Return Document to Exist

42.     An actual, "*subscribed*", SFR tax-return document, *made* and *subscribed* under authority of IRC Section 6020(b) and (b)(2), is **required by law** to **exist** in order for there to be, and to make, a lawful assessment of tax under Section 6201.   It is also **required** by statute in order for the assessment made, to be "*prima facie good and sufficient for all legal purposes*" as evidence of an assessment, as plainly and clearly stated in IRC Section 6020(b)(2).   **Without** an actual SFR tax-return document, **no** assessment of tax can be lawfully made.

43.     The intentional entry by the plaintiff of the ***fraudulent*** code "*150   Substitute tax return prepared by IRS*" transaction, **constitutes** knowing and intentional ***fraud*** by ***computer fraud*** that has been repeatedly **committed** by the defendants in every tax-year *Account Transcipt* submitted as alleged evidence of an assessment in every tax-year at issue, **that never occurred.**

44.     There is **no** SFR tax-return document that can be produced as *prima facie* evidence that bears the Transaction "DATE" shown on the IRS *Account Transcript* for those SFR transactions, in any evidenced tax year, because the plaintiff has **admitted in writing** in a GAO letter to Senator Moyniham [Exhibit C], and in testimony given on Capitol Hill, that *"even though the program is commonly referred to as the SFR program, **NO actual tax return is prepared**."*

A <strong><em>Fatal</em></strong> Admission: <em>"NO actual tax return is prepared"</em>

45.     *"**NO actual tax return is prepared**."* This admission is ***FATAL*** to the plaintiff's charges and, in fact, it is *fatal* to their entire case against Defendant Cromar, as it exposes the fact that the charges were ***unlawfully*** *engineered* and *manufactured* **by the plaintiff** in **criminal** manner utilizing only *fraud* and ***computer fraud***, not law.

46.     In the exhibited letter, dated February 17th, 2000, from the General Accounting Offices (GAO) to Senator Daniel Moynihan, the GAO Associate Director at the time wrote in the last paragraph of page two: *"We requested comments on a draft of this letter from the Commissioner of Internal Revenue or his designee ... Customer Service Division official commented on the phrase 'Substitute for Return'.  **They asked us to emphasize** that even though the program is commonly referred to as the SFR program, **no actual tax return is prepared**."* Again, the IRS **wanted it _emphasized_** that:

## "No actual tax return is prepared."

47.     This admission by the IRS, that **no** *"substitute for return"* documents are ever actually created under the IRS' SFR program, exposes the blatant ***fraud*** and ***computer fraud*** that is being routinely utilized within the IRS' SFR program to falsely charge Americans with tax crimes, and it is *fatal* to the plaintiff's claims that lawful and enforceable assessments of tax exist sufficient to justify the criminal prosecution of the defendant for allegedly attempting to *"evade"* or *"defeat"* some tax, because in order show an ***enforceable*** assessment of tax under Sections 6201 and 6020(b)(2), it is required that any *substitute for return* document that is alleged to exist, be *"subscribed"* and placed into evidence in order to be considered and used as *"prima facie"*

14

evidence of an assessed tax amount, that is *"good and sufficient for all legal purposes"*, sufficient to evidence and support criminal charges against an individual defendant.

48.     If **no** *substitute for return* (SFR) document is ever actually created or prepared, that would certainly seem to raise the reasonable question at law of: "How is a *substitute for return* document being *subscribed* as required by law under Section 6020(b)(2), if it **does NOT even exist** in factual reality? And then, of course: "Where then, is there any evidence that is, or can be considered as, *"prima facie"* evidence that is *"good and sufficient for all legal purposes"*?   The answers of course are obvious: "The SFR documents are **not** being *"subscribed"* as required by law, because the alleged *substitute for return* document does **not** exist." So there is **no** legitimate *prima facie* evidence of any lawful assessment of tax, that is *"good and sufficient for all legal purposes"*, to evade or defeat under the charging code section, § 7201.

49.     So it is **admitted** to Congress by the plaintiff that the *statutorily required* acts of *making* and *subscribing* an SFR tax-return document **never actually occurs**, but it is never-the-less *fraudulently* recorded within the plaintiff's IRS computer *Account Transcript* transactions records system **as though** it had occurred, when **it did not**. This is **blatant** criminal *fraud* and *computer fraud* that is routinely unlawfully utilized by the defendants to *defraud* the defendants, the judges, and the courts themselves, both the district courts and the U.S. Circuit Courts of Appeals as well, into first, wrongfully *ordering* the defendant's home and property seized and sold at auction by a court that *lacked* the *subject-matter jurisdiction* to so act, and **now,** to criminally prosecute the defendant for an alleged attempt to *"evade"* or *"defeat"* some tax for which there is **no** formal, lawful *assessment* of tax on any tax-return form.

