Paul-Kenneth: Cromar, ID #567164
Davis County Jail
800 West State Street
P.O. Box 618
Farmington, Utah 84025-0618
Phone: 801-451-4100

FILED US District Court-UT
JUN 03 '24 AM08:42

[Pro Se] *sui juris*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,**<br><br>v.<br><br>**Ken Cromar,**<br>**Defendant.** | **CASE NO.: 2:23-cr-159**<br><br>**Defendant's**<br>**Motion for a Directed Verdict**<br>**or Judgment of Acquittal**<br>**on Counts 2 and 3** |

## Defendant's Motion for a Directed Verdict or Judgment of Acquittal on Counts 2 and 3

1.　　Comes now, Ken Cromar, Defendant, *pro se,* who hereby moves this court under the Federal Rules of Criminal Procedure, Rule 29, for a *Directed Verdict* of **not** guilty or a *Judgment of Acquittal* on *Counts* 2 and 3 of the *Indictment* and *Complaint,* charging the defendant under authority of Title 26 U.S.C. Sections 7212(a) – *Corrupt or Forcible Interference,* and 7212(b) - *Forcible and Attempted Rescue of Seized Property.* This *Motion* is made because, by the undisputed facts of the case that were confirmed by the testimony at trial of the prosecution's own witness, Auctioneer Gary Chapman, the facts of the case are not facts that are addressed by the language of the charging statutes as facts that constitute a violation of those statutes because the *specifically* Title 26 criminal statutes have been *erroneously* argued and **misapplied** by the plaintiff to the **Title 28** facts and circumstances of this case, as admitted by Mr. Chapman.

2.     Because the legal administrative process to *seize* and *sell* the defendant's home and property, that the defendant is accused of interfering with, **actually occurred** under authority of the district court's *ordered* enforcement of a *judgment* that was rendered and enforced by the district court under authority of **Title 28** statutes, and **not** by the IRS under <u>Title 26</u> laws, which are *specifically* **required** by **each** of the two charging statutes.  Therefore, the charging statutes **do not apply**.    Specifically, they **do not apply** because the *seizure* of the home was made by the U.S. Marshalls under an *Order* of the court to do so, and was **not** *seized* by any IRS employee, operating under authority of any Title 26 code section, and specifically **not** Sections 6331 – *Levy and Distraint,* or 6335 – *Sale of Seized Property*, for lack of any IRS *Notice of Levy* or *Notice of Seizure* as required under those code sections to authorize such *seizure* and *sale* actions under Title 26 statutes, as **required** by the charging statutes.

## Count 2 of the *Indictment* and *Complaint*, Title 26 Section 7212(a)

3.     To begin, the statute cited by the plaintiff as the statutory foundation for *Count* 2 of the *Indictment* and *Complaint*, Title 26 Section 7212(a), plainly and clearly states:

### § 7212 - Attempts to interfere with administration of internal revenue laws

**(a) Corrupt or forcible interference**

Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States **acting** in an official capacity **under this title**, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, **the due administration of this title**, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both, except that if the offense is committed only by threats of force, the person convicted thereof shall be fined not more than $3,000, or imprisoned not more than 1 year, or both. The term "threats of force", as used in this subsection, means threats of bodily harm to the officer or employee of the United States or to a member of his family.

4.     This statute, in Title 26 of the United States Code (U.S.C.) plainly states: "*Whoever ... endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity <u>under this title</u> ... or endeavors to obstruct or impede, the **due <u>administration</u>***

*of this title, shall, upon conviction thereof ...*".  The "Title" referred to in this code section is, of course, the Title that the code sections are contained in, which is **Title 26** of the United States Code.  So, if a person interferes with the administration of the **Title 26 statutes**, they are subject to the criminal charges and potential penalties of Section 7212(a) and 7212(b).

5.      However, in this case, defendant Ken Cromar is accused of allegedly attempting to interfere with the administration of a Title **28**, court ordered *seizure* and *sale* process, *i.e.*: a court *ordered seizure* and *sale* which was **all** conducted under the *judicial* authorities of **Title 28**, Sections 2001 and 2002, which **are outside** of Title 26; - and the sale process was completed **without** the *use of*, or *reliance upon*, any Title **26** statute or law.

6.      Therefore this criminal statute (§§ 7212(a)) does **not** apply to the facts of the case, and therefore the charge and *Count* (2) brought under this statute **must** be *foreclosed* by the court at this time by a *directed verdict* or a *judgment of acquittal* over this *Count* and criminal charge, because the statute does **not** apply to an alleged interference of the enforcement or administration of Title **28** statutory authorities, or of the *Orders of the Court* issued under the Title 28 authority, **only Title 26**, which was *factually* **not involved** in either the sale of the home, or its *seizure* by the U.S. Marshall's which was authorized under *Orders of the Court*, **not** any statute of Title 26.    Title 26 was not **involved** in the *seizure* or the *sale* of the defendant's home and property.

7.      And the testimony heard in court at trial from Gary Chapman, factually confirms that **Title 28** was indeed the **source** of the legal authority for the *judicially* ordered *seizure* and *sale* of the defendant's property; - and that there were **no** Title 26 statutes involved in the U.S. Marshall Service's enforcement of the court's *Orders*.  *Factually*, there was **no** IRS employee involvement under Title 26, in those Title **28** *seizure* and *sale* actions and process, because it was conducted under authority of the Title 28 statutes; - and there was **no** IRS *levy* or *seizure* action that was authorized or that occurred under authority of Title 26. The charging statute **does not apply** to the Title 28 facts of the case.   Count 2 therefore requires a *directed verdict* of **not** guilty, or a *judgment of acquittal*, at this time.

## Count 3 of the *Indictment* and *Complaint*, Title 26 Section 7212(b)

8.  Next, the statute cited by the plaintiff as the statutory foundation for *Count* 3 of the *Indictment* and *Complaint*, Title 26 Section 7212(b), similarly plainly states:

> **§ 7212 - Attempts to interfere with administration of internal revenue laws**
> ...
> **(b) FORCIBLE AND ATTEMPTED RESCUE OF SEIZED PROPERTY**
>
> Any person who forcibly rescues or causes to be rescued any property after it shall have been **seized under this title,** or shall attempt or endeavor so to do, shall, excepting in cases otherwise provided for, for every such offense, be fined not more than $500, or not more than double the value of the property so rescued, whichever is the greater, or be imprisoned not more than 2 years.

9.  This charging statute says that it is a crime for any person to "*rescue or cause to be rescued, any property after it shall have **been seized under this title***".   However, in order for property to have been "*seized under this title*", it would have to have been *seized* under authority of the statutes contained in this Title, which is **again, Title 26.**   But the Title 26 statutes under which such a *seizure* could be made are Section 6331 – *Levy and Distraint,* and 6335 – *Sale of Seized Property*, which would **both** require **either** an IRS *Notice of Levy* issued under authority of Section 6331(a), or a *Notice of Seizure* issued under authority of Section 6335(a).   No such documents are evidenced on the record of the action in the court to support a claim that the *seizure* and *sale* of the home was an IRS, Title 26, enforcement action.

10.  Of course, that is because in this instant case there has **never** been a *seizure* of any property that has been made under **Title 26** that would make this criminal statute applicable within this criminal prosecution of the defendant.   A "*seizure*" of property under Title 26 is made by IRS levy under Section 6331 using a *Notice of Levy,* or under Section 6335 using a *Notice of Seizure*. But there was **no** IRS levy, **nor** any other *seizure* type action that was conducted under authority of Title 26, that is, or ever was, factually involved in this dispute, or done, - going to well past the statute of limitations of 6 years under Section 6351.

11.  There is **no** Title 26 *seizure* that was **ever** made in this dispute history, which could then make the charging statutes relied upon for *Counts* 2 and 3 applicable to the defendant's

conduct, which all occurred within a process authorized under **Title 28** that was *judicially ordered* and which was **not** conducted under any Title 26 authorities.

12.      Furthermore, it was entirely ***disingenuous*** and <u>**actually *fraudulent***</u> for the prosecution to have misrepresented the nature of Section 7403 to the jury in his closing arguments by holding up a small slip of paper from the *Indictment* or *Complaint* showing Section 7403, - claiming it was the Title 26 authority under which the seizure and sale of the property was conducted. However, that statue does **not** authorize the *seizure* or *sale* of anything, it simply authorizes the United State to file suit in the district court to purse judicial enforcement of tax claims by reducing a lien to judgment, which is then enforced under *Orders of the Court* issued under authority of Title 28, and **not** any Title 26 statute.

13.      Furthermore, the *seizure* that was made of the home and property of the defendant, was made by the U.S. Marshalls Service under *Order* of the district court <u>under authority of **Title 28**</u>, **not** Title 26.   Again, the charging statutes have **no** applicability to **Title 28** *seizures* and *sales* that are ***judicially ordered*** under that Title (28) of the Code, rather than those that are initiated under a Title 26 statute or authority, as plainly stated in the charging statute itself as being necessary in order to be **charged** *criminally* with a violation of this statute (IRC § 7212).

14.      The *seizure* that was made, was made under judicial *Orders* of the district court that were issued under authority of <u>the **Title 28** statutes</u> giving authority to the judges of the federal courts to enforce judgments secured by a plaintiff, and it (the *seizure*) was **not made under Title 26** by the I.R.S. The district court's own *Orders* [Exhibits B & C] and the *United States' Motion for Order Confirming Sale and Distributing Proceeds* [Exhibit A], **all** from the subject previous civil action, - No. 2:17-cv-01223 in this district court of Utah, Central Division, plainly identify and clearly outline the provisions of the **Title 28** statutes that the *judicial seizure* and *sale* of the defendant's home was based on, and conducted under.

15.      The Treasury Deposit receipt [Exhibit D = Prosecution Exhibit 43] and the comprehensive listing of IRS *seizures* from 2019 , the year the defendant's home and property were seized and sold, which does **not** list the defendant's home, further support the understanding that it was a *judicially* **ordered** *seizure* and a *judicial sale* that occurred in September of 2019, and **not a sale** under Title 26, **but** under the Title 28 *judicial* authorities,

which are **outside** the *statutory authority* of the charging statutes under Title 26 addressed herein, *i.e.*: IRC Sections 7212(a) and 7212(b), in Title 26.

16.    And again, the testimony heard in court from Gary Chapman, the Auctioneer, now factually confirms that **Title 28** was indeed the **source** of the legal authority for the *judicially* ordered *seizure* and *sale* of the defendant Cromar's property, and that there were **no** Title 26 statutes involved in the U.S. Marshall Service's enforcement of the court *Orders*.  Factually, there was **no** United States employee involvement **under Title 26 statutes** in that *seizure* and *sale* action and process, which was ordered by the court under authority of the Title **28** statutes, Section 2001 and 2002.

## STATUTORY CONSTRUCTION
### Federal courts are limited to the statutory construction used

17.    Under the Constitution of the United States of America the courts of the United States do **not** possess any legislative powers.  It plainly and clearly states at Article I, Section 1, clause 1:

> "All legislative powers herein granted shall be vested in a Congress of the United States, …".

18.    This means that while the courts possess the power to reject a provision, or a statute in its entirety, for want of constitutionality, it does **not** possess the power to amend, edit, alter, or change the law from the actual language used and written by Congress, who possesses "*All legislative powers*".  The courts have a  plain and simple judicial duty to apply the statutes as written to the circumstances, facts, and evidence of the case as presented and argued in the instant matter before them.

19.    Because of the very specific language of the two statutes serving as the legal foundation for the criminal *Counts* addressed in this *Motion*, applying them properly is really a simple matter of *statutory construction,* with respect to the facts on the record of the case.  So let us begin with a review of just four of the applicable *Canons of Construction* at issue.

1. **"Where the language of a statute is plain and unambiguous, courts give effect to the statute as written, without engaging in statutory construction."**

This is the primary step in interpretation of any statute. It is not necessarily a canon of construction; instead, it is the instruction of what to do when there is no need for interpretation.  This rule has been stated a number of ways. "The literal words of the statute 'must be given their plain, usual, and ordinary meaning; ... [i]f the statute is not ambiguous, this Court does not construe it, but simply follows the law as written.'"  Alternately, "Where the language is unambiguous, there is no occasion for the application of rules of construction."

The purpose for this rule, and the objective of statutory interpretation, "is to give effect to legislative intent."  If the statutory language is unambiguous there is no need to consult extrinsic evidence or legislative history to determine legislative intent.

Though there is not supposed to be any construction of an unambiguous statute, certain canons of construction may still apply. For example, even when a statute is unambiguous, "The interpretation of a statute must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole." Thus, you have to look at the whole statute to determine the legislative intent, and not just the portion at issue.

2. **"Only where the language is ambiguous will this Court look to rules of construction for guidance and consider the reasonableness of proposed interpretations."**

This rule essentially states that once a Court determines a statute is ambiguous, the Court can start trying to figure out what it means. Like an unambiguous statute, an ambiguous statute, "must be construed to mean what the legislature intended for it to mean."

