Paul-Kenneth: Cromar, ID #567164
c/o Sheriff / Davis County Jail
800 West State Street
P.O. Box 618
Farmington, Utah 84025-0618
Phone: 801-451-4100
*Sui Juris* [pro se]

FILED US District Court-UT
OCT 24 '24 PM02:57

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA (DUNs #052714196), Plaintiff *in error*, <br><br> v. <br><br> "PAUL KENNETH CROMAR", Defendant *in error*. | Case No. 2:23-cr-00159-HCN-DBP <br><br> **Defendant's Motion to VACATE the VOID JUDGMENT for Lack of *subject-matter jurisdiction* of the district court by Decision of the Supreme Court in *Moore et Ux v. United States 22-800*, June 20, 2024** <br><br> District Judge Howard C. Nielson, Jr. <br> Magistrate Judge Dustin B. Pead |

**Defendant's Motion to VACATE the VOID JUDGMENT for Lack of *subject-matter jurisdiction* of the district court by Decision of the Supreme Court in *Moore et Ux v. United States***

1.    Comes now, ©Paul Kenneth Cromar™,[1] "Ken Cromar", defendant *in-error*, *Sui Juris* [pro se], who herein *moves* this court under Fed.R.Crim.P. Rule 33(a) - *New Trial,* and Rule 52(b) - *Plain error*, to *set aside* the jury's verdict, render **VOID** the *fraudulent* judgment, and *vacate* the **VOID** judgment for lack of the *subject-matter jurisdiction* of the district court that **did NOT exist as it was claimed by the court at trial, and as the jury was** *falsely* **instructed,** because it was *wrongfully* and *erroneously* alleged *taken* by the court under

---

[1] Paul Kenneth Cromar, "Ken", is a red-blooded, living, breathing American Sovereign, as defined within eight (8) JUDICIAL NOTICES in the original (first of 18) court case 2:17-cv-01223-RJS, in addition to a number of motions and judicial notices in this instant case.

1

authority of the 16th Amendment to enforce a ""*non-apportioned direct tax*"" *wrongfully* and *erroneously* alleged by the plaintiff and the court itself to be authorized under that Amendment.

2.    In this case, the district court ruled from the bench in hearings, and instructed the jury *erroneously* before deliberations, that the federal personal income tax was a *"non-apportioned direct tax"* on income that was constitutionally authorized to exist as such *direct* tax **without** constitutional *limitation* under authority of the 16th Amendment[2].

3.    However, in June of this year (2024), the Supreme Court plainly and clearly declares in the recent *Moore et Ux v United States, 22-800* (Jun. 2024) decision[3] that it is **fundamental constitutional law** that income taxes are *foundationally* speaking, **under the Constitution, INDIRECT** taxes **under Article I, Section 8, clause 1**, and that the federal personal income tax is **NOT** a *"non-apportioned direct tax"* under authority of the 16th Amendment, as *fatally erroneously* asserted by this court to conduct the trial by *mistakenly* claiming a *subject-matter jurisdiction* to enforce a *"non-apportioned direct tax"* on income under the 16th Amendment without *limitation,* that, according to the Supreme Court in *Moore,* does **NOT** **exist** under the U.S. Constitution as an authorized taxing power for which Congress may write law to enforce.    This court *lacked, and still lacks, subject-matter jurisdiction* under the 16th Amendment.

4.    This court has therefore conducted the entire trial of the defendant, and all of the trial proceedings, **without** the **required** *subject-matter jurisdiction* necessary to conduct any proceedings or trial at all!

5.    Therefore, the verdict must be *set aside* and the judgment of the court declared **VOID**, and the **VOID** judgement **must** be **vacated,** because *lacking* the foundational, constitutional, *subject-matter jurisdiction* **necessary** to conduct a criminal trial at all, the court acted *ultra vires* by *erroneously* claiming its jurisdiction under alleged authority of the 16th Amendment to enforce the *"non-apportioned direct tax"* that was *operationally* assessed by the plaintiff's

---

[2] See attached supporting hearing Transcript pg. 9 referencing *Balice,* and Plaintiff's Proposed Jury Instruction - pg. 31, and 10th Circuit Court of Appeals *Order* in previous civil action, pg. 5, raising the controlling *estoppel* issues that were repeatedly, previously argued correctly by the defendant.
[3] See attached *Syllabus* pg. 2 & *Opinion* from *Moore et Ux v. United States*, 22-800, June 2024, pgs.5-7

IRS under a *falsely* claimed authority of the 16th Amendment to tax the earnings of American citizens *directly* and **without** any applicable constitutional *limitation*, which under *Moore,* is **clear error.** The judgment is **VOID,** and now the verdict must be *set aside,* and the **VOID** judgment **must** be *vacated.*

> "Courts are constituted by authority and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgements and orders are regarded as nullities; they are not voidable, but simply void, and this even prior to reversal." *Williamson v. Berry,* 8 HOW. 945, 540 12 L. Ed. 1170, 1189 (1850).

6.    The Federal Rules of Civil Procedure provide that pursuant to F.R.C.P. Rule 60(b)(4) the district court "*may relieve a party or its legal representative from a final judgment, Order, or proceeding*" if, inter alia, "***the judgment is void.***" Fed.R.Civ.P. 60(b)(4). "*Generally,* ***a judgment is void*** *under Rule 60(b)(4) if the court that rendered it* ***lacked jurisdiction of the subject matter,*** *or of the parties, or if it acted in a manner* ***inconsistent with due process of law.***" Burke, 252 F.3d at 1263. <u>Blacks Law Sixth Edition</u>. While the *pro se* defendant in this criminal case is unable to find a parallel rule in the Federal Rules of Criminal Procedure that parallels the understanding that the district court "*may relieve a party or its legal representative from a final judgment, Order, or proceeding*" if, inter alia, "***the judgment is void***", where "***a judgment is void*** *if the court that rendered it* ***lacked*** **jurisdiction** *of the* ***subject matter***", he never-the-less argues that under the *precedents* cited herein below, the **same reality is true** in the criminal courts *lacking* the *subject-matter jurisdiction* necessary to conduct the specific criminal trial conducted. A criminal verdict and judgment obtained against a defendant in a court *lacking* the **required** *subject-matter jurisdiction* **cannot** be sustained, - when the court rendering the verdict and judgment *lacked* the *subject-matter jurisdiction* it claimed at trial, <u>in order to allow the court</u> to conduct the trial of the defendant.

## SCOTUS Says in *Moore* that Taxes on Income are <u>Indirect</u> Taxes

7.    On page 2 of the *Moore Syllabus* it plainly and clearly states as part of the holding,

> "*Held*:
>
>     ...

(a) Article I of the Constitution affords Congress broad power to lay and collect taxes. That power includes direct taxes—those imposed on persons or property—and indirect taxes—those imposed on activities or transactions. **Direct taxes must be apportioned among the States** according to each State's population, while indirect taxes are permitted without apportionment but must "be uniform throughout the United States," §8, cl. 1. **Taxes on income are <u>indirect</u> taxes,** and the Sixteenth Amendment confirms that taxes on income need not be apportioned. *Moore v. United States,* No. 22–800,  Argued December 5, 2023 - Decided June 20, 2024.                         (emphasis added)

8.    The Supreme Court "***Held***:" that  "*<u>Taxes on income</u> are **<u>indirect</u>** taxes*".  That directly **contradicts** this court's, and the 10th Circuit's, ***erroneous*** claim that the income tax is a ***"non-apportioned direct tax"*** under alleged authority of the 16th Amendment.  This district court clearly ***erred,*** and ***fatally*** so, when it declared its *subject-matter jurisdiction* was based on a power conferred by the 16th Amendment to tax income *directly* and **without** *limitation.*  **NO** such power **exists** under the U.S. Constitution according to the Supreme Court in this recent *Moore* decision reaffirming its decision in *Brushaber,* taken 108 years ago, that income taxes are ***<u>indirect</u>*** taxes under authority of Article I, Section 8.

9.    The Supreme Court provides more support for this understanding, in the *Moore Opinion* itself (attached as Exhibit C), on pages 5-7 where it reads:

" Article I of the Constitution affords Congress broad "Power To lay and collect Taxes, Duties, Imposts and Excises." Art. I, §8, cl. 1.  That power includes "'two great classes of'" taxes—direct taxes and indirect taxes. *Brushaber* v. *Union Pacific R. Co.*, 240 U. S. 1, 13 (1916).

Generally speaking, *direct* taxes are those taxes imposed on persons or property. See *National Federation of Independent Business* v. *Sebelius*, 567 U. S. 519, 570–571 (2012). As a practical matter, however, Congress has **rarely** enacted direct taxes because **the Constitution requires that direct taxes be apportioned** among the States.  To be apportioned, direct taxes **must be imposed** "in Proportion to the Census of Enumeration." U.S. Const., Art. I, §9, cl. 4; see also §2, cl. 3. In other words, **direct taxes must be apportioned among the States** according to each State's population.

So if Congress imposed a property tax on every American homeowner, the citizens of a State with five percent of the population would pay five percent of the total property tax, even if the value of their combined property added up to only three percent of the total value of homes in the United States. To pay five percent, the tax rate on the citizens of that State would need to be substantially

4

higher than the tax rate in a neighboring State with the same population but more valuable homes.

To state the obvious, that kind of complicated and politically **unpalatable** result has made direct taxes **difficult** to enact. Indeed, **the parties have cited no apportioned direct taxes in the current Internal Revenue Code**, and it appears that Congress has **not enacted** an apportioned tax **since the Civil War**. See 12 Stat. 297; E. Jensen, The Taxing Power: A Reference Guide to the United States Constitution 89 (2005).

By contrast, *indirect* taxes are the familiar federal taxes imposed on activities or transactions. That category of taxes includes **duties, imposts,** and **excise** taxes, **as well as income taxes**. U. S. Const., Art. I, §8, cl. 1; Amdt. 16. Under the Constitution, **indirect** taxes must "be uniform throughout the United States." Art. I, §8, cl. 1. A "'tax is uniform when it operates with the same force and effect in every place where the subject of it is found.'" *United States* v. *Ptasynski*, 462 U. S. 74, 82 (1983).

Because **income taxes are indirect taxes**, they are permitted **under Article I, §8** without apportionment. As this Court has said, Article I, §8's grant of taxing power "is exhaustive," meaning that it could "never" reasonably be "questioned from the" Founding that it included the power "to lay and collect income taxes." *Brushaber*, 240 U. S., at 12–13. In 1861, Congress enacted the Nation's first unapportioned income tax. 12 Stat. 309. The Civil War **income tax was recognized as an indirect tax** "under the head of excises, duties and imposts." *Brushaber*, 240 U. S., at 15; see also *Springer* v. *United States*, 102 U. S. 586, 598, 602 (1881)

In 1895, however, in *Pollock* v. *Farmers' Loan & Trust Co.*, this Court held that a tax on income from property equated to a tax on the property itself, and thus was a direct tax that had to be apportioned among the States. 158 U. S. 601, 627–628. The *Pollock* decision sparked significant confusion and controversy throughout the United States.

Congress and the States responded to *Pollock* by approving a new constitutional amendment. Ratified in 1913, the Sixteenth Amendment rejected *Pollock*'s conflation of (i) income from property and (ii) the property itself. The Amendment provides: "The Congress shall have power to lay and collect taxes on incomes, *from whatever source derived*, without apportionment among the several States, and without regard to any census or enumeration." U. S. Const., Amdt. 16 *(emphasis* added).

Therefore, the **Sixteenth Amendment expressly confirmed** what had been the understanding of the Constitution before *Pollock*: **Taxes on income— including taxes on income from property—are indirect taxes** that need not be apportioned. *Brushaber*, 240 U. S., at 15, 18.  Meanwhile, property taxes remain **direct taxes that must be apportioned.** See *Helvering* v. *Independent Life Ins. Co.*, 292 U. S. 371, 378–379 (1934)." *Moore* v. *United States,* No. 22-800, June 20, 2024, pg.5-7                            (emphasis added)

10.  In this very recent SCOTUS *Moore* decision, the court ***comprehensively*** reviews the entire set of constitutional foundations and authorities that exist for **all** federal taxation of the American people, and in America, by Congress, under the Constitution, including a review of the constitutional *limitation(s)* applicable to each *form* of taxation allowed thereunder, *direct* and *indirect.* The resultant conclusions and clear holdings of the Supreme Court in this *Moore* decision, means that this district court ***erroneously*** and ***unlawfully*** conducted the **entire** criminal trial of the defendant in this case **without** the *subject-matter jurisdiction* **necessary** and **required** to do so, and **without** ever establishing on the record of the action in the court a legitimate or lawful *subject-matter jurisdiction* of the court that could be *legally* taken by the court over the criminal charges pursuing the enforcement and payment of a ***non**-apportioned* ***direct*** income tax under alleged authority of the 16th Amendment, as ***erroneously*** declared by the court in proceedings, and argued by the plaintiff United States, by ***erroneously*** asserting that the defendant's arguments were ***frivolous,*** when **in fact,** it was the plaintiff United States who proffered **only** *frivolous* arguments.

11.  The ***lack*** of *subject-matter jurisdiction* of this court to ever have conducted the criminal trial of the defendant is now **obvious** and **irrefutable,** and the ***error*** is ***fatal*** and **irreparable** because this court simply declared that the alleged *subject-matter jurisdiction* of the court that could be taken over the criminal trial of the defendant was based on an *alleged* power to enforce the federal personal income tax ***as*** a ***"non-apportioned direct tax"*** under *alleged* authority of the 16th Amendment to tax income *directly* and without *subjectivity* to any of the applicable constitutional *limitations* that are still imposed on **all** of the *constitutionally* granted *powers* of taxation. By this *Moore* decision, this court's *claim* to *subject-matter jurisdiction* under the 16th Amendment was a clear ***fatal, irreparable, error, prejudicially*** made by the court in its ***false*** and ***erroneous claim*** to a *subject-matter jurisdiction* under the 16th Amendment.

12.  The ***erroneous*** declarations of the court made at trial, in order to appear to allow the court to enforce the *"non-apportioned **direct tax"*** on income that the IRS assessed in *operational practice,* **cannot be sustained** any longer because of the ***lack*** of any *subjectivity* of the defendant under Article I, Section 8, clause 1, to any *Impost, Duty,* or *Excise* tax; - **as is** ***constitutionally*** **required** under  the **true** ***constitutional*** **authority** for the federal personal

income tax under that Article and Section, - **as declared by SCOTUS** in this recent *Moore* decision.

13.    There is absolutely **no** constitutionally authorized *subject-matter jurisdiction* granted to the federal courts to enforce the federal personal income tax <u>as a **"non-apportioned direct tax"** under alleged authority of the 16th Amendment</u> **without** *limitation*, rather than as a *uniform indirect* tax under authority of Article I, Section 8, clauses 1 and 18.    **And there NEVER WAS!**    Under this new *Moore* decision from SCOTUS, the *alleged subject-matter jurisdiction erroneously* asserted by this district court at the criminal trial of the defendant, does **not** *constitutionally* **exist**, and **never** has existed.    This district court acted *ultra vires* in allowing a jury to convict the defendant **without** the court holding a *constitutionally* authorized, **fully granted**, *subject-matter jurisdiction* of the court that could lawfully be *taken* by it under the 16th Amendment to enforce an *allegedly* <u>*direct*</u> and <u>un</u>limited tax on income thereunder. *Moore* says that *claimed* authority **<u>DOESN'T EXIST</u>, and NEVER DID.**

14.    *Moore* plainly says those jurisdictional claims were all **FATAL, IRREPERABLE,** ***ULTRA VIRES*** **ERROR** committed by this district court in this case.

15.    This court's claim to a *subject-matter jurisdiction* over the criminal trial, based on an alleged power to enforce a *"non-apportioned direct tax"* on income under alleged authority of the 16th Amendment, was a clear *fatal, **ULTRA VIRES** error.*    This court **lacked** the *subject-matter jurisdiction* to conduct the criminal trial of defendant Cromar under authority the 16th Amendment, which trial the court *wrongfully* allowed to occur and be conducted **without** a legitimate constitutional basis for the *subject-matter jurisdiction* alleged at trial to have been *taken* under the Amendment.    **No** such *jurisdiction* exists to be *taken*.

16.    The Supreme Court repeatedly asserts in this recent *Moore* decision that the federal income tax is an ***<u>indirect</u>*** tax under the **constitutional** authority of **<u>Article I, Section 8, clause 1</u>**, and that it is **<u>NOT</u>** the *"non-apportioned <u>direct</u> tax"* under the 16th Amendment that was *erroneously assumed, asserted,* and *wrongfully* held by this court, to **unconstitutionally** allege that a *subject-matter jurisdiction* of the court could be taken under the Amendment, **when it could NOT**.

17.   The *Moore* SCOTUS decision **exposes** as ***fatally erroneous*** the claim made in this criminal trial by the court that the income tax is a "***non****-apportioned direct* tax" on all income. It is **not.**  It is an ***indirect*** tax, and **always has been** because the *Moore* Opinion cites the *Brushaber* decision in 1916 as the *controlling* case deciding that the federal income tax **is an *indirect*** tax under authority of Article I, Section 8, clauses 1 and 18, and is **NOT** a "***non-apportioned direct tax***" under authority of the 16th Amendment.       Under *Moore,* SCOTUS plainly and clearly says **that** the income tax is **NOT** authorized by the 16th Amendment because the tax is an ***indirect*** tax that is authorized under Article I, Section 8, - and is **NOT** a "***non-apportioned direct tax***" under the 16th Amendment.