50.     The *FRAUD* and *COMPUTER FRAUD* that has been, and is being, committed by the plaintiff United States in the *name of tax* **only**, with respect to the *lack* of the *factual* existence of any real and true, *subscribed,* SFR tax-return documents, is both now **evident** and **admitted in writing** by the plaintiff in the Exhibited GAO Report to Senator Daniel Moyniham**.**

**PRAYER for PRODUCTION of the**

**ONLY *"prima facie eficence good and sufficient for all legal purposes"***

51.   Therefore, defendant Cromar again *moves* this court to now compel the plaintiff United States by *Order of the Court* to both **produce** and **disclose** the actual *subscribed* SFR tax-return documents, that are alleged to exist through the official IRS *Account Transcripts* by the "DATE" shown on each of those transactions*,* which SFR tax-return documents are absolutely potentially *exculpatory* to the defendant, in both nature and detail.   And that is *especially* true if they do **not** in fact **even exist.**  The plaintiff therefore **must,** under the *Brady Rule,* disclosed and provide to the defendant those tax-return documents as part of the pre-trial *discovery* process, **or it must be admitted** by plaintiff's counsel, since it has already been admitted by the plaintiff itself, **that** those **required, *subscribed*,** SFR documents **do not exist.**

Presented in honor in the year of our Lord and in His name the 3rd day of June, 2024.

Paul-Kenneth: Cromar
As per docket #25 of September 27, 2023 "I elect to proceed under Constitutional Common Law."

**Exhibits**

A. Government Exhibits 114-120 [Exhibits A1-A7]: official IRS *Account Transcripts* for tax-years 1999-2005
B. IRS Revenue Ruling 2005-59
C. GAO report letter on SFR program to Senator Daniel Moyniham, dated February 17th, 2000

CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of June, 2024, I personally placed in the United States Mail to the individuals named below a true and correct copy of **Defendant's Objection and 2nd Motion to Compel Disclosure of the Original SFR Tax Return Documents**

TRINA A. HIGGINS
PATRICK BURNS
MEREDITH M. HAVEKOST
Attorneys of the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111


Raland Brunson

# EXHIBIT B

**Revenue Rulings**

**Rev. Rul. 2005-59, 2005-37 IRB, 08/22/2005, IRC Sec(s).**

## Headnote:

*Reference(s):*

## Full Text:

**Issues**

1. Are documents made by the Internal Revenue Service, as authorized under section 6020(b) of the Internal Revenue Code, joint returns of income tax for the husband and wife?

2. Is a document prepared by the Service under section 6020(a) and executed by a husband and wife a joint return of income tax for the husband and wife?

3. Is a Form 870 prepared by the Service and executed by a husband and wife a joint return of income tax for the husband and wife?

**Situation 1**

Taxpayers, husband and wife, failed to file a return for the 1999 tax year. A revenue agent was assigned to secure the return. The taxpayers did not provide the revenue agent all information necessary for the preparation of the return. The revenue agent made separate returns using information from other sources using tax rates applicable to married individuals filing separate returns. The taxpayers did not sign the documents made by the revenue agent.

**Situation 2**

The taxpayers, husband and wife, failed to file a return for the 1999 tax year. A revenue agent was assigned to secure the return. The taxpayers provided the revenue agent with all information necessary for the preparation of the return and expressed their intention to file a joint return. The revenue agent prepared a joint return using the information provided by the taxpayers. The taxpayers signed the joint return prepared by the revenue agent under penalties of perjury.

**Situation 3**

The taxpayers, husband and wife, failed to file a return for the 1999 tax year. A revenue agent was assigned to secure the return. The taxpayers did not provide the revenue agent

all information necessary for the preparation of the return. The revenue agent did not prepare a joint return and instead prepared a Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, and the taxpayers consented to the immediate assessment of taxes for the 1999 tax year by signing the Form 870. Form 870 is not verified by a written declaration that it is made under the penalties of perjury.

**Law**

In general, a document filed with the Service is treated as a return if the document: (1) contains sufficient data to calculate the tax liability; (2) purports to be a return; (3) represents an honest and reasonable attempt to satisfy the requirements of the tax law; and (4) is executed under penalties of perjury. Beard v. Commissioner, 82 T.C. 766, 777 (1984), aff'd, 793 F.2d 139 (6th Cir. 1986) (citing Badaracco v. Commissioner, 464 U.S. 386 (1984); Zellerbach Paper Co v. Helvering, 293 U.S. 172 (1934); and Florsheim Bros. Drygoods Co. v. United States, 280 U.S. 453 (1930)).

Section 6013 generally authorizes a husband and wife to make a single return jointly of income tax. Section 1.6013-1(a)(1) of the Income Tax Regulations provides that a husband and wife may elect to make a joint return. Taxpayers must make an election to make a joint return on a validly filed return.