So how does a statute become ambiguous? "A statute is ambiguous where the language is capable of more than one reasonable construction." Alternately, "a statute is ambiguous where reasonable minds might differ or be uncertain as to its meaning." However, just because a clever person can come up with more than one interpretation does not make a statute ambiguous. "A statute is not ambiguous merely because an astute mind can devise more than one interpretation of it." "[O]therwise, all statutes subject to litigation would be considered ambiguous." Based on this, a statute is not just ambiguous if a clever argument can be made about a different meaning; instead, there must be, "more than one *reasonable* construction." Interpretation of statutes is a question of law, and therefore for a statute to be ambiguous, a party essentially has to convince a Court that there is more than one reasonable interpretation.

3. **"In determining the ordinary meaning of a statute effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant."**

This rule limits a court from ignoring parts of a statute in order to reach a reasonable construction. "It is a general rule of statutory construction that courts should not nullify a statute or deprive a law of potency or force unless such course is absolutely necessary." In other words, "A statute should be construed so that effect is given to all its provisions, so that no part will be rendered superfluous or insignificant." This is because, "it is not to be presumed that the legislature performed an idle act of enacting a superfluous statute." Related to this canon is the next one:

**4. "Courts, cannot insert into statutes terms or provisions which are obviously not there."**

As a general rule, Courts have been, "reluctant to second-guess the wisdom of a statute and [have] been unwilling to insert words into a statute that the Court believes the legislature left out, be it intentionally or inadvertently."

20.    The statutes of the United States Code are almost always simple and clear, without ambiguity or conflict.   The laws simply mean what the words used in them say, and nothing more can be read into the law, nor can anything be assumed into existence about it.   The following U.S. Supreme Court cases below clearly reveal these irrefutable and incontrovertible facts

## Applicable *precedents*

21.   In *United States v. Goldenberg*, 168 U.S. 95, (1897) the court held:

> "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used. He is presumed to know the meaning of the words and the rules of grammar"

22.   In  *Commonwealth Natural Resources, Inc. v. Commonwealth*, 219 Va. 529, 536, 248 S.E. 2d 791 (1978), at pg. 795:

> "A cardinal rule of statutory construction is that **a statute be construed from its four corners and not by singling out a particular word or phrase**.

23.   In *Demarest v. Manspeaker*, 498 US 184, 112 L Ed 2d 608, 111 S Ct. 599, (1991), the court held:

> "In deciding a question of statutory construction, we begin of course with the language of the statute."

24.     In *Connecticut National Bank v. Germain, 503 US 249* (1992), pg. 254, 117 L.Ed 2nd 91 (1992), the court identifies that:

> "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. See, *e. g., United States* v. *Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241-242 (1989); *United States* v. *Goldenberg,* 168 U.S. 95, 102-103 (1897); *Oneale* v. *Thornton,* 6 Cranch 53, 68 (1810). When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete." *Rubin* v. *United States,* 449 U. S. 424, 430 (1981); see also *Ron Pair Enterprises, supra,* at 241.

25.     In *McNary v Haitian Refugee Center,* 498 US 479, 112 L Ed 2d 1005, 111 S Ct. 888, (1991), the court invokes these basic standards of statutory construction again:

> "In construing a federal statute, it is presumable that Congress legislates with knowledge of the United States Supreme Court's basic rules of statutory construction."

26.     In *Reiter v Sonotone Corp.*, 442 US 330, 337, 60 L Ed 2d 931, 99 S Ct. 2326 (1979), the court again recognizes its duty to begin with the specific words of the statute:

> "As in all cases involving statutory construction, "our starting point must be the language employed by Congress,",

27.     And again, in *Richards v United States*, 369 US 1, 9, 7 L Ed 2d 492, 82 S Ct. 585 (1962), the court indicates that:

> "We assume that the legislative purpose is expressed by the ordinary meaning of the words used."

28.     In *Consumer Product Safety Comm'n v GTE Sylvania, Inc.*, 447 US 102, 108, 64 L Ed 2d 766, 100 S Ct. 2051 (1980), the court again recognizes:

> "…absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."

29.     And in *Freytag v. Commissioner*, 501 US 115 L Ed 2d 764, pp. 767 – 973, the court simply states:

"When the terms of a statute are unambiguous, judicial inquiry is complete except in rare and exceptional circumstances."

30.     In *Fuller v. United States* 615 F. Supp. 1054 (D.C. Cal 1985) , West's Key 188 quoting *Richards v. United States* 369 US 1, 9, 82 S. Ct. 585, 590, 7 L.Ed. 2d 492 (1962), the court expands on this point:

"The starting point in any endeavor to construe a Statute is always the words of the Statute itself; unless Congress has clearly indicated that its intentions are contrary to the words it employed in the Statute, this is the ending point of interpretation."

31.     And, this is echoed in *Estate of Cowart  v. Nicklos Drilling Co.,* 505 US 120 L Ed 2d 379, 112 S Ct. 2589 (1992), the court wrote:

"In a statutory construction case, the beginning point must be the language of the statute, and when a  statute speaks with clarity to an issue, judicial inquiry into the statute's meaning--in all but the most extraordinary circumstance--is finished; courts must give effect to the clear meaning of statutes as  written."

32.     And again in *Washington Market Co. v. Hoffman*, 101 U. S. 112, 115, 25 L. Ed. 782, 783:

"Words used in the statute are to be given their proper signification and effect."

33.     And again in *Beecham v. United States,* 511 US 128 L Ed 2d 383 (1994):

"The court's task is to determine whether the language the legislators actually enacted has a plain, unambiguous meaning."

34.     And in recognition of the lack of judicial power to alter written law, in *Federal Trade Com. v Simplicity Pattern Co.*, 360 US 55, p. 55

"The United States Supreme Court cannot supply what Congress has studiously omitted in a statute."

35.     And continuing, from *Product Safety Comm'n v. GTE Sylvania*, 447 US 102, 64 L Ed 2d 766, 100 S Ct. 2051 (1980), the court again, consistently holds:

"The starting point for interpreting a statute is the language of the statute itself; absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."

36.    In *United States v. Lexington Mill & E. Co.*, 232 US 399, pp. 409. (1914), the court reiterates:

"We are not at liberty to construe any statute so as to deny effect to any part of its language. It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word. As early as in Bacon's Abridgment, § 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word, shall be superfluous, void, or insignificant.' This rule has been repeated innumerable times."

37.    In *Busse v. Commissioner of Internal Revenue*, 479 F2d 1143, the court again is consistent in its recognition of both its own duty, and the limits of its own power to create effect with its rulings:

"Courts have no power to rewrite legislative enactments to give effect to their ideas of policy and fitness or the desirability of symmetry in statutes."

38.    And, in *CBS, Inc. v FCC*, 453 US 367, p. 367, 69 L Ed 2d 706, p. 709, the court commands:

"The construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong, especially when Congress has refused to alter the administrative construction, and such deference is particularly appropriate where an agency's interpretation involves issues of considerable public controversy and Congress has not acted to correct any misperception of its statutory objectives."

39.    In *Russello v United States*, 464 US 16, 23, 78 L Ed 2d 17, 104 S Ct. 296 (1983) (citation omitted), and *Keene Corp. v United States,* 508 US 124 L Ed 2d 118, 113 S Ct. (1993), the court recognizes that:

"This fact only underscores our duty to refrain from reading a phrase into the statute when Congress has left it out.   Where Congress includes particular language in one section of a statute but omits it in another ..., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

40.    And in *American Tobacco Co. v Patterson,* 456 US 63, 71 L Ed 2d 748, 102 S Ct. 1534, the court again confirms it impropriety of adding to legislation, that which is not there.

"It is not a function of the United States Supreme Court to sit as a super-legislature and create statutory distinctions where none were intended."

41.    In *Ratzlaf v. United States,* 510 US 135, p. 147-8, 126 L Ed 2d 615 (1994), the declares that:

"...courts do not resort to legislative history to cloud a statutory text that is clear"

42.    *In Piper v. Chris-Craft Industries, Inc.,* 430 US 1, 26, 51 L Ed 2d 124, 97 S Ct. 926 (1977) the court declares:

"Going behind the plain language of a statute in search of a possibly contrary congressional intent is "a step to be taken cautiously" even under the best of circumstances."

43.    In *Water Quality Ass'n v. United States*, 795 F.2d 1303 (7th Cir. 1986), where, citing and quoting *Calamaro*, the court added at p. 1309:

"It is a basic principle of statutory construction that courts have no right first to determine the legislative intent of a statute and then, under the guise of its interpretation, proceed **to either add words to or eliminate other words** from the statute's language. *DeSoto Securities Co. v. Commissioner*, 235 F.2d 409, 411 (7th Cir. 1956); see also 2A *Sutherland Statutory Construction* § 47.38 (4th ed. 1984). Similarly, the Secretary has **no power to change the language** of the revenue statutes because he thinks Congress may have overlooked something."

44.    Therefore, by the language of the statutes themselves in this case, the charging statutes **do not apply to the facts** of this case, and **both** Counts 2 and 3 require a *directed verdict* of **not** guilty, or a *judgment of acquittal*, at this time.

A court may not render a judgment which transcends the limits of its authority, and a judgment is void if it is beyond the powers granted to the court by the law of its organization, even where the court has jurisdiction over the parties and the subject matter. Thus, if a court is authorized by statute to entertain jurisdiction **in a particular case only**, and undertakes to exercise the jurisdiction conferred in a case **to which the statute has no application**, the judgment rendered is void. The lack of statutory authority to make particular order or a judgment is akin to lack of subject matter jurisdiction and is subject to collateral attack. 46 Am. Jur. 2d, Judgments § 25, pp. 388-89.

# CONCLUSION

45.     A *directed verdict* or *judgment of acquittal* on *Counts* 2 and 3 is now required in this case as the charging statutes are without the necessary language to include the alleged offenses of the Title 28 statutes (and court authority thereunder) that the defendant may have violated or interfered with, which possibly could have been "punished" immediately, without trial, by the court at that time under the district court's *contempt* authority to punish any person who interferes with the carrying out of the *Orders of the court*, but which "punishment" authority is **not** provided under any Title 26 authority, as required to ***properly*** charge defendant Cromar with Counts 2 and 3 of the *Indictment* and *Complaint, i.e.*: under Sections 7212(a) and 7212(b) of a Title 26 violation, for ***lack*** of any official *administration* of any Title 26 statute to interfere with, and for ***lack*** of any Title 26 *seizure* or *sale* of property, made under authority of **that same** Title [26], to impede or hinder, as is clearly required by the plain and clear language of both of these charging statutes.

46.     Finally, the district court chose **not** to exercise its *contempt* authority at the time (which it did possess), and **not** to punish the defendant further (than it had already done so by the taking of the home and property), and it is entirely inappropriate for the Unites States Department of Justice to now try to invoke these inappropriate Title 26 criminal authorities to try and punish the defendant further for said Title 28 acts of alleged interference, an **not the** Title 26 transgressions necessary for the charging statutes to apply, as plainly specified.  The court should therefore now *Order* a *directed verdict* or a *judgment of acquittal* on both of these charges, *Counts* 2 and 3 of the *Indictment* and *Complaint.*

# PRAYER FOR RELIEF

5.     Defendant now prays this honorable court will apply every word of these statutes as written and herein-above presented *verbatim*, and *Order* a *directed verdict* or a *judgment of acquittal* for both *Counts* 2 and 3 of the *Indictment* and *Complaint, **erroneously*** brought to the court by the plaintiff United States under authority of Sections 7212(a) and 7212(b), for ***lack*** of a Title 26 violation to allow the federal district court to entertain and adjudicate those two *Counts* under those two statutes, for the ***fatal lack*** of any involvement or interference of any

sort by the defendant with any authority of, or *process* under, any statute in Title 26, as required by two charging statutes in order to be applicable as a criminal charge against the instant defendant, because all of defendant Cromar's foundational conduct that is *complained of* by the plaintiff, **occurred** under a **Title 28** *judgment* enforcement process that was *judicially* **ordered** to be conducted by the district court under authority of Title 28 statutes, and the *seizure* and *sale* that was conducted, was **not** conducted under any Title 26 *administrative* process, *levy,* or *seizure* enforcement action, or authority, undertaken by any Internal Revenue Service employee under acting under authority of any Title 26 statute (§§ 6331, 6335, etc.) in the Internal Revenue Code.

6.    The judicial authority of Title 28 is **not** the Internal Revenue Code of Title 26, and the *Counts* are not properly brought as charges in this case because the Title 28 *facts* about the defendant's behavior and actions, **don't violate** the Title 26 laws, because Title 26 was **not** a *foundational* authority under which the enforcement actions occurred, being *ordered* by the court under its authority under Title 28.