18.   In re-affirming the original holdings and decisions taken by the court in *Brushaber v. Union Pacific RR Co.,* 240 US 1 (1916) the Supreme Court establishes **108 years of undisturbed** *precedent* that income taxes are ***indirect*** taxes under authority of  Article I, Section 8, clause 1, and are **not**  a *direct* tax under authority of the 16th Amendment.

19.   The *Moore* decision plainly **exposes** the plaintiff United States' "*"non-apportioned direct tax" under the 16th Amendment*" jurisdictional argument as a completely ***fraudulent*** argument because the court **re-affirms** the original decisions taken by the court in *Brushaber,* - thereby establishing a 108 year history of continuous, **consistent**, *controlling* precedent that has remained **undisturbed** across the entirety of the last 108 years, foreclosing on any possibility of an argument of an *intervening* tax (or law) that did provide for a *direct*, **un**limited tax on "income".

## The Judgment is VOID, and the VOID *Judgment* Must be *Vacated*

20.   This court **unlawfully** conducted the entire criminal trial of the defendant under an ***erroneous*** claim to its alleged *subject-matter jurisdiction* in an ***ultra vires*** manner, and now that the Supreme Court has **completely exposed** that ***fatal, ultra vires, error*** in the claimed *subject-matter jurisdiction* of this court in this criminal case.  The judgment is **VOID,** and the verdict must be ***set aside***, and the **VOID** *judgment* must now be ***vacated*** by this honorable court.

21.    Thus this district court now has no legal option left to it within its legal discretion, except to *set aside* the verdict, declare the judgment **VOID**, and *vacate* the **VOID** judgment; - which judgement was rendered by a court that *lacked* the *subject-matter jurisdiction* necessary and **required** to enforce the *supposedly* *"non-apportioned direct tax"* on *"income"* that was *unconstitutionally* assessed by the plaintiff's IRS and *wrongfully* prosecuted by the plaintiff United States' Department of Justice attorneys as though it were such *unlimited, direct, non-apportioned* tax on income. It was **all** ***ultra vires.***

> **Black's Law Dictionary, Sixth Edition, P. 1522;** *ultra vires.* An act performed **without any authority to act on the subject.** *Haslund v. City of Seattle,* 86 Wash.2d 6O7, 547, P.2d 1221, 1230. Acts **beyond the scope of the powers** of a corporation as defined by its charter or laws of state of incorporation. *State ex rel. v. Holston Trust Company,* 168 Tenn. 546, 79 S.W.2d 1012, 1016. The term has a broad application and includes not only acts prohibited by the charter but **acts which are in excess of powers granted** and not prohibited and generally applied either when a corporation has no power whatever to do an act or when the corporation has the power but exercises it irregularly. *People ex rel. Barrett v. Bank Peoria,* 295 Ill. App. 543, 15 N.E.2d 333, 335.  An act is *ultra vires* when corporation is **without authority to perform it under any circumstances or for any purpose**.  By doctrine of *ultra vires* a contract made by a corporation beyond the scope of its corporate powers is unlawful.  *Community Federal Sav. & Loan Ass'n of Independence, Mo. v Fields,* C.C.A. Mo., 128 F.2d 705, 708.  *Ultra vires* act of municipality is one which is **beyond powers conferred upon it by law**. *Charles v. Town of Jeanerette, Inc.,* La.App, 234 So.2d 794, 798.
>
> (emphasis added)
>
> **Black's Law Dictionary, Sixth Edition, P. 1574: Void judgment.** One which has **no legal force or effect, invalidity of which** may be asserted by **any** person whose rights are affected at any time and at any place directly or collaterally. *Reynolds v. Volunteer State Life Ins. Co.,* Tex.Civ.App., 80 S.W.2d 1087, 1092. One which **from its inception is** and **forever continues to be absolutely null, without legal efficacy, ineffectual to bind parties or support a right, of no legal force and effect whatever, and incapable of confirmation, ratification, or enforcement in any manner or to any degree.** Judgment is a "void judgment" if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process. *Klugh v. U.S., D.C.S.C.,* 610 F.Supp. 892, 901. See also Voidable judgment. Black's Law Dictionary, Sixth Edition, p. 1574.
>
> (emphasis added)

"... in a long and venerable line of our cases. "Without jurisdiction the court **cannot proceed at all in any cause.** Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of

announcing the fact and dismissing the cause." *Ex parte McCardle,* 7 Wall. 506, 514 (1869). ... The **requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power** of the United States" and is "inflexible and without exception." *Mansfield, C. & L. M. R. Co.* v. *Swan,* 111 U.S. 379, 382 (1884). ... The statutory **and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects.** See *United States* v. *Richardson,* 418 U.S. 166, 179 (1974); *Schlesinger* v. *Reservists Comm. to Stop the War,* 418 U.S. 208, 227 (1974). For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act **ultra vires.** *Steel Co., aka Chicago Steel & Pickling Co.* v. *Citizens for A Better Environment,* No. 96-643, 90 F.3d 1237 (1998)

(emphasis added)

A court may not render a judgment which transcends the limits of its authority, and **a judgment is void** if it is beyond the powers granted to the court by the law of its organization, even where the court has jurisdiction over the parties and the subject matter. Thus, if a court is authorized by statute to entertain jurisdiction in a particular case only, and undertakes to exercise the jurisdiction conferred in a case to which the statute has no application, the judgment rendered is void. The lack of statutory authority to make particular order or a judgment is akin to lack of subject matter jurisdiction and is subject to collateral attack. 46 Am. Jur. 2d, Judgments § 25, pp. 388-89.

"A court cannot confer jurisdiction where none existed and cannot make a void proceeding valid. It is clear and well established law that a void order can be challenged in any court", *Old Wayne Mut. L. Assoc. v. McDonough*, 204 U. S. 8, 27 S. Ct. 236 (1907).

A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, **was a complete nullity and without legal effect.** *Lubben v. Selective Service System*, 453 F.2d 645, 649 (1st Cir. 1972)   (emphasis added)

"A judgment is void if the court acted in a manner inconsistent with due process. A void judgment is a nullity and may be vacated at any time."   *In re Marriage of Hampshire*, 261 Kan. 854, 862, 934 P.2d 58 (1997).

"A void judgment is a nullity from the beginning, and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever

because it does not affect, impair, or create legal rights." *Ex parte Seidel*, 39 S.W.3d 221, 225 (Tex. Crim. App. 2001), *Ex parte Spaulding*, 687 S.W.2d at 745 (Teague, J., concurring).

It has also been held that "It is not necessary to take any steps to have a void judgment reversed, vacated, or set aside. It may be impeached in any action direct or, collateral.' *Holder v. Scott*, 396 S.W.2d 906, (Tex.Civ.App., Texarkana, 1965, writ ref., n.r.e.).

A court cannot confer jurisdiction where none existed and cannot make a void proceeding valid. It is clear and well established law that a void order can be challenged in any court", *Old Wayne Mut. L. Assoc. v. McDonough*, 204 U. S. 8,27 S. Ct. 236 (1907).

Judgment is a void judgment **if court that rendered judgment lacked jurisdiction of the subject matter**, or of the parties, or acted in a manner inconsistent with due process, Fed. Rules Civ. Proc., Rule 60(b)(4),28 U.S.C.A., U.S.C.A. Const." *Griffen v. Griffen*, 327 U.S. 220, 66 S. Ct. 556, 90 L. Ed. 635                                        (emphasis added)

The law is well-settled that a void order or judgement is void even before reversal", *Valley v. Northern Fire & Marine Ins. Co.*, 254 U.S. 348,41 S. Ct. 116 (1920)

When rule providing for relief from void judgments is applicable, **relief is not discretionary** matter, but is mandatory, *Orner. V. Shalala*, 30 F.3d 1307 (Cob. 1994). Judgment is a void judgment if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process, Fed. Rules Civ. Proc., Rule 60(b)(4),28 U.S.C.A., U.S.C.A. Const. Amend. 5 - *Klugh v. U.S.*, 620 F.Supp. 892 (D.S.C. 1985).

"Federal criminal jurisdiction is limited to cases involving activities specifically made criminal by either the Federal Constitution or Congress" *U.S. v Corona*, 934 F.Supp. 740, affirmed in part 108 F.3d 565 (5th CA 1997)

A court cannot confer jurisdiction where none existed and cannot make a void proceeding valid. A void judgment which includes judgment **entered by a court** which **lacks jurisdiction** over the parties **or the subject matter**, or lacks inherent power to enter the particular judgment, or an order procured by fraud, can be attacked at any time, in any court, either directly or collaterally,

provided that the party is properly before the court. See *Long v. Shorebank Development Corp.*, 182 F.3d 548 (C.A. 7 Iii. 1999).        (emphasis added)

"A void judgment is one that has been procured by extrinsic or collateral fraud or entered by a court that did not have jurisdiction over the subject matter or the parties." *Rook v. Rook*, 233 Va. 92, 95, 353 S.E.2d 756, 758 (1987)

"Void judgments are those rendered by a court **which lacked jurisdiction, either of the subject matter** or the parties," *Wahl v. Round Valley Bank* 38 Ariz. 411, 300 P. 955 (1931); *Tube City Mining & Milling Co. v. Otterson*, 16 Ariz. 305, 146 P. 203 (1914); and *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 2d 278 (1940).

Habeas corpus is an appropriate remedy to attack a void judgment or sentence. See *Ex parte Seidel*, 39 S.W.3d 221, 224, 225 at n. 4 (Tex.Crim.App. 2001); *Ex parte Beck*, 922 S.W.2d 181 (Tex.Crim.App. 1996); *Heath v. State*, 817 S.W.2d at 336 (Tex.Crim.App. 1991) (opinion on original submission); *Ex parte McIver*, 586 S.W.2d 851 (Tex.Crim.App. 1979).

A void conviction may be challenged in a post-conviction habeas corpus proceeding. *Beck*, 922 S.W.2d 181; *Heath*, 817 S.W.2d at 336; *Ex parte McIver*, 586 S.W.2d 851; *Burns*, 441 S.W.2d 532; *Jenkins*, 433 S.W.2d 701; *Higginbotham*, 382 S.W.2d 927; *Strother*, 395 S.W.2d 629; *Rawlins*, 255 S.W.2d 877.

Conviction of a **nonexistent crime** results in a **void judgment** <u>not subject to waiver</u>. *People v. McCarty*, 94 Ill. 2d 28, 37 (1983).

"Subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived. Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court." *United States v. Cotton*, 535 U.S. 625, 630 (2002); *Accord Jordon v. Gilligan*, 500 F.2d 701 (6th CA, 1974) ("[A] court must vacate any judgment entered in excess of its jurisdiction."); *State v. Swiger,* 125 Ohio.App.3d 456.   (1995) ("If the trial court was without subject matter jurisdiction of defendant's case, his conviction and sentence would be void *ab initio*."): *Burrell v. Henderson, et al.*, 434 F.3d 826, 831 (6th CA 2006) ('[D]enying a motion to vacate a void judgment is a per se abuse of discretion.").

22.   This recent SCOTUS *Moore* decision of course, simply **reasserts** and **reaffirms** the consistent, **undisturbed** rulings of the high court across the last 108 years of litigation regarding the *indirect* constitutional foundations for all federal taxation of income, which the plaintiff's Department of Justice repeatedly and consistently has ***erroneously*** labeled as ***frivolous*** in its ***fraudulently*** argued ***reversal*** of the High Court's true holdings on the constitutional nature of the federal income tax, which the defendant faithfully recites for the court below.

23.   The ***fraudulent*** plaintiff United States, on the other hand, argues nothing but ***frivolous*** **nonsense** and ***fatal, ultra vires error,*** and refused at trial to make any argument at all beyond the statutes alone, sufficient to legally establish the lawful *subject-matter jurisdiction* of the court that was supposedly constitutionally granted and *taken* under authority of the 16th Amendment to *appear* to allow the court to conduct the ***ultra vires*** criminal trial of the defendant.

24.   And this district court itself, ***erroneously*** declared that ***frivolous*** jurisdictional **nonsense** to be true; in order to ***prejudicially*** allow the court to enforce, *allegedly* under the 16th Amendment, a **non-existent**, "***non*-apportioned *direct* tax**" on all **income without** *subjectivity* to any constitutional *limitation* imposed on **all** of the granted taxing powers.  That "*direct tax*" position, ***erroneously*** assumed by the court, can now clearly be seen and recognized under the recent *Moore* decision*, as the **disturbingly obvious ultra vires error** that it was, and still is.

### 108 Years of Undisturbed, Consistent, Constitutional Law

25.   Again, here is sum total of the true controlling precedents and holdings of SCOTUS across the last 108 years, as determined and **re-affirmed** as the ***controlling,*** **undisturbed, constitutional law** in this recent *Moore* decision on the issue of the constitutionally granted powers to tax **and** the *limitations* imposed on **all** **(BOTH)** forms of the taxing powers, *direct* and *indirect*:

> "... by the previous ruling [*Brushaber v Union Pacific R. Co.*] it was settled that the provisions of the Sixteenth Amendment **conferred no new power of taxation** but simply **prohibited** the previous complete and plenary power of income taxation possessed by Congress from the beginning **from being taken**

<u>**out of the category of indirect taxation to which it inherently belonged**</u> ....*" *Stanton v. Baltic Mining Co.*, 240 U.S. 103, 112-113 (1916)

(emphasis added)

"Whether the tax is to be classified as an "***excise***" is in truth not of critical importance. If not that, it is an "***impost***" (*Pollock v. Farmers' Loan & Trust Co.,* 158 U. S. 601, 158 U. S. 622, 158 U. S. 625; *Pacific Insurance Co. v. Soble,* 7 Wall. 433, 74 U. S. 445), or a "***duty***" (*Veazie Bank v. Fenno,* 8 Wall. 533, 75 U. S. 546, 75 U. S. 547; *Pollock v. Farmers' Loan & Trust Co.,* 157 U. S. 429, 157 U. S. 570; *Knowlton v. Moore,* 178 U. S. 41, 178 U. S. 46). A ***<u>capitation</u> or other "<u>direct</u>"*** tax <u>it certainly is not</u>." *Steward Mach. Co. v. Collector,* 301 U.S. 548 (1937), at 581-2

(emphasis added)

"The subject matter of taxation open to the power of the Congress is as comprehensive as that open to the power of the states, though the method of apportionment may at times be different. "The Congress shall have power to lay and collect taxes, duties, imposts and excises." Art. 1, § 8. **If the tax is a direct one, it shall be apportioned** according to the census or enumeration. **If it is a duty, impost, or excise, it shall be uniform** throughout the United States. **Together, these classes include every form of tax appropriate to sovereignty.** *Cf. Burnet v. Brooks,* 288 U. S. 378, 288 U. S. 403, 288 U. S. 405; *Brushaber v. Union Pacific R. Co.,* 240 U. S. 1, 240 U. S. 12." *Steward Mach. Co. v. Collector,* 301 U.S. 548 (1937), at 581

(emphasis added)

"The [income] tax **being an excise**, its imposition must conform to the canon of **uniformity**. There has been no departure from this requirement. According to the settled doctrine the uniformity exacted is geographical, not intrinsic. *Knowlton v. Moore, supra,* p. 178 U. S. 83; *Flint v. Stone Tracy Co., supra,* p. 220 U. S. 158; *Billings v. United States,* 232 U. S. 261, 232 U. S. 282; *Stellwagen v. Clum,* 245 U. S. 605, 245 U. S. 613; *LaBelle Iron Works v. United States,* 256 U. S. 377, 256 U. S. 392; *Poe v. Seaborn,* 282 U. S. 101, 282 U. S. 117; *Wright v. Vinton Branch Mountain Trust Bank,* 300 U. S. 440." *Steward Mach. Co. v. Collector,* 301 U.S. 548 (1937), at 583

(emphasis added)

"***Duties*** and ***imposts*** are terms commonly applied to levies made by governments **on the <u>importation or exportation</u> of commodities**. Excises are "taxes laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges ... ***the <u>requirement to pay</u> such taxes <u>involves the exercise of the privilege</u>*** *and if business is not done in the manner described no tax is payable...it is the privilege which is the subject of the tax and not the mere buying, selling or handling of goods.*" Cooley, Const. Lim., 7th ed., 680." *Flint v. Stone Tracy Co.,* 220 U.S. 107, 151, 31 S.Ct. 342, 349 (1911)

(emphasis added)

14

"The Sixteenth Amendment, although referred to in argument, has no real bearing, and may be put out of view. As pointed out in recent decisions, it **does not extend the taxing power to new or excepted subjects**, but merely removes all occasion which otherwise might exist for an apportionment among the states of taxes laid on income, whether it be derived from one source or another. *Brushaber v. Union Pacific R. Co.,* 240 U. S. 1, 240 U. S. 17-19; *Stanton v. Baltic Mining Co.,* 240 U. S. 103, 240 U. S. 112-113." *Peck & Co v. Lowe*, 247 U.S. 165 (1918), at 172-3

(emphasis added)

"Moreover in addition the conclusion reached in the *Pollock* case did not in any degree involve holding that income taxes generically and necessarily came within the class of direct taxes on property, but on the contrary recognized the fact that **taxation on income was in its nature an excise** entitled to be enforced as such unless and until it was concluded that to enforce it would amount to accomplishing the result which the requirement as to apportionment of direct taxation was adopted to prevent, in which case the duty would arise to disregard form and consider substance alone and hence subject the tax to the regulation as to apportionment which otherwise as an excise would not apply to it." *Brushaber*, supra, at 16-17.