Section 6020(a) authorizes the Secretary to prepare a return for a taxpayer who fails to make and file a return if the taxpayer discloses all information necessary for the preparation of the return. If the taxpayer signs the return prepared by the Secretary, the return may be received as the taxpayer's return.

If a taxpayer fails to make a return, or makes a false or fraudulent return, section 6020(b) authorizes the Secretary to make a return from his own knowledge and from such information as he can obtain through testimony or otherwise.

Section 6065 requires that a return "shall contain or be verified by a written declaration that it is made under the penalties of perjury."

Joint return filing status under section 6013(a) is predicated on the husband and wife making an election and intending to file a joint return. Accordingly, the Service may not elect joint filing status on behalf of taxpayers in a return it prepares and signs under the authority of section 6020(b). See Millsap v. Commissioner, 91 T.C. 926 (1988), acq. in result, 1991-2 C.B. 1 (filing status used by IRS in preparing return under section 6020(b) does not bind taxpayers in later deficiency proceeding).

**Analysis**

**Situation 1**

In Situation 1, the documents made by the revenue agent under the authority of section 6020(b) are not returns of income tax filed by the husband and wife for purposes of section 6013 because they did not sign the returns under penalties of perjury. The documents made by the revenue agent under the authority of section 6020(b) also do not constitute valid elections to file a joint return under section 6013.

**Situation 2**

In Situation 2, the document prepared by the revenue agent under the authority of section 6020(a) was signed by the husband and wife under penalties of perjury. The section 6020(a) document (1) contains sufficient data to calculate the tax liability, (2) purports to be a return, (3) represents an honest and reasonable attempt to satisfy the requirements of the tax law, and (4) is executed under penalties of perjury. The section 6020(a) document, therefore, constitutes a valid return under the four-part <u>Beard</u> test and, because it is signed by both the husband and wife, it is a joint return of income tax for purposes of section 6013.

**Situation 3**

A Form 870, although signed by both husband and wife, is not verified by a written declaration that it is made under the penalties of perjury. A Form 870 is not a return under the <u>Beard</u> test because it does not purport to be a return and it is not signed under penalties of perjury as required by section 6065. <u>Beard</u>, 82 T.C. at 777.

In Rev. Rul. 74-203, 1974-1 C.B. 330, the Service determined that a Form 870 signed by taxpayers, husband and wife, was a return of the taxpayers for purposes of section 6020(a) and a valid election to file a joint return under section 6013. Rev. Rul. 74-203 is inconsistent with <u>Beard</u> and the cases cited therein on what constitutes a valid return, because a Form 870 does not purport to be a return and is not executed under penalties of perjury.

**Holdings**

<u>ISSUE 1</u>. Documents made under the authority of section 6020(b) that are not signed by the taxpayers under penalties of perjury are not returns filed by the taxpayers for purposes of section 6013 and are not valid elections to file a joint return.

<u>ISSUE 2</u>. A document prepared by the Service under the authority of section 6020(a) that is signed by the taxpayers under penalties of perjury is a return of the taxpayers for purposes of section 6013 and constitutes a valid election to file a joint return.

<u>ISSUE 3</u>. A Form 870, which includes a waiver signed by the taxpayers, is not a return filed by the taxpayers for purposes of section 6013 and does not constitute a valid election to file a joint return. This holding also applies to Form 1902, Report of Individual Income Tax Audit Changes (obsoleted 1988), and Form 4549, Income Tax Examination Changes, and any successor forms to these forms.

**Effect On Other Documents**

Rev. Rul. 74-203 is revoked. A Form 870 signed by taxpayers, husband and wife, is not a return under section 6020(a) and it is not an election to file a joint return under section 6013. This holding also applies to Form 1902, Report of Individual Income Tax Audit Changes (obsoleted 1988), and Form 4549, Income Tax Examination Changes, and any successor forms to these forms, because these documents do not purport to be returns and do not contain a jurat with a penalties of perjury clause.

**Drafting Information**

The principal author of this revenue ruling is Michael E. Hara of the Office of Associate Chief Counsel (Procedure & Administration). For further information regarding this revenue ruling, contact Michael E. Hara on (202) 622-4910 (not a toll-free call).

Document Title: Rev. Rul. 2005-59, 2005-37 IRB, 08/22/2005
Checkpoint Source: Revenue Rulings (1954 - Present)

© Copyright 2005 RIA. All rights reserved.