Presented in honor in the year of our Lord and in His name the 3rd day of June, 2024.

Paul-Kenneth: Cromar
As per docket #25 of September 27, 2023 "I elect to proceed under Constitutional Common Law."

## Exhibits

**A.** *United States' Motion for Order Confirming Sale and Distributing Proceeds* dated March 4th, 2020, from Case No. 2:17-cv-01223 in this district court of Utah
**B.** *Order of the Court for Foreclosure and Judicial Sale* dated March 20, 2019
**C.** *Order of the Court Confirming Sale and Distributing Proceeds* dated April 15, 2020
**D.** Receipt for Treasury Deposit dated Jan. 21, 2020

CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of June, 2024, I personally placed in the United States Mail to the individuals named below a true and correct copy of **Defendant's Motion for a Directed Verdict or Judgment of Acquittal on Counts 2 and 3**

TRINA A. HIGGINS
PATRICK BURNS
MEREDITH M. HAVEKOST
Attorneys of the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111


Raland Brunson

# EXHIBIT A

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

RYAN S. WATSON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044-0683
Telephone: 202.514.5173
Ryan.Watson@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 2:17-cv-01223-RJS |
| v. | |
| PAUL KENNETH CROMAR,<br>BARBARA ANN CROMAR,<br>UTAH HOUSING FINANCE AGENCY,<br>UNIVERSAL CAMPUS FEDERAL CREDIT<br>UNION,<br>STATE OF UTAH, TAX COMMISSION,<br>AND UTAH COUNTY, UTAH | **UNITED STATES' MOTION FOR<br>ORDER CONFIRMING SALE AND<br>DISTRIBUTING PROCEEDS** |
| Defendants. | |

The United States of America hereby moves for an order from the Court confirming that

the sale of the real property located at 9870 N. Meadow Drive, Cedar Hills, Utah 84062-9430

was conducted by the United States in compliance with 26 U.S.C. § 7403, 28 U.S.C. §§ 2001-

2002, and the Court's March 20, 2019 Order of Foreclosure and Judicial Sale (ECF No. 104).

The United States further requests that the Court direct the Clerk of Court to distribute the

proceeds of that sale as follows:

1.      First, by check made payable to the "Internal Revenue Service" in the amount of

$683.80 for costs of sale, mailed to:

Internal Revenue Service
c/o Gary Chapman

IRS Property Appraisal & Liquidation Specialist
1201 Pacific Ave., Suite 550, M/S W802
Tacoma, WA 98402

2.     Second, by check made payable to Utah County, Utah in the amount of

$2,114.49, as of March 3, 2020, plus an additional $0.44 for each day past March 3, 2020,

mailed to:

Utah County Treasurer
100 E. Center Street, Suite 1200
Provo, Utah 84606

3.     Third, by check made payable to the "United States Department of Justice," with

*United States v. Cromar, et al.*, Case No. 2:17-cv-01223" written in the memo field, of the

remaining proceeds from the sale, mailed to:

Department of Justice, ATTN: TAXFLU
P.O. Box 310 – Ben Franklin Station
Washington, DC 20044

## I. **BACKGROUND**

The United States filed its Complaint in this matter on November 22, 2017. (ECF No. 2.)

The Complaint sought to reduce federal tax assessments against Paul Kenneth Cromar to

judgment and to foreclose related federal tax liens on real property located at 9870 N. Meadow

Drive, Cedar Hills, Utah 84062-9430 ("the property"). The property is more-particularly

described as:

Lot 3, Plat "C", Amended North Meadows Estates Subdivision, according to the
official plat thereof on file in the office of the Recorder, Utah County, Utah.

The Complaint also named Barbara Ann Cromar, Utah Housing Finance Agency

("UHFA"), Universal Campus Federal Credit Union ("UCFCU") , State of Utah, Tax

Commission, and Utah County, Utah as parties with a potential claim or interest in the property

pursuant to 26 U.S.C. § 7403(b). UHFA and the State of Utah each filed a Disclaimer of Interest

(ECF Nos. 22, 25) and were dismissed from the case (ECF No. 34, Order Granting Motion to

Dismiss Parties). Utah County answered the complaint and entered into a Stipulation (ECF No. 22) with the United States, in which the County asserted an interest in the property and agreed to the priority of its interest *vis-à-vis* the United States' interest in the event the property should be sold. The Court approved the Stipulation on May 2, 2018 (ECF No. 36).

Defendants Paul Kenneth Cromar, Barbara Ann Cromar, and UCFCU did not properly appear in this matter, and on February 14, 2019, the Court entered Default Judgment against them. (ECF No. 96.) On March 20, 2019, the Court entered an Order of Foreclosure and Judicial Sale (ECF NO. 104), directing the sale of the property. The Order of Foreclosure and Judicial Sale provided that "[a]ll persons occupying the Subject Property shall leave and vacate permanently the property no later than 15 days after the date of this Order, each taking with them his or her personal property . . . when leaving and vacating." (ECF No. 104.) Paul Kenneth Cromar and Barbara Ann Cromar did not comply with the Order, and on June 25, 2019, U.S. Marshal evicted them from the premises. (Declaration of Gary Chapman ¶ 5).

The property was advertised for sale in accordance with the Order of Foreclosure and Judicial Sale. (Chapman Decl. ¶ 4). The Provo Daily Herald published a Notice of IRS Judicial Auction Sale for four weeks prior to September 10, 2019. (Chapman Decl. ¶ 4; Ex. A, Proof of Publication).

On September 10, 2019, the property was sold at a public auction conducted by Gary Chapman, an Internal Revenue Service Property Appraisal and Liquidation Specialist ("PALS"), at the United States District Court for the District of Utah. (Chapman Decl. ¶ 6). The successful bidder bid $330,000 and deposited $31,000 with the Court. (Chapman Decl. ¶ 7). On January 22, 2020, the remaining $299,000 was deposited with the Clerk of Court. (Chapman Decl. ¶ 7).

The delay in making the second deposit with the Court was caused by the successful bidder's difficulty in obtaining financing to provide the additional $299,000 purchase price. (Chapman Decl. ¶ 7). The bidder's difficulty in obtaining financing was caused, in part, by Paul Kenneth Cromar's violation of Paragraph 8 of the Order of Foreclosure and Judicial Sale, when he recorded a frivolous *lis pendens* against the property on June 28, 2019. (Watson Decl. ¶ 5-6;

Ex. H, Email with attached *lis pendens*). He has also posted signs on the property, harassed potential financiers when they visited the property, and harassed the bidder at his home. (Chapman Decl. ¶ 8-9; Ex. B, Email from Nathan Eddington).

The expenses incurred in the sale of the property totaled $683.80, consisting of $556.80 for the newspaper placement and $127.00 for a locksmith. (Chapman Decl. ¶ 10)

## II. REQUEST FOR CONFIRMATION OF SALE

Under 26 U.S.C. § 7403, the Court is granted authority to subject property to the payment of unpaid federal taxes. The general procedures to be followed in conducting a public sale of real property under Court decree are set forth in 28 U.S.C. §§ 2001-2002. In pertinent part, Section 2001 provides:

(a) Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. Such sale shall be upon such terms and conditions as the court directs. . . .

28 U.S.C. § 2001. Section 2002 provides, in relevant part, that the public sale be advertised in the following manner:

A public sale of realty or interest therein under any order, judgment or decree of any court of the United States shall not be made without notice published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state or judicial district of the United States wherein the realty is situated . . .

28 U.S.C. § 2002.

As described in PALS representative Gary Chapman's Declaration, the sale was conducted in accordance with 28 U.S.C. §§ 2001-02 and the corresponding provisions of the Court's Order of Foreclosure and Judicial Sale. The full purchase price for the property has been paid into the Court's registry. Accordingly, the United States has properly effected the sale of the property, and the sale should be confirmed. The United States further requests that the Court, in its Order confirming the sale, specifically make note that the property was sold free and clear of

- 4 -

all liens on the property, including the frivolous *lis pendens* that Paul Kenneth Cromar filed

against the property on June 28, 2019. Paragraphs 7(a) and 7(j) of the Court's March 20, 2019

Order of Foreclosure and Judicial Sale state:

> (a) Except as otherwise stated herein, the sale of the Subject Property
> shall be by public auction to the highest bidder, free and clear of all
> liens and interests of parties to this action, with the proceeds of such
> sale to be distributed in accordance with the priority of the lienholders
> set forth in paragraph 12, below.

> (j) Upon confirmation of the sale or sales, the interests of, liens against,
> or claims to the Subject Property held or asserted by the United States
> and any other parties to this action or any successors in interest or
> transferees of those parties shall be discharged and extinguished. The
> sale is ordered pursuant to 28 U.S.C. §2001. Redemption rights under
> state or local law shall not apply to this sale under federal law.

(ECF No. 104.) Additionally, Paul Kenneth Cromar's filing of the *lis pendens* is in direct

violation of this Court's Order, which states: "[u]ntil the Subject Property is sold, Paul Kenneth

Cromar . . . not record any instruments, publish any notice, or take any other action that may

directly or indirectly tend to adversely affect the value of the Subject Property or that may tend

to deter or discourage potential bidders from participating in the public sale, nor shall he cause or

permit anyone else to do so."

The property in this case was sold in conformance with the Court's March 20, 2019

Order of Foreclosure and Judicial Sale, despite Paul Kenneth Cromar's filing of the *lis pendens*

on June 28, 2019. Accordingly, upon confirmation of the sale, "the interests of, liens against, or

claims" against the property of Paul Kenneth Cromar, including the *lis pendens*, "shall be

discharged and extinguished." (ECF No. 104 ¶ j.)

### III. DISTRIBUTION OF PROCEEDS

In accordance with the Court's Order of Foreclosure and Judicial Sale, the United States

requests that the Court direct the Clerk of Court to distribute the deposited funds in the manner

set forth on pages 1-2 of this Motion.

PALS representative Gary Chapman, on behalf of the IRS, incurred $683.80 of expenses in the sale of the property, consisting of $556.80 for the newspaper placement and $127.00 for a locksmith. (Chapman Decl. ¶ 10; Ex. C, Locksmith Bill; Ex. D, Publisher's Bill). On May 1, 2018, the United States and Utah County stipulated that "pursuant to 26 U.S.C. § 6323(b)(6), any Utah County *ad valorem* property tax liens upon the Subject Property that are entitled to priority over prior security interest under Utah state law will have priority over the federal tax liens at issue in this case." (ECF No. 32 ¶ 4.) On March 3, 2020, in response to the United States' inquiry, counsel for Utah County confirmed via email that property taxes in the amount of $2,111.49 are owed on the property. (Watson Decl. ¶ 3-4, Ex. E, Email from Cort Griffin; Ex. F, Utah County Tax Summary). The per diem accrual of interest on the unpaid balance is $0.44 per day. (Watson Decl. ¶ 3-4, Ex. E, Email from Cort Griffin).

On February 14, 2019, the Court entered default judgment (ECF No. 96) against Paul Kenneth Cromar on the United States' claims for unpaid tax liabilities in the amount of $1,053,028.65, as of November 21, 2017, plus statutory interest and other additions under 26 U.S.C. §§ 6621 & 6622. The judgment vastly exceeds the purchase price of the property.

## IV. CONCLUSION

For the above-stated reasons, the Court should grant the foregoing Motion, confirming that the sale of property was conducted by the United States in compliance with 26 U.S.C. § 7403 and 28 U.S.C. §§ 2001-2002 and in accord with the Court's March 20, 2019 Order of Foreclosure and Judicial Sale. Furthermore, the Court should direct the Clerk of Court to distribute the proceeds of that sale as follows:

1. First, by check made payable to the "Internal Revenue Service" in the amount of $683.80 for costs of sale, mailed to:

   Internal Revenue Service
   c/o Gary Chapman
   IRS Property Appraisal & Liquidation Specialist
   1201 Pacific Ave., Suite 550, M/S W802
   Tacoma, WA 98402

2.      Second, by check made payable to Utah County, Utah in the amount of

$2,114.49, as of March 3, 2020, plus an additional $0.44 for each day past March 3, 2020,

mailed to:

>           Utah County Treasurer
>           100 E. Center Street, Suite 1200
>           Provo, Utah 84606

3.      Third, by check made payable to the "United States Department of Justice," with

"*United States v. Cromar, et al.*, Case No. 2:17-cv-01223" written in the memo field, of the

remaining proceeds from the sale, mailed to:

>           Department of Justice, ATTN: TAXFLU
>           P.O. Box 310 – Ben Franklin Station
>           Washington, DC 20044

Dated: <u>March 4, 2020</u>                    Respectfully Submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

<u>*/s/ Ryan S. Watson*</u>
RYAN S. WATSON
Trial Attorney, Tax Division
U.S. Department of Justice

*Attorneys for the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 4, 2020, I served the foregoing as follows:

Via CM/ECF:

    M. Cort Griffin
    cortg@utahcounty.gov
    *Attorney for Utah County*

Via Email[1]:

    Paul Kenneth Cromar
    Barbara Ann Cromar
    kencromar5@gmail.com

                                      */s/ Ryan S. Watson*
                                        Trial Attorney, Tax Division
                                        U.S. Department of Justice

---

[1] The Cromars no longer reside at the address on file with the Court and have not updated their address. Service via email is being made to an email address provided to counsel for the United States by Mr. Cromar.