(emphasis added)

"The various propositions are so intermingled as to cause it to be difficult to classify them. We are of opinion, however, that the confusion is not inherent, but rather arises from the conclusion that the Sixteenth Amendment provides for a hitherto unknown power of taxation, that is, a power to levy an income tax which although direct should not be subject to the regulation of apportionment applicable to all other direct taxes. **And the far-reaching effect of this erroneous assumption will be made clear** by generalizing the many contentions advanced in argument to support it," *Brushaber*, supra, at 10-11

(emphasis added)

"But it clearly results that the proposition and the contentions under it, **if acceded to**, would cause one provision of the Constitution to **destroy** another; that is, they would result in bringing the provisions of the Amendment exempting a direct tax from apportionment into **irreconcilable conflict** with the general requirement that **all direct taxes be apportioned**. Moreover, the tax authorized by the Amendment, being direct, would **not** come under the rule of *uniformity* applicable under the Constitution to other than direct taxes, and thus it would come to pass that the result of the Amendment would be to authorize a particular *direct* tax **not subject either** to *apportionment* **or** to the rule of *geographical uniformity*, thus giving power to impose a different tax in one state or states than was levied in another state or states. This result, **instead** of **simplifying** the situation and **making clear the limitations** on the taxing power, which **obviously** the Amendment must have been **intended to accomplish**, would create **radical and destructive changes** in our constitutional system and **multiply confusion**." *Brushaber, supra* at 12

(emphasis added)

"***Duties*** and ***imposts*** are terms commonly applied to levies made by governments **on the <u>importation or exportation</u> of commodities** . Excises are "taxes laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges ... ***the <u>requirement to pay</u> such taxes <u>involves the exercise of the privilege</u>*** *and if business is not done in the manner described no tax is payable...it is the privilege which is the subject of the tax and not the mere buying, selling or handling of goods."* Cooley, Const. Lim., 7th ed., 680." *Flint v. Stone Tracy Co.,* 220 U.S. 107, 151, 31 S.Ct. 342, 349 (1911)[4]

(emphasis added)

The tax under consideration, as we have construed the statute, **may be described as an excise upon the particular privilege of doing business in a corporate capacity,** i.e., with the advantages which arise from corporate or quasi corporate organization; or, when applied to insurance companies, for doing the business of such companies. As was said in the Thomas Case, 192 U. S. supra, **the requirement to pay such taxes involves the exercise of privileges,** and the element of absolute and unavoidable demand is lacking. If business is not done in the manner described in the statute, no tax is payable. **If we are correct in holding that this is an excise tax, there is nothing in the Constitution requiring such taxes to be apportioned according to population.** *Pacific Ins. Co. v. Soule,* 7 Wall. 433, 19 L. ed. 95; *Springer v. United States*, 102 U.S. 586, 26 L. ed. 253; *Spreckels Sugar Ref. Co. v. McClain*, 192 U.S. 397, 48 L. ed. 496, 24 Sup. Ct. Rep. 376." *Flint v. Stone Tracy Co.*, 220 US 107, 151-152 (1911)" *Thomas v. United States*, 192 U.S. 363 , 48 L. ed. 481, 24 Sup. Ct. Rep. 305

(emphasis added)

"Evidently Congress adopted the income as the ***<u>measure</u>*** of the tax to be imposed with respect to the doing of business in corporate form because it desired that **<u>the excise</u>** should be imposed, approximately at least, with regard to the amount of benefit presumably derived by such corporations from the current operations of the government. In *Flint v. Stone Tracy Co.* 220 U.S. 107, 165 , 55 S. L. ed. 107, 419, 31 Sup. Ct. Rep. 342, Ann. Cas. 1912 B. 1312, it was held that Congress, in exercising the right to tax a **<u>legitimate subject</u>** of taxation **as a franchise or privilege**, was not debarred by the Constitution from ***measuring*** the taxation by the total income, although derived in part from property which, considered by itself, was not taxable. It was reasonable that Congress should fix upon gross income, without distinction as to source, as a convenient and sufficiently <u>accurate index</u> of the importance of the business transacted." *Stratton's Independence, Ltd. V. Howbert,* 231 U.S. 399, at 416 – 417 (1913)          (emphasis added)

---

[4] Again, *Flint v. Stone Tracy Co*. is controlling and Constitutional law, having been cited and followed over 600 times by virtually every court as the authoritative definition of the scope of excise taxing power.

"Thus, from every point of view we are brought irresistibly to the conclusion that **neither under the Sixteenth Amendment nor otherwise** has Congress power to tax without apportionment a true stock dividend made lawfully and in good faith, or the accumulated profits behind it, as income of the stockholder." *Eisner v. Macomber,* supra, at 219-220

"As **repeatedly** held, this did **not extend** the taxing power **to new subjects**, but merely removed the necessity which otherwise might exist for an apportionment among the states of taxes laid on income. *Brushaber v. Union Pacific R. R. Co.*, 240 U.S. 1 , 17-19, 36 Sup. Ct. 236, Ann. Cas. 1917B, 713, L. R. A. 1917D, 414; *Stanton v. Baltic Mining Co.*, 240 U.S. 103 , 112 et seq., 36 Sup. Ct. 278; *Peck & Co. v. Lowe*, 247 U.S. 165, 172, 173 S., 38 Sup. Ct. 432." *Eisner vs. Macomber*, 252 U.S. 189 (1920), at pg. 205

(emphasis added)

"The Sixteenth Amendment, although referred to in argument, has no real bearing and may be put out of view. As pointed out in recent decisions, it does not extend the taxing power to new or excepted subjects, but merely removes all occasion, which otherwise might exist, for an apportionment among the States of taxes laid on income, whether it be derived from one source or another. *Brushaber v. Union Pacific R.R. Co.*, 240 U.S. 1, 17-19; *Stanton v. Baltic Mining Co.*, 240 U.S. 103, 112-113." *Peck & Co. v. Lowe*, 247 U.S. 165 (1918), at p. 172-3:

26)     And with respect to the legal requirement, and judicial duty of the district court, to have properly established on the record of the action the fully granted *subject-matter jurisdiction* of the court that could lawfully be *taken* by it **before** proceeding at trial and allowing a jury to render a verdict and judgment, the Supreme Court has plainly and clearly said repeatedly:

"It remains rudimentary law that "[a]s regards all courts of the United States inferior to this tribunal, two things are necessary to create jurisdiction**,** whether original or appellate. The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it .... To the extent that such action is not taken, the power lies dormant." *The Mayor v. Cooper,* 6 Wall. 247, 252, 18 L.Ed. 851 (1868); accord, *Christianson v. Colt Industries Operating Co., 486 U.S. 800,* 818, 108 S.Ct. 2166, 2179, 100 L.Ed.2d 811 (1988); *Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368,* 379-380, 101 S.Ct. 669, 676-677, 66 L.Ed.2d 571 (1981); *Kline v. Burke Construction Co.,* 260 U.S. 226, 233-234, 43 S.Ct. 79, 82-83, 67 L.Ed. 226 (1922); *Case of the Sewing Machine Companies,* 18 Wall. 553, 577-578, 586-587, 21 L.Ed. 914 (1874); *Sheldon v. Sill,* 8 How. 441, 449, 12 L.Ed. 1147 (1850); *Cary v. Curtis,* 3 How. 236, 245, 11 L.Ed. 576 (1845); *McIntire v. Wood,* 7 Cranch

504, 506, 3 L.Ed. 420 (1813). *Finley v. United States,* 490 U.S. *545* (1989). The Supreme Court has repeatedly told the federal judiciary it may **not rely** on a conclusive **presumption** to find against a defendant on an **essential element of a cause of action**. *See Sandstrom v. Montana*, 442 U.S. 510, 521-523, 99 S.Ct. 2450, 2458-2459 (1979); *Stanley v. Illinois*, 405 U.S. 645, 654-657, 92 S.Ct. 1208, 1214-1216 (1972); *Heiner v. Donnan*, 285 U.S. 312, 325-29, 52 S.Ct. 358, 360-362 (1932); *Schlesinger v. State of Wisconsin*, 270 U.S. 230, 46 S.Ct. 260 (1926); *Tot v. United States*, 319 U.S. 463, 468-69, 63 S.Ct. 1241, 1245-1246 (1943); *Vlandis v. Kline*, 412 U.S. 441, 446, 93 S.Ct. 2230, 2233 (1973); *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318-19, 119 S.Ct. 1961, 1977 (1999), and *Jones v. Bolles*, 76 U.S. 364, 368 (1869).

(emphasis added)

"... in a long and venerable line of our cases. "Without jurisdiction the court **cannot proceed at all in any cause**. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 7 Wall. 506, 514 (1869). ... The requirement that jurisdiction **be established** <u>as a threshold matter</u> "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception." *Mansfield, C. & L. M. R. Co.* v. *Swan*, 111 U.S. 379, 382 (1884). ... The statutory **and (especially) constitutional elements of jurisdiction are an essential** ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects. See *United States* v. *Richardson,* 418 U.S. 166, 179 (1974); *Schlesinger* v. *Reservists Comm. to Stop the War*, 418 U.S. 208, 227 (1974). For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act **ultra vires**. *Steel Co., aka Chicago Steel & Pickling Co. v. Citizens for a Better Environment*, No. 96-643, 90 F.3d 1237 (1998)

(emphasis added)

"There is no discretion to ignore lack of jurisdiction." *Joyce v. U.S.*, 474 F.2d 215 (1973).

"So, we conclude, as we did in the prior case, that, although these suits may sometimes so present questions arising under the Constitution or laws of the United States that the Federal courts will have jurisdiction, yet the mere fact that a suit is an adverse suit authorized by the statutes of Congress is **not** in and of itself **sufficient to vest jurisdiction in the Federal courts**." *Shoshone Mining Co. v. Rutter, 177 U.S. 505, 513* (1900).

(emphasis added)

The Supreme Court has repeatedly told the federal judiciary it **may not rely on a conclusive presumption** to find against a defendant on an essential

18

element of a cause of action. *See Sandstrom v. Montana*, 442 U.S. 510, 521-523, 99 S.Ct. 2450, 2458-2459 (1979); *Stanley v. Illinois*, 405 U.S. 645, 654-657, 92 S.Ct. 1208, 1214-1216 (1972); *Heiner v. Donnan*, 285 U.S. 312, 325-29, 52 S.Ct. 358, 360-362 (1932); *Schlesinger v. State of Wisconsin*, 270 U.S. 230, 46 S.Ct. 260 (1926); *Tot v. United States*, 319 U.S. 463, 468-69, 63 S.Ct. 1241, 1245-1246 (1943); *Vlandis v. Kline*, 412 U.S. 441, 446, 93 S.Ct. 2230, 2233 (1973); *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318-19, 119 S.Ct. 1961, 1977 (1999), and *Jones v. Bolles*, 76 U.S. 364, 368 (1869).

(emphasis added)

"Federal courts are courts of limited jurisdiction. They possess only power authorized by Constitution and statute, which is **not to be expanded by judicial decree.** It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkenen v. Guardian Life Ins. Co. of America,* 511 US 375 (1994)

(emphasis added)

"But it clearly results that the proposition and the contentions under it, **if acceded to,** would cause one provision of the Constitution to **destroy** another; that is, they would result in bringing the provisions of the Amendment exempting a direct tax from apportionment into **irreconcilable conflict** with the general requirement that **all direct taxes be apportioned**. Moreover, the tax authorized by the Amendment, being direct, would **not** come under the rule of *uniformity* applicable under the Constitution to other than direct taxes, and thus it would come to pass that the result of the Amendment would be to authorize a particular *direct* tax **not** subject **either** to *apportionment* **or** to the rule of *geographical uniformity,* thus giving power to impose a different tax in one state or states than was levied in another state or states. This result, **instead** of **simplifying** the situation and **making clear the limitations** on the taxing power, which **obviously** the Amendment must have been **intended to accomplish**, would create **radical and destructive changes** in our constitutional system and **multiply confusion**." *Brushaber v. Union Pacific RR Co,* 240 U.S. 1, pg. 12 (1916)

(emphasis added)

"By the previous ruling [*Brushaber v Union Pacific R. Co.*] it was settled that the provisions of the Sixteenth Amendment **conferred no new power of taxation** but simply **prohibited** the previous complete and plenary power of income taxation possessed by Congress from the beginning **from being taken out of the category of indirect taxation to which it inherently belonged** ...." *Stanton v. Baltic Mining Co.*, 240 U.S. 103, 112-113 (1916)

(emphasis added)

"A void judgment is one that has been procured by extrinsic or collateral fraud or entered by a court that **did not have jurisdiction over the subject matter or the parties.**" *Rook v. Rook*, 233 Va. 92, 95, 353 S.E.2d 756, 758 (1987)

27)   Therefore, under the controlling *Moore, Brushaber,* and *Baltic Mining* decisions, this court now has a legal, *jurisprudence,* **duty** to declare the judgement ***VOID, set aside*** the verdict, and **VACATE** the **VOID** judgement for the **proven *fatal lack*** of any *subject-matter jurisdiction* of the court that was ever properly established and shown on the record of the action in the court, or that could have been lawfully *taken* by the court under authority of the 16th Amendment as ***erroneously*** asserted and claimed by the court at trial, *sufficient* to allow this court to have conducted any  criminal trial at all for an alleged failure to pay an alleged ***"non-apportioned direct tax"*** on income **without** any applicable constitutional *limitation,* which, according to the Supreme Court in this *Moore* decision, has **never existed** as such **un**limited, ***non-**apportioned, *direct* tax under the 16th Amendment, and is therefore **NOT** enforceable in the federal courts.

## Prayer for Relief

28)   Defendant therefore prays relief from this court and now *moves* this honorable court to declare the judgment ***VOID, set aside*** the verdict, and **VACATE** the **VOID** judgment for the ***fatal lack*** of any ***subject-matter jurisdiction*** of the district court that existed or was lawfully shown or *taken* by the court over the criminal action, at any time, on the formal record of the action as required, before (or during) the criminal trial.

## Motion to VACATE the VOID the *Judgment*

29)   Defendant therefore hereby *moves* this district court under the Federal Rules of Criminal Procedure, Rule 33(a) - *New Trial,* and Rule 52(b) - *Plain error*, to immediately declare the judgment **VOID,** *set aside* the jury's verdict, and **VACATE** the unconstitutional, ***ultra vires*** **VOID** *judgment* rendered by this court at trial of defendant in error Cromar four months ago for the ***fatal lack*** of a *constitutionally* granted *subject-matter jurisdiction* of the district court that was **never** properly identified, fully declared, constitutionally **established,**

or *lawfully **taken*** by the court over the criminal action to enforce the IRS' assessment of a "***non-**apportioned **direct*** tax" on *income **unconstitutionally*** claimed by the plaintiff to be owed by the defendant as a "***non-**-apportioned **direct** tax*" on his earnings, redefined as "*taxable income*" through the ***false*** allegation of a *direct* tax; - as a court ***lacking*** the *subject-matter jurisdiction* to conduct a trial, cannot render a legal verdict or judgment, and therefore the verdict and judgment in this criminal case were **both *ultra vires,*** and as such the judgment is **VOID**, the verdict **must** be *set aside,* and the **VOID** judgment **must** be *vacated*.

> "Denying a motion to vacate a void judgment is a per se abuse of discretion."
> *Burrell v. Henderson, et al.*, 434 F.3d 826, 831 (6th CA 2006)

Presented in honor on this 24th day of October , in the year of our Lord Jesus Christ, anno domini, 2024.

Paul-Kenneth: Cromar

Signed only in correct public capacity as the soul HEIR/Executor to Paul-Kenneth: House of Cromar Estate.

**Supporting Exhibits**

**Exhibit A** - Hearing Transcript of March 28, 2024, pg. 9 referencing *Balice*

**Exhibit B** - Plaintiff's Proposed Jury Instruction - pg. 31, Footnote 8,

**Exhibit C** - 10th Circuit Court of Appeals *Order* in the previous civil action, pg. 5, raising the controlling *estoppel* issues challenging the jurisdiction of the court that were repeatedly argued correctly by the defendant for 8 months.

CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of October, 2024, I personally placed in the United States Mail to the individuals named below a true and correct copy of **Defendant's Motion to VACATE the VOID JUDGMENT for Lack of *subject-matter jurisdiction* of the district court by Decision of the Supreme Court in *Moore et Ux v. United States 22-800,* June 20, 2024.**

TRINA A. HIGGINS
PATRICK BURNS
MEREDITH M. HAVEKOST
Attorneys of the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111

MERRICK GARLAND, U.S. ATTORNEY GENERAL
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530-000

Raland Brunson

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. 2:23-cr-00159-HCN-DBP-1 |
| vs. | ) |
| | ) |
| Paul Kenneth Cromar, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**STATUS AND SCHEDULING CONFERENCE BEFORE THE HONORABLE**

**JUDGE HOWARD C. NIELSON, JR.**

**March 28, 2024**

Reported by Michelle B. Gonsalves, RPR, CRR, CBC, CSR
Orrin G. Hatch United States Courthouse
351 South West Temple, Room 7.431
Salt Lake City, Utah 84101
801.783.8657
michelle_gonsalves@utd.uscourts.gov

## **APPEARANCES**

**FOR THE PLAINTIFF:**

MEREDITH HAVEKOST
JOHN PATRICK BURNS
US DEPARTMENT OF JUSTICE - TAX
150 M Street NE, Suite 2.603
Washington, DC  20002
(202) 353-1009
meredith.m.havekost@usdoj.gov
j.patrick.burns@usdoj.gov

**FOR THE DEFENDANT:**

PAUL KENNETH CROMAR 567164 (PRO SE)
DAVIS COUNTY JAIL
PO Box 130
Farmington, UT  84025-0130

**STANDBY COUNSEL FOR MR. CROMAR:**

VANESSA RAMOS
KRIS ANGELOS
FEDERAL PUBLIC DEFENDER
DISTRICT OF UTAH
46 West Broadway, Suite 110
Salt Lake City, UT  84101
(801) 524-4010
kris_Angelos@fd.org
vanessa_ramos@fd.org

```
 1      SALT LAKE CITY, UTAH                    March 28, 2024

 2                    P R O C E E D I N G S

 3                           *  *  *

 4           THE COURT:  All right.  Good afternoon.  We're here

 5      for a hearing in United States v. Paul Kenneth Cromar, Case

 6      No. 2:23-cr-159.

 7           Now, the purpose of this hearing is to address the

 8      various motions that Mr. Cromar has filed, and then to discuss

 9      the status of this case, and the parties' ongoing preparation

10      for trial.

11           We'll begin with appearances.  First, I note that

12      Mr. Cromar is here.  Welcome.

13           DEFENDANT CROMAR:  Good afternoon.

14           THE COURT:  Standby counsel for Mr. Cromar?

15           MS. ANGELOS:  Your Honor, Kristen Angelos, and

16      Vanessa Ramos will also be here shortly.

17           THE COURT:  Welcome, Ms. Angelos.

18           Counsel for the United States.

19           MS. HAVEKOST:  Good afternoon, Your Honor.  Meredith

20      Havekost and Patrick Burns on behalf of the United States.

21           THE COURT:  Wecome, Ms. Havekost and Mr. Burns.

22           All right.  There are two pending motions that we

23      discussed at the last hearing that I have not yet ruled on.

24      These are Docket No. 142, the Defendant's Emergency Motion for

25      Revocation of Detention, the detention order.
```

1          And Docket No. 144, the Defendant's Emergency Motion

2     to Order Prosecution to Secure a Stay.

3          At my invitation, Mr. Cromar subsequently filed

4     Docket No. 159, Response to Court's Intention to Deny

5     Defendant's Motion for Revocation of Detention.

6          Since our last hearing, Mr. Cromar has filed several

7     new motions as well.  These include the following:

8          Docket No. 153, Defendant's Objection for Violation

9     of the Doctrines of Collateral Estoppel, Judicial Estoppel, and

10    Estoppel by Judgment; and 2nd Motion to Dismiss for Lack of

11    Subject-Matter Jurisdiction.

12         Mr. Cromar also filed Docket No. 152, entitled,

13    "Memorandum at Law in Support of Motion to Dismiss," which I

14    understand intended to support the second motion to dismiss.

15         Also Docket No. 154, Defendant's Emergency Motion for

16    Written Findings of Fact and Conclusions of Law.  Mr. Cromar

17    subsequently withdrew that motion, so I will not address it.

18         Docket No. 161, the Defendant's Motion for Recusal,

19    which seeks my recusal.  He also has filed Docket No. 175,

20    which seeks Chief Magistrate Judge Pead's recusal.  I will not

21    address that motion, however.  Chief Judge Pead will address

22    that.

23         Also Docket No. 163, Motion for Hearing to Properly

24    Establish the Subject-Matter Jurisdiction of this Court.

25         Docket No. 176, Defendant's 3rd Motion to Dismiss for

1    Lack of Subject-Matter Jurisdiction.

2          Docket No. 177, the Defendant's Motion to Strike

3    Plaintiff's Trial Memorandum for Lack of Subject-Matter

4    Jurisdiction.  And Docket No. 178, Defendant's Motion to Vacate

5    the Scheduling Order for Lack of Subject-Matter Jurisdiction.

6          All right.  I believe those are the motions pending

7    that Mr. Cromar has filed.  I will now rule on those motions;

8    that we're on the record in the transcript of my oral ruling

9    will serve as my opinion on the motions.  That is, my courtroom

10   deputy will enter a minute order stating the disposition of the

11   various motions.  There will not be any written opinion.

12         I will start with Docket No. 153, Mr. Cromar's

13   Objection for Violation of the Doctrines of Collateral

14   Estoppel, Judicial Estoppel, and Estoppel by Judgment; and

15   Docket No. 152, Mr. Cromar's Memorandum at Law in Support of

16   Motion to Dismiss.

17         I will first observe that Mr. Cromar mischaracterizes

18   the Tenth Circuit opinion on which he relies.  Mr. Cromar

19   claims that the Tenth Circuit held in his previous case that

20   the "authority of the court over the enforcement of the tax

21   laws at issue in these actions ... is derived from and arises

22   under the constitutional authority of the Sixteenth Amendment

23   alone."

24         In fact, however, the Tenth Circuit expressly stated

25   in that opinion that "ultimately, it is unnecessary to delve

1   into the difficult question of the distinction between direct

2   and indirect taxes because, either under the

3   Sixteenth Amendment or Supreme Court cases pre-dating the

4   Amendment, Congress has the power to tax the income of

5   individuals."  And I'm quoting there from page 6 of the slip

6   opinion that Mr. Cromar attached as Exhibit A to Docket

7   No. 153.

8           In other words, the Tenth Circuit expressly declined

9   to decide whether Congress's power to impose an individual

10  income tax derives from the Sixteenth Amendment or from

11  Congress's pre-existing authority under Article I, Section 8,

12  as interpreted by the Supreme Court or by both.

13          Regardless, I acknowledge that my discussion of

14  Congress's power to enact the laws at issue in this case would

15  have been more complete if I had mentioned the Sixteenth

16  Amendment as well as Article I, Section 8.

17          I will note, however, that the reason I did not dwell

18  on the source of Congress's power was that I was not addressing

19  an argument that Congress lacked power to enact the laws under

20  which Mr. Cromar is being prosecuted.

21          Rather, I'm addressing Mr. Cromar's invocation of

22  what the Tenth Circuit has described as the "hackneyed tax

23  protester refrain" -- and to be clear, those are the Tenth

24  Circuit's words not mine -- "that federal criminal jurisdiction

25  only extends to the District of Columbia, United States

1   territorial possessions and ceded territories."  I'm quoting

2   there from *United States v. Collins*, 920 F.2d 619, at page 629,

3   from the Tenth Circuit in 1990.

4           And I was explaining how although the Federal

5   Government lacks plenary police power in the States, each

6   branch of Government still may act within the scope of its

7   enumerated powers throughout the United States.

8           When I issued my previous ruling, Mr. Cromar had not

9   yet raised the argument that the statutes at issue in this case

10  exceed the limits of Congress's enumerated powers.  But that

11  argument, which Mr. Cromar raises, is no more viable than his

12  previous argument.

13          As for the first statute at issue in this case, this

14  is what the Tenth Circuit has previously held, and I'm quoting

15  now:

16          "Article I, Section 8, and the Sixteenth Amendment

17  also empower Congress to create and provide for the

18  administration of an income tax; the statute under which the

19  defendant was charged and convicted, 26 U.S.C. § 7201, plainly

20  falls within that authority.  Efforts to argue that federal

21  jurisdiction does not encompass prosecutions for federal tax

22  evasion have been rejected as either 'silly' or 'frivolous' by

23  a myriad of courts throughout the nation."

24          And, again, I'm directly quoting from the Tenth

25  Circuit, so those are that court's words not mine.  And that's

1     *Collins*, which I have cited before at page 629.

2           As for the other statute at issue in this case, this

3 what the Tenth Circuit has previously held; and, again, this is

4 a quote:

5           "Article I, Section 8, clause 1 of the Constitution

6 provides that 'Congress shall have Power To lay and collect

7 Taxes,' and the Sixteenth Amendment authorizes Congress to lay

8 and collect income taxes without apportionment.  Furthermore,

9 Article I, Section 8, clause 18 empowers Congress to 'make all

10 Laws which shall be necessary and proper for carrying into

11 Execution the foregoing Powers, and all other Powers vested by

12 this Constitution.' The Necessary and Proper Clause has long

13 been interpreted to confer upon Congress broad implied powers

14 to adopt 'all means which are appropriate' and 'are plainly

15 adapted' to the exercise of a legitimate legislative power."

16 26 U.S.C. § 7212(a), which criminalizes certain attempts to

17 interfere with the administration of the internal revenue laws,

18 is adapted appropriately and plainly to furthering Congress'

19 legitimate legislative power to lay and collect taxes.  As

20 such, Section 7212(a) is a constitutional exercise of

21 congressional power."

22           That's a quote from *United States v. Boos*, 1999

23 Westlaw 12741 page *2 from the Tenth Circuit in 1999.

24           I do not think it is subject to reasonable dispute

25 that the same analysis applies equally to Section 7212,

1    As that court further explained, "In the Sixteenth

2    Amendment, though, no such clause was necessary.  The

3    substantive language of the Sixteenth Amendment itself confers

4    power on Congress:  'The Congress shall have the power to lay

5    and collect taxes on incomes ...'  Once vested with this power,

6    under the Necessary and Proper clause Congress could pass

7    legislation to implement that power....  Thus, no separate

8    enforcement clause is necessary."  And that's from the same

9    page of the decision in *Balice*.

10   Finally, that court noted that under the reading

11   advanced by Mr. Cromar here, "The Sixteenth Amendment, although

12   it provides that 'Congress shall have power' to lay and collect

13   taxes, would remain a dead letter.  It is difficult to imagine

14   how Congress might exercise that 'power' unless through

15   legislation."  The court accordingly rejected this argument as

16   "illogical."  I agree with this analysis.

17   Not only is it consistent with the Tenth Circuit's

18   invocation of the Necessary and Proper Clause in *Boos*, which I

19   quoted earlier, it is also consistent with the plain meaning of

20   the Necessary and Proper Clause.

21   By its expressed terms, the Necessary and Proper

22   Clause is not limited to the powers granted Congress in

23   Article I, Section 8.  Rather, it grants Congress power "to

24   make all Laws which shall be necessary and proper for carrying

25   into Execution before the foregoing Powers, and all other

1    Powers vested by this Constitution in the Government of the

2    United States, or in any Department or Officer thereof."

3          And once an Amendment is adopted, such as the

4    Sixteenth Amendment, that vests power in a branch of the

5    federal government, it becomes part of "this Constitution," and

6    Congress may accordingly enact legislation to implement that

7    power under the Necessary and Proper Clause.

8          Finally, I reject Mr. Cromar's various arguments

9    based on the text of the statutes at issue in this case.  For

10   one thing, they're based on selective -- and, quite frankly,

11   contrived -- quotations and references to facially inapplicable

12   provisions.  For another, they do not support an argument that

13   this Court lacks subject-matter jurisdiction in all events.

14         In short, I will reiterate what I have said before.

15   This Court's subject-matter jurisdiction over this case is

16   simply not subject to reasonable dispute.  There is not a court

17   in the country that would find otherwise, Mr. Cromar.  Indeed,

18   the exact arguments you have raised in this case have been

19   repeatedly and consistently rejected by courts throughout the

20   United States.

21         For all these reasons, to the extent Docket No. 153

22   is an objection to my previous ruling, it is overruled.  And to

23   the extent it is the second motion to dismiss, it is denied.

24         For the same reasons, Mr. Cromar's other motions

25   relating to the Court's subject-matter jurisdiction are denied;

1   including Docket No. 163, which requests an evidentiary hearing

2   to establish this Court's subject-matter jurisdiction, and

3   Docket No. 176, which is a third motion to dismiss.

4         Further, because Mr. Cromar's jurisdictional and

5   estoppel arguments are frivolous, they did not require that

6   proceedings in this case grind to a halt.  Docket Nos. 177 and

7   178, Mr. Cromar's Motion to Strike the Government's Trial

8   Memorandum, and Mr. Cromar's Motion to Vacate the Scheduling

9   Order, are accordingly both denied.

10        Frankly, Mr. Cromar, you would be well advised to

11  spend your time preparing for trial rather than continuing to

12  file motions that lack any support in the law.

13        I will next turn to Docket No. 161, Mr. Cromar's

14  motion for my recusal.  I will start by addressing Mr. Cromar's

15  suggestion that it is somehow improper for me to rule on his

16  motions orally without issuing a written opinion.

17        I will note, first, that my rulings are not subject

18  to Federal Rule of Civil Procedure 52, which Mr. Cromar cites.

19  This is a criminal case, and it is governed by the Federal

20  Rules of Criminal Procedure, not the Federal Rules of Civil

21  Procedure.

22        Further, Federal Rule of Criminal Procedure 12(f),

23  which is the rule that actually applies to Mr. Cromar's motions

24  to dismiss, provides that "[A]ll proceedings at a motion

25  hearing, including any findings of fact and conclusions of law

1   made orally by the court, must be recorded by a court reporter

2   or a suitable recording device."  It is thus clear that oral

3   rulings are permitted.

4           Indeed, the 1974 Advisory Committee notes are clearer

5   still.  This is what they say:  A "judge may find and rule

6   orally from the bench, so long as a verbatim record is taken.

7   There is no necessity of a separate written memorandum

8   containing the judge's findings and conclusions."

9           That is precisely what has happened in this case.  We

10   are fortunate to have a trained court reporter here who took a

11   verbatim record of my rulings when I ruled on Mr. Cromar's

12   earlier motion to dismiss, and also a reporter here today who

13   is taking a verbatim record right now.  No separate written

14   memorandum are required.

15           To be clear, Mr. Cromar, oral rulings are neither

16   improper nor unusual.  I dispose of motions by oral rulings all

17   the time.  Further, just as I've indicated that your time would

18   be better spent preparing for trial rather than to continue to

19   file meritless motions, my time is limited, too.  The motions

20   that you have filed, quite frankly, have not warranted

21   opinions.

22           I will next address Mr. Cromar's argument that I've

23   acted improperly by not requiring the Government to respond to

24   all of his motions.  Again, that is not improper.  While it

25   would be improper for me to grant a substantive motion without

1   giving the party opposing the motion the opportunity to be

2   heard, it is not unfair to the moving party for me to deny a

3   motion without a response because doing so does not prevent the

4   moving party from offering arguments in support of his motion.

5         And, again, Mr. Cromar, just as your time and my time

6   are limited, so is the time of the Government's attorneys.

7   There is simply no reason for me to require them to respond to

8   each of your repeated challenges to this Court's jurisdictions,

9   especially given that each of the arguments you have raised so

10  far has been consistently rejected by the courts.

11        Finally, the fact that I have ruled against

12  Mr. Cromar on his motions is not a basis for recusal.  To the

13  contrary, the Tenth Circuit has made clear that "adverse

14  rulings are not in themselves grounds for recusal."  That is a

15  quote from *Glass v. Pfeffer*, 849 F.2d 1261 at page 1268 from

16  the Tenth Circuit in 1988.  For all of these reasons,

17  Docket No. 175, Cromar's motion for my recusal is denied.

18        All right.  I'm going to move to a different topic

19  now.

20        **DEFENDANT CROMAR:**  Your Honor?

21        **THE COURT:**  Yes.

22        **DEFENDANT CROMAR:**  My apologies.  I would like to

23  register objection to all of the denials.  Is this appropriate

24  at this point?

25        **THE COURT:**  You may.  Your objections are noted for

1    the record.

2              **DEFENDANT CROMAR:**   And that would include all these

3    objections -- or the denials; is that correct?

4              **THE COURT:**   Yes.

5              **DEFENDANT CROMAR:**   Thank you very much.   Sorry to

6    interrupt.

7              **THE COURT:**   That's fine.

8              **DEFENDANT CROMAR:**   I didn't want to interrupt during

9    the presentation.   Thank you.

10             **THE COURT:**   All right.   Thank you.   And that's -- I

11   will note that you've objected to each of the rulings I've made

12   so far on each of those motions.

13             I want to now address Docket Nos. 142 and 144.   And

14   I -- what I said about, Mr. Cromar, about your other motions

15   doesn't -- these are separate.   I think these are a legitimate

16   area of concern to you.   I think, as I said, I don't think this

17   Court's subject-matter jurisdiction is subject to reasonable

18   dispute.   The detention issues -- I understand you have -- I

19   understand why you want to be released pending trial.   And so I

20   don't think -- I want to be clear that I do not think that

21   those motions are inappropriate or frivolous.

22             However, for the reasons on the record -- stated on

23   the record in the last hearing, Docket No. 142, Mr. Cromar's

24   Emergency Motion for Revocation, his detention order is denied

25   without prejudice.

1      In short, as I indicated before, because Mr. Cromar's

2  currently serving a state sentence, he would not be released

3  from custody even if I revoked Judge Pead's detention order.

4  Further revoking that order would result in Mr. Cromar's

5  transfer to primary state custody, which would likely make it

6  more difficult for the Court and the marshals to work with

7  Mr. Cromar to help him get what he needs to prepare for trial.

8      Also for the reasons stated on the record at our last

9  hearing, Docket No. 144 is denied.  Mr. Cromar has not shown a

10 sound basis for me to interfere with the sentence imposed by

11 the state court; and given that, I'm not willing to direct the

12 Government to attempt to interfere with that sentence either.

13     All right.  I believe that covers all of Mr. Cromar's

14 pending motions.  If you want to object to those two rulings as

15 well, you're welcome to, Mr. Cromar.

16     **DEFENDANT CROMAR:**  Thank you.  I would like to do

17 that.  I object to the denials of 142 and 144, if you please.