# EXHIBIT C



**G A O**
Accountability • Integrity • Reliability

United States General Accounting Office                    General Government Division
Washington, D.C. 20548

B-284524

February 17, 2000

The Honorable Daniel P. Moynihan
Ranking Minority Member
Committee on Finance
United States Senate

Subject: Internal Revenue Service: Preparing Substitute for Returns for Individuals

Dear Senator Moynihan:

On November 22, 1999, we briefed your office about the Substitute for Return (SFR) program at the Internal Revenue Service (IRS). In accordance with statutory authority granted to the Secretary of the Treasury and his designees, IRS prepares a substitute for return for individuals who do not appear to have filed a required tax return (i.e., potential nonfilers). IRS prepares these substitute for returns using information maintained in IRS' computer files.[1]

This letter summarizes the points we made at the briefing and answers six questions raised by your office. To prepare the briefing, we used information about nonfilers and the SFR program that we had collected during previous work. To answer questions raised at the briefing, we interviewed responsible IRS officials in the Customer Service and Collection Divisions at the National Office. We also reviewed related IRS documents. We did our work in Washington, D.C., and New Carrollton, Maryland, from November 1999 through January 2000 in accordance with generally accepted government auditing standards.

## Results in Brief

As discussed at the briefing, IRS prepares a substitute for return for certain individuals classified as potential nonfilers for whom (1) it has what it considers to be adequate information about income and (2) the estimated tax liability is at or above a certain level. IRS receives this income information from third parties, such as banks and employers, who make payments to individuals. IRS believes that potential nonfilers who receive a substitute for return will be encouraged to respond by either filing a more accurate return or showing that they have no filing requirement. IRS is to give the potential nonfilers up to two chances to

---

[1]In its response to this letter, IRS officials indicated that they do not generally prepare actual tax returns. Instead, they said IRS prepares substitute documents that propose assessments. Although IRS and legislation refer to this as the substitute for return program, these officials said that the document does not look like an actual tax return.

B-284524

respond to information showing the proposed amount of the substitute for return. If these individuals do not respond, IRS is to assess the tax shown on the substitute for return and seek payment of the balance due through its regular collection process. Enclosure I contains more detailed information about these and other points made at the briefing.

In response to questions raised at the briefing:

- IRS can contact potential nonfilers who are not selected for the SFR program to solicit a tax return. These contacts can be made through telephone calls or visits by IRS staff.
- IRS has a few criteria to guide decisions on whether to create a substitute for return through automated or manual means. IRS is to use the automated method rather than the manual method when the sources of income are less complex, such as when they have little or no self-employment income from business activities. The automated method accounts for most substitute for returns.
- When preparing a substitute for return, IRS allows for a filing status of either "single" or, if the most recently filed return showed the taxpayer as married, "married filing separately." According to IRS officials, IRS has always allowed for only these two filing status claims on a substitute for return. IRS cannot use "married filing jointly" because the tax law only allows this filing status when taxpayers elect to use it upon filing a tax return.
- IRS rarely receives information other than income information from third parties in preparing a substitute for return.
- A balance-due account created from a substitute for return has no special priority over those created through other means. IRS is to use the same formula to set collection priorities for all types of accounts that involve the collection of unpaid assessments from individuals.
- IRS does not routinely collect data on the costs to prepare and process substitute for returns and on the impacts of the SFR program on compliance. For example, IRS does not collect data on whether the taxpayer files for future tax years. IRS does track the number of substitute for returns and whether the taxpayer responds to the notice on the related tax, penalty, and interest assessments.

Enclosure II responds to these questions in more detail.

## Agency Comments

We requested comments on a draft of this letter from the Commissioner of Internal Revenue or his designee. On February 9, 2000, we received comments from responsible IRS officials in the Examination and Customer Service Divisions. Although the Examination Division said it had no comments, Customer Service Division officials commented on the phrase "Substitute for Return." They asked us to emphasize that even though the program is commonly referred to as the SFR program, no actual tax return is prepared. Instead, these officials noted that IRS prepares a document that substitutes for the return and that proposes an assessment, which

NO ACTUAL TAX RETURN IS PREPARED !

·

B-284524

> Under what statutory authority is a "proposed assessment" simply "posted to the taxpayer's account" without a subscribed signature ?

is posted to the taxpayer's account and is subject to the collection process. We added a footnote to the letter to explain this and revised references in the draft to clarify this point.

Unless you publicly announce its contents earlier, we plan no further distribution of this letter until 15 days after its date. We will then send copies to Senator William V. Roth, Jr., Chairman, Committee on Finance, and Representatives William Archer, Chairman, and Charles B. Rangel, Ranking Minority Member, House Committee on Ways and Means. We also will send copies to the Honorable Lawrence H. Summers, Secretary of the Treasury; the Honorable Charles O. Rossotti, Commissioner of Internal Revenue; and other interested parties.

A key contributor to this report was Louis Roberts. If you have any questions, please contact me or Tom Short on (202) 512-9110.

Sincerely yours,

*Cornelia M. Ashby*

Cornelia M. Ashby
Associate Director, Tax Policy and
   Administration Issues