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

RYAN S. WATSON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044-0683
Telephone: 202.514.5173
Ryan.Watson@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>PAUL KENNETH CROMAR,<br>BARBARA ANN CROMAR,<br>UTAH HOUSING FINANCE AGENCY,<br>UNIVERSAL CAMPUS FEDERAL CREDIT<br>UNION,<br>STATE OF UTAH, TAX COMMISSION,<br>AND UTAH COUNTY, UTAH<br><br>        Defendants. | Case No. 2:17-cv-01223-RJS<br><br><br>**DECLARATION OF GARY CHAPMAN** |

I, Gary Chapman, pursuant to 28 U.S.C. § 1746, hereby declare that:

1.      I am a Property Appraisal and Liquidation Specialist ("PALS") with the Internal Revenue Service, and I am stationed in Tacoma, Washington.

2.      The name Gary Chapman is a pseudonym. This pseudonym has been registered with the IRS in accordance with the IRS's procedures, and I have followed all applicable IRS procedures governing the use of pseudonyms.

3.      My official duties as a PALS include the sale of property seized or otherwise obtained by court order on behalf of the United States of America. Pursuant to an Order of Sale dated March 20, 2019, the Internal Revenue Service conducted a public auction sale of property

against which the Court ordered the foreclosure of federal tax liens. In support of the United States' Motion for Order Confirming Sale and Distributing Proceeds, I submit the following Declaration.

4.      For four weeks prior to September 10, 2019, a Notice of Sale was published in the classified section of the Provo Daily Herald, a newspaper which has general circulation in Utah County, the county in which the real property at 9870 N. Meadow Drive, Cedar Hills, Utah 84062-9430 ("the property") is located. The notices were published on July 18, 2019, July 25, 2019, August 1, 2019, and August 8, 2019. The Publisher's Proof of Publication is attached as Exhibit A.

5.      On June 25, 2019, Paul Kenneth Cromar and Barbara Ann Cromar were evicted from the property by the United States Marshal.

6.      On September 10, 2019, at the United States District Court for the District of Utah, the United States offered the property described in the Notice of Sale for sale to the highest bidder at public auction.

7.      The successful bidder, Nathan Eddington, bid $330,000 and paid a deposit of $31,000. I received the balance of the purchase price on January 21, 2020 and the funds were sent to the Court for deposit. Receipt of the second deposit took several months while Mr. Eddington sought financing for the remaining balance.

8.      On October 14, 2019 I received an email from Nathan Eddington informing me that Paul Kenneth Cromar went to Nathan Eddington's personal residence and gave him documents purporting to nullify the sale. A copy of the email (with attachments) is attached as Exhibit B.

9.      I am also aware that Paul Kenneth Cromar has posted signs on the property and has been present at the property when potential lenders have visited the property.

10.      The Internal Revenue Service incurred a total of $683.80 in expenses related to the sale of property, as follows:

     a.   Charges incurred for changing the locks on the property from Alpine Lock totaling $127.00. The locksmith bill is attached as Exhibit C.

     b.   Charges incurred from Nationwide Newspapers for the legal advertisement for selling the Subject Property totaling $556.80. The publisher's bill is attached as Exhibit D.

11.    The check for the reimbursement should be made out to "Internal Revenue Service" and sent to:

> Gary Chapman
> IRS Property Appraisal & Liquidation Specialist
> 1201 Pacific Ave, Suite 550, M/S W802
> Tacoma, WA 98402

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 4th day of March, 2020.

GARY CHAPMAN
IRS Property Appraisal & Liquidation Specialist

AFFP
42662-IRS JUDICIAL AUCTION

**Exhibit**
A

# <u>Affidavit of Publication</u>

STATE OF UTAH }
COUNTY OF UTAH }        SS

Nancy Holcomb, being duly sworn, says:

That she is Legals Billing Clerk of the Daily Herald, a
newspaper of general circulation, printed and published in
Provo, Utah County, Utah; that the publication, a copy of
which is attached hereto, was published in the said
newspaper on the following dates:

July 18, 2019,  July 25, 2019,  August 01, 2019,  August
08, 2019

That said newspaper was regularly issued and circulated
on those dates. Same was also published online at
utahlegals.com, according to Section 45-1-101 - Utah
Code Annotated, beginning on the first date of publication,
for at least 30 days thereafter and a minimum of 30 days
prior to the date of scheduled sale.
SIGNED:

Legals Billing Clerk

Subscribed to and sworn to me this 8th day of August
2019.

Jayne Dunn, Notary Public, Utah County, Utah

My commission expires: September 10, 2022

IRS JUDICIAL AUCTION SALE
Pursuant to an Order of Sale entered in United States vs. Paul Kenneth & Barbara
Ann Cromar et al Civil No. 2-17-cv-01223 United States District Court for the District
of Utah, the United States will offer to sell at public auction the right, title, and
interest of Paul Kenneth & Barbara Ann Cromar, in and to property located in Cedar
Hills, Utah County, Utah. The sale will be held by public auction
Date of Sale: September 10th, 2019
Time of Sale: 11:00am with registration beginning at 10:30am
Location: US District Court, 351 S W Temple, Salt Lake City, UT 84101
Property Offered: 9870 N. Meadow Drive, Cedar Hills, Utah
Minimum Bid: $245,000.00
Property may be viewed at: Drive by only.
This is not an advertisement of a sale of seized property. This information notice is
only regarding a sale being conducted by the Internal Revenue Service as a result of
the foreclosure of an Internal Revenue Service Federal Tax Lien by the Department
of Justice.
This property shall be offered for sale at public auction, free and clear of all liens and
interests of the parties to this action.
Terms of Payment: Deferred: 10% odue at time of acceptance of highest bid.
Remaining balance due NLT October 10th, 2019.
All payments must be by certified check or cashier's check. Make check payable to
the United States District Court of Utah.
For more information go to www.irsauctions.gov or contact Gary Chapman
(360)536-6602.
Legal Notice 42662 Published in The Daily Herald on July 18, 25; August 1, 8, 2019.



JAYNE DUNN
NOTARY PUBLIC • STATE of UTAH
COMMISSION NO. 702203
COMM. EXP. 09/10/2022

00010503  00042662

Nationwide Newspapers-Legals
Nationwide Newspapers-Legals
6157 Masters Blvd
ORLANDO, FL 32819

**Watson, Ryan (TAX)**

| | |
|---|---|
| **From:** | Nathan Eddington <nathan.eddington8@gmail.com> |
| **Sent:** | Monday, October 14, 2019 9:40 PM |
| **To:** | gary.chapman@irs.gov |
| **Cc:** | Watson, Ryan (TAX); Bill Markham |
| **Subject:** | Ken Cromar Visit 10-14-2019 |
| **Attachments:** | Cromar 10-14-2019.PDF |



**Exhibit**

B

Included on this email:
Gary Chapman--IRS
Ryan Watson--DOJ
Bill Markham--Cardinal Financial (Lender)


On 10-14-2019 Paul Kenneth Cromar and his friend/neighbor Bill D'Angelo came to my residence and asked me what was going on at the house. Cromar then provided me papers with the title page as a warning and said the home is his and he will protect it, see the attached documents.

I just wanted to make you all aware of what's going on. My father asked me to call the local police. They will be arriving shortly and trespass Paul from the property I am currently living at. Attached is a video from our interaction if you're interested.

Thank you all!




_Cromar Visit.MOV

# WARNING!

This document is NOT authorized by the homeowner Paul + Barbara Cromar, and may be potential FRAUD and is hereby Rejected. Those involved may be exposed to Personal legal liability and face legal action.

See attached "NOTICE of Lis Pendens" civil case 2:19 cv: 00255-BCW of June 25, 2019

Paul-Kenneth Cromar

Barbara-Ann: Cromar
9870 N. Meadow Drive
Cedar Hills, UT 84062

Oct. 14, 2019

 **First American**

1795 E 1450 S, STE 100
CLEARFIELD UT 84015

**UTAH**


*01002316547702361280*

**Transmittal**

09/27/2019

PAUL KENNETH CROMAR/BARBARA ANN CROMAR
9870 N MEADOW DR
CEDAR HILLS UT 84062

Order No:   6004201

Enclosed please find    2  attached documents.

First American Title Insurance Company

Page Count   10

Commitment Number: 6004201
09/27/2019



**First American Title**

1795 E Legend Hills Drive, Ste 100
Clearfield, UT 84015
(801)825-1313
Fax: (877)838-8890
TeamSandyE@firstam.com
=================================================================

**COMMITMENT FOR TITLE INSURANCE PREPARED FOR:**

## PROPERTY INFORMATION:

9870 North Meadow Drive, Cedar Hills, UT 84062

| **LISTING AGENT** | **SELLING AGENT** |
|---|---|

| **LENDER** | **BUYER/SELLER** |
|---|---|

Cardinal Financial
Bill Markham
2152 N Hill Field Road, Suite 3
Layton, UT 84041
(801)207-9604

BUYER/BORROWER:
Internal Revenue Service

SELLER/OWNER:
Paul Kenneth Cromar and Barbara Ann Cromar



| | |
|---|---|
| *First American Title*<br><br># Commitment | ## ALTA Commitment for Title Insurance<br>ISSUED BY<br>**First American Title Insurance Company**<br>File No: 14253-6004201 |

## COMMITMENT FOR TITLE INSURANCE

### Issued By

### *FIRST AMERICAN TITLE INSURANCE COMPANY*

### NOTICE

**IMPORTANT-READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

### COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and the Commitment Conditions, *First American Title Insurance Company*, a Nebraska Corporation (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Policy Amount and the name of the Proposed Insured.

If all of the Schedule B, Part I-Requirements have not been met within six months after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

*First American Title Insurance Company*

Dennis J. Gilmore
President

Jeffrey S. Robinson
Secretary

**If this jacket was created electronically, it constitutes an original document.**

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

| Form 5030049 (5-12-17) | Page 1 of 9 | | ALTA Commitment for Title Insurance (8-1-16)<br>Utah |
|---|---|---|---|

**COMMITMENT CONDITIONS**

1. **DEFINITIONS**
   (a) "Knowledge" or "Known": Actual or imputed knowledge, but not constructive notice imparted by the Public Records.
   (b) "Land": The land described in Schedule A and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
   (c) "Mortgage": A mortgage, deed of trust, or other security instrument, including one evidenced by electronic means authorized by law.
   (d) "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
   (e) "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.
   (f) "Proposed Policy Amount": Each dollar amount specified in Schedule A as the Proposed Policy Amount of each Policy to be issued pursuant to this Commitment.
   (g) "Public Records": Records established under state statutes at the Commitment Date for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge.
   (h) "Title": The estate or interest described in Schedule A.

2. If all of the Schedule B, Part I—Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3. The Company's liability and obligation is limited by and this Commitment is not valid without:
   (a) the Notice;
   (b) the Commitment to Issue Policy;
   (c) the Commitment Conditions;
   (d) Schedule A;
   (e) Schedule B, Part I—Requirements; and
   (f) Schedule B, Part II—Exceptions.

4. **COMPANY'S RIGHT TO AMEND**
   The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company shall not be liable for any other amendment to this Commitment.

5. **LIMITATIONS OF LIABILITY**
   (a) The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:
       (i) comply with the Schedule B, Part I—Requirements;
       (ii) eliminate, with the Company's written consent, any Schedule B, Part II—Exceptions; or
       (iii) acquire the Title or create the Mortgage covered by this Commitment.
   (b) The Company shall not be liable under Commitment Condition 5(a) if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.
   (c) The Company will only have liability under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.
   (d) The Company's liability shall not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Conditions 5(a)(i) through 5(a)(iii) or the Proposed Policy Amount.
   (e) The Company shall not be liable for the content of the Transaction Identification Data, if any.
   (f) In no event shall the Company be obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I—Requirements have been met to the satisfaction of the Company.
   (g) In any event, the Company's liability is limited by the terms and provisions of the Policy.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions.*
**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

6. **LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT**

    (a) Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.

    (b) Any claim must be based in contract and must be restricted solely to the terms and provisions of this Commitment.

    (c) Until the Policy is issued, this Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

    (d) The deletion or modification of any Schedule B, Part II—Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

    (e) Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.

    (f) When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

7. **IF THIS COMMITMENT HAS BEEN ISSUED BY AN ISSUING AGENT**

The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for the purpose of providing closing or settlement services.