18     **THE COURT:**  All right.  That is noted as well.

19     **DEFENDANT CROMAR:**  Thank you.

20     **THE COURT:**  Are there any questions about any of

21 these rulings?

22     **MS. HAVEKOST:**  None from the Government.

23     **DEFENDANT CROMAR:**  There's quite a bit there to deal

24 with, and I would reserve the right to do so at a later time.

25     **THE COURT:**  Right.  And you'll get a transcript of

1    all this, so you can study it at --

2         **DEFENDANT CROMAR:**  I would appreciate that.  As long

3    as we're on that subject, would this -- is this an immediate

4    transcript done here today?  Or is it delayed for a period of

5    time?  We've been trying to get these within 24 to 72 hours so

6    that we can be timely in response.

7         **THE COURT:**  I think the reporters have been doing

8    their best.  And I think you have been getting them fairly

9    quickly.  I don't know.

10        I'll ask the reporter:  Do you have a sense of what

11   the timeline would be on this one?

12        **THE COURT REPORTER:**  I don't because the hearing has

13   just started, and I'm not sure how long it's going to go.

14        But would Monday work for you?

15        **DEFENDANT CROMAR:**  I'm sorry?

16        **THE COURT REPORTER:**  Would Monday work for you?

17        **DEFENDANT CROMAR:**  Yes, ma'am.  Thank you.

18        **THE COURT REPORTER:**  Okay.  Thank you.

19        **THE COURT:**  And as far as your question.  We're

20   through most of it.  It shouldn't be much longer.

21        All right.  I do want to turn to the trial, though.

22   It's currently set for May 21, 2024.  At the last hearing, I

23   extended some of the deadlines in the trial order for

24   Mr. Cromar.  Specifically, I set March 25, 2024, as a deadline

25   for Mr. Cromar to respond to the Government's motion in limine,

1   to file any motions in limine of his own or any objections to

2   the Government's proposed jury instructions and verdict form,

3   or to the Government's proposed exhibits and witnesses.  That

4   deadline has passed.  And unless I missed them or they have not

5   yet been docketed, Mr. Cromar has not filed any motions or

6   objections.

7           Have you filed any of those things, Mr. Cromar?

8           **DEFENDANT CROMAR:**  No.  We haven't actually tried to

9   cover that issue with regards to the vacating of the schedule

10  in light of the challenge to jurisdiction, which is my right,

11  and it takes precedence over process when jurisdiction is

12  challenged, as the Court would well know, as the paramount

13  issue at hand has been challenged and has now been denied.

14  Therefore, the fact of the matter is there may be subsequent

15  motions needed that would affect time.

16          When we discussed the trial, we were really pushing

17  hard for the 21st of May, but we -- I reserved the right and

18  concern that there would not be enough time, and -- but I'm

19  trying to work as quickly as possible to accommodate that

20  desired schedule.

21          **THE COURT:**  Okay.  Understood.

22          I also set a May 1st deadline for Mr. Cromar to

23  disclose the witnesses and exhibits he intends to offer at

24  trial.  Now, as I've indicated, I'm not sure that Mr. Cromar

25  acted wisely in how he's allocated his time over the last few

1  weeks.  Filing unfounded motions challenging the Court's

2  jurisdiction and seeking my recusal rather than addressing the

3  Court's motions in limine, proposed witnesses, exhibits, and so

4  forth.  But if you do -- Mr. Cromar, if you do want to make any

5  such filings, I'll give you a second chance.  Would you like

6  the opportunity to make those filings?

7            **DEFENDANT CROMAR:**  Absolutely, if you please.

8            **THE COURT:**  All right.  I will give you until

9  April 12, 2024, to do so; that's two weeks from tomorrow.  But

10  absent special and currently unforeseen circumstances, I do not

11  anticipate granting any further extensions of that deadline.

12            And, again, what I'm talking about for that deadline

13  is if you want to respond to the Government's motion in limine

14  that they filed, or if you want to file any motions in limine

15  of your own, or if you want to file any objections to the

16  Government's proposed jury instructions and verdict form, or if

17  you want to file any objections to the Government's proposed

18  exhibits and witnesses.

19            I realize that we're working through the process of

20  getting you all of your own materials that are reasonably

21  necessary for trial.  But you do have everything of the

22  Government's, so I do think you're in the position where you

23  can make these filings by April 12th.

24            All right.  The United States may respond to anything

25  that Mr. Cromar files by April 12th, no later than April 26th.

1         Now, finally, I know that Chief Judge Pead has been

2   working with the parties to help Mr. Cromar gain access to the

3   materials that he needs to prepare for trial.  Do the parties

4   have any updates about that process?  Does the Government have

5   any updates?

6         **MS. HAVEKOST:**  I believe that was mostly a process to

7   be facilitated through U.S. Marshals, standby counsel, and

8   Mr. Cromar's family.  So I would leave them to respond to that.

9         **THE COURT:**  Right.

10        Do you know what -- have a sense of where we are in

11  that process, Mr. Cromar?

12        **DEFENDANT CROMAR:**  My apologies.  I got hung up on

13  April 26th.  I didn't catch what that was for.  I was trying

14  to --

15        **THE COURT:**  Right.  Mr. Cromar, Chief Judge Pead has

16  been working with you and the Marshals Service to help you gain

17  access to some of the materials that you want to prepare for

18  trial.

19        **DEFENDANT CROMAR:**  Right.

20        **THE COURT:**  I was just wondering if you had any

21  updates about that.

22        **DEFENDANT CROMAR:**  Oh, yes, I do.  Thank you.  My

23  apologies.  Can we come back to the other part?

24        Yesterday was the -- I received the first batch, the

25  initial batch of material through Mr. Tim Kelly, U.S. Marshal,

1   who kindly stopped by this morning at the cell, at my cell, to

2   ask if I'd received it, which I had yesterday morning.  He

3   apparently had sent it Tuesday.  It had been provided to him

4   the previous Wednesday.  I thought it might be a little

5   quicker, but it did take some time.

6   　　　　　We -- this initial batch was necessary for me to be

7   able to analyze and recall the materials without having access

8   to my own files to recollect what materials are available.  So

9   there will be a subsequent batch for sure.

10   　　　　　In counseling with my assistants of counsel, ANTS on

11   the end of that, we have come up with a proposal that might

12   help facilitate and expedite the process of getting that.  I

13   did not speak to Mr. Kelly about it.  I thought it would be

14   more prudent to speak with the Court.  And that would be to

15   actually with the supervision, presumably, of an U.S. Marshal,

16   possibly Mr. Kelly, to actually see my laptop so I can go

17   through and identify, so that he can simultaneously do his due

18   diligence with regards to contraband, I believe is what it's

19   called.  So I can identify the files I need, and drop and --

20   drop them in, and then make those available for him to review

21   in detail.

22   　　　　　I imagine it would take a day, possibly two, but it

23   would be in the most expeditious way to get at the bulk of my

24   records.  It won't provide my papers and effects, it won't

25   provide video files, mostly, and other things that I feel the

1   need for, but it will get me through the bulk of what I'm

2   after.  So that would be a proposal in an effort to expedite

3   the process of my access to my own material so I can prepare --

4   properly prepare for trial.

5            THE COURT:  All right.  Thank you, Mr. Cromar.  I'm

6   going to defer to Chief Judge Pead on the logistics of that.  I

7   will mention what you've said to him, and I'll let him decide

8   how he wants to proceed with addressing that proposal.

9            DEFENDANT CROMAR:  Uh-huh.

10           THE COURT:  He's put a lot of work into this from the

11  outset of the case into trying to figure out how to get you

12  access to materials, and so I think I'll let him continue to

13  try and pursue that process.

14           DEFENDANT CROMAR:  Thank you.  On a related matter, I

15  brought the laptop in today, and my associate, Mr. Raland

16  Brunson, has brought some flash drives, purple flash drives on

17  the chance that according to the -- I don't have a number on

18  this document.  I could check it, but it's the order

19  authorizing disclosure of tax return information and protective

20  order.  It's addressing the evidence.  And the hope was that I

21  could take what's on the laptop in light of the fact that

22  Magistrate Pead indicated between the lines of what he was

23  saying that so long as the associates are working within the

24  same non-disclosure requirements, that I could work with him

25  with those materials.

1          At the moment, I have to print out whatever I'm going

2   to get, and then mail it, and it's very difficult and

3   prohibitive, particularly in light of the fact that after the

4   last hearing, on and for the record, it was March 13th with

5   Magistrate Pead, very next day requested through the jail

6   system the opportunity to meet with Sergeant Hutchinson, who is

7   the only one who is authorized to handle the materials, the

8   laptop, and thumb drives to actually go print.

9          And it required three -- what they call kites or

10  requests, would be the way to put it, over the period of two

11  weeks before I was finally able to get her attention yesterday,

12  and print out the materials that I requested on the 14th.  That

13  would have been the 14th through the 27th.  This has been very

14  difficult to get things done, and so we're trying to figure out

15  how to work smarter, and they have not -- though they have

16  replaced Ty, I don't know her last name, who left on

17  January 4th, they've replaced her, but it is now, almost three

18  months, almost three months since the -- since she's been gone,

19  and the replacement's been in place, I think about a month, but

20  they're not allowing her to do the work yet.  So I can't

21  address that.  I've asked, but as it is, I have to wait for

22  Sergeant Hutchinson to be available.  And as you can see, it's

23  not very easy to catch her attention.  She's in charge of quite

24  a number of items at the jail.

25          **THE COURT:**  I want to make sure I understand what you

1    said, that your request is you have your jail laptop, the

2    laptop that you've been given at the jail with you today?

3            **DEFENDANT CROMAR:**  Yes.  It's right here.

4            **THE COURT:**  And there are materials on that, that you

5    want to give to Mr. Brunson?

6            **DEFENDANT CROMAR:**  Right.  So that we can work with

7    them and talk about them simultaneously as opposed to having to

8    wait for a possibility of a printout, which she's very reticent

9    to do because there's so much material.  So I have to narrow it

10   down, but it doesn't help me in the bigger picture, so --

11           And then it's the delay of her actually getting

12   around to being able to come and help me with that.

13           **THE COURT:**  And it's your position, or your

14   understanding, Mr. Cromar, that Mr. Brunson is subject to and

15   bound by the protective order?

16           **DEFENDANT CROMAR:**  That's my understanding.  I

17   believe -- I'm trying to remember.  I didn't think to bring the

18   transcript, but it seems to me that he was referred to in the

19   transcript, in the discussion -- I apologize.  I got sick

20   yesterday, and I'm kind of clogged up.

21           That it seemed to infer that so long as the

22   associates were working under the same premise, including

23   professional help, which I need to not discuss here, but there

24   would be the ability to access the materials so we can work

25   confidentially and without disclosing that information as

1    required by the Court.

2         **THE COURT:**  Right.  Now, I don't want you to discuss

3    anything here right now, Mr. Cromar, that you discussed with

4    Mr. Pead during the sealed portion of that hearing.

5         **DEFENDANT CROMAR:**  Yes.

6         **THE COURT:**  But is -- does the Government have a view

7    about whether Mr. Brunson is within the scope of the protective

8    order?

9         **MR. BURNS:**  Your Honor, I was present for the hearing

10   in front of Judge Pead, and he didn't -- my recollection he did

11   not refer specifically to Mr. Brunson.  He referred in general

12   to the defense team or something along those lines.

13        Your Honor, I think our position would be that the

14   Court -- Judge Pead appointed a paralegal.  I don't know if

15   it's this person, Mr. Brunson, but I know he's -- my belief is

16   that he's not a professional paralegal, and I think before

17   things like taxpayer information are provided to Mr. Brunson,

18   we would like for Magistrate Judge Pead or Your Honor to

19   inquire further about that and why that is occurring.

20        **THE COURT:**  All right.  Thank you.

21        And Ms. Angelos, or either of you, do you have any

22   information or knowledge about that issue?

23        **MS. RAMOS:**  I'll come up, Your Honor.  I was present

24   at the last hearing.  I think the issue is with the protective

25   order, and who is allowed that information.  My understanding

1    was that Judge Pead would allow Mr. Cromar to provide

2    information as long as his associates would abide by the same

3    protective order.  I could be wrong, but that was my

4    recollection.  He did also authorize a paralegal and an

5    investigator, who are different -- who would be different than

6    the associates that we're referring to.

7         THE COURT:  Right.  We don't want to get into further

8    discussion of that.

9         MS. RAMOS:  Right.  Right.

10        THE COURT:  Okay.  So that's your understanding.

11        DEFENDANT CROMAR:  Your Honor, may I -- I'm sorry.

12        THE COURT:  Yes.

13        DEFENDANT CROMAR:  I think Mr. Burns' recollection of

14   the team was correct, and it related to something -- sorry, I

15   don't have the transcript in front of me, but it related to

16   something that just happened that related to Mr. Brunson

17   somehow, I can't recall exactly, but that's why it appeared

18   that we have, what Vanessa -- Ms. Ramos points out as a tacit

19   authorization.

20        THE COURT:  All right.  Well, what I'm going to do

21   with that, Mr. Cromar, I need to check on that, but I gather

22   you'll -- let me ask the marshals.

23        Mr. Cromar will be here yet for today; is that

24   correct?  Either of you?

25        THE MARSHAL:  I would imagine he'll be here for a

1    little while longer, yes.

2         **THE COURT:**  Yes.  So I'm going to check as soon as

3    we're done.  I'm going to see if I can figure out the answer to

4    that question.  I'll have my law clerk talk to one or both --

5    if you-all could make sure we have some contact information,

6    we'll just let you know whether that can go forward or not.

7         And, again, to be clear, what it would involve is

8    Mr. Cromar giving some of the electronic files that are

9    currently on his jail-authorized laptop via flash drive to

10   Mr. Brunson.  I just -- I'm not familiar with exactly what

11   happens, so I just need to make sure that I've got that

12   buttoned down.

13        **DEFENDANT CROMAR:**  Of course.  I wanted to --

14        **MS. RAMOS:**  Your Honor, if I may?

15        **THE COURT:**  Yes.

16        **MS. RAMOS:**  Judge Pead did not address that issue.

17   It was merely providing materials that were under the

18   protective order.  So I don't think there's been any discussion

19   about how that were to happen.  Judge Pead did not address

20   whether electronically he could provide the information through

21   a thumb drive or anything like that.

22        **THE COURT:**  Understood.  It would not be the issue of

23   the logistics.  It's just the issue whether the material would

24   be protected that may have been addressed.

25        **MS. RAMOS:**  Yes.

1        **THE COURT:**  Mr. Burns?

2        **MR. BURNS:**  Thank you, Your Honor.  As far as -- we

3    obviously don't know, it sounds like potentially there is some

4    ex-parte order for taxpayer information and things like that.

5    We just encourage the Court to examine the types of filings

6    that Mr. Brunson has made in other cases unrelated to this

7    before you determine whether or not it's appropriate to provide

8    discovery from this case or taxpayer information to him.

9        **THE COURT:**  Right.  I understand.  I'm not making a

10   decision on that.  I'm just going to see if I can figure out

11   what the answer is, and if it -- if that is something that's

12   permissible under what Judge Pead has done, I'll try -- I'll

13   try and figure that out.

14        Yes, Mr. Cromar?

15        **DEFENDANT CROMAR:**  Thank you.  With regards to the

16   schedule, I'm the only person from Davis County today, and so

17   they'll work around my time.  There's nobody -- no other inmate

18   here, so, that we're waiting for.  I'm the only one today.  So,

19   they'll work within whatever we need to do, I'm sure, I would

20   assume.

21        **THE COURT:**  We'll try and figure out the answer to

22   this quickly so we can let them know.  After I adjourn, I'll

23   ask the marshals to give some contact information to Ms. Peart,

24   to my law clerk.

25        All right.  Just give me one moment here.

28

1        All right.  Is there anything, any questions about
2   what we've discussed?
3        **MS. HAVEKOST:**  None from the Government, Your Honor.
4        **DEFENDANT CROMAR:**  I do have a follow-up matter that
5   relates to the laptop, actually.  A couple of days ago I was on
6   the laptop, and it said that the Windows work program is about
7   to expire.
8        Previously, I think it was February 16th, I had
9   addressed the concern that the Adobe Premiere PDF program had
10  expired, and it made my ability to secure and lock in my
11  documents as drafted impossible.  And if I'm -- Mr. Burns can
12  correct me if I get this wrong, but he said, We did that as a
13  courtesy to allow the Adobe Premiere PDF program.  I can't
14  guarantee anything else, I believe is what he said.  But now
15  I'm at a point where I would be losing both and making my
16  ability to function impossible.
17       **THE COURT:**  All right.
18       Does the Government -- do you have anything to say
19  about that?
20       **MR. BURNS:**  Yes, Your Honor.  So Judge Pead ordered
21  us to provide a laptop so Mr. Cromar could review the
22  Government's discovery, which is -- the discovery is in PDF
23  form and video form and stuff like that.  So the -- certain
24  aspects of the Adobe Acrobat program, the license expired on
25  that.  But that's more for creating content, like converting

1  things, annotating, and stuff like that.  As far as

2  Mr. Cromar's ability to view the discovery, that has been in no

3  way impinged based on my understanding.

4      Also, when we met with Mr. Cromar and put material on

5  his device, I was able to observe him, post that license

6  expiration, view the Government's discovery.  I don't think

7  that's an issue.