8. **PRO-FORMA POLICY**

The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

9. **ARBITRATION**

The Policy contains an arbitration clause. All arbitrable matters when the Proposed Policy Amount is $2,000,000 or less shall be arbitrated at the option of either the Company or the Proposed Insured as the exclusive remedy of the parties. A Proposed Insured may review a copy of the arbitration rules at http://www.alta.org/arbitration.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

| Form 5030049 (5-12-17) | Page 3 of 9 | ALTA Commitment for Title Insurance (8-1-16) Utah |
| --- | --- | --- |



*First American Title*

### ALTA Commitment for Title Insurance

ISSUED BY

**First American Title Insurance Company**

File No: 14253-6004201

# Schedule A

***Transaction Identification Data for reference only:***

Issuing Agent: First American Title Insurance Company

Issuing Office's ALTA® Registry ID: 1178462
Commitment No.: 14253-6004201
Property Address: 9870 North Meadow Drive, Cedar Hills, UT 84062
Revision No.:

Issuing Office: 215 South State Street, Suite 280, Salt Lake City, UT 84111
Issuing Office File No.: 14253-6004201

**ESCROW/CLOSING INQUIRIES** should be directed to your Escrow Officer:  **Sandy Espinoza at (801)825-1313 located at 1795 E Legend Hills Drive, Ste 100, Clearfield, UT 84015.**

### SCHEDULE A

1. Commitment Date: September 12, 2019 8:00 AM

2. Policies to be issued:

    (A) ALTA Homeowner's Policy ("Eagle")

    Proposed Insured: **Internal Revenue Service**
    Proposed Policy Amount: $330,000.00                Premium: $1,767.00

    (B) ALTA Expanded Coverage Residential Loan Policy ("Eagle")

    Proposed Insured: **Cardinal Financial**
    Proposed Policy Amount: $1,000.00                Premium: $220.00

    (C)   Endorsements: 9-06, 22-06 and 8.1-06                Premium: $Included

3. The estate or interest in the Land described or referred to in this Commitment is Fee Simple.

4. The Title is, at the Commitment Date, vested in:

    **Paul Kenneth Cromar and Barbara Ann Cromar, husband and wife, as joint tenants**

5. The Land is located in Utah County, UT, and is described as follows:

    LOT 3, PLAT "C", AMENDED NORTH MEADOW ESTATES SUBDIVISION, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE UTAH COUNTY RECORDER'S OFFICE.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions.*
**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

| Form 5030049 (5-12-17) | Page 4 of 9 | | ALTA Commitment for Title Insurance (8-1-16) Utah |



*First American Title*

ALTA Commitment for Title Insurance

ISSUED BY

**First American Title Insurance Company**

File No: 14253-6004201

# Schedule BI & BII

Commitment No.: 14253-6004201

### SCHEDULE B, PART I

#### Requirements

All of the following Requirements must be met:

1. The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2. Pay the agreed amount for the estate or interest to be insured.

3. Pay the premiums, fees, and charges for the Policy to the Company.

4. Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

5. Provide releases, reconveyances, or other instruments, acceptable to the Company, including payment of any amounts due, removing the encumbrances shown in Schedule B, Part II that are objectionable to the Proposed Insured.

6. Provide us with copies of appropriate agreements, resolutions, certificates, or other evidence needed to identify the parties authorized to execute the documents creating the interest to be insured.

7. Provide us with any information regarding personal property taxes which may have been assessed or are due and payable which could become a lien on the real property.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

| Form 5030049 (5-12-17) | Page 5 of 9 | | ALTA Commitment for Title Insurance (8-1-16) Utah |



**ALTA Commitment for Title Insurance**

ISSUED BY

**First American Title Insurance Company**

*First American Title*

**Schedule BI & BII (Cont.)**

File No: 14253-6004201

Commitment No.: 14253-6004201

## SCHEDULE B, PART II

### Exceptions

THIS COMMITMENT DOES NOT REPUBLISH ANY COVENANT, CONDITION, RESTRICTION, OR LIMITATION CONTAINED IN ANY DOCUMENT REFERRED TO IN THIS COMMITMENT TO THE EXTENT THAT THE SPECIFIC COVENANT, CONDITION, RESTRICTION, OR LIMITATION VIOLATES STATE OR FEDERAL LAW BASED ON RACE, COLOR, RELIGION, SEX, SEXUAL ORIENTATION, GENDER IDENTITY, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN.

The Policy will not insure against loss or damage resulting from the terms and provisions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interest or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances or claims thereof, not shown by the Public Record.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title including discrepancies, conflicts in boundary lines, shortage in area, or any other facts that would be disclosed by an accurate and complete land survey of the Land, and not shown in the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Record.

6. Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown in the Public Records.

7. Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I-Requirements are met.

This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions.

Copyright 2006-2016 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

**Subject to underwriting review and approval, some or all of Exceptions 1-7 may be omitted on extended coverage and Eagle policies**

8.  Taxes for the year 2019 now a lien, not yet due. General property taxes for the year 2018 were paid in the amount of $2,109.04. Tax Parcel No. 47-059-0003.

9.  Any charge upon the land by reason of its inclusion in Cedar Hills City.

10. Easements, notes and restrictions as shown on the recorded plat.

11. Declaration of Independence recorded July 05, 2012 as Entry No. 55868:2012 of Official Records.

12. Notice of pendency of action by and between United States of America as Plaintiff whose Attorney being Richard E. Zuckerman, Ryan S. Watson and John W. Huber and Paul Kenneth Cromar and Barbara Ann Cromar, et al. as Defendant filed in the United States District Court for the District of Utah as Case No. 2:17-cv-01223-RJS for the purpose of action affects the title, possession and ownership of the real property and recorded March 14, 2018 as Entry No. 24160:2018 of Official Records.

13. Notice of pendency of action by and between Paul Kenneth Cromar and Barbara Ann Cromar as Plaintiff whose Attorney being Not Disclosed and United States of America, William P. Barr, Ryan S. Watson, Nancy K. Phillips, R. A. Mitchell, Wanda I. Manley, Joan Flach or Joan Flack and Robert J. Shelby as Defendant filed in the United States District Court for the District of Utah as Case No. 2:19-cv-00255-BCW for the purpose of to obtain a judgment and other ancillary relief including, but not limited to, judgment establishing clear Title and recorded June 26, 2019 as Entry No. 58695:2019 of Official Records.

14. A Federal Tax Lien against Paul K. Cromar, in favor of the United States of America in the principal amount of $623,698.12 and any other amounts due thereunder, recorded June 28, 2017 as Entry No. 62374:2017, of Official Records.

15. A Federal Tax Lien against Paul K. Cromar, in favor of the United States of America in the principal amount of $84,087.04 and any other amounts due thereunder, recorded June 28, 2017 as Entry No. 62375:2017, of Official Records.

16. Our search of the Public Records finds no outstanding Mortgages affecting the Land.

\*\*\*

The name(s) Barbara Ann Cromar and Paul Kenneth Cromar, has/have been checked for judgments, State and Federal tax liens, and bankruptcies and if any were found, are disclosed herein.

The name Internal Revenue Service, a governmental agency exempt from execution pursuant to Utah Code Annotated 63-30d-101 et.seq., has NOT been checked for judgments, State and Federal tax liens, or bankruptcies.

**NOTE:** According to Official Records, there have been no documents conveying the land described herein within a period of 24 months prior to the date of this commitment, except as follows: NONE

This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions.
**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

**Note: The Eagle owner's policy of title insurance committed to be issued will contain Deductible Amounts and Liability Limits relative to certain Covered Risks found in the policy as follows:**

**Covered Risk 16** (Subdivision Law Violations) has a deductible of 1% of the Policy Amount or $2500 whichever is less, and a Maximum Dollar Limit of Liability of $10,000.

**Covered Risk 18** (Building Permits) has a deductible of 1% of the Policy Amount or $5000 whichever is less, and a Maximum Dollar Limit of Liability of $25,000.

**Covered Risk 19** (Zoning) has a deductible of 1% of the Policy Amount or $5000 whichever is less, and a Maximum Dollar Limit of Liability of $25,000.

**Covered Risk 21** (Encroachment of Boundary Walls or Fences) has a deductible of 1% of the Policy Amount or $2500 whichever is less, and a Maximum Dollar Limit of Liability of $5,000.

Title inquiries should be directed to Leon Lawson @ (801)578-8808.

\*\*\*

The map attached, if any, may or may not be a survey of the land depicted hereon. First American Title expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

| Form 5030049 (5-12-17) | Page 8 of 9 | ALTA Commitment for Title Insurance (8-1-16) Utah |
|---|---|---|



This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions.

**Copyright 2006-2016 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Case 2:23-cr-00159-HCN-DBP    Document 297    Filed 06/03/24    PageID.4713    Page 42 of 77



**Alpine Lock**

| | |
|---|---|
| document 117-4 | Filed 03/04/20    Page 1 of 10 |

## Invoice

| | |
|---|---|
| INVOICE # | 35789 |
| DATE | 06/25/2019 |
| DUE DATE | 21st July 2019 |

**Alpine Lock**
309 E State St,
American Fork UT
84003

Ph 8017568100
alas@alpinelockandsafe.com
http://www.alpinelockandsafe.com

| BILL TO | GARY<br>3950 W Cedar Hills Dr<br>Cedar Hills Utah 84062 | JOB ADDRESS | 3950 W Cedar Hills Dr<br>Cedar Hills Utah 84062 | **Exhibit**<br>c |
|---|---|---|---|---|

| WORK COMPLETED | Ap 069970 |
|---|---|

| DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|
| Trip Charge Service FeeTrip Charge Service Fee L1 | 1 | $55.00 | $55.00 |
| REKEYRESIDENTIAL REKEY | 6 | $12.00 | $72.00 |



| | |
|---|---|
| SUBTOTAL | $127.00 |
| TAX | $0.00 |
| TOTAL | $127.00 |
| AMOUNT PAID | $0.00 |
| **BALANCE DUE** | **$127.00** |

By signing below, I acknowledge that the technician has carried out the work described above to my satisfaction.

CUSTOMER SIGNATURE

- - - - - - - - - - - - - - - - - - - - - -

---

| How to Pay | | Invoice #35789<br>$127.00 due by 21st July 2019 |
|---|---|---|
| | CHECK | 309 E State St,<br>American Fork UT<br>84003 |

Returns/Cancellations: Returns must be made within 30 days of delivery and will be charged a minimum restocking fee of 25%. Restocking fees are subject to individual vendor terms. Items out of the box or incomplete are not returnable.Custom / special orders are not returnable or refundable.  Thank you for your business, have a great day!

# NATIONWIDE NEWSPAPERS

**5955 Masters Blvd**

**Orlando, Florida  32819**

Tel: (407) 909-1644

Fax: (407) 909-1748



**Exhibit**

D

8/19/2019

| Account Number | Invoice Number | Amount Due |
|---|---|---|
| 951-201-6919 | 918170 | $0.00 |

**Customer's Name:** Internal Revenue Service

**Street Address:** 1201 Pacific Avenue Ste 550          **DUE UPON RECEIPT**

**City, State, Zip Code:** Tacoma WA  98402

**Telephone Number:** 360-536-6602          **Fax Number:**

**Purchased By:** Gary Chambers

| Name of Publication | Location | Run Date | | Price |
|---|---|---|---|---|
| Provo Daily Herald | Provo UT | 7/18, 7/25, 8/01, 8/08 | $ | 556.80 |

**NOTE:**

Thank you for using Nationwide Newspapers!!

| | |
|---|---|
| **TOTAL AMOUNT:** | $556.80 |
| **SALES TAX:** | n/a |
| **LESS PAYMENT:** | $556.80 |
| **TOTAL DUE:** | $0.00 |

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

RYAN S. WATSON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044-0683
Telephone: 202.514.5173
Ryan.Watson@usdoj.gov

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 2:17-cv-01223-RJS |
| v. | |
| PAUL KENNETH CROMAR, BARBARA ANN CROMAR, UTAH HOUSING FINANCE AGENCY, UNIVERSAL CAMPUS FEDERAL CREDIT UNION, STATE OF UTAH, TAX COMMISSION, AND UTAH COUNTY, UTAH | **DECLARATION OF RYAN S. WATSON** |
| Defendants. | |

I, Ryan S. Watson, pursuant to 28 U.S.C. § 1746, hereby declare that:

1.     I am employed as an attorney with the United States Department of Justice, Tax Division, in Washington, DC. I am assigned responsibility for representing the interests of the United States in the above-captioned matter. I make this Declaration in support of the United States' Motion for Order Confirming Sale and Distributing Proceeds.

2.     This Declaration concerns the sale of 9870 N. Meadow Drive, Cedar Hills, Utah 84062-9430 ("the property") in the above-captioned matter.