8      As far as Word, I'm not aware of any update or

9  license expiration or anything as to that.  But I would

10  emphasize to the Court, we -- we were ordered to provide this

11  laptop, which we can't provide him a laptop that connects to

12  the internet.  That's the issue with the updates.  That's why

13  it doesn't just update automatically.  We just can't give him

14  something that connects to the Internet.

15      But we did provide him a laptop as a means of a

16  litigation preparation platform or something for him to make

17  his pleadings.  It sounds like he's been treating it that way,

18  which is fine, but we're not in a position -- my understanding

19  from our technical people who have -- they have figured out

20  something that they think potentially could work to update the

21  Adobe, but they seemed kind of skeptical of it working.  These

22  things are just -- they update to the internet.  That's how

23  they work.

24      And we're -- we're really at this point disinclined

25  to undertake being kind of the litigation technology support

1  for these programs for him provided whatever he needs, whatever

2  we need to do to insure he can view our discovery.

3  Obviously, the Court has ordered us to do that, and

4  we're going to do it.  Our understanding is that these licensed

5  expirations have not affected that in any way.  It may be a

6  question of him having some other device in conjunction with

7  his other -- the other people assisting him to do his

8  litigation preparation.

9  **THE COURT:**  All right.  I'll raise that with Judge

10  Pead as well.

11  Yes, Mr. Cromar.

12  **DEFENDANT CROMAR:**  May I?

13  Let me offer an additional element to this is that I

14  do recall in the -- from reading the transcript a couple of

15  times, that when these issues were addressed originally, what

16  would be on the laptop, the discussion included the ability to

17  write and prepare documents for filing; and hence, the need for

18  the Word program.  I -- I assume that the reason that I get

19  PDFs is because that's -- they're locked in and they cannot

20  be altered.  I have the same need as counsel does for the

21  United States of America that when they create a document, they

22  need to be able to save it and lock it in via PDF so it isn't

23  altered.

24  When I gave my papers to Sergeant Hutchinson, and

25  previously Ty, there were occasions they would get it wrong.

1   And yesterday, the printouts I got, they did not come back

2   right.  Sometimes I got only the alternating pages.  Things

3   don't get copied correctly.  I only get page one, three, five,

4   seven, nine.  It's a little frustrating, and so being able to

5   lock things in would be practical.  It's what I believe most

6   people do when they create a document.  They lock it in via PDF

7   so it cannot be altered.

8         That would be -- I'm trying to -- I'm trying to do

9   all these things from a jail, and it takes at least five, if

10  not ten times as long to get things done from there.

11  Everything from waiting for two and three hours to be let out

12  to go to the classroom law library, as they call it, to waiting

13  days and sometimes a couple of weeks as just happened to get

14  things printed out and then dealt with.

15        So I'm trying to offer all the challenges that are

16  before me as I try to race to meet deadlines that feel

17  impossible with every turning day.

18        THE COURT:  All right.  What I'm going to do is I'm

19  going to raise these issues with Chief Judge Pead, and let him

20  try and work it out.

21        DEFENDANT CROMAR:  Thank you.

22        THE COURT:  All right.  Thank you.  Anything else

23  that we need to address before we end today?

24        MS. HAVEKOST:  No, Your Honor.

25        THE COURT:  Mr. Cromar, those are the issues?  As I

1    said, I'm going to raise these with Judge Pead.  I'll let him

2    do the best he can to figure out how to proceed.

3            **DEFENDANT CROMAR:**  I'm just looking over my notes.

4    I'm -- I'm flying solo here.  I believe that covers my

5    concerns.  Also, thank you for your attention to the details.

6            **THE COURT:**  All right.  Okay.  Thank you very much.

7    With that, then, Court is adjourned.

8            (Recess taken by the Court at 2:22 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

33

C E R T I F I C A T E

STATE OF UTAH          )

                       )   ss.

COUNTY OF SALT LAKE )


         This is to certify that the proceedings in the

foregoing matter were reported by me, Michelle Gonsalves, RPR,

CRR, CBC, CSR, in stenotype and thereafter transcribed into

written form;

         That said proceedings were taken at the time and

place herein named;

         I further certify that I am not of kin or otherwise

associated with any of the parties of said cause of action and

that I am not interested in the event thereof.

         In witness whereof I have subscribed my name this 1st

day of April 2024.




_____
Michelle Gonsalves, RPR, CRR, CBC, CSR

# EXHIBIT B

TRINA A. HIGGINS, United States Attorney (#7349)
MARK E. WOOLF, Assistant United States Attorney (WA #39399)
MEREDITH M. HAVEKOST, Trial Attorney (IL #6332789)
PATRICK BURNS, Trial Attorney (NV #11779)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

## IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:23-cr-00159-HCN-DBP |
| Plaintiff, | GOVERNMENT'S PROPOSED JURY INSTRUCTIONS AND VERDICT FORM |
| vs. | |
| PAUL KENNETH CROMAR, | District Judge Howard C. Nielson, Jr. |
| Defendant. | Chief Magistrate Judge Dustin B. Pead |

The United States of America respectfully submits its Proposed Jury Instructions and Verdict Form, which concern the essential elements of the crimes charged in the Indictment and various legal and evidentiary instructions that may be warranted. The United States requests leave to submit additional instructions should they be warranted by events during the trial.

1. Preliminary Instructions Before Trial

2. Note-Taking by Jurors

3. Introduction to Final Instructions

4. Duty to Follow Instructions

5. Presumption of Innocence—Burden of Proof—Reasonable Doubt

6.  Evidence—Defined

7.  Evidence—Direct and Circumstantial—Inferences

8.  Credibility of Witnesses

9.  Evidence of Good Character

10.  Evidence of Reputation for Honesty

11. Impeachment By Prior Inconsistencies

12. Impeachment By Prior Conviction – Defendant

13. Impeachment By Prior Conviction – Witness

14. Impeachment By Evidence of Untruthful Character

15. "On or About" / "In or About"

16. Caution—Consider Only Crime Charged

17. Caution—Punishment

18. Duty To Deliberate—Verdict Form

19. Similar Acts

20. Communication With the Court

21. COUNT 1 — Attempt to Evade and Defeat the Assessment or Payment of Tax (26 U.S.C. § 7201)

22. Legality of Federal Income Tax

23. COUNT 2 — Corruptly Obstructing the Due Administration of the Internal Revenue Code (26 U.S.C. § 7212(a))

24. COUNT 3 — Forcible or Attempted Rescue of Seized Property (26 U.S.C. § 7212(b))

**GOVERNMENT'S REQUESTED INSTRUCTION NO. 1**
PRELIMINARY INSTRUCTIONS BEFORE TRIAL

Members of the Jury:

At the end of the trial I will give you detailed guidance on the law and on how you will go about reaching your decision. But now I simply want to generally explain how the trial will proceed.

This criminal case has been brought by the United States government. I will sometimes refer to the government as the prosecution. The government is represented by two Trial Attorneys from the United States Department of Justice, Tax Division, Patrick Burns and Meredith Havekost. The defendant, Paul Kenneth Cromar, has decided to represent himself and not use the services of a lawyer. He has a perfect right to do this. His decision has no bearing on whether he is guilty or not guilty, and it should have no effect on your consideration of the case.

The indictment charges the defendant with attempting to evade and defeat the assessment or payment of tax; corruptly obstructing the due administration of the Internal Revenue Code; and the forcible and attempted rescue of seized property. The indictment is simply the description of the charge made by the government against the defendant; it is not evidence of guilt or anything else. The defendant pleaded not guilty and is presumed innocent. He may not be found guilty by you unless all twelve of you unanimously find that the government has proved his guilt beyond a reasonable doubt.

The first step in the trial will be the opening statements. The government in its opening statement will tell you about the evidence which it intends to put before you. Just as the indictment is not evidence, neither is the opening statement. Its purpose is only to help you understand what the evidence will be. It is a road map to show you what is ahead. After the

government's opening statement, the defendant may make an opening statement.

Evidence will be presented from which you will have to determine the facts. The evidence will consist of the testimony of the witnesses, documents and other things received into the record as exhibits, and any facts about which the lawyers for the United States and the defendant agree or to which they stipulate.

The government will offer its evidence. After the government's evidence, the defendant may present evidence, but he is not required to do so. I remind you that the defendant is presumed innocent and it is the government that must prove the defendant's guilt beyond a reasonable doubt. If the defendant submits evidence, the government may introduce rebuttal evidence.

At times during the trial, a lawyer or the defendant may make an objection to a question asked by another lawyer or the defendant, or to an answer by a witness. This simply means that the lawyer or defendant is requesting that I make a decision on a particular rule of law. Do not draw any conclusion from such objections or from my rulings on the objections. If I sustain an objection to a question, the witness may not answer it. Do not attempt to guess what answer might have been given if I had allowed the answer. If I overrule the objection, treat the answer as any other. If I tell you not to consider a particular statement, you may not refer to that statement in your later deliberations. Similarly, if I tell you to consider a particular piece of evidence for a specific purpose, you may consider it only for that purpose.

During the course of the trial I may have to interrupt the proceedings to confer with the attorneys and the defendant about the rules of law that should apply. Sometimes we will talk briefly at the bench. But some of these conferences may take more time, so I will excuse

you from the courtroom. I will try to avoid such interruptions whenever possible, but please be patient even if the trial seems to be moving slowly because conferences often actually save time in the end.

You are to consider all the evidence received in this trial. It will be up to you to decide what evidence to believe and how much of any witness's testimony to accept or reject.

After you have heard all the evidence on both sides, the government and the defense will each be given time for their final arguments. The final part of the trial occurs when I instruct you on the rules of law which you are to use in reaching your verdict.

During the course of the trial I may ask a question of a witness. If I do, that does not indicate I have any opinion about the facts in the case but am only trying to bring out facts that you may consider.

During the course of the trial, you should not talk with any witness, or with the defendant, or with any of the lawyers at all. In addition, during the course of the trial you should not talk about the trial with anyone else. Do not discuss the case with anyone or provide any information about the trial to anyone outside the courtroom until the verdict is received. Do not use the internet or any other form of electronic communication to provide any information. Simply put, do not communicate with anyone about the trial until your verdict is received. Also, you should not discuss this case among yourselves until I have instructed you on the law and you have gone to the jury room to make your decision at the end of the trial. It is important that you wait until all the evidence is received and you have heard my instructions on the controlling rules of law before you deliberate among yourselves. Let me add that during the course of the trial you will receive all the evidence you properly may consider to decide the case. Because of this, you should not attempt to gather any

information or do any research on your own. Do not attempt to visit any places mentioned in the case, either actually or on the internet, and do not in any other way try to learn about the case outside the courtroom.

The court reporter is making stenographic notes of everything that is said. This is basically to assist any appeals. However, a typewritten copy of the testimony will not be available for your use during deliberations. On the other hand, any exhibits will be available to you during your deliberations.

Now that the trial has begun you must not hear or read about it in the media. The reason for this is that your decision in this case must be made solely on the evidence presented at the trial.

Pattern Crim. Jury Instr. 10th Cir. 1.01 (2023)

**GOVERNMENT'S REQEUSTED INSTRUCTION NO. 2**
NOTE-TAKING BY JURORS

[You may not take notes during the course of the trial. There are several reasons for this. It is difficult to take notes and, at the same time, pay attention to what a witness is saying. Furthermore, in a group the size of yours, certain persons will take better notes than others, and there is the risk that the jurors who do not take good notes will depend upon the notes of others. The jury system depends upon all twelve jurors paying close attention and arriving at a unanimous decision. I believe that the jury system works better when the jurors do not take notes.]

[If you would like to take notes during the trial, you may. On the other hand, you are not required to take notes.

If you do decide to take notes, be careful not to get so involved in note taking that you become distracted, and remember that your notes will not necessarily reflect exactly what was said, so your notes should be used only as memory aids. Therefore, you should not give your notes precedence over your independent recollection of the evidence. You should also not be unduly influenced by the notes of other jurors. If you do take notes, leave them in the jury room at night and do not discuss the contents of your notes until you begin deliberations.]

Pattern Crim. Jury Instr. 10th Cir. 1.02 (2023).

**GOVERNMENT'S REQUESTED INSTRUCTION NO. 3**
INTRODUCTION TO FINAL INSTRUCTIONS

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case—for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return. These instructions will be given to you for use in the jury room, so you need not take notes.

Pattern Crim. Jury Instr. 10th Cir. 1.03 (2023).

**GOVERNMENT'S REQUESTED INSTRUCTION NO. 4**
DUTY TO FOLLOW INSTRUCTIONS

You, as jurors, are the judges of the facts. But in determining what actually happened—that is, in reaching your decision as to the facts—it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be. That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

Pattern Crim. Jury Instr. 10th Cir. 1.04 (2023).

**GOVERNMENT'S REQUESTED INSTRUCTION NO. 5**
PRESUMPTION OF INNOCENCE—BURDEN OF PROOF—REASONABLE DOUBT

The government has the burden of proving the defendant guilty beyond a reasonable doubt. The law does not require a defendant to prove his innocence or produce any evidence at all. The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt. A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

Pattern Crim. Jury Instr. 10th Cir. 1.05 (2023).

## GOVERNMENT'S REQUESTED INSTRUCTION NO. 6
### EVIDENCE—DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, [the stipulations that the lawyers and the defendant agreed to, and the facts that I have judicially noticed].

Nothing else is evidence. The lawyers' and the defendant's statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers and the defendant asked. I also ruled that you could not see some of the exhibits that the lawyers and the defendant wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Pattern Crim. Jury Instr. 10th Cir. 1.06 (2023).

## GOVERNMENT'S REQUESTED INSTRUCTION NO. 7
### EVIDENCE—DIRECT AND CIRCUMSTANTIAL—INFERENCES

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

Pattern Crim. Jury Instr. 10th Cir. 1.07 (2023).

## GOVERNMENT'S REQUESTED INSTRUCTION NO. 8
### CREDIBILITY OF WITNESSES

I remind you that it is your job to decide whether the government has proved the guilt of the defendant beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses [including the defendant] who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with either the government or the defense? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

[The testimony of the defendant should be weighed and his credibility evaluated in the same way as that of any other witness.]

[The defendant did not testify and I remind you that you cannot consider his decision

not to testify as evidence of guilt. I want you to clearly understand, please, that the Constitution of the United States grants to a defendant the right to remain silent. That means the right not to testify or call any witnesses. That is a constitutional right in this country, it is very carefully guarded, and you should understand that no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that a defendant does not take the witness stand and testify or call any witnesses.]

In reaching a conclusion on a particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.

Pattern Crim. Jury Instr. 10th Cir. 1.08 (2023).

## GOVERNMENT'S REQUESTED INSTRUCTION NO. 9
### EVIDENCE OF GOOD CHARACTER

[The defendant has offered evidence of his reputation for good character.] [The defendant has offered evidence of someone's opinion as to his good character.] You should consider such evidence along with all the other evidence in the case.

Evidence of good character may be sufficient to raise a reasonable doubt whether the defendant is guilty, because you may think it improbable that a person of good character would commit such a crime. Evidence of a defendant's character, inconsistent with those traits of character ordinarily involved in the commission of the crime charged, may give rise to a reasonable doubt.

You should also consider any evidence offered to rebut the evidence offered by the defendant.

You should always bear in mind, however, that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

Pattern Crim. Jury Instr. 10th Cir. 1.09 (2023).

## GOVERNMENT'S REQUESTED INSTRUCTION NO. 10
### EVIDENCE OF REPUTATION FOR HONESTY

The defendant has offered evidence in the form of reputation for honesty and integrity. You should consider such evidence along with all the other evidence in the case.

Evidence in the form of reputation for honesty and integrity may be sufficient to raise a reasonable doubt whether the defendant is guilty, because you may think it improbable that a person of honesty and integrity would commit such a crime. Evidence in the form of reputation of a defendant's honesty and integrity may be inconsistent with those traits of character ordinarily involved in the commission of the crime charged, and may give rise to a reasonable doubt.

You should also consider any evidence offered to rebut the evidence offered by the defendant.

You will always bear in mind, however, that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

Pattern Crim. Jury Instr. 10th Cir. 1.09.1 (2023).

**GOVERNMENT'S REQUESTED INSTRUCTION NO. 11**
IMPEACHMENT BY PRIOR INCONSISTENCIES[1]

You have heard the testimony of [name of witness]. You have also heard that, before this trial, [he/she] made a statement that may be different from his testimony here in court.

This earlier statement was brought to your attention only to help you decide how believable [his/her] testimony in this trial was. You cannot use it as proof of anything else. You can only use it as one way of evaluating [his/her] testimony here in court.

Pattern Crim. Jury Instr. 10th Cir. 1.10 (2023).

---

[1] This instruction must be given when a prior inconsistent statement which does not fall within Fed. R. Evid. 801(d)(2)(A) has been admitted. If several prior inconsistent statements were admitted, some for impeachment purposes and others as substantive evidence, this instruction should identify which statements were offered for impeachment purposes. It should also be given during trial as a limiting instruction, if requested under Fed. R. Evid. 105.

**GOVERNMENT'S REQUESTED INSTRUCTION NO. 12**
IMPEACHMENT BY PRIOR CONVICTION – DEFENDANT

You have heard evidence that the defendant has been convicted of a felony, that is, a crime punishable by imprisonment for a term of years. This conviction has been brought to your attention only because you may wish to consider it when you decide, as with any witness, how much of his testimony you will believe in this trial. The fact that the defendant has been convicted of another crime does not mean that he committed the crime charged in this case, and you must not use his prior conviction as proof of the crime charged in this case. You may find him guilty of the crime charged here only if the government has proved beyond a reasonable doubt that he committed it.