3.      Attached to this Declaration as Exhibit E is an email from Cort Griffin, counsel for Utah County, in which Mr. Griffin confirms that there are outstanding real property taxes against the property and further confirms the per diem interest accrual rate of $0.44 per day.

4.      Attached to this Declaration as Exhibit F is a printout obtained from the Utah County Treasurer's Delinquent Tax Summary for the property.

5.      Attached to this Declaration as Exhibit G is an email I sent to Mr. Griffin on June 27, 2019 advising the County to not accept for filing a frivolous *lis pendens* Paul Kenneth Cromar intended to file in violation of the Court's March 20, 2019 Order of Foreclosure and Judicial Sale.

6.      Attached to this Declaration as Exhibit H is a June 28, 2019 email from Mr. Griffin enclosing the *lis pendens* that was filed with the County.


I declare under penalty of perjury that the foregoing is true and correct.

Dated: <u>March 4, 2020</u>                          */s/ Ryan S. Watson*
                                                    Trial Attorney, Tax Division
                                                    U.S. Department of Justice

**Watson, Ryan (TAX)**

| | |
|---|---|
| **From:** | Cort Griffin <CORTG@utahcounty.gov> |
| **Sent:** | Tuesday, March 03, 2020 4:34 PM |
| **To:** | Watson, Ryan (TAX) |
| **Cc:** | Kim T Jackson; Cary McConnell; David Leavitt |
| **Subject:** | RE: Cromar |

```
┌─────────────────┐
│   Exhibit       │
│      E          │
│   _____      │
└─────────────────┘
```

Ryan,

That is the correct amount. The payoff as of March 3, 2019 is $2,114.49.  The 2019 delinquent real property tax interest rate is 7.75%. The per diem accrual is $0.44 per day.

The check should be made out to:

Utah County Treasurer
100 E. Center Street, Suite 1200
Provo, Utah 84606

Let me know if there is anything else you need.

Cort


**From:** Watson, Ryan (TAX) <Ryan.Watson@usdoj.gov>
**Sent:** Tuesday, March 3, 2020 8:09 AM
**To:** Cort Griffin <CORTG@utahcounty.gov>
**Subject:** RE: Cromar

Also, please let me know who the check should be made out to and where it should be sent.

Thanks.

-Ryan
202.514.5173
**From:** Watson, Ryan (TAX) <Ryan.Watson@tax.USDOJ.gov>
**Sent:** Tuesday, March 03, 2020 10:07 AM
**To:** Cort Griffin <CORTG@utahcounty.gov>
**Subject:** Cromar

Cort—

I am preparing a motion to confirm the sale of the Cromar property. The property Serial No. is 47:059:0003. It looks like there is a balance due for 2019 of $2,114.49. Can you please confirm the amount and also tell me what the per diem accrual is? Thank you.

**Ryan S. Watson**
Trial Attorney
U.S. Department of Justice, Tax Division
Civil Trial Section – Western Region
P.O. Box 683
Washington, D.C. 20044

*For FedEx or UPS delivery*:
555 4th Street N.W., Room 7239
Washington, D.C. 20001

Tel: 202.514.5173 | Fax: 202.307.0054 | ryan.watson@usdoj.gov |

3/3/2020
Case 2:23-cr-00159-HCN-DBP   Document 297   Filed 06/03/24   PageID.4719   Page 48 of 77
Case 2:17-cv-01223-RJS   Document 117-8   Filed 03/04/21   Page 1 of 1
www.utahcounty.gov/LandRecords/TaxPayoff.asp?av_date=3%2F%2F2020&button=++Calculate+Payoff++&av_serial=47%3A059%3A0...



**Utah County**

HEART of UTAH

### UTAH COUNTY TREASURER
### DELINQUENT TAX SUMMARY

**Exhibit**

F

_____

Serial Number: 47:059:0003
Delinquent Tax Summary Calculated to **3/3/2020**

| Year | Tax Balance | Penalty | Fees | Interest | Total |
|------|-------------|---------|------|----------|-------|
| 2019 | $2,035.76 | $50.89 | $0.00 | $27.84 | $2,114.49 |
| Total | $2,035.76 | $50.89 | $0.00 | $27.84 | $2,114.49 |

**Total amount if paid as of 3/3/2020. . . . . . . . . . . . . . .**                    **$2,114.49**

**TOTAL AMOUNT IS SUBJECT TO CHANGE AS INTEREST IS COMPUTED DAILY.   PAYMENTS MUST
BE RECEIVED IN THE TREASURER'S OFFICE ON THE SAME DAY AS THE CALCULATED PAYOFF DATE.**

To calculate amount for a
different date, choose the         3/3/2020          *click*     | Calculate Payoff |
payoff date here:                 *in box for calendar*

**All taxes, penalties, fees and interest must be paid in full.  If all such items are not paid by March 15 following the lapse of four
years from the date when the property tax became delinquent, the property will be subject to sale at the annual Utah County Tax
Sale. Tax Sale properties will incur an administration fee of $165.** *Utah Code Annotated 59-2-1343*

**For year 2020:**
After March 16, 2020, payment must be made with cash or certified funds. Certified funds must be for the exact balance owing, no refund of
excess payment will be made.

The Treasurer has no authority to waive taxes, penalties, fees or interest. Verify the parcel description for accuracy; this office is not
responsible if payments are made on the wrong property.

KIM T. JACKSON
Treasurer, Utah County
100 East Center Street Ste 1200
Provo, UT 84606-3159
801-851-8255 or 801-851-8264

Main Menu

Comments or Concerns on Value/Appraisal - Assessor's Office
Documents/Owner/Parcel Info - Recorder's Office
Address Change for Tax Notice

This page was created on 3/3/2020 at 08:04:53 AM

**Watson, Ryan (TAX)**

| | | |
|---|---|---|
| **From:** | Watson, Ryan (TAX) | |
| **Sent:** | Thursday, June 27, 2019 3:18 PM | |
| **To:** | Cort Griffin | |
| **Subject:** | Cromar Frivolous Filing | |
| **Attachments:** | 00014 - Notice of Lis Pendens.pdf | |

**Exhibit**

G

Cort—

Please see the attached document purporting to be a lis pendens from Mr. Cromar. You may be aware of this already by way of Cromar's emails and calls to the Utah County Sheriff, but he filed a frivolous lawsuit against Judge Shelby and me seeking $120MM in damages. The attached document was filed with the district court in that case.

It does not appear from the filing that he has recorded this document with Utah County, but the Clerk and Recorder should be advised to reject any such filing as it would be in violation of Judge Shelby's March 20, 2019 Order of Foreclosure and Judicial Sale. (ECF No. 104 at para. 8). Can you check with the Clerk and Recorder to see if it has been filed, and if it has, make sure it is expunged? Please give me a call if you have questions.

Thanks,

Ryan

**Ryan S. Watson**
Trial Attorney
U.S. Department of Justice, Tax Division
Civil Trial Section – Western Region
P.O. Box 683
Washington, D.C. 20044

*For FedEx or UPS delivery:*
555 4th Street N.W., Room 7239
Washington, D.C. 20001

Tel: 202.514.5173 | Fax: 202.307.0054 | ryan.watson@usdoj.gov |

FILED
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

2019 JUN 25  ⊃ 3: 21

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

|  |  |
|---|---|
| Paul Kenneth Cromar,<br>Barbara Ann Cromar,<br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF<br>AMERICA,<br>WILLIAM P. BARR, DOJ<br>  ATTORNEY GENERAL;<br>RYAN S. WATSON,<br>NANCY K PHILLIPS,<br>R. A. MITCHELL,<br>WANDA I. MANLEY,<br>JOAN FLACH<br>or JOAN FLACK;<br>ROBERT J. SHELBY;<br>    Defendants. | CIVIL CASE No.:<br>2:19-cv-00255-BCW<br><br><br><br># NOTICE<br># OF LIS PENDENS |

## To those concerned,

**Please take notice** that a lawsuit captioned as above was commenced in the Utah

Fourth District Court in Provo on March 29, 2019 [Case-No: 190400494] against

the United States of America and other parties, and is now pending, after removal

to federal district court in Provo, Utah, as Case No.: [Case No.: 2:19-cv-00255] in

that federal district court in Salt Lake City, Utah.


The general object of said suit is to obtain a judgment and other ancillary relief

including, but not limited to, judgment establishing clear Title in the state of Utah

to the property commonly known as:

\

## 9870 N. Meadow Drive, Cedar Hills, Utah 84062

That action names the above captioned parties and is itself pursued as a:

## COMPLAINT

**FOR $120,000,000
FOR VIOLATIONS OF
CONSTITUTIONAL RIGHTS;
CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS;
FOR FRAUD; COMPUTER FRAUD; FORGERY; UNLAWFUL PEONAGE;
INVOLUNTARY SERVITUDE;
VIOLATIONS OF RIGHTS TO DUE PROCESS AND TO TRIAL BY JURY;
ATTEMPTED UNLAWFUL CONVERSION OF PRIVATE PROPERTY UNDER
COLOR OF LAW AND EXTORTION UNDER COLOR OF OFFICE;
ATTEMPTS TO ENFORCE A VOID JUDGMENT ISSUED BY A FEDERAL COURT
LACKING *SUBJECT-MATTER JURISDICTION* UNDER ANY APPLICABLE
ENABLING ENFORCEMENT CLAUSE IN THE CONSTITUTION; AND
FOR BLATANT VIOLATIONS OF ARTICLE, I, SECTION 2, CLAUSE 3; AND
ARTICLE I, SECTION 9, CLAUSE 4; AND
ARTICLE I, SECTION 8; CLAUSE 1
OF THE U.S. CONSTITUTION; AND
FOR BLATANT VIOLATIONS OF
CONSTITUTIONAL *RIGHTS*
SECURED UNDER
THE 4th AMENDMENT;
THE 5th AMENDMENT;
THE 7th AMENDMENT; AND
THE 14th AMENDMENT
TO THE U.S. CONSTITUTION,
AND ARTICLE I OF THE
UTAH CONSTITUTION**

## TRIAL BY JURY DEMANDED

**Additionally, there is** an appeal of *judgment* pending in the United States Tenth Circuit Court of Appeals **that also involves this property**, Docketed as Case Number: 19-4075 in that U.S. Tenth Circuit court. Litigation has been on-going in this legal action since 2017, and the *Appeals* arguments have **not yet even been** calendared in the Circuit Court.

The said lands and premises to be affected by said suit in Utah County and the federal courts, are legally described as follows:

> **Lot: 3 Plat "C",**
> **Amended North Meadow Estates Subdivision**
> **47:059:0003**

Also known as:

> **9870 N. Meadow Drive**
> **Cedar Hills, Utah 84062**

This *LIS PENDENS* Notice provides all potential purchasers and lien holders with **constructive legal Notice** that there is ongoing litigation affecting the real estate, and those that those persons claiming a subsequent interest, take a   subordinated interest to the plaintiff's interest post litigation. If the plaintiff prevails in the action, the plaintiff would have priority over purchasers subsequent to the filing of the *Lis pendens*.

In sum, "the primary purpose of the notice of *Lis pendens* is to preserve the property which is the subject matter of the lawsuit from actions of the property owner so that full judicial relief can be granted, if the plaintiff prevails." A *Lis pendens* may be filed in an action affecting real estate and, in the State of Utah, is governed by statute under Utah Code, Title 78B - Judicial Code, Chapter 6, Part 13, Section 1303 *Lis pendens – Notice*.

   *Sworn* and submitted this 25[st] day of June 2019, by:

Paul Kenneth Cromar                    and          Barbara Ann Cromar
9870 N. Meadows Dr.                                  9870 N. Meadows Dr.
Cedar Hills, UT  84062                               Cedar Hills, UT  84062

## CERTIFICATE OF SERVICE

I, Paul Kenneth Cromar certify that a true copy of the attached *Lis pendens* has been served via regular US postal service to the following:


John W. Huber US Attorney (#7226)
John K. Mangum, Asst. US Attny (#2072)
111 South Main Street, #1800
Salt Lake City, Utah  84111


Paul Kenneth Cromar
9870 N. Meadows Dr.
Cedar Hills, UT   84062


June 25th, 2019

**Watson, Ryan (TAX)**

| | |
|---|---|
| **From:** | Cort Griffin <CORTG@utahcounty.gov> |
| **Sent:** | Friday, June 28, 2019 1:36 PM |
| **To:** | Watson, Ryan (TAX) |
| **Subject:** | FW: Cromar Lis Pendens |
| **Attachments:** | Cromar Lis Pendens.PDF |

**Exhibit**

H

Ryan,

The lis pendens was recorded yesterday late in the afternoon.

Cort

**From:** Andrea Allen <ANDREA@utahcounty.gov>
**Sent:** Friday, June 28, 2019 8:25 AM
**To:** Cort Griffin <CORTG@utahcounty.gov>
**Subject:** Cromar Lis Pendens

Hi Cort,

This was recorded June 26, 2019 at 4:20 pm.  I did not see it yesterday when I looked for it.