Pattern Crim. Jury Instr. 10th Cir. 1.11 (2023).

**GOVERNMENT'S REQUESTED INSTRUCTION NO. 13**
IMPEACHMENT BY PRIOR CONVICTION – WITNESS

The testimony of a witness may be discredited or impeached by showing that the witness previously has been convicted of a [felony, that is, of a crime punishable by imprisonment for a term of years] or of a [crime of dishonesty or false statement]. A prior conviction does not mean that a witness is not qualified to testify, but is merely one circumstance that you may consider in determining the credibility of the witness. You may decide how much weight to give any [prior felony conviction] [crime of dishonesty] that was used to impeach a witness.

Pattern Crim. Jury Instr. 10th Cir. 1.12 (2023).

**GOVERNMENT'S REQUESTED JURY INSTRUCTION NO. 14**
IMPEACHMENT BY EVIDENCE OF UNTRUTHFUL CHARACTER

You have heard the testimony of [name of witness], who was a witness in the [government's] [defense's] case. You also heard testimony from others concerning [their opinion about his character for truth-telling] [his reputation, in the community where he lives, for telling the truth]. It is up to you to decide from what you heard here whether [name of witness] was telling the truth in this trial. In deciding this, you should bear in mind the testimony concerning his [reputation for] truthfulness.

Pattern Crim. Jury Instr. 10th Cir. 1.13 (2023).

**GOVERNMENT'S REQUESTED JURY INSTRUCTION NO. 15**
"ON OR ABOUT" / "IN OR ABOUT"

You will note that Counts 1 and 2 of the indictment charge that the crimes were committed in or about November 2017 through in or about September 2020. The government must prove beyond a reasonable doubt that the defendant committed the crimes charged in Counts 1 and 2 reasonably near these dates.

You will also note that Count 3 of the indictment charges that the crime was committed on or about April 23, 2020 through on or about September 24, 2020. The government must prove beyond a reasonable doubt that the defendant committed the crime reasonably near these dates.

Pattern Crim. Jury Instr. 10th Cir. 1.18 (2023) (modified to include "in or about"); *see United States v. Poole,* 929 F.2d 1476, 1482, 1482 n.5 (10th Cir. 1991) ("[T]he evidence need only show that the offenses were committed on a date reasonably near the date alleged in the indictment.")

**GOVERNMENT'S REQUESTED JURY INSTRUCTION NO. 16**
CAUTION—CONSIDER ONLY CRIME CHARGED

You are here to decide whether the government has proved beyond a reasonable doubt that the defendant is guilty of the crime charged. The defendant is not on trial for any act, conduct, or crime not charged in the indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crime charged. The fact that another person *also* may be guilty is no defense to a criminal charge.

The question of the possible guilt of others should not enter your thinking as you decide whether this defendant has been proved guilty of the crime charged.

Pattern Crim. Jury Instr. 10th Cir. 1.19 (2023).

**GOVERNMENT'S REQUESTED JURY INSTRUCTION NO. 17**
CAUTION—PUNISHMENT

If you find the defendant guilty, it will be my duty to decide what the punishment will

be. You should not discuss or consider the possible punishment in any way while deciding

your verdict.

Pattern Crim. Jury Instr. 10th Cir. 1.20 (2023).

**GOVERNMENT'S REQUESTED JURY INSTRUCTION NO. 18**
DUTY TO DELIBERATE—VERDICT FORM

In a moment the bailiff will escort you to the jury room and provide each of you with a copy of the instructions that I have just read. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom. [The second thing you should do is review the instructions. Not only will your deliberations be more productive if you understand the legal principles upon which your verdict must be based, but for your verdict to be valid, you must follow the instructions throughout your deliberations. Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the instructions.]

To reach a verdict, whether it is guilty or not guilty, all of you must agree. Your verdict must be unanimous on each count of the indictment. Your deliberations will be secret. You will never have to explain your verdict to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges—judges of the facts. You must decide whether the government has proved the defendant guilty beyond a reasonable doubt.

A form of verdict has been prepared for your convenience. [Explain the Verdict Form]

The foreperson will write the unanimous answer of the jury in the space provided for each count of the indictment, either guilty or not guilty. At the conclusion of your deliberations, the foreperson should date and sign the verdict.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the bailiff. I will either reply in writing or bring you back into the court to respond to your message. Under no circumstances should you reveal to me the numerical division of the jury.

Pattern Crim. Jury Instr. 10th Cir. 1.23 (2023).

**GOVERNMENT'S REQUESTED JURY INSTRUCTION NO. 19**
SIMILAR ACTS

You have heard evidence of other acts and wrongs engaged in by the defendant. You may consider that evidence only as it bears on the defendant's intent, knowledge, willfulness, common scheme or plan, or lack of mistake or accident and for no other purpose. Of course, the fact that the defendant may have previously committed an act similar to the one charged in this case does not mean that the defendant necessarily committed the act charged in this case.

Pattern Crim. Jury Instr. 10th Cir. 1.30 (2023).

**GOVERNMENT'S REQUESTED JURY INSTRUCTION NO. 20**
COMMUNICATION WITH THE COURT

If you want to communicate with me at any time during your deliberations, please write down your message or question and give it to [the marshal] [the bailiff] [my law clerk], who will bring it to my attention. I will respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally. I caution you, however, that with any message or question you might send, you should not tell me any details of your deliberations or indicate how many of you are voting in a particular way on any issue.

Let me remind you again that nothing I have said in these instructions, nor anything I have said or done during the trial and sentencing proceedings, was meant to suggest to you what I think your decision should be. That is your exclusive responsibility.

Pattern Crim. Jury Instr. 10th Cir. 1.44 (2023).

**GOVERNMENT'S REQUESTED JURY INSTRUCTION NO. 21**
COUNT 1 — Attempt to Evade and Defeat the Assessment or Payment of Tax
(26 U.S.C. § 7201)

The defendant is charged in Count 1 with a violation of 26 U.S.C. section 7201. This law makes it a crime for anyone to willfully attempt to evade or defeat the assessment or payment of federal income tax.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: the defendant owed substantial income tax for the years 1999 through 2005;[2]

*Second*: the defendant committed at least one affirmative act with the intent to evade and defeat payment of the income tax he owed for the years 1999 through 2005, that is he submitted false documents with the IRS or attempted to stop the IRS's seizure and sale of the Cedar Hills home;[3] and

*Third*: the defendant acted willfully, that is, with the voluntary intent to violate a known legal duty.

While the government must prove that the defendant owed substantial income tax for the years 1999 through 2005, it need not show the exact amount of the tax due. The

---

[2] This proposed instruction omits the following language: "in addition to the tax liability which he reported on his [year] income tax return" from the Tenth Circuit pattern jury instruction because the evidence will show that the defendant did not file tax returns for calendar years 1999 through 2005, and such language is primarily relevant to a charge of evading the assessment of income tax.

[3] The Tenth Circuit pattern jury instruction breaks this elements into two—"the defendant intended to evade and defeat payment of that additional tax" and "the defendant committed an affirmative act in furtherance of this intent, that is he [described affirmative act as alleged in indictment]". The proposed instruction combines these two elements into one, consistent with Tenth Circuit caselaw. *See, e.g., United States v. Boisseau*, 841 F.3d 1122, 1125 (10th Cir. 2016) ("To obtain a conviction, the government must prove three elements, namely the existence of a tax deficiency, an affirmative act constituting an evasion or attempted evasion of the tax, and willfulness.") (citing *Sansone v. United States*, 380 U.S. 343, 351 (1965)).

government is required only to prove, beyond a reasonable doubt, that the tax due was substantial.[4]

To "evade and defeat" the payment of tax means to escape paying a tax due other than by lawful avoidance.

The defendant acted "willfully" if the law imposed a duty on him, he knew of the duty, and he voluntarily and intentionally violated that duty. Thus, if the defendant acted in good faith, he cannot be guilty of this crime. The burden to prove intent, as with all other elements of the crime, rests with the government. This is a subjective standard: what did the defendant honestly believe, not what a reasonable person should have believed. Negligence, even gross negligence, is not enough to meet the "willful" requirement.[5] But philosophical disagreement with the law or a belief that the tax laws are invalid or unconstitutional does not satisfy good faith and does not prevent a finding of willfulness.[6] You may consider the reasonableness of the defendant's asserted beliefs in determining whether the belief was honestly or genuinely held.[7]

---

[4] This proposed instruction omits the model instructions reference to the indictment's allegations.

[5] *See United States v. Lesoon*, 190 F. App'x 622, 625 (10th Cir. 2006) ("When, as here, the defendant is claiming he in good faith believed he did not have a duty to file tax returns or pay federal taxes, the government must negate the 'defendant's claim of ignorance of the law or [his] claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any provisions of the tax laws.'") (quoting *Cheek v. United States*, 498 U.S. 192, 202 (1991)).

[6] *See Cheek v. United States*, 498 U.S. 192, 205-06 (1991) ("Claims that some of the provisions of the tax code are unconstitutional . . . do not arise from innocent mistakes caused by the complexity of the Internal Revenue Code. Rather, they reveal full knowledge of the provisions at issue and a studied conclusion, however wrong, that those provisions are invalid and unenforceable. . . . We do not believe that Congress contemplated that . . . a taxpayer, without risking criminal prosecution, could ignore the duties imposed upon him by the Internal Revenue Code and refuse to utilize the mechanisms provided by Congress to present his claims of invalidity to the courts and to abide by their decisions.").

[7] *See Cheek v. United States*, 498 U.S. 192, 203-04 (1991) (emphasizing that "the more
(continued...)

Pattern Crim. Jury Instr. 10th Cir. 2.92 (2023).

---

unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties imposed by the tax laws and will find that the Government has carried its burden of proving knowledge").

## GOVERNMENT'S REQUESTED JURY INSTRUCTION NO. 22
### LEGALITY OF FEDERAL INCOME TAX[8]

The Internal Revenue Service is an agency of the United States Department of the Treasury and is responsible for the assessment, ascertainment, computation, and collection of federal income taxes, including individual income taxes. The Internal Revenue Code, also known as the tax code, imposes an income tax on all citizens and residents of the United States.

The "United States" includes the fifty states, the District of Columbia, and other federal enclaves.

The imposition of an income tax on individuals is lawful. By law, the payment of income tax is not voluntary in the sense of it being optional. Voluntary in this context only means that individual taxpayers are responsible for preparing their own tax returns, instead of the government auditing and assessing each person's taxes. A person is required to file a federal income tax return for any calendar year in which he or she has gross income in excess of the minimum filing requirement determined by Congress.

---

[8] 26 U.S.C. §§ 1, 61, 6012(a), 7701(b); 26 C.F.R. § 1.1-1; *Cheek v. United States*, 498 U.S. 192, 206 (1991); *Martin v. C.I.R.*, 297 Fed. App'x 736, 738 (10th Cir. 2008) (holding that the Sixteenth Amendment authorizes direct nonapportioned income tax upon all United States citizens).

**GOVERNMENT'S REQUESTED JURY INSTRUCTION NO. 23**
COUNT 2 — Corruptly Obstructing the Due Administration of the Internal Revenue Code
(26 U.S.C. § 7212(a))[9]

The defendant is charged in Count 2 with corruptly endeavoring to obstruct and

impede the due administration of the internal revenue laws. To find the defendant guilty of

this crime, the government must prove each of the following beyond a reasonable doubt:

*First:* the defendant "endeavored," that is, acted, with the purpose to obstruct or

impede the due administration of the internal revenue laws;

*Second:* the defendant's actions had the reasonable tendency to obstruct or impede the

due administration of the internal revenue laws; and

*Third:* the defendant's actions were committed "corruptly," that is, with the purpose

to obtain an unlawful benefit for himself or someone else.

The term "endeavor" means to knowingly and deliberatively act, or to knowingly and

deliberatively make any effort. The government must prove some affirmative act by the

defendant, rather than a mere failure to act. It is not necessary, however, for the government

to prove that the endeavor to obstruct or impede was successful.

"To obstruct or impede" means to hinder, block, delay, interfere with, or make

progress slow or difficult.

The "due administration of the internal revenue laws" for purpose of Count 2 means

a particular tax-related proceeding. Examples would include a criminal investigation of tax

crimes, an IRS examination or audit, tax collection activities, or other targeted tax-related

---

[9] There are no Tenth Circuit pattern jury instructions for this offense. The proposed instruction is based on Supreme Court and Tenth Circuit caselaw. *See Marinello v. United States*, 138 S. Ct. 1101, 1104, 1109-10 (2018); *United States v. Winchell*, 129 F.3d 1093, 1098-99 (10th Cir. 1997) (discussing the pre-*Marinello* articulation of elements and defining "corrupt").

administrative actions. But it does not include routine administrative procedures that are near universally applied to all taxpayers, such as the ordinary processing of tax returns. The particular tax-related proceeding must be one that is pending, or at least reasonably foreseeable by the defendant, when the defendant committed the allegedly obstructive act or acts.

"To act corruptly" is to act with the intent to secure an unlawful advantage or benefit either for one's self or for another. The act itself need not be illegal as long as the defendant committed it to secure an unlawful benefit for himself or for others.

The government must prove a "nexus" between the defendant's obstructive conduct and the particular tax-related action or proceeding. To prove a nexus between the defendant's obstructive conduct and the particular tax-related proceeding or administrative action, there must be a relationship in time, causation, or logic between an alleged obstructive act and the tax-related action or proceeding.

## GOVERNMENT'S REQUESTED JURY INSTRUCTION NO. 24
### COUNT 3 — Forcible or Attempted Rescue of Seized Property
### (26 U.S.C. § 7212(b))[10]

The defendant is charged in Count 3 with a violation of 26 U.S.C. section 7212(b).  To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First:* real property located in Cedar Hills, Utah was seized by an official authorized to do so under the Internal Revenue Code;

*Second:* knowledge by the defendant that the property had been seized and that removal of the property from the government's possession is unlawful; and

*Third:* a forcible retaking or rescue of the property by the defendant.

Property has been "seized" if the government takes possession of the property or exercises control over it.[11]

---

[10] There is no Tenth Circuit pattern jury instruction for this offense. The proposed instruction is based on caselaw from U.S. Circuit Courts of Appeals, including the Tenth Circuit. *United States v. Oliver*, 421 F.2d 1034, 1036–37 (10th Cir. 1970) ("The essential elements required by the statute to constitute the offense are seizure and rescue.") (internal quotation marks and citation omitted); *United States v. Hardaway*, 731 F.2d 1138, 1140 (5th Cir. 1984) ("The elements of forcible rescue are: (1) seizure of property by one authorized to do so under the Internal Revenue Code; (2) knowledge by the defendant that the property has been so seized; and (3) a forcible retaking of the property by the defendant.") (internal quotation marks and citations omitted); *Gasho v. United States*, 39 F.3d 1420, 1429 (9th Cir. 1994) ("The offense of 'forcible rescue' has three elements: (1) seizure of the property by the United States, (2) knowledge by the defendant that the property has been seized and that removal is unlawful, and (3) forcible and willful removal of the property from the dominion and control of the government.") (citations omitted).

[11] *See* Black's Law Dictionary, 11th Ed, 2019; Bittker & Lokken, Federal Taxation of Income, Estates and Gifts § 113.5 ("The term 'seizure' usually refers to the process of taking possession of a taxpayer's tangible property (e.g. taking custody of a vehicle or padlocking the taxpayer's business premise."). Such a definition finds support in Fourth Amendment jurisprudence where a "seizure" occurs when there is "some meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

The seizure must be legal in that it must be performed by a proper official with authority under the Internal Revenue Code to make the seizure. No other aspect about the legality of the seizure is relevant.[12]

The term "forcibly rescued" as used in section 7212(b) means appropriation of an item in a manner that defies and frustrates the warrant of seizure. Rescue is forcible when it is against the constructive will of the government, that is, when the rescue disrupts the government's possession in a situation where the government has lawfully asserted dominion and lawfully maintained custody.[13] It is not limited to proof of force exerted against persons but encompasses any force that enables the defendant to rescue the seized property.[14]

---

[12] *Oliver*, 421 F.2d at 1036–37 ("The defendant's . . . contentions . . . in effect attack the validity of the [tax] lien obtained by the [Internal Revenue] Service. The necessary premise for defendant's assertions is that [the validity of the tax liens] are relevant factors in a trial where a defendant is charged with the criminal offense of rescuing property seized by the Service[.] We think the assumption is unwarranted. Such issues are relevant in civil proceedings attacking the Government's seizure. They are not relevant here. To permit such issues to be raised in connection with a prosecution under these statutes would be to encourage violent self-help where civil remedies are admittedly available.") (internal quotation marks and citation omitted); *Hardaway*, 731 F.2d at 1140 ("Lawfulness of a seizure under section 7212(b) means only that it was performed by a proper official with general authority under the tax code to make the seizure. . . . Thus, disputes concerning other aspects of the legality of a seizure are not relevant to the elements of the crime of forcible rescue. . . . In this case, it is undisputed that the seizure was made by IRS officers; therefore the property was seized under the authority of the Internal Revenue Code.") (internal quotation marks and citations omitted).

[13] *United States v. Sanders*, 862 F.2d 79, 83 (4th Cir. 1988) (internal quotation marks and citations omitted).

[14] *Hardaway*, 731 F.2d at 1140 (citations omitted).