As you can see, it just has a filed at the court stamp not an actual court seal.

aa

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

JUN 25 2019

MARK JONES, CLERK
BY_____ 2.21pm
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

ENT 58695:2019 PG 1 of 4
JEFFERY SMITH
UTAH COUNTY RECORDER
2019 Jun 26 4:20 pm FEE 40.00 BY MG
RECORDED FOR CROMAR, PAUL & BARBARA

Paul Kenneth Cromar,
Barbara Ann Cromar,
   Plaintiffs,

   v.

UNITED STATES OF
AMERICA,
WILLIAM P. BARR, DOJ
   ATTORNEY GENERAL;
RYAN S. WATSON,
NANCY K PHILLIPS,
R. A. MITCHELL,
WANDA I. MANLEY,
JOAN FLACH
or JOAN FLACK;
ROBERT J. SHELBY;
   Defendants.

CIVIL CASE No.:
2:19-cv-00255-BCW

# NOTICE
# OF LIS PENDENS



## To those concerned,

**Please take notice** that a lawsuit captioned as above was commenced in the Utah Fourth District Court in Provo on March 29, 2019 [Case-No: 190400494] against the United States of America and other parties, and is now pending, after removal to federal district court in Provo, Utah, as Case No.: [Case No.: 2:19-cv-00255] in that federal district court in Salt Lake City, Utah.

The general object of said suit is to obtain a judgment and other ancillary relief including, but not limited to, judgment establishing clear Title in the state of Utah to the property commonly known as:

(

# 9870 N. Meadow Drive, Cedar Hills, Utah 84062

That action names the above captioned parties and is itself pursued as a:

## COMPLAINT

**FOR $120,000,000
FOR VIOLATIONS OF
CONSTITUTIONAL RIGHTS;
CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS;
FOR FRAUD; COMPUTER FRAUD; FORGERY; UNLAWFUL PEONAGE;
INVOLUNTARY SERVITUDE;
VIOLATIONS OF RIGHTS TO DUE PROCESS AND TO TRIAL BY JURY;
ATTEMPTED UNLAWFUL CONVERSION OF PRIVATE PROPERTY UNDER
COLOR OF LAW AND EXTORTION UNDER COLOR OF OFFICE;
ATTEMPTS TO ENFORCE A VOID JUDGMENT ISSUED BY A FEDERAL COURT
LACKING *SUBJECT-MATTER JURISDICTION* UNDER ANY APPLICABLE
ENABLING ENFORCEMENT CLAUSE IN THE CONSTITUTION; AND
FOR BLATANT VIOLATIONS OF ARTICLE, I, SECTION 2, CLAUSE 3; AND
ARTICLE I, SECTION 9, CLAUSE 4; AND
ARTICLE I, SECTION 8; CLAUSE 1
OF THE U.S. CONSTITUTION; AND
FOR BLATANT VIOLATIONS OF
CONSTITUTIONAL *RIGHTS*
SECURED UNDER
THE 4th AMENDMENT;
THE 5th AMENDMENT;
THE 7th AMENDMENT; AND
THE 14th AMENDMENT
TO THE U.S. CONSTITUTION,
AND ARTICLE I OF THE
UTAH CONSTITUTION**

## TRIAL BY JURY DEMANDED

**Additionally, there is** an appeal of *judgment* pending in the United States Tenth Circuit Court of Appeals **that also involves this property**, Docketed as Case Number: 19-4075 in that U.S. Tenth Circuit court. Litigation has been on-going in this legal action since 2017, and the *Appeals* arguments have **not yet even been** calendared in the Circuit Court.

The said lands and premises to be affected by said suit in Utah County and the federal courts, are legally described as follows:

**Lot: 3 Plat "C",**
**Amended North Meadow Estates Subdivision**
**47:059:0003**

Also known as:

**9870 N. Meadow Drive**
**Cedar Hills, Utah 84062**

This *LIS PENDENS* Notice provides all potential purchasers and lien holders with *constructive legal Notice* that there is ongoing litigation affecting the real estate, and those that those persons claiming a subsequent interest, take a subordinated interest to the plaintiff's interest post litigation. If the plaintiff prevails in the action, the plaintiff would have priority over purchasers subsequent to the filing of the *Lis pendens*.

In sum, "the primary purpose of the notice of *Lis pendens* is to preserve the property which is the subject matter of the lawsuit from actions of the property owner so that full judicial relief can be granted, if the plaintiff prevails." A *Lis pendens* may be filed in an action affecting real estate and, in the State of Utah, is governed by statute under Utah Code, Title 78B - Judicial Code, Chapter 6, Part 13, Section 1303 *Lis pendens – Notice*.

   *Sworn* and submitted this 25st day of June 2019, by:

Paul Kenneth Cromar                  and                  Barbara Ann Cromar
9870 N. Meadows Dr.                                          9870 N. Meadows Dr.
Cedar Hills, UT   84062                                      Cedar Hills, UT   84062

# CERTIFICATE OF SERVICE

I, Paul Kenneth Cromar certify that a true copy of the attached *Lis pendens* has been served via regular US postal service to the following:

John W. Huber US Attorney (#7226)
John K. Mangum, Asst. US Attny (#2072)
111 South Main Street, #1800
Salt Lake City, Utah  84111

Paul Kenneth Cromar
9870 N. Meadows Dr.
Cedar Hills, UT   84062

June 25th, 2019

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 2:17-cv-01223-RJS |
| v. | |
| PAUL KENNETH CROMAR, BARBARA ANN CROMAR, UTAH HOUSING FINANCE AGENCY, UNIVERSAL CAMPUS FEDERAL CREDIT UNION, STATE OF UTAH, TAX COMMISSION, AND UTAH COUNTY, UTAH | **ORDER CONFIRMING SALE AND DISTRIBUTING PROCEEDS** |
| Defendants. | |

On March 20, 2019, the Court entered an Order of Foreclosure and Judicial Sale (ECF No. 104). The Order directed the United States to sell the property of Paul Kenneth Cromar located at 9870 N. Meadow Drive, Cedar Hills, Utah 84062-9430 ("the property"), which is more- particularly described as:

> Lot 3, Plat "C", Amended North Meadows Estates Subdivision, according to the official plat thereof on file in the office of the Recorder, Utah County, Utah.

Upon review of the United States' Motion for Order Confirming Sale and Distributing Proceeds, and for good cause showing:

IT IS ORDERED THAT the sale on September 10, 2019 of the property was properly conducted. The sale is hereby confirmed.

IT IS FURTHER ORDERED THAT the Internal Revenue Service is authorized to execute and deliver to the purchaser a Certificate of Sale and Deed conveying the property to the purchaser or assignee(s).

IT IS FURTHER ORDERED THAT, on delivery of the Certificate of Sale and Deed, all interests in, liens against, or claims to the property (including the June 28, 2019 *lis pendens* that

Paul Kenneth Cromar filed in Utah County, Utah and that is attached in Exhibit H to the United

States' Motion) that are held or asserted in this action by the United States or any of the

Defendants are discharged and extinguished. On the delivery of the Certificate of Sale and Deed,

the property shall be free and clear of the interests of all parties to this action.

IT IS FURTHER ORDERED THAT possession of the property sold shall be yielded to

the purchaser or assignee(s) upon the production of a copy of the Certificate of Sale and Deed; if

there is a refusal to so yield, a Writ of Assistance may, without further notice, be issued by the

Clerk of Court to compel delivery of the property to the purchaser or assignee(s).

IT IS FURTHER ORDERED THAT the proceeds of the sale on September 10, 2019 of

the property shall be distributed by the Clerk of Court as follows:

1.      First, by check made payable to the "Internal Revenue Service" in the amount of

$683.80 for costs of sale, mailed to:

> Internal Revenue Service
> c/o Gary Chapman
> IRS Property Appraisal & Liquidation Specialist
> 1201 Pacific Ave., Suite 550, M/S W802
> Tacoma, WA 98402

2.      Second, by check made payable to Utah County, Utah in the amount of

$2,114.49, as of March 3, 2020, plus an additional $0.44 for each day past March 3, 2020,

mailed to:

> Utah County Treasurer
> 100 E. Center Street, Suite 1200
> Provo, Utah 84606

3.      Third, by check made payable to the "United States Department of Justice," with

"*United States v. Cromar, et al.*, Case No. 2:17-cv-01223" written in the memo field, of the

remaining proceeds from the sale, mailed to:

> Department of Justice, ATTN: TAXFLU
> P.O. Box 310 – Ben Franklin Station
> Washington, DC 20044

IT IS SO ORDERED.

Dated this _____ day of March, 2020

                                        _____

                                        Robert J. Shelby
                                        United States District Judge

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAUL KENNETH CROMAR; BARBARA ANN CROMAR; UTAH HOUSING FINANCE AGENCY; UNIVERSAL CAMPUS FEDERAL CREDIT UNION; STATE OF UTAH TAX COMMISSION; and UTAH COUNTY, UTAH;<br><br>Defendants. | **ORDER OF FORECLOSURE AND JUDICIAL SALE**<br><br>Case No. 2:17-cv-01223<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Evelyn J. Furse |

This matter is before the court on the United States' Motion for Order of Foreclosure and Judicial Sale.[1]  Pursuant to the United States' Motion and the court's Default Judgment,[2] this Order of Foreclosure and Judicial Sale is entered pursuant to the provisions of 28 U.S.C. §§ 2001 & 2002 and 26 U.S.C. §§ 7402 & 7403.  The court hereby ORDERS as follows:

1.      This Order pertains to real property owned by Paul Kenneth Cromar (the "Subject Property"), which is located at 9870 N. Meadow Drive, Cedar Hills, Utah 84062-9430 and is more particularly described in Paragraph 15 of the United States' Complaint.[3]

2.      The United States has valid and subsisting tax liens on all property and rights to property of Defendant Paul Kenneth Cromar, including the Subject Property,[4] arising from the

---

[1] Dkt. 103.

[2] Dkt. 96.

[3] Dkt. 2.

[4] See Dkt. 96 at ¶ 3.

GOVERNMENT
EXHIBIT

No. 34

...fy that the annexed is a true and correct ... document or an electronic docket ...... at the United States District Court for the ... ... of Utah.
Number of pages ...
Date: ...
GARY P. SERDAR
CLERK OF COURT
By: ...
De...

assessments described in the United States' Complaint, which liens are effective as of the dates

of those assessments. The United States further protected its liens by filing Notices of Federal

Tax Liens with the Utah County Recorder's Office.

     3.     As a result of their default, Defendants Barbara Ann Cromar and Universal

Campus Federal Credit Union have no interest in the Subject Property or the sale proceeds

therefrom.[5]

     4.     Under 26 U.S.C. § 7403, the United States is entitled to enforce its liens against

the Subject Property in order to apply the proceeds towards the tax liabilities of Paul Kenneth

Cromar.

     5.     The United States' federal tax liens against the Subject Property are hereby

foreclosed. The United States Marshal, his/her representative, or an Internal Revenue Service

Property Appraisal and Liquidation Specialist ("PALS") representative is authorized and directed

under 28 U.S.C. §§ 2001 and 2002 to offer for public sale and to sell the Subject Property free

and clear of the right, title, and interest of all parties to this action and any successors in interest

or transferees of those parties. The United States may choose either the United States Marshal or

a PALS representative to carry out the sale under this Order of Foreclosure and Judicial Sale and

shall make the arrangements for any sales as set forth in this Order. This Order of Foreclosure

and Judicial Sale shall act as a special writ of execution and no further orders or process from the

court shall be required.

     6.     The United States Marshal, his/her representative, or a PALS representative is

authorized to have free access to the Subject Property and to take all actions necessary to

---

[5] *Id.* at ¶ 4.

2

preserve the Subject Property, including, without limitation, retaining a locksmith or other

person to change or install locks or other security devices on any part thereof, until a deed

thereto is delivered to the ultimate purchaser(s).

7.     The terms and conditions of the sale are as follows:

    a.     Except as otherwise stated herein, the sale of the Subject Property shall be

by public auction to the highest bidder, free and clear of all liens and

interests of parties to this action, with the proceeds of such sale to be

distributed in accordance with the priority of the lienholders set forth in

paragraph 12, below.

    b.     The sale shall be subject to all laws, ordinances, and governmental

regulations (including building and zoning ordinances), affecting the

premises, and easements and restrictions of record, if any.

    c.     The sale shall be held at the United States District Court for the District of

Utah, on the Subject Property's premises, or at any other place in

accordance with the provisions of 28 U.S.C. §§ 2001 and 2002, at a date

and time announced by the United States Marshal, his/her representative,

or a PALS representative.

    d.     Notice of the sale shall be published once a week for at least four

consecutive weeks before the date fixed for the sale in at least one

newspaper regularly issued and of general circulation in Utah County,

Utah, and, at the discretion of the Marshal, his/her representative, or a

PALS representative, by any other notice that it or its representative may

deem appropriate.  State or local law notice requirements for foreclosures

3

USA_PROD4_0000109

or execution sales do not apply to the sale under federal law, and state or local law regarding redemption rights do not apply to this sale. The notice or notices of sale shall describe the Subject Property and shall contain the material terms and conditions of sale in this Order of Foreclosure and Sale.

e.   The minimum bid will be set by the Internal Revenue Service. If the minimum bid is not met or exceeded, the Marshal, his/her representative, or a PALS representative may, without further permission of this court, and under the terms and conditions in this Order of Foreclosure and Judicial Sale, hold new public sales, if necessary, and reduce the minimum bid or sell to the highest bidder.

f.   Bidders shall be required to deposit, at the time of sale with the Marshal, his/her representative, or a PALS representative, a minimum of 10 percent of the bid, with the deposit to be made by a certified or cashier's check payable to the United States District Court for the District of Utah. Before being permitted to bid at the sale, bidders shall display to the Marshal, his/her representative, or a PALS representative satisfactory proof of compliance with this requirement.

g.   The balance of the purchase price of the Subject Property in excess of the deposit tendered shall be paid to the Marshal or a PALS representative (whichever person is conducting the sale) within 30 days after the date the bid is accepted, by a certified or cashier's check payable to the United States District Court for the District of Utah. If the successful bidder or

4

bidders fails to fulfill this requirement, the deposit shall be forfeited and shall be applied to cover the expenses of the sale, including commissions due under 28 U.S.C. §1921(c), with any amount remaining to be applied first to the federal tax liabilities of Paul Kenneth Cromar. The Subject Property shall be again offered for sale under the terms and conditions of this Order of Foreclosure and Judicial Sale or, in the alternative, sold to the second-highest bidder. The United States may bid as a credit against its judgment without tender of cash.

h.  The sale of the Subject Property shall not be final until confirmed by this court. The Marshal or a PALS representative shall file a report of sale with the court within 30 days from the date of receipt of the balance of the purchase price.

i.  Upon confirmation of the sale, the Marshal or PALS representative shall promptly execute and deliver a deed of judicial sale conveying the Subject Property to the purchaser or purchasers.

j.  Upon confirmation of the sale or sales, the interests of, liens against, or claims to the Subject Property held or asserted by the United States and any other parties to this action or any successors in interest or transferees of those parties shall be discharged and extinguished. The sale is ordered pursuant to 28 U.S.C. §2001. Redemption rights under state or local law shall not apply to this sale under federal law.

k.  Upon confirmation of the sale, the purchaser or purchasers are responsible for having the Recorder of Deeds of Utah County, Utah cause the transfer

5

of the Subject Property to be reflected in the Utah County property records.

8.     Until the Subject Property is sold, Paul Kenneth Cromar shall take all reasonable steps necessary to preserve the Subject Property (including all buildings, improvements, fixtures, and appurtenances thereon) including, without limitation, maintaining fire and casualty insurance policies on the Subject Property. He shall keep current in paying real property taxes as they are assessed by Utah County. He shall not commit waste against the Subject Property, nor shall he cause or permit anyone else to do so. He shall not do anything that tends to reduce the value or marketability of the Subject Property, nor shall he cause or permit anyone else to do so. He shall not record any instruments, publish any notice, or take any other action that may directly or indirectly tend to adversely affect the value of the Subject Property or that may tend to deter or discourage potential bidders from participating in the public sale, nor shall he cause or permit anyone else to do so. Violation of this paragraph shall be deemed a contempt of court and punishable as such.

9.     All persons occupying the Subject Property shall leave and vacate permanently the property no later than 15 days after the date of this Order, each taking with them his or her personal property (but leaving all improvements, buildings, fixtures, and appurtenances) when leaving and vacating. If any person fails or refuses to leave and vacate the Subject Property by the time specified in this Order, the United States Marshal's Office or his/her representative is authorized to take whatever action it deems appropriate to remove such person or persons from the premises, whether or not the sale of such property or properties is being conducted by a PALS representative. If any person fails or refuses to remove his or her personal property from the Subject Property by the time specified herein, the personal property remaining at the Subject

6

Property thereafter is deemed forfeited and abandoned, and the United States Marshal's Office, his/her representative, or the PALS representative is authorized and directed to remove and dispose of it in any manner they see fit, including sale, in which case the proceeds of sale are to be applied first to the expenses of sale, and then to the tax liabilities at issue herein.

10.    Notwithstanding the terms of the immediately preceding paragraph, if, after the sale of the Subject Property is confirmed by this court, the Subject Property remains occupied, a writ of assistance may, without further notice, be issued by the Clerk of Court pursuant to Rule 70 of the Federal Rules of Civil Procedure to compel delivery of possession of the Subject Property to the purchaser or purchasers thereof.

11.    If any person occupying the Subject Property vacates the Subject Property prior to the deadline set forth in Paragraph 9, above, such person shall notify counsel for the United States no later than two business days prior to vacating the property of the date on which he or she is vacating the property.  Notification shall be made by leaving a message for counsel for the United States, Ryan S. Watson, at (202) 514-5173.

12.    The Marshal, his/her representative, or a PALS representative, shall deposit the amount paid by the purchaser or purchasers into the registry of the court.  Upon appropriate motion for disbursement or stipulation of the parties, the court will disburse the funds in the following order of preference until these expenses and liens are satisfied: first, to the IRS for allowed costs and expenses of sale, including any commissions due under 28 U.S.C. §1921(c) and including an amount sufficient to cover the costs of any steps taken to secure or maintain the real property at issue pending sale and confirmation by the court; second, to Utah County for *ad valorem* property tax or special assessment liens upon the real property entitled to priority over prior security interests, as provided by 26 U.S.C. § 6323; and third, to the United States of

7

America to satisfy or partially satisfy the federal tax liabilities of Paul Kenneth Cromar, at issue

herein. Should there then be any remaining proceeds, those proceeds will be held by the court

pending further motion by the parties.

SO ORDERED this 20th day of March, 2019.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

I hereby certify that the annexed is a true and correct
copy of a document or an electronic docket entry on
file at the United States District Court for the District
of Utah.
Number of pages: 8
Date: 11/8/23
GARY P. SERDAR
CLERK OF COURT
By: _____
Deputy Clerk

8

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>PAUL KENNETH CROMAR, BARBARA ANN CROMAR, UTAH HOUSING FINANCE AGENCY, UNIVERSAL CAMPUS FEDERAL CREDIT UNION, STATE OF UTAH, TAX COMMISSION, AND UTAH COUNTY, UTAH,<br><br>   Defendants. | **ORDER CONFIRMING SALE AND DISTRIBUTING PROCEEDS**<br><br>Case No. 2:17-cv-01223-RJS<br><br>Chief Judge Robert J. Shelby |

**GOVERNMENT EXHIBIT**

**No. 41**

On March 20, 2019, the court entered an Order of Foreclosure and Judicial Sale.[1]  The Order directed the United States to sell Paul Kenneth Cromar's property located at 9870 N. Meadow Drive, Cedar Hills, Utah 84062-9430 (the property), which is more particularly described as:

> Lot 3, Plat "C", Amended North Meadows Estates Subdivision, according to the official plat thereof on file in the office of the Recorder, Utah County, Utah.

The court now has before it the United States' Motion for Order Confirming Sale and Distributing Proceeds,[2] together with Defendants Paul Kenneth Cromar and Barbara Ann Cromar's Objection to Plaintiff's Motion for Disbursement and Rejection of Default Judgment for Fraud and Swindle in Dishonor.[3]  Upon review, the Cromars' Objection raises no evidentiary objections to the United States' Motion and offers no legal or factual arguments justifying denial

---

[1] Dkt. 104.

[2] Dkt. 117.

[3] Dkt. 118.

I hereby certify that the annexed is a true and correct copy of a document or an electronic docket entry on file at the United States District Court for the District of Utah.
Number of pages: 4
Date: 4/15/24
GARY P. SERDAR
CLERK OF COURT
By: _____ Deputy Clerk

of the Motion.[4]  Instead, the Objection relies on the same frivolous arguments the Cromars have

raised throughout this case, i.e., that their due process rights have been violated and this court lacks

subject matter jurisdiction over this case.[5]  But this court and the Tenth Circuit have repeatedly

rejected these arguments, and the court declines to readdress the arguments here other than to note

that they unequivocally fail.[6]  For that reason, the Motion is substantially unopposed and is well

taken. Therefore, for good cause appearing, the United States' Motion is GRANTED as follows:

IT IS ORDERED THAT the sale on September 10, 2019, of the property was properly

conducted, and the sale is hereby confirmed.

IT IS FURTHER ORDERED THAT the Internal Revenue Service is authorized to execute

and deliver to the purchaser a Certificate of Sale and Deed conveying the property to the purchaser

or assignee(s).

IT IS FURTHER ORDERED THAT, on delivery of the Certificate of Sale and Deed, all

interests in, liens against, or claims to the property (including the June 28, 2019 *lis pendens* that

Paul Kenneth Cromar filed in Utah County, Utah, and that is attached in Exhibit H to the United

States' Motion) that are held or asserted in this action by the United States or any of the Defendants

are discharged and extinguished.  On the delivery of the Certificate of Sale and Deed, the property

shall be free and clear of the interests of all parties to this action.

---

[4] *See id.*

[5] *See id.*

[6] *See United States v. Cromar*, Case No. 2:17-cv-01223, 2020 WL 1488763 (10th Cir. Mar. 26, 2020) (unpublished); *see also United States v. Cromar*, Case No. 2:17-cv-01223, 2018 WL 3719258 (D. Utah Aug. 3, 2018); *United States v. Cromar*, Case No. 2:17-cv-01223, 2018 WL 9371363 (D. Utah May 14, 2018).  The Cromars make other similarly frivolous arguments based on the misapplication of various statutory provisions and improperly include requests for relief in their Objection. *See* DUCivR 7-1(b)(1)(A) ("No motion . . . may be included in a response or reply memorandum.").

2

IT IS FURTHER ORDERED THAT possession of the property sold shall be yielded to the purchaser or assignee(s) upon the production of a copy of the Certificate of Sale and Deed; if there is a refusal to so yield, a Writ of Assistance may, without further notice, be issued by the Clerk of Court to compel delivery of the property to the purchaser or assignee(s).

IT IS FURTHER ORDERED THAT the proceeds of the sale on September 10, 2019, of the property shall be distributed by the Clerk of Court as follows:

1.     First, by check made payable to the "Internal Revenue Service" in the amount of $683.80 for costs of sale, mailed to:

> Internal Revenue Service
> c/o Gary Chapman
> IRS Property Appraisal & Liquidation Specialist
> 1201 Pacific Ave., Suite 550, M/S W802
> Tacoma, WA 98402

2.     Second, by check made payable to "Utah County, Utah" in the amount of $2,114.49, as of March 3, 2020, plus an additional $0.44 for each day past March 3, 2020, mailed to:

> Utah County Treasurer
> 100 E. Center Street, Suite 1200
> Provo, Utah 84606

3.     Third, by check made payable to the "United States Department of Justice," with "*United States v. Cromar, et al.*, Case No. 2:17-cv-01223" written in the memo field, in the amount of the remaining proceeds from the sale, mailed to:

> Department of Justice, ATTN: TAXFLU
> P.O. Box 310 – Ben Franklin Station
> Washington, DC 20044

3

USA-PROD5-0000010

SO ORDERED this 15th day of April 2020.

BY THE COURT:

ROBERT J SHELBY
United States Chief District Judge

4

# EXHIBIT D



DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
Washington, DC 20224

SMALL BUSINESS / SELF-EMPLOYED DIVISION

Date <u>January 21st, 2020</u>

### RECEIPT FOR DEPOSIT

On <u>September 10th, 2019</u>, the property identified by the commonly known address of 9870 N Meadow Dr, Cedar Hills, UT 84062, by Notice of Judicial Sale, was sold at public auction under an order for foreclosure of Federal Tax Liens and order of sale of real property pursuant to <u>The *United States v.* Paul Kenneth Cromar, et al.</u>

The above property was sold to you as the highest bidder for <u>$330,000.00</u> .

This is a receipt for the final payment of <u>$299,000.00</u> for the purchase of this property as received by Gary Chapman, Property Appraisal and Liquidation Specialist for the Internal Revenue Service, Employee No. 10000342786 on January 21st, 2020.

A deed will be issued upon final payment and sale confirmation by the court.

Copper Birch Properties LLC       <u>01/21/2020</u>
9671 North 5650 West              Date
Highland Utah 84003
_____

Purchaser

_____
PALS
Gary Chapman
10000342786

GOVERNMENT
EXHIBIT

No. 43