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 2:23-cr-00159-HCN-DBP |
| vs. | |
| PAUL KENNETH CROMAR, | VERDICT |
| Defendant. | |

### VERDICT:

We the jury in the above-entitled case, upon our oaths, do say:

### Count 1 – Attempt to Evade and Defeat the Assessment or Payment of Tax

That we find the Defendant, **PAUL KENNETH CROMAR**, _____

(**Not Guilty/Guilty**)

of the offense of Attempt to Evade and Defeat the Assessment or Payment of Tax as charged

in Count 1 of the Indictment herein.

### Count 2 – Corruptly Obstructing the Due Administration of the Internal Revenue Code

That we find the Defendant, **PAUL KENNETH CROMAR**, _____

(**Not Guilty/Guilty**)

of the offense of Corruptly Obstructing the Due Administration of the Internal Revenue Code

as charged in Count 2 of the Indictment herein.

### Count 3 – Forcible or Attempted Rescue of Seized Property

That we find the Defendant, **PAUL KENNETH CROMAR**, _____

(**Not Guilty/Guilty**)

of the offense of Forcible or Attempted Rescue of Seized Property as charged in Count 3 of

the Indictment herein.

DATED: _____, 2024.

                                             _____

                                                 JURY FOREPERSON

DATED this 12th day of February, 2024.

Respectfully submitted,

TRINA A. HIGGINS
United States Attorney

By:     /s/ Meredith Havekost
        /s/ Patrick Burns

        MEREDITH HAVEKOST
        PATRICK BURNS
        Trial Attorneys, DOJ Tax Division

# EXHIBIT C

FILED
United States Court of Appeal
Tenth Circuit

March 26, 2020

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PAUL KENNETH CROMAR; BARBARA
ANN CROMAR,

    Defendants - Appellants,

and

UTAH HOUSING FINANCE AGENCY;
UNIVERSAL CAMPUS FEDERAL
CREDIT UNION; STATE OF UTAH
TAX COMMISSION; UTAH COUNTY,

    Defendants.

No. 19-4075
(D.C. No. 2:17-CV-01223-RJS)
(D. Utah)

## ORDER AND JUDGMENT[*]

Before **HOLMES**, **PHILLIPS**, and **CARSON**, Circuit Judges.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Paul and Barbara Cromar, proceeding pro se,[1] appeal from the district court's orders granting default judgment to the United States on Mr. Cromar's federal income tax liabilities and foreclosing federal tax liens through a sale of his real property. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Mr. Cromar did not file federal income tax returns for the 1999 through 2005 tax years and did not comply with requests for documentation by the Internal Revenue Service (IRS). The United States filed an action against Mr. Cromar in 2017, seeking to reduce to judgment assessments against him for unpaid income taxes and to foreclose tax liens through a sale of his real property in Cedar Hills, Utah. The complaint also named as defendants those with a potential interest in the property, including Mrs. Cromar, governmental entities, and a lending institution.

The Cromars refused to answer the complaint and, instead, challenged the district court's subject-matter jurisdiction and the government's constitutional taxing authority. After denying several such motions and objections, the court directed them to answer the complaint and warned of possible sanctions if they continued filing frivolous motions. Undeterred, the Cromars continued raising the same jurisdictional arguments and refused to answer the complaint, even though the court gave them multiple extensions of time. After rejecting the Cromars' motions and objections, the district court granted the government's motion for entry of default

---

[1] "[W]e liberally construe" the Cromars' pro se briefs, "but we will not act as [their] advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

2

judgment. The Cromars moved to vacate the judgment based on the same jurisdictional arguments. The district court denied the motion and entered an order restricting their ability to file further documents without seeking and obtaining leave.

In its February 2019 order granting the government's motion for default judgment, the district court decreed: (1) Mr. Cromar owed more than $1 million in tax liabilities; (2) his tax liabilities generated statutory liens on his property; and (3) Mrs. Cromar, by virtue of her default, lacked an interest in the property.[2] After the Cromars filed an interlocutory appeal, which we dismissed for lack of jurisdiction, the district court entered an Order of Foreclosure and Judicial Sale, decreeing that the tax liens be foreclosed and that Mr. Cromar's property be sold free and clear of any liens or other interests. The order also set procedures for the sale and distribution of the proceeds and ordered the Cromars to vacate the property or be evicted. This appeal followed.[3]

## DISCUSSION

The Cromars contend: (1) the district court erred in granting default judgment to the United States because it lacked subject-matter jurisdiction and because the

---

[2] The court also entered default judgment against a lending institution that failed to answer the complaint. The other named defendants either disclaimed an interest in the property or entered into a stipulation with the government.

[3] While this appeal was pending, the Cromars filed several motions to stay the district court proceedings, including: (1) to prevent the foreclosure and sale; (2) to have their occupancy of the property restored; and (3) to prevent the district court from confirming the sale and distributing the proceeds. We denied the first two motions by separate orders, and we now deny the third motion, as noted below.

government lacks the authority to impose and collect federal income taxes; (2) the district court denied the Cromars due process by not conducting a hearing prior to ordering the sale of Mr. Cromar's property; and (3) the district court lacked subject-matter jurisdiction to order the Cromars evicted from the property. Reviewing these questions of law de novo, *see Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1269 (10th Cir. 2017), we conclude the Cromars' contentions are frivolous.

First, the district court properly noted it had subject-matter jurisdiction under 28 U.S.C. § 1340 (giving district courts jurisdiction over "any civil action arising under any Act of Congress providing for internal revenue"), 28 U.S.C. § 1345 (giving district courts jurisdiction over "all civil actions . . . commenced by the United States"), 26 U.S.C. § 7402 (giving district courts jurisdiction to render judgments "for the enforcement of the internal revenue laws" and cross-referencing 28 U.S.C. § 1340), and 26 U.S.C. § 7403 (giving district courts jurisdiction over an action to enforce a tax lien). The Cromars contend these statutes are "vague and non-specific," Aplt. Opening Br. at 8, and apply only to "the enforcement of the indirect Excise taxation of commodities and articles of commerce," Aplt. Reply Br. at 8 (emphasis omitted). But they offer no coherent analysis, let alone authority, to support such contentions. "The court will not consider such issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) (internal quotation marks omitted).

4

Next, in contesting the government's authority over income tax laws, the Cromars argue the district court should have required the government to identify "the specific constitutional power to tax that is being exercised and pursued by the plaintiff for enforcement by the court." Aplt. Opening Br. at 5 (emphasis omitted). Specifically, they contend the government needed to identify whether the income tax was direct, and thus invalid without apportionment among the states, *see* U.S. Const. art. I, §§ 2, 9, or indirect, and not subject to apportionment, *see id.* § 8.

As the government correctly notes, we have recognized "the Sixteenth Amendment to the Constitution authorized a non-apportioned direct income tax on United States citizens and that the federal tax laws as applied are valid." Aplee. Br. at 14 (citing *United States v. Collins*, 920 F.2d 619, 629 (10th Cir. 1990)).[4] *See generally* U.S. Const. amend. XVI ("The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."). We also have found to be frivolous arguments similar to the Cromars' contentions—that "the income tax is a direct tax which is invalid absent apportionment" or that "the Sixteenth Amendment to the Constitution is . . . invalid." *Lonsdale v. United States*, 919 F.2d 1440, 1448 (10th Cir. 1990).

---

[4] The Cromars insist *Collins* was "erroneously" decided. Aplt. Reply Br. at 7. But that is not for us to consider. *See United States v. Gaines*, 918 F.3d 793, 796 n.3 (10th Cir. 2019) (noting one panel cannot "overrule another").

Case 2:23-cr-00159-HCN-DBP   Document 382   Filed 10/24/24   PageID.7792   Page 103 of 110
Case 2:17-cv-1223   Document 128   Filed 06/23/2020   Page 6 of 9
Appellate Case: 19-4075   Document: 010110325199   Date Filed: 03/26/2020   Page: 6

Ultimately, "[i]t is unnecessary to delve into the difficult question of the distinction between direct and indirect taxes because," either under the Sixteenth Amendment or Supreme Court cases pre-dating the amendment, "Congress has the power to tax the income of individuals." *United States v. Stillhammer*, 706 F.2d 1072, 1077 (10th Cir. 1983); *see also Charczuk v. Comm'r*, 771 F.2d 471, 473 (10th Cir. 1985) (holding "*there is no question* but that Congress has the constitutional authority to impose an income tax"). We reiterate: "The Internal Revenue Code was validly enacted by Congress and is fully enforceable." *United States v. Dawes*, 874 F.2d 746, 750 (10th Cir. 1989), *overruled in part on other grounds by United States v. Allen*, 895 F.2d 1577 (10th Cir. 1990). Accordingly, the Cromars' strained argument regarding direct and indirect taxation is without merit.

Next, the Cromars contend their due process rights were violated when the district court did not conduct an additional hearing prior to ordering the sale of Mr. Cromar's real property. Specifically, they argue the court failed to conduct a pre-sale hearing required by 28 U.S.C. § 2001(b). Section 2001 establishes procedures for the judicial sale of realty, but subsection (b) applies only to private sales. *See* 28 U.S.C. § 2001(b) (requiring a hearing prior to the court "order[ing] the sale of such realty or interest or any part thereof at *private* sale" and imposing conditions that must be satisfied "[b]efore confirmation of any *private* sale" (emphasis added)). The district court ordered Mr. Cromar's property auctioned at a public sale. *See* 28 U.S.C. § 2001(a) (providing "[a]ny realty or interest therein sold under any order or decree of any court of the United States shall [generally] be

Case 2:23-cr-00159-HCN-DBP   Document 382   Filed 10/24/24   PageID.7793   Page 104 of 110
Case 2:17-cv-1223   Document 128   Filed 06/23/2020   Page 7 of 9
Appellate Case: 19-4075   Document: 010110325199   Date Filed: 03/26/2020   Page: 7

sold . . . at *public* sale" (emphasis added)); *see also id.* § 2002 (providing notice requirements for "[a] public sale of realty or interest therein under any order, judgment or decree of any court of the United States"). The Cromars' reliance on 28 U.S.C. § 2001(b) is misplaced.

Similarly, the Cromars contend they were not given notice under 28 U.S.C. § 3202(b) of the right to a pre-sale hearing under § 3202(d). But those provisions of the Federal Debt Collection Procedures Act (FDCPA), 28 U.S.C. §§ 3001-3308, do not apply to a proceeding to collect income taxes brought under 26 U.S.C. §§ 7402 and 7403, *see* 28 U.S.C. § 3001(b) ("To the extent that another Federal law specifies procedures for recovering on a claim or a judgment for a debt arising under such law, those procedures shall apply to such claim or judgment to the extent those procedures are inconsistent with this chapter."); *id.* § 3003(b)(1) (noting the FDCPA does not limit the government's right "to collect taxes"). The Cromars' claim that they were denied due process when the court failed to conduct a pre-sale hearing lacks merit.[5]

Finally, the Cromars contend the district court lacked jurisdiction to evict them. They argue, without authority, that "[e]victions from property located within a State of the United States of America are of course a matter of state law, not federal,

---

[5] The Cromars also allege "they have never been allowed . . . a single appearance or hearing in the entire civil action." Aplt. Reply Br. at 26 (emphasis omitted). But that plainly is incorrect. *See* R. Vol. I at 163-72 (transcript of initial pretrial conference, reflecting the Cromars appeared by telephone and repeated the arguments they made in their previously denied motion to dismiss).

Case 2:23-cr-00159-HCN-DBP   Document 382   Filed 10/24/24   PageID.7794   Page 105 of 110
Case 2:17-cv-1223   Document 128   Filed 06/23/2020   Page 8 of 9
Appellate Case: 19-4075   Document: 010110325199   Date Filed: 03/26/2020   Page: 8

unless the property is already owned or legally controlled by the United States."
Aplt. Opening Br. at 25 (emphasis omitted). But in ordering the sale of property
encumbered by a tax lien, *see* 26 U.S.C. § 7403(c), the district court had the authority
to condition the sale "upon such terms and conditions as the court directs," 28 U.S.C.
§ 2001(a), and "to render such judgments and decrees as may be necessary or
appropriate for the enforcement of the internal revenue laws," 26 U.S.C. § 7402(a).
The district court, therefore, had jurisdiction to require the Cromars to vacate the
property and to order their removal if they refused to comply.

## CONCLUSION

The district court's orders are affirmed. The Cromars' "Motion for Leave to
File Motion to Take Judicial Notice of Law" is denied.[6] Their "Motion for Leave of
the Court to Exceed Briefing Page Limitation" is granted, and their corresponding
"Motion to Enjoin Further Process in the District Court Pending Resolution of
Appeals and the Subject-Matter Jurisdiction Question" is denied as moot.

Entered for the Court

Joel M Carson III
Circuit Judge

---

[6] In their motion for judicial notice, the Cromars request we take notice of
*Brushaber v. Union Pacific Railroad Co.*, 240 U.S. 1 (1916). But the Cromars
already cited *Brushaber* in their briefs. And to the extent this sixteen-page motion
raises arguments ostensibly based on *Brushaber*, it is an impermissible attempt to
evade the length-limitations on their reply brief.

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
### OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Christopher M. Wolpert
Clerk of Court

March 26, 2020

Jane K. Castro
Chief Deputy Clerk

Barbara Ann Cromar
Paul Kenneth Cromar
9870 North Meadow Drive
Cedar Hills, UT 84062

RE:     **19-4075, United States v. Cromar, et al**
        Dist/Ag docket: 2:17-CV-01223-RJS

Dear Appellants:

Enclosed is a copy of the order and judgment issued today in this matter. The court has
entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of the Court

cc:    Robert Joel Branman
       Michael J. Haungs

CMW/jm

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**
**OFFICE OF THE CLERK**
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Christopher M. Wolpert
Clerk of Court

June 23, 2020

Jane K. Castro
Chief Deputy Clerk

Mr. D. Mark Jones
United States District Court for the District of Utah
351 South West Temple
Salt Lake City, UT 84101

RE:     **19-4075, United States v. Cromar, et al**
        Dist/Ag docket: 2:17-CV-01223-RJS

Dear Clerk:

Pursuant to Federal Rule of Appellate Procedure 41, the Tenth Circuit's mandate in the above-referenced appeal issued today. The court's March 26, 2020 judgment takes effect this date.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of the Court

cc:     Robert Joel Branman
        Barbara Ann Cromar
        Paul Kenneth Cromar
        Michael J. Haungs

CMW/mlb

Case: 2:17cv1223

Paul Kenneth Cromar
9870 N MEADOW VIEW DR
CEDAR HILLS, UT 84062

_____

MIME-Version:1.0 From:utd_enotice@utd.uscourts.gov To:ecf_notice@localhost.localdomain Bcc:
Message-Id:<4524335@utd.uscourts.gov>Subject:Activity in Case 2:17-cv-01223-RJS USA v.
Cromar et al USCA Mandate Content-Type: text/html

**This is an automatic e-mail message generated by the CM/ECF system. If you need assistance,
call the Help Desk at (801)524-6100.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy
permits attorneys of record and parties in a case (including pro se litigants) to receive one free
electronic copy of all documents filed electronically, if receipt is required by law or directed by
the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of
each document during this first viewing. However, if the referenced document is a transcript, the
free copy and 30 page limit do not apply.**

## US District Court Electronic Case Filing System

### District of Utah

**Notice of Electronic Filing**
The following transaction was entered on 6/23/2020 at 2:40 PM MDT and filed on 6/23/2020

| | |
|---|---|
| **Case Name:** | USA v. Cromar et al |
| **Case Number:** | 2:17-cv-01223-RJS |
| **Filer:** | |
| **WARNING: CASE CLOSED on 03/05/2019** | |
| **Document Number:** | 128 |

**Docket Text:**
**MANDATE of USCA as to [112] Notice of Appeal filed by Paul Kenneth Cromar, Barbara Ann
Cromar. According to the USCA the district court's decision of the USDC for the Dist of UT is
Affirmed. (Attachments: # (1) Mandate letter)(jrj)**

**2:17-cv-01223-RJS Notice has been electronically mailed to:**
M. Cort Griffin    cortg@utahcounty.gov, karenf@utahcounty.gov, terrij@utahcounty.gov
Stephen W. Lewis    swlewis@agutah.gov
John K. Mangum    john.mangum@usdoj.gov, CaseView.ECF@usdoj.gov,
valerie.maxwell@usdoj.gov
Nathan S. Dorius    ndorius@mbmlawyers.com, kgoddard@mbmlawyers.com
Andrew V. Collins    acollins@mbmlawyers.com, JWilding@mbmlawyers.com
Ryan S. Watson    ryan.watson@usdoj.gov, western.taxcivil@usdoj.gov
**2:17-cv-01223-RJS Notice has been delivered by other means to:**
Barbara Ann Cromar
9870 N MEADOW VIEW DR
CEDAR HILLS, UT 84062
Paul Kenneth Cromar
9870 N MEADOW VIEW DR
CEDAR HILLS, UT 84062

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060034973 [Date=6/23/2020] [FileNumber=4524333-0
] [695920e3bad6ffe74c9b66fe9cf82950ac7f1c3983b13fc3fa7361dcebc7914b368
1d99e6310688d3af3740c867d4c61b653a5cec12b1e3a72997ced503e6291]]
**Document description:** Mandate letter
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060034973 [Date=6/23/2020] [FileNumber=4524333-1
] [4e72dfed9b8b4465a30a41b1f320d4110d5e2d14cde1e0adc36e9658b73ed5e7191
5afc0310dd9cffa220d902d24f6e6c8d534ce645a6b3bc8e0efff129a9aac